UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 09-CR-0003 (CBA)

-against- : United States Courthouse
: Brooklyn, New York

DARIEN PUGHE,
also known as
"Fuso" and "Fu," and

DEWAYNE TAYLOR,
also known as "Anthony Watts," : June 23, 2009
Defendant. : 9:30 a.m.

- - - - - - - - - - - - - - X

CRIMINAL CAUSE FOR TRIAL
BEFORE THE HONORABLE CAROL B. AMON
UNITED STATES DISTRICT COURT JUDGE, AND A JURY

A P P E A R A N C E S:

For the Government:
United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: MATTHEW AMATRUDA, ESQ.

For Defendant Pughe:
Rothman, Schneider, Soloway & Stern, P.C.
100 Lafayette Street, Suite 501
New York, NY 10013
BY: DAVID STERN, ESQ.

For Defendant Taylor:
Federal Defenders of New York, Inc.
16 Court Street
Brooklyn, NY 11241
BY: LEN KAMDANG, ESQ.

Court Reporter: Nicole M. Warren, CSR, RMR, CRR
Official Court Reporter

**Proceedings recorded by computerized stenography**
**Transcript produced by Computer-aided Transcription.**

(In open court; defendants enter the courtroom.)

COURTROOM DEPUTY: United States against Pughe and Taylor.

Please state your appearances for the record.

Please state your appearances for the record.

MR. AMATRUDA: Matthew Amatruda for the United States. Good morning, your Honor.

MR. STERN: David Stern for Mr. Pughe. Good morning.

THE COURT: Morning.

MS. McMILLAN: Kate McMillan.

MR. STERN: I'm supposed to say that every time, and I don't. Kate McMillan's here with me. She's an associate in my office.

MR. KAMDANG: Len Kamdang on behalf of Mr. Taylor; and with me is my intern, Amanda Rohrkemper.

THE COURT: Good morning.

Is there anything we need to discuss before the jury comes out? Have you resolved the issues from last evening?

MR. STERN: We've resolved almost every issue, I think. There were three phone calls that applied to Mr. Pughe that we discussed yesterday.

The first phone call we've agreed on the segment the Government wants to play.

The second phone call the Government has withdrawn their inclination to play it.

The third one is the only one which there remains a dispute. I've given you a copy of our section we think should be played. There's a small --

THE COURT: This is 1/28/2009?

MR. STERN: Yes. It's a 1753 call.

THE COURT: Okay.

MR. STERN: The Government has a different one that I think -- they think should be played. We partly agree and partly disagree, I think is the upshot, because I believe the part begins, "I don't understand that I went to Tennessee 'cause you were stressing me, 'cause in Tennessee they try to make it seem like I brought drugs down there."

Explains and the thing about "I got locked up and it wasn't even my fault." That completes that narrative. The Government wants to begin -- I don't want to misstate.

MR. AMATRUDA: We wanted to start where Mr. Stern starts his second segment. He ends at 5 minutes 30 seconds and restarts at 7 minutes and 6 seconds is the call. The portion I had was the entire paragraph of what starts with 706 in Mr. Stern's transcript. I understand his objection to the "Bonnie and Clyde" reference. That's how he refers to himself and his girlfriend and I agreed that we could skip -- I would skip over that portion, the "Bonnie and Clyde" reference, to try and help us come to a compromise here.

THE COURT: I don't know -- I'm sorry but I don't

understand what the dispute is. Do you have a copy of what you think should be played? And where is it?

MR. AMATRUDA: I do, Judge.

MR. STERN: The dispute is he didn't want the first two sentences. I begin at "I don't understand." He wants that and the following, "I said that's bullshit," not to be included; and he wants to begin at "I thought we had more than that."

MR. AMATRUDA: Here's my copy.

MR. STERN: I think his explanation of how he left because he was stressed out by Belinda completes the thought of "I thought we had more than that." Otherwise, it could be more than what? Money? Drugs? Plans together? And what he really is referring to is the problem he's having with Belinda because he left New York 'cause she's stressing him out, he says.

THE COURT: Why does no one want to play this call?

MR. AMATRUDA: What's that?

THE COURT: Why does the Government want to play this call?

MR. AMATRUDA: Judge, we want to play the call because --

THE COURT: What part of the call is important to you?

MR. AMATRUDA: That's what I was about to explain. Mr. Pughe says that he told Belinda that Mr. Taylor's girl was going to take the charges for this. "I told her his broad was

 going to take it." That's the significance of the call.

MR. STERN: And I think it's unfair and takes out of context his claim made in the same conversation that he's not guilty. Someone could take charges because they're guilty and take the blame for what they did. The implication shouldn't be he must be guilty because someone else is taking the charges.

MR. AMATRUDA: Your Honor, I think the other thing we could do just to --

THE COURT: I mean, he says in here, "I got locked up, and it wasn't even my fault."

MR. AMATRUDA: I know. But, Judge, we're not proposing to play that. That's what the fight is over.

THE COURT: See, I'm having a hard time figuring what the fight is over.

MR. AMATRUDA: Yeah. Judge, Mr. Stern's -- if you look at Mr. Stern's transcripts, it starts at 5 minutes and 5 seconds, correct? And then it ends at 5 minutes and 30 seconds into the call. Then it stops and starts again at 7 minutes and 6 seconds. I don't think we have much dispute about the second part of his transcript or our transcripts is basically the same.

What we're arguing over is how much of Mr. Pughe's self-serving statements come in. Now, Mr. Stern has added a segment that reaches back into the conversation, then has a break, and then we just -- we don't think it should come in.

And I think he thinks it -- obviously, he thinks it does.

MR. STERN: The Government mischaracterizes them as self-serving. This is a conversation he had no reason to think anyone would hear.

THE COURT: This is from jail, isn't it?

MR. STERN: Yeah, but he doesn't know the Government's going to get all of his jail phone calls.

THE COURT: They have a big sign that says it.

MR. AMATRUDA: Sure he does.

MR. STERN: No. The Government doesn't in every case listen to every defendant's phone calls.

MR. AMATRUDA: What Mr. Stern is saying is that his client isn't aware of that. And I can play several calls for your Honor where when somebody, especially Ms. Jones, says something incriminating --

THE COURT: Yeah, I have to tell you I think that the -- the statement is equivocal that "the broad was going to take this." So, if he in that same conversation is saying that he didn't have anything to do with this, I don't know how you exclude that. I mean, I think if you want to play this conversation, you have to -- would have to play the part that Mr. Stern wants played, as well, or he could play it, if he wanted to, on cross, you know. Either way, it gets played.

I mean, then the Government's going to put in "I got locked up, and it wasn't even my fault."

MR. STERN: The other part of this, Judge, is that if the Government --

THE COURT: You know, it's not my business. I don't know the point of playing this conversation.

MR. AMATRUDA: Okay, Judge.

THE COURT: I mean, it's up to you; but if you want to play it, I think this context, Mr. Stern, that statement, certainly the Government can make the argument the Government wants to make about it. He can make another argument about it, if that's what he's saying in the context of the entire call.

MR. STERN: The other thing about this conversation is that he says, "I was only in Tennessee two months." And I think the Government and I agree that that's 'cause he was in jail in Tennessee. I don't want it to appear to a jury that he was in Tennessee, running the streets, selling drugs. So, there would have to be a stipulation or else I'd have to figure out how to prove, I guess, if the Government insisted on that, he was, in fact, in jail. The two months that he's referring to is time he was in jail on this case, because I don't want them to think he was down there for two months. He was down there, strictly speaking, but down there in jail. He was on the --

THE COURT: On this case.

MR. STERN: He was down there on the streets for 20 minutes.

THE COURT: You could work out something like that.

I think it should be played with counsel's portion, or I'll let counsel play it. I mean, the Government doesn't have to play it, I presume, 'cause they're not contiguous; but I think you could play the part if you wanted to.

MR. AMATRUDA: Well, Judge, if we decide not to use it, he can't play it.

THE COURT: No, no, he can't play it if you're not using it.

MR. STERN: Right. I understand that.

MR. KAMDANG: Your Honor, I have a couple of issues.

THE COURT: Do you know what you want to do, Mr. Amatruda?

MR. AMATRUDA: I'm not going to play it.

MR. STERN: Judge, the problem that creates is that the first call the Government intends to play has this single line, "I go out to Tennessee for us, you know what I'm saying, trying to make it better for us." That has no context for the jury to understand that he's referring to his girlfriend in Tennessee -- I mean, in New York, and not, for example Mr. Taylor or some other drug dealer.

THE COURT: Is there some other part of that call you want to play?

MR. STERN: That I want to play?

THE COURT: Yeah.

MR. STERN: No, 'cause I think it's in context --

THE COURT: I think it's an argument. You can argue to the jury it's not relevant. If you want to play some other --

MR. AMATRUDA: We'll stipulate he was talking to Ms. Jones. Isn't that what you want, the context?

MR. STERN: Yes. Yes.

MR. AMATRUDA: And that he's talking about Ms. Jones, their relationship.

MR. STERN: Yes.

MR. AMATRUDA: Is that okay?

MR. STERN: If you'll stipulate to that, that's fine.

MR. AMATRUDA: That's fine.

MR. STERN: Thank you.

MR. AMATRUDA: That's not a problem.

MR. STERN: That's a good solution.

THE COURT: Those are your -- otherwise, you've worked it out.

MR. STERN: We have, yes.

THE COURT: Okay.

MR. KAMDANG: Your Honor, with respect to the 404(b) '95 convictions coming in, first of all, in looking at the parts of the transcript that the Government wants to bring in to prove this up, I don't, as I sit here, I don't see how this goes to the issue of knowledge in the glove compartment. So,

we would renew our objection.

THE COURT: Just generally you don't see how it goes to knowledge? Why isn't it relevant to knowledge?

MR. KAMDANG: I think Mr. Amatruda was talking about how this goes to -- what it more goes to is the fact it had a New York connection. We're not asking for any instruction. That's not something we're arguing.

THE COURT: Doesn't he admit to selling crack cocaine? I haven't seen this before but doesn't he admit to --

MR. KAMDANG: He does.

THE COURT: That, it seems like to me it's a similar act. He's selling crack cocaine in Tennessee. Why isn't that relevant to the issue of whether he -- 'cause as I understand the defense -- and tell me if I'm wrong -- it's not mistaken identity. It's that he did not know that those drugs were in that car. So, knowledge seems to be an essential issue in this case, correct?

MR. KAMDANG: Well, our defense is -- and I'm not taking a position about whether or not he knew that Jessie Wright had the drugs. Our position is that Jessie Wright had the drugs 'cause they weren't in the glove compartment. I understand your Honor's ruling that knowledge is an issue.

THE COURT: Well, isn't it --

MR. KAMDANG: That's fine. I just wanted to put that on the record.

THE COURT: You're not willing to stipulate knowledge out of the case in some theory, are you?

MR. KAMDANG: No, absolutely not.

THE COURT: If you are, maybe we could fashion a way you could do it.

MR. KAMDANG: Right. The more substantial objection I have is that there are two -- there are two very brief passages that the Government wants to bring that I don't think go to knowledge. The first is on page 34. And the question is, "And you had -- and you have how many children?"

"Answer: Three.

"What's their last name?

"Demetrius Taylor, Diamond Fox, and Dewayne Mannigo."

MR. AMATRUDA: I explained to Mr. Kamdang if he objected to that, we wouldn't use it.

MR. KAMDANG: Okay. So, we're good.

The second part is a question: "What's a large quantity to you?"

"A large quantity to me is an ounce."

I don't think that goes to any of the issues in this case. I don't think that has to come in.

THE COURT: All right. I'll exclude that portion.

MR. AMATRUDA: I do think that goes with the issue -- to the issue of intent to distribute.

THE COURT: Oh, okay. All right. On that theory,

'cause the knowledge and intent are issues, I'll allow that to stand.

MR. KAMDANG: That's fine.

THE COURT: Is there any other challenge to the --

MR. KAMDANG: No.

THE COURT: -- other than the basic challenge.

MR. KAMDANG: And I assume -- and my fault for not submitting this, but I assume your Honor has an instruction that you'll give when this comes in?

THE COURT: Well, what I intend -- I have an instruction in my charge that I added.

MR. KAMDANG: Okay.

THE COURT: And then I'm just going to sort of paraphrase that instruction to say that, "The defendants are not on trial for committing acts not alleged in the indictment. You may not consider this evidence that you've just heard as substitute for the proof that the defendant committed the crime charged. You may not consider it as proof that he -- the defendant has a criminal personality or bad character. You may consider this evidence on the issue of whether or not the defendant possessed a knowledge and intent to commit the crime charged in the indictment. It's -- the evidence is -- was admitted for this limited purpose and you may consider it only for this limited purpose."

MR. KAMDANG: That's fine.

THE COURT: I also could say you may not consider it for any purpose against the defendant, Darien Pughe.

MR. KAMDANG: I have no objection to that.

And the last issue, given how the direct went, I do -- but I just wanted to highlight. I am going to bring out that in 2006 when Mr. Amatruda talked about Mr. Taylor going away for 18 months, I am going to bring out he was in jail during that period during cross-examination.

THE COURT: You want to do that?

MR. KAMDANG: I want to do that.

THE COURT: You're making a strategical decision to elicit that testimony, I take it?

MR. KAMDANG: Correct, your Honor.

THE COURT: And you've discussed this with Mr. Taylor?

MR. KAMDANG: Yes.

THE COURT: Okay. I'm not sure that this was formally addressed, but I think one in terms of the similar act evidence that the Government purports to offer today, we've discussed this briefly in the past, but I'm not sure that it was formally addressed.

Under the decision in Huddleston v. United States, at 108 Supreme Court 1496, there's, in essence, a four-part test when you're considering whether to admit a similar act.

First of all, whether it's advanced for a proper purpose. Here, I believe that the evidence of the defendant's

prior dealing in crack is offered for two relevant purposes -- elements that the Government has to prove by proof beyond a reasonable doubt, which is knowledge and intent in this alleged conspiracy.

The second is whether it's relevant to the crime charged -- to the crime for which the defendant is on trial. Could the jury find -- reasonably find by a preponderance of the evidence that the act occurred and that the defendant did it? Well, here the -- it's particularly strong on that point because these are the defendant's own admissions under oath at a trial. And they are -- it's similar transactions and the same drug and in the same area.

Then the question becomes whether it's more probative than prejudicial. Obviously, relevant evidence can be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Here, I think it's highly probative on the issue of knowledge and intent; and I don't believe it can be said to be substantially outweighed by the danger of unfair prejudice.

It's no more sensational than the evidence that the jury has heard about the crime charged. Admittedly, it took place a long time ago; but much of the time was spent in prison. So, there's no argument, for instance, that it's unfair to put in this old act because he's otherwise been leading a law-abiding life. Indeed, I believe that there is

some evidence that he resumed crack dealing shortly after his release from prison.

And I will admit it with the limiting instruction.

Having made those observations, though, I want to caution the Government in their arguments that this evidence can only be argued on the question of knowledge and intent and not that he is some long-term drug dealer.

With respect to her testimony about the 2006 transactions when she was with Mr. Taylor, the Court similarly conducted a similar analysis for that testimony. I thought it was based -- advanced for a proper purpose, which was the witness' relationship with this defendant, as well as background to the ultimate conspiracy that was charged. Again, I thought that it was more probative than prejudicial.

I don't know whether you want any instruction to the jury, Mr. Kamdang, with respect to that testimony or just simply let it stand. That, again, is a strategical decision.

MR. KAMDANG: Your Honor, I'm happy to argue it myself.

THE COURT: So, you don't want me to say anything now to the jury?

MR. KAMDANG: Right.

THE COURT: Okay. I've given you copies of the draft instructions. I added the instruction that you requested, Mr. Kamdang, about a witness using drugs. I don't know that

there's been any testimony about her currently using drugs which was in. So, I eliminated that portion. If cross-examination reflects that she's currently using drugs, I'll add that back in.

MR. KAMDANG: Okay. I don't know that that would be -- to suspect that.

THE COURT: But that charge you gave said if they used in the past or currently using. I eliminated the "currently using"; but if something comes out that we should put that back in, we could put that back in.

MR. KAMDANG: There was one question we had about whether or not she made statements for the domestic violence arrest. I think the Government was going to --

MR. AMATRUDA: I did, Judge. What I asked the witness was -- I mean, I can go into more what our understanding is of what happened. But the bottom line is I asked the witness whether she said anything untruthful to the officers who arrested her or in the investigation, and she said no.

My understanding is that what happened, just to give that statement context, is that she had this fight. She left her home. Her -- she was somewhere else, maybe at her mother's house, and her father called her and said the police are here. You have to deal with this. Her father went and got her. She then turned herself in to the police. She pled quickly after she was charged and got the sentence that we've disclosed.

So, that's the information we have on it; and she did not say that she misled the officers about what happened.

THE COURT: All right.

MR. KAMDANG: That's fine.

THE COURT: Do you have further testimony, questions of the witness?

MR. AMATRUDA: I have a few things, Judge. I don't think it's going be long. I'm going to go ahead and play the recording that we talked about yesterday, since I think we've dealt with the open issues.

THE COURT: Do you have a stipulation that you've reached?

MR. AMATRUDA: We do, Judge. I was planning to just read all the stipulations at the end but we don't -- we can do it that way, as well.

THE COURT: However you want to do it, as long as everyone is on the same page.

All right. You want to bring the witness in then?

MR. AMATRUDA: I guess the only other issue is logistically if we want to provide the jury with a transcript of what they're listening to, we have binders for them. Agent McNally's removing the call we're no longer using for Mr. Pughe so they won't see it. I just propose that we -- that we hand out the binders, I guess.

THE COURT: Are we all set on how to play the calls?

MR. AMATRUDA: I believe so. Our IT person was here. He tested it. He said that it --

THE COURT: Anything we have to hit up here to do it?

COURTROOM DEPUTY: It's been done already, Judge.

THE COURT: Okay. All right. You want to bring the jury -- you want to have the witness resume the stand first?

(Ms. Hyatt enters the courtroom and resumes the witness stand.)

(Brief pause.)

(The jury enters the courtroom.)

THE COURT: Good morning, ladies and gentlemen.

Please be seated. We're ready to resume.

Mr. Amatruda.

MR. AMATRUDA: Your Honor, may the witness have a seat?

THE COURT: Oh, I'm sorry. Remember, Ms. Hyatt, that you're under oath from yesterday.

THE WITNESS: Yes.

LINSEY HYATT, having been previously duly sworn, was examined and testified as follows:

DIRECT EXAMINATION (Continued)

BY MR. AMATRUDA:

Q. Morning, Ms. Hyatt.

I just want to go over a couple of short things before your testimony concludes.

First of all, when -- at some point towards the end of 2006, were you arrested?

A. Yes.

Q. And what were you arrested for?

A. Paraphernalia.

Q. And this was during this period after Mr. Taylor was away?

A. Yes.

Q. Okay. And you were -- you said you were -- your crack use was rather heavy then?

A. Yes.

Q. And what happened that you got arrested?

A. I was in a vehicle with this guy that had paraphernalia and drugs on him; and when we got pulled over, they searched the vehicle and found it in his floorboard. So, we all got arrested.

Q. And what happened to that case?

A. It got dropped.

Q. Just so the record's clear, how many times did you estimate you went to New York with Mr. Taylor in 2006?

A. It was two or three times.

Q. All right. And did you go again in 2008?

A. No.

Q. When you were selling drugs in 2006, how much -- what was the amounts you were dealing with?

A. The amounts? With Mr. Taylor?

Q. No. No. How much -- like, when after Mr. Taylor was away, you were selling drugs, right?
A. Yes.
Q. What were the weights that you were dealing with when you sold?
A. Usually a gram, a gram at a time.
Q. And how did that work for you?
A. I would get the gram and split it up, split it up and sell it individual.
Q. Going back to the conversation, again, in 2008 around your birthday when you went to Mr. Taylor's trailer, you remember testifying about that yesterday?
A. Yes.
Q. All right. You testified about or you had some testimony about a conversation that you had with Vic; is that right?
A. Yes.
Q. And what -- what was -- do you know what the reason was that Vic was telling you this when you had that conversation?
A. No. He said that Nicole, when she was carrying the drugs, that if she was stupid enough to carry them, then he was going to let her, so he wouldn't get caught.
Q. And Nicole -- when you went in the trailer -- I withdraw that question.
At the time in 2008, in the fall of 2008, what was your phone number?

A. 366-0442.

Q. And is that Area Code 423?

A. Yes.

Q. Okay. When you were -- during the time period that you were -- you were using crack, how much crack were you using when Mr. Taylor was around?

A. Not very much. Usually when he was gone.

Q. And when you smoked crack, did -- what, if any, effect did it have on you remembering things that happened when you were high?

A. Sometimes, sometimes I would forget certain things but not usually.

Q. Just to be clear about the time frame, you testified about getting drugs out of the Expedition when it was in an impound lot; is that right?

A. Yes.

Q. And you also testified that Mr. Taylor asked you to give him or to get him some paperwork for the Expedition --

A. Yes.

Q. -- in 2008, correct? Those were two separate instances, right?

A. Yes.

Q. Yeah. So, the impound lot where you got the drugs was in 2006?

A. Yes.

Q. Okay. And the car, sending the paperwork up to New York, that was in 2008; is that right?

A. Yes.

Q. You mentioned someone named Stephanie.

A. Yes.

Q. Who's Stephanie?

A. He was staying with her this time, in 2008.

Q. And what did Stephanie do?

A. She smoked crack.

Q. And do you know what Mr. Taylor -- what arrangement they had for him to stay there?

MR. KAMDANG: Objection.

THE COURT: I'll sustain the objection without foundation.

BY MR. AMATRUDA:

Q. Okay. Did you talk to Mr. Taylor about him staying there?

A. Yes.

Q. And did he tell you anything about what reason Stephanie had for allowing him to stay there?

A. No.

Q. Who is Sue?

A. Sue is a customer of his that let him sell out of her house.

Q. Now, you testified that in the fall of 2008, Mr. Taylor, he was staying -- he was staying at times with Sue; is that right?

Or, I'm sorry. At times with Stephanie?

A. Stephanie, yeah.

Q. Did he always spend the night? And, again, based on your conversations with him or things that you saw, did he always spend the night at Stephanie's?

A. No.

Q. Where else did he tell you he spent the night?

A. He would sometimes fall asleep at Sue's or stay there all night.

Q. And what did he say to you about that?

A. If there was -- if Vic was there, they would stay in a room and sleep.

Q. Did you talk the to Mr. Taylor around your birthday in September of '08 and the time he got arrested? Did you -- did you talk to him about his going to New York at all?

A. Some.

Q. And how was it that you discussed -- how did that come up?

A. Mostly with the cars, switching the cars.

Q. And how would he -- how would you reach the understanding from him that he was going to New York?

A. When he would bring one to me, you know, he'd be, "I'll be gone for a couple of days." That's it. "I'll be back in a few days."

Q. And where did your understanding that he was going to New York come from?

A. I had been around him so long.
Q. How often -- how often would you estimate that you were talking to him during that time period?
A. Every few days.
Q. You mentioned switching the cars.
A. Yeah.
Q. How many rental cars were involved in that whole process?
MR. KAMDANG: Objection.
THE COURT: Again, do you want to establish a foundation?
MR. AMATRUDA: Okay.
BY MR. AMATRUDA:
Q. You mentioned that there was one rental -- you mentioned -- how many cars were involved in the car switching?
A. Three.
Q. And what cars were those?
A. The BMW and the two rental cars, the Xterras.
Q. Were -- and you said the two Xterras. Were they both Xterras?
A. They were both Xterras.
Q. And do you remember you testified about an incident he told you about with a hotel? Is that right?
A. Yes.
Q. Do you remember when that was in time relative to when the car switching was going on?

A. That was -- I don't remember.

Q. Just want to show you a couple of exhibits, and then I'm almost done. The first one I'd like to show you is marked Exhibit 205. It's in evidence. I'll just show you a photograph that I can mark as 205A, I guess, to keep track of it.

Let me show you that photograph. Do you recognize anyone in that picture?

A. Yes.

Q. Who do you recognize?

A. Sue.

Q. Okay. Let me see it. Take it back for a moment. Thanks.

THE COURT: That's in evidence?

MR. AMATRUDA: Yes, the whole pack of photographs is in evidence as Exhibit 205.

THE COURT: Are you sure the number's 205?

MR. AMATRUDA: Yes. This one went out of order.

THE COURT: Okay.

BY MR. AMATRUDA:

Q. And let me just ask you, which -- can you explain, since it may take a second if we put it on the screen, which person -- can you describe which person is "Two" in that picture?

A. It's -- he's the one bent down, the white sweater.

Q. Okay. And do you recognize anything else in that picture?

A. The car.
Q. Which car is that?
A. The BMW.
Q. Okay. And show you one other photograph which I'll mark as 205B. Do you recognize anyone in that picture?
A. Yes.
Q. Who do you recognize?
A. "Two."
Q. Okay. And what is he -- which -- as you're looking at the picture, which one is "Two"?
A. He's the furthest one on the right.
Q. Okay. Did you recognize anyone else in that photograph?
A. Yeah, the guy on the left.
Q. And where did you see the guy on the left before?
A. Stephanie's.
Q. Okay. And do you remember about where you saw him?
A. It was with the car thing.
Q. And then lastly I'll show you what's been marked but not admitted but the front page of Exhibit 20.
Just looking at the front page of Exhibit 20, do you recognize anything on that exhibit?
A. His phone number.
Q. Okay. Which number is that?
A. The (423) 366-4040.
Q. Okay.

THE COURT: Whose phone number?

THE WITNESS: "Two's" phone number.

BY MR. AMATRUDA:

Q. Ms. Hyatt, the last thing I wanted to do with you is you said Mr. Taylor had called you at some point from -- at some point after he was arrested?

A. Yes.

Q. Okay. And I'd like to just play for you a call.

MR. AMATRUDA: And, your Honor, we'll hand out some of the transcripts for the jury, if that's okay.

(Brief pause.)

MR. AMATRUDA: Your Honor, I'm going to go ahead and play the call without reference to a transcript. There's -- there would be -- there's one there that we did but it's not in the binder for the one we prepared this morning.

Well, we'll -- I'll just play the call and see if there's anything that Ms. Hyatt needs to explain in terms of whether she's able to hear it or not.

THE COURT: It's not in the transcript that the jurors have in their binders?

MR. AMATRUDA: No, Judge. I thought that it was.

THE COURT: Just close the books, ladies and gentlemen, now because we're not at any of those transcripts yet. That will come later.

MR. AMATRUDA: Okay.

(Brief pause.)

(Audio recording played in open court.)

BY MR. AMATRUDA:

Q. And, Ms. Hyatt, if I can ask you, do you recognize the voice on that call?

A. Yes.

Q. Who's that?

A. That's "Two."

(Audio recording played in open court.)

BY MR. AMATRUDA:

Q. Just a couple of questions.

At the beginning of the call where there's a reference to someone having money --

A. Yes.

Q. -- did you -- do you know who that was about?

A. Michelle.

MR. KAMDANG: Objection.

THE COURT: What is the basis for your believing that that was Michelle?

THE WITNESS: He had told me.

THE COURT: Previous to this conversation?

THE WITNESS: No, it was in that conversation.

MR. AMATRUDA: I'll move on, Judge.

BY MR. AMATRUDA:

Q. And later on in the call, obviously, you've testified

before that you did not have a particularly good relationship with Nicole.

A. Right.

Q. And was there anything specific that happened with Nicole that led you not to have a good relationship with her?

A. No, nothing specific.

Q. Okay. And -- did you also -- do you also know what it was that Mr. Taylor was referring to when he was talking about asking you to do something for Nicole?

A. Yeah, the money order.

Q. All right. What happened with the money order?

A. I met his brother. He had a two hundred-dollar money orders, and he wanted me to take it to the jail, one for "Two" and one for Nicole.

Q. And what'd you do?

A. And I had to work the next day. I didn't have time to take one down there. I didn't take Nicole's.

Q. Who actually ended up taking the money orders?

A. My mom.

Q. And who did she take them to?

A. To the jail, to "Two."

Q. And this was in November of 2008?

A. Yeah.

MR. AMATRUDA: Thank you.

THE COURT: Do you have anything further?

MR. AMATRUDA: No, Judge. Nothing further.

THE COURT: Okay. Mr. Stern?

CROSS-EXAMINATION

BY MR. STERN:

Q. Morning, ma'am.

A. Morning.

Q. Towards the end of your testimony you were shown some photographs, right?

A. Yes.

Q. And that wasn't the first time you'd seen those photographs, was it?

A. No.

Q. You were shown more than you were shown here in court when you were being prepared to testify outside of court, right?

A. Yes.

Q. And you looked at them carefully?

A Yes.

Q. And you told Government which people in those photographs you could identify based on your own experience, right?

A. Yes.

Q. You see the guy sitting over there in the red tie?

A. Yes.

Q. Did you see any of him in any of those pictures?

A. No.

Q. Now, you talked about a time in 2006 when you got stopped

in a car. You recall that?
A. Yes.
Q. And you said someone in that car had paraphernalia, right?
A. Yes.
Q. Was it your paraphernalia?
A. No.
Q. Did you know it was in the car?
A. No.
Q. And so you happened to be in a car where someone else had drug-related stuff, right?
A. Yes.
Q. And as a result of that, your case was dismissed, wasn't it?
A. Right.
Q. You hadn't done anything wrong, had you?
A. No.
Q. You knew that person was involved with drugs, didn't you?
A. Yes.
Q. You just didn't know at that moment that he or she -- was it a man or a woman?
A. Man.
Q. That he had drugs in the car, right?
A. Right.
Q. Or drug paraphernalia.
Now, you talked at some length about what you say is

your relationship with Mr. Taylor, right?
A. Yes.
Q. And you say, I think, that over the years you've known him, which was three or four years; is that fair to say?
A. Yes.
Q. That you met a whole lot of people you talked about, right?
A. Yes.
Q. You talked about a guy named Vic, right?
A. Yes.
Q. And two people whose home you say they used. It was a man and a woman. What were their names?
A. Mike and Angie.
Q. And a whole lot of other people, right?
A. Yes.
Q. All those times when you say you were hanging out with these people who were involved in drugs in the Kingsport area, did you ever see the guy in the red tie over there?
A. No.
Q. Now, at some point you made the decision that you were going to try and help the Government out in this case, right?
A. Yes.
Q. And you had your own reasons for doing that, didn't you?
A. Yes.
Q. And there came a time in a newspaper in Kingsport when pictures of the people arrested in connection with this case

were shown, right?
A. Yes.
Q. And you looked at those two pictures, didn't you?
A. Yes.
Q. And you said, "Well, that guy I recognize. That's the person I know as 'Two,'" right?
A. Yes.
Q. But when you saw the picture of Mr. Pughe, you said, "Who in the hell is that," right?
A. Yeah.
Q. "I don't even know that guy at all." Isn't that fair to say?
A. Yes.

MR. STERN: Thanks. I have nothing else.

CROSS-EXAMINATION

BY MR. KAMDANG:
Q. Good morning, Ms. Hyatt.
A. Good morning.
Q. How are you?
A. Great.
Q. Good.

Ms. Hyatt, when you were first approached by the Tennessee police officers, you spoke to Agent Steve Hammonds?
A. Yes.
Q. And you told him that you hadn't spoken to Mr. Taylor in

about a year?

A. Yes.

Q. Okay. You didn't want to get in trouble.

A. No.

Q. That wasn't true, right?

A. That wasn't true.

Q. It was a lie?

A. Yes.

Q. Okay. Back in 2006 you testified that you cooked crack before?

A. I have not.

Q. You've not cooked crack before?

A. (Shakes head negatively.)

Q. You told them you packaged crack in baggies?

A. Yes.

Q. Back in 2006?

A. Yes.

Q. And you said that in -- and you didn't tell Agent Hammonds the first time you spoke to him about packaging crack in baggies.

A. No, I didn't.

Q. Because you didn't want to get in trouble?

A. Right.

Q. In 2006 you testified that you sold crack to support yourself.

A. Yes.

Q. And when you say you were selling crack to support yourself, you meant that you were supporting your crack habit?

A. Yes.

Q. And that that was your primary source of income.

A. Yes.

Q. You were a crack dealer.

A. No.

Q. You sold crack as your primary source of income?

A. At one time.

Q. And at that time you were a crack dealer.

A. At that time, yes.

Q. That was my question. In 2006.

A. Yes.

Q. Okay. And you didn't tell that to Agent Hammonds when you first spoke to him.

A. No.

Q. You didn't tell him that on purpose.

A. Right.

Q. You didn't want to get in trouble.

A. Right.

Q. You didn't want to go to jail.

A. No.

Q. So, you lied.

A. Yes.

Q. So, you said what you thought you needed to say to stay out of jail.
A. Yes.
Q. Now, in 2006 you testified that in one incident you drove 30 to 40 minutes to an impound lot?
A. Yes.
Q. And the reason why you went to the impound lot was to get some money and somewhere between half a kilo to a full kilo of crack?
A. Not money.
Q. It was just crack?
A. Yeah.
Q. Okay. And when you got to -- it was the Government impound lot?
A. I'm not sure if it was Government.
Q. But it was an impound lot?
A. Yeah.
Q. Okay. When you got to the impound lot, you told them that you were there for your car?
A. Yeah.
Q. And then you went and you got up to a kilo of crack from the impound lot?
A. Yes.
Q. You definitely didn't tell the police about that the first time you spoke to them.

A. No, I didn't.
Q. You didn't tell them that on purpose.
A. Yes.
Q. You didn't want the police to know.
A. Yeah.
Q. So, you were lying in the hopes of staying out of jail.
A. Yeah.
Q. Okay. Now, yesterday you admitted to a number of crimes that we talked about.
A. Yes.
Q. Okay. You admitted that you smoked marijuana?
A. Yes.
Q. You admitted that you snorted cocaine?
A. Yes.
Q. And we've talked about how you used crack.
A. Yes.
Q. You were addicted to crack?
A. At one time, yeah.
Q. You started smoking crack when you were 19?
A. Yes.
Q. And that was when your daughter was three?
A. Yeah.
Q. But your daughter wasn't living with you, right?
A. No, she was not living with me.
Q. You were actually in danger of losing your daughter back

then?

A. Then I was, yeah.

Q. Okay. At one point you were using crack every day.

A. Yeah.

Q. And in addition to using crack, you admitted that you actually sold crack.

A. Yes.

Q. Now, from January to August, you said that you sold crack once in a while; is that --

A. Yeah.

Q. And in August of 2006, when Mr. Taylor stopped supporting you, that's when you started selling crack as your sole source of income?

A. Yes.

Q. And in addition to selling crack in 2006, you registered a car in your name in part so Mr. Taylor could make drug runs to New York in 2006?

A. Yes.

Q. And we discussed the incident at the impound lot.

A. Uh-huh.

Q. You testified in 2006 for Mr. Taylor you used to hold sums of money.

A. Yes.

Q. In 2006 you would hold thousands of dollars for Mr. Taylor.

A. Yes.

Q. Money that you believed were drug proceeds.
A. Yes.
Q. So, through your testimony you are putting yourself in the middle of some pretty serious crimes.
A. Yeah.
Q. You're not being prosecuted for any of this.
A. No.
Q. You're not being prosecuted -- and I think what you said yesterday was "for any drug charges, for anything that I did."
A. Right.
Q. You're not being charged with conspiracy to distribute cocaine.
A. No.
Q. You're not being charged with sales.
A. No.
Q. You're not being charged with possession.
A. No.
Q. You're not being charged with lying to a police officer.
A. No.
Q. You're not even being charged with falsely registering a vehicle.
A. No.
Q. And we talked a little bit about the consequences of what those charges were yesterday, right?
A. Yes.

Q. Well, not we, but you and --
A. Yeah.
Q. -- the Government. You said you were facing jail time?
A. Yes.
Q. But, in fact, you know that if you were convicted of the conspiracy that you're talking about, you could go to jail for life.
A. Yeah.
Q. And you know that if you were -- if you were convicted, at a minimum, no matter what, you'd be facing a mandatory ten-year prison sentence.
A. Uh-huh.
Q. Now, Ms. Hyatt, you testified that the reason why you're not being prosecuted is because an agreement that you made with the Government.
A. Right.
Q. You have a nonprosecution agreement with the Government?
A. Yes.
Q. And the agreement requires you to testify and cooperate.
A. Yes.
Q. Correct?
Now, when was the first time the authorities in Tennessee contacted you about the case?
A. I'm not sure of the date, but it was over some paperwork with the truck.

Q. I'm sorry. When -- do you know about when that was?
A. Uh --
Q. Sometime this year?
A. Yeah, it this was year.
Q. Sometime around April? Does that sound about right?
A. April, May.
Q. Okay. And certainly by that time you knew that Mr. Taylor had been arrested already.
A. Yeah.
Q. Now, the Government didn't just give you this nonprosecution agreement the first time you met with them, right?
A. No, they didn't.
Q. You met with the police in Tennessee on numerous occasions before coming here.
A. Yes.
Q. You discussed your case with them?
A. Yes.
Q. And you've been in New York several times before today?
A. Yes.
Q. I think you before today, is it right to say you've been here on four occasions?
A. Yes.
Q. Okay. Do you remember the dates of when you came to New York?

A. No. It was every day that I've been off for the last month.

Q. So, it's been this past month?

A. Yeah.

Q. Okay. So, you've been meeting with the, starting with the police in Tennessee in April of this year, and then the Government here in the past month?

A. Yeah.

Q. And during those meetings you met with the prosecutor?

A. Yes.

Q. And you discussed your testimony, which is Mr. Taylor.

A. Yes.

Q. And you practiced your testimony versus Mr. Taylor.

A. We went over questions, yeah.

Q. They went over -- the prosecutor explained to you the questions that you would be asked.

A. Yes.

Q. And the answers that you would give.

A. No.

Q. Now, you came here four times, right?

A. Yes.

Q. And it wasn't after the first meeting that the Government gave you that nonprosecution agreement, right?

A. No.

Q. It wasn't after the second time that the Government gave

you that nonprosecution agreement.

A. No.

Q. And in all of these meetings you're talking about in this case, right?

A. Yeah.

Q. You're talking about your recollection.

A. Yeah.

Q. Right?

It wasn't after the third meeting that they gave you -- it wasn't the third meeting that they gave you the cooperation agreement.

A. No.

Q. You didn't sign the cooperation agreement until June 16th?

A. Yeah.

Q. Five days ago?

A. Yeah.

Q. Okay. So, let's talk about the truth.

Your agreement, your nonprosecution agreement is with the Government.

A. Yes.

Q. Now, under the terms of your agreement, it's the Government that gets to determine whether or not you're telling the truth.

A. Yes.

Q. And if the Government doesn't determine that you're telling the truth, you could be prosecuted.

A. Excuse me?
Q. I'm sorry. If the Government determines that you're not telling the truth, if the Government makes that determination, you could be prosecuted.
A. Yes.
Q. If the Government determines that you're not telling the truth, you could be facing that life sentence.
A. Yeah.
Q. If the Government determines that you're not telling the truth, you'd be facing that mandatory ten-year minimum.
A. Yes.
Q. Correct?
A. Yes.
Q. Judge Amon sitting there doesn't get to decide whether or not you're telling the truth.
A. Right.
Q. I don't get to decide whether you're telling the truth, correct?
A. Right.
Q. Mr. Stern doesn't get to decide if you're telling the truth.
A. Mr. Who?
Q. Mr. Stern over there.
A. No.
Q. Well, whoever he is, he doesn't get to decide.

A. No.

Q. And the jury doesn't get to decide whether or not you're telling the truth.

THE COURT: You mean in terms of the agreement?

BY MR. KAMDANG:

Q. In terms of the agreement.

A. No.

Q. The sole person who gets to determine whether or not you're telling the truth is Mr. Amatruda for the Government.

A. Yeah.

MR. AMATRUDA: Objection.

THE COURT: Yeah, you mean regarding the agreement?

MR. KAMDANG: Yes.

THE COURT: I'll let --

BY MR. KAMDANG:

Q. I'm sorry. Let me make that very, very clear.

With respect to your nonprosecution agreement, the only party that gets to determine -- that gets to make the decision about whether or not you're telling the truth is the Government.

A. The Government.

Q. Okay. So, theoretically, you could come in here and tell what you think is the truth; but if the Government determines that you're lying, you could be prosecuted.

A. Yes.

Q. And on the flip side, you could come in and lie; but if the Government determines that you're telling the truth, you won't get prosecuted.

MR. AMATRUDA: Objection.

THE COURT: I'll allow it.

BY MR. KAMDANG:

Q. Is that right?

A. Can you repeat it?

Q. Okay. You could -- you -- it could also be the case that you could come in here and lie; but if the Government determines that you're telling the truth, then you won't get prosecuted.

A. I could.

Q. If the Government determines that you're telling the truth but you come in and lie but the Government says, okay, that's fine, you're telling the truth --

THE COURT: You mean the Government believes that she's telling the truth.

BY MR. KAMDANG:

Q. If the Government believes you're telling the truth, you're not going to be prosecuted.

A. Right.

Q. Okay. So, let's turn to your testimony.

In 2006 at some point you started dating Mr. Taylor?

A. Yes.

Q. You lived with Mr. Taylor?
A. Yes.
Q. And you lived with him for about eight months?
A. Yes.
Q. And since you all lived together, you grew pretty close?
A. Yeah.
Q. And you testified for a while yesterday. I just want to clarify some of the dates and the stuff we're talking about.
A. Okay.
Q. A lot of the things you testified happened in 2006.
A. Yeah.
Q. Right?

So, let's talk about that. You said that you met Mr. Taylor in a trailer park in 2006?
A. Yes.
Q. You met this guy Vic in 2006?
A. Yes.
Q. You let Vic borrow your car in 2006?
A. Yes.
Q. Now, this guy Vic traded you crack so that you -- so he could use your car, and that was in 2006?
A. And money.
Q. And money. And he totaled your car in 2006?
A. Yes.
Q. And you talked about a fight that you had with your father

when Mr. Taylor came to pick you up.
A. Yes.
Q. That was back in 2006?
A. Yes.
Q. And you testified that you went to New York with Mr. Taylor on two or three occasions this morning.
A. Yes.
Q. Right?
That was back in 2006.
A. Yes.
Q. And you didn't go to New York in 2008.
A. No.
Q. Okay. And you gave some details about your trips to New York. You went to Coney Island.
A. Yes.
Q. 2006. Ground Zero in 2006.
A. Yes.
Q. Times Square in 2006.
A. Yes.
Q. And you were able -- what placed you in that position to make all of these observations was that you were Mr. Taylor's girlfriend?
A. Yeah.
Q. And you were spending lots of time together.
A. Yeah.

Q. And then he went away in August of 2006?
A. Yeah.
Q. Okay. Now, let's just get it out there. Mr. Taylor went to jail --
A. Yeah.
Q. -- in 2006. And you said he went away for 18 months. He was in jail for 18 months.
A. Yeah.
Q. Right?
And after Mr. Taylor went to jail, you continued selling drugs.
A. Yeah.
Q. You sold more drugs actually after he went to jail.
A. Yes.
Q. And you actually used more drugs after he went to jail.
A. Yes.
Q. Okay. Now, you testified that when Mr. Taylor came back in 2008, that was in February?
A. Yeah.
Q. And y'all tried to get back together very briefly?
A. Somewhat, yeah.
Q. Lasted less than a month?
A. Yeah.
Q. Okay. And it's fair to say that since the two of you weren't dating anymore, you guys weren't as close as you were

back in 2006.

A. Yeah.

Q. In fact, when Mr. Taylor -- and we talked about two separate incidents with the Expedition. The first Expedition incident is when you go to get the kilo of crack from the impound lot. The second incident is in 2008 when he needs your help to get the car out of an impound lot in New York.

A. Yes.

Q. That was 2008.

A. Yes.

Q. And, in fact, you wanted him to register the car in his own name.

A. Right.

Q. You didn't want anything to do with it.

A. Right.

Q. You -- okay. Now, you also talked about a Mike and Angie?

A. Yeah.

Q. They were crack addicts?

A. Yeah.

Q. And they got evicted from their place in 2008?

A. Yeah.

Q. And that was because Mr. Taylor stopped supporting them.

A. No. He was -- he was giving them money.

Q. He stopped paying the rent?

A. No. He was paying them. They weren't paying it.

MR. KAMDANG: Court's brief indulgence.

(Brief pause.)

BY MR. KAMDANG:

Q. Okay. Now, Ms. Hyatt, do you know a woman named Jessie Nicole Wright?

A. Yes.

Q. Okay. Now, we've talked about somebody named Nicole; and we've also heard the name "Jessie Wright."

A. Yes.

Q. You understand -- you understand Jessie Wright and Nicole to be the same person?

A. Yes.

Q. Okay. And you know in this case that Mr. Taylor was stopped in a car with Nicole.

A. Yes.

Q. And you said yesterday that Dwayne told you in 2008 that he was trying to help Nicole.

A. Yes.

Q. He told you in 2008 that he wanted to get her straightened out.

A. Yes.

Q. And you said that Nicole was a heavy user.

A. Yes.

Q. You said she smoked a lot of crack?

A. Yes.

Q. Just did whatever she could use?
A. Yeah.
Q. Nicole had a crack problem?
A. She did.
Q. Okay. And you knew this 'cause I think you said that you partied with her?
A. Yeah.
Q. And partied meant that you'd smoked crack with her.
A. Yes, I have.
Q. Now, when you say that somebody has -- that somebody's a heavy user, what does that mean to you?
A. Just whatever they can, whatever they can use.
Q. They'll smoke whatever they can get.
A. Yeah.
Q. And they'll do whatever they can to get their drugs?
A. Yeah. Yeah.
Q. You don't like Nicole, right?
A. Right.
Q. And it made you unhappy to hear that Mr. Taylor was with Nicole, even when he got stopped.
A. Yeah.
Q. And I think we heard that you wanted to know if he was sleeping with Nicole.
A. Yeah.
Q. And I think you said -- and I might have made it out wrong,

but I think you said Nicole is dirty?
A. Yeah.
Q. What'd you mean by that?
A. She has a habit of sleeping with a lot of people. If they have anything to do with drugs, she'll sleep with them.
Q. Okay. In fact, you said you hated Nicole.
A. Yeah.
Q. Okay. Now, it was April of 2009 when Agent Hammonds first contacted you, right?
A. Yeah.
Q. And you had said that the reason why they contacted you was about some paperwork.
A. Yeah.
Q. You had had this Ford Explorer.
A. Expedition.
Q. Excuse me. This Ford Expedition and it was registered in your name?
A. Yes.
Q. And they had questions about it?
A. Yes.
Q. They told that you they suspected that the car was being used in some sort of drug conspiracy.
A. Yes.
Q. And they wanted to know about Dewayne Taylor.
A. Yeah.

Q. And they wanted to know about your involvement in drugs.
A. Right.
Q. Now, you knew that selling drugs was illegal.
A. Yeah.
Q. And you knew that at one time you were involved in selling drugs.
A. Yeah.
Q. So, you were scared when the police came and spoke to you in April for the first time.
A. Yeah.
Q. You were afraid of going jail.
A. Right.
Q. Now, we already talked about how you lied to them at first.
A. Yeah.
Q. Okay. But the police wouldn't go away, right?
A. No.
Q. Now, Agent Hammonds wasn't particularly mean to you --
A. No.
Q. -- in that interview, right? In fact, he told you in your meetings that nothing that you said was going to be used against you.
A. Right.
Q. They were interested in Dewayne Taylor.
A. Right.
Q. And you knew dirt about Dewayne Taylor.

A. Yeah.
Q. 'Cause you were his girlfriend in 2006.
A. Yeah.
Q. And you all lived together in 2006.
A. Yeah.
Q. And you saw all sorts of bad things before he went to jail in 2006.
A. Right.
Q. And you didn't want to get in trouble.
A. Right.
Q And you -- from your perspective you thought that the police knew that you were involved in drugs at some point.
A Yeah.
Q During that interview.
A Yeah.
Q But the police also wanted you to give them information about 2008, correct?
A Yes.
Q And you were only together with Mr. Taylor for that one month in 2008, right?
A Yeah.
Q Now, over the course of yesterday you testified on the stand that Mr. Taylor was also involved in drug dealing in 2008, right?
A Yes.

Q And you talked about a whole bunch of incidents where you said you saw him either selling drugs or talking on the phone at times.
A Yes.
Q But there's no real way for us to be -- for one to know if you're being truthful about those statements because there's no -- there's no paper trail, for example.
A Right.
Q There were no articles.
A Right.
Q There were no pictures.
A Right.
Q Okay. But you did talk about two incidents within the period of September of 2008 and November of 2008, and I'd like to talk about those.

The first was an incident that you talked about at a trailer.
A Uh-huh.
Q And you had said that there was a trailer and that people would congregate at this trailer to -- and you said that they were excited, right?
A Yeah.
Q And you said that they had just -- that they had evaded capture by the police?
A Yeah.

Q And you said that Dewayne Taylor had bought that trailer in 2008.
A That's what he said.
Q Okay. That is something that we could check.
A Yeah.
Q Because when you buy property, you've got to theoretically get a title, right?
A Yeah.
Q There's some sort of record of that.
A Right.
Q Right? The problem is it's not true that Dewayne Taylor bought a trailer in 2008.
A He did buy -- he did buy the trailer. They had talked about the title. Him and Vic had talked about the title and said that they had problems getting the title.
Q You never saw this title?
A No.
Q It doesn't exist, does it?
A I don't know.
Q Fair enough.
Okay. You also talked about a second incident where Mike and Angie got arrested in a hotel raid.
A. Right.
Q. And you had spoken to the prosecutor about that before.
A. Right.

Q. Right. Before coming here. And what you had said was that Mike and Angie got arrested for drug paraphernalia, right?

A. Yeah.

Q. And that Dewayne Taylor went and bailed them out, right?

A. Yeah.

Q. Correct?

A. His -- I don't know that he actually bailed them out.

Q. What you told the Government was that, that he bailed them out.

A. Yeah.

Q. That is definitely something we could check out.

A. Yeah.

Q. Right?

'Cause you -- I mean, you know that when somebody gets bailed out, there's some sort of paperwork for that.

A. Right.

Q. But that's not true either, right?

A. He used his money. He did. He paid somebody to go bail them out.

Q. You know that's not true, right?

A. He did not physically himself go bail them out.

Q. Okay. The Government didn't ask you about bail in this case, right?

A. Excuse me?

Q. The Government didn't ask you about bail, bailing Mike and

Angie out in that incident.

A. They did.

Q. In the course of this trial.

A. No.

MR. KAMDANG: Okay. I have nothing further.

MR. AMATRUDA: I just have a couple.

MR. KAMDANG: Although I would ask the Government to stipulate at this point that --

THE COURT: Don't ask for any stipulations in front of the jury. If you want to come over here and we'll discuss it, we can.

MR. KAMDANG: That's fine.

(Discussion at sidebar; continued on the following page.)

MR. KAMDANG: I'd ask the Government to stipulate at this point that at the Government's request Special Agent McQueen looked into the issue of whether or not Mr. Taylor bailed out Mike and Angie in response to this hotel incident and determined that that was not true.

MR. AMATRUDA: Yeah. There's -- I think there's -- I think there's a couple of things to this. One is that there was no record of Mr. Taylor bailing these people out.

MR. KAMDANG: That's fine.

MR. AMATRUDA: There's an additional issue that I'm not as clear on because of my conversations with Mr. McQueen, but I know he said that a couple of the people there did not get bailed out at all. They were just there until their, you know, their minor term or what was over, a few days, and I think that -- but I don't know about the other people. The only thing I do know is that Mr. Taylor had bailed them out.

So, I would, you know, certainly stipulate that, you know, Mr. Taylor did not bail out these people who were arrested. That's fine, at least under his name.

THE COURT: Well, I think you need to say that he didn't -- I think the stipulation ought to be accurate.

To say that he didn't bail them out, if it's her position that he supplied the money to somebody else, it seems to me to be not exactly accurate. I think what you need to stipulate to is there's no record that he signed any bail

papers or signed anything. You need to stipulate to exactly what the case is.

MR. AMATRUDA: I think you're right, Judge. That's what I had talked about with Mr. Kamdang, that there's no record of him bailing them out; but I like the way you phrased it. I just wonder whether it makes sense to do this now.

MR. KAMDANG: That's fine.

MR. AMATRUDA: Can we do it -- we're going to read a bunch of stipulations.

THE COURT: Think about what your evidence showed and say that. I think that's --

MR. KAMDANG: Okay.

THE COURT: What you need to stipulate to, not something that may not be the case.

MR. AMATRUDA: I agree, Judge.

THE COURT: You know.

MR. KAMDANG: That's all I have, your Honor. Thanks.

(Discussion at sidebar concludes; in open court.)

REDIRECT EXAMINATION

BY MR. AMATRUDA:

Q. Ms. Hyatt, let me just follow up. Through your meetings with the Government, and by that I mean Agent Hammonds and myself and Mr. McNally as a whole, did anybody ever tell you how much jail time, how many years you would face?

A. Not exactly.

Q. Okay. And can you just explain to the jury what, to the best of your recollection, what happened?

A. I believe it was --

MR. KAMDANG: Objection, your Honor. Can we approach?

THE COURT: Exactly what happened with who?

BY MR. AMATRUDA:

Q. I'm sorry. I guess I would -- what exactly is your understanding about what type of sentence you would face?

A. The original one was the conspiracy. It was, I believe, ten years.

Q. And when you first met with Agent Hammonds, what was your understanding of whether or not you were in trouble when you met with him the first time?

A. The first time I didn't really want to have anything to do with it. The first time was just about the Expedition.

Q. And when you came -- before you signed the nonprosecution agreement with the Government, did you have an understanding of what was going to happen to you as far as what you did?

A. Yes.

Q. What was that?

A. That I was going to either spend some jail time or probation over the conspiracy.

Q. Were you prepared to do anything with respect to what it is you did before, what it is you did with reference to drugs?

A. Yeah.

Q. What were you prepared to do?

A. Anything I had to, you know.

Q. I'm talking about specifically with reference to the court. What were you ready to do?

A. To testify.

Q. How about before the nonprosecution agreement? What was your understanding about what was going to happen to you?

A. That I wouldn't -- wouldn't be able to testify due to me being charged myself.

Q. And eventually you were charged, right?

A. Right.

Q. And what was your understanding about why you ultimately were not charged?

A. Because of the agreement me and Mr. Hammond had when he come to speak to me.

Q. And when you met -- when you met with the Government up here, did you have an understanding of how that agreement was going to go into place with our meetings?

A. Not at first.
Q. And you told us a lot of the things that you did, right?
A. Right.
Q. Did -- do you remember whether or not or do you know -- let me ask you this.
Do you know whether under your agreement it makes a difference whether what the outcome of this trial is?
A. It doesn't.
Q. Okay. And so if Mr. Taylor is ultimately found not guilty, does that -- what impact does that have on your agreement?
A. None.
Q. And what is it that -- what is it that has an impact on your agreement?
A. Is if I lie, if I do not cooperate.
Q. You said that -- Mr. Kamdang is asking you some questions about Nicole and that you weren't happy or you were asking about whether Mr. Taylor was together with Nicole.
A. Right.
Q. Did you have conversations with him about that in 2008?
A. Yes.
Q. And can you tell the jury what those conversations were about?
A. The conversations about Nicole were he wanted -- he wanted to take care of her. She was on drugs. She was out there, not taking care of her kids; and he wanted to help her out, kind of

like what he did with me. And, you know, I had explained to him that I thought it wasn't worth it.

Q. As far as the trailer goes, did you do any research yourself as to what he told you about the trailer?

A. No.

Q. So, you're just testifying about what he told you.

A. Yeah.

Q. Is that right?

A. Yeah.

Q. And do you know who he bought -- who he -- who did he say he bought the trailer from?

A. He didn't really say. He didn't say who he bought it from.

Q. Was it in the same or a different park as the one where you met Mr. Taylor?

A. Different.

Q. You said that he, at one point, Mr. Taylor was driving a car he bought from your father?

A. Right.

Q. Is that right?

And do you know where that car is now?

A. The last I heard it was in an impound lot here in Brooklyn; and somebody had bought it, I guess, from there.

Q. Do you know whose name was on the car title?

A. My dad's.

Q. Was that ever changed to Mr. Taylor's?

A. It was never. It was never changed.

Q. Had you -- when Mr. Taylor came out of jail in 2008, how often did you actually -- how often did you actually see him at the beginning?

A. At least every other day.

Q. And then if you turned to the period around your birthday and until he got arrested, how often would you see him?

A. Maybe once a week, if that.

Q. When you -- during the initial meetings until you signed your agreement with the Government, did you have an understanding as to who was going to determine -- who was going to determine their view whether or not you were telling the truth?

A. Yeah.

Q. Who was that?

A. The judge.

Q. And there were a number of instances that you testified to with Mr. Kamdang where you intentionally did not share some information about things you did.

A. Right.

Q. Is that right?

A. Right.

Q. You testified for Mr. Kamdang that you didn't tell Agent Hammonds about your packaging the drugs.

A. Right.

Q. Right?

And I think you answered -- well, what was the reason for that, that you didn't tell him about that?

A. It wasn't very often I did that. I just didn't remember.

Q. So, was that something you intentionally hid from him?

A. No.

Q. And, lastly, I'm going to show you what's been marked -- what's been marked as Government Exhibit 35, which is -- if I can show you Exhibit 35. Do you recognize what that is?

A. That's the nonpros agreement.

Q. And did you sign it on the last page?

A. Yes.

Q. And that agreement relates to you, correct?

A. Right.

Q. That's your agreement with the Government?

A. Yeah.

Q. Is that right? Okay.

MR. AMATRUDA: I would offer Exhibit 35 into evidence.

MR. STERN: I have no objection.

MR. KAMDANG: No objection.

THE COURT: 35's received.

(Government's Exhibit 35 received in evidence.)

MR. AMATRUDA: Nothing further, your Honor. Thank you.

THE COURT: You have anything further, Mr. Kamdang?

MR. KAMDANG: Just a couple of things.

RECROSS-EXAMINATION

BY MR. KAMDANG:

Q. Ms. Hyatt, I just wanted to clarify a couple of things.

So, you said at some point when you were speaking with the Government, it was your understanding that you were going to be charged.

A. Right.

Q. Then you said that your understanding is the reason why you weren't charged with anything was because of an agreement, a promise that Agent Hammonds had made to you?

A. Yeah.

Q. When did Agent Hammonds make that promise you to?

A. Before I had told him anything, before he recorded me.

Q. Okay. And that was before you met the Government.

A. Right.

Q. And Agent Hammonds promised you you weren't going to be prosecuted?

A. Right.

Q. So, the whole time you were speaking to the Government, you knew that Agent Hammonds had made that promise to you.

A. Right.

Q. Okay. Now, the other thing is that you -- you had said on redirect that when we talked about packaging of crack --

A. Right.

Q. -- that that was an accidental admission?

A. Right.

Q. Okay. When you lied about not seeing Mr. Taylor in New York -- not seeing Mr. Taylor in a year, that wasn't an accident?

A. That wasn't an accident.

Q. Okay. And when you didn't tell them about selling crack the first time you spoke to them, that wasn't an accidental admission.

A. Right.

Q. And when you didn't tell them about going to the impound lot and stealing a kilogram of crack, that wasn't an accidental admission.

A. Right.

Q. All of that was on purpose.

A. Yes.

MR. KAMDANG: Okay.

THE COURT: All right. I take it there's nothing further?

MR. AMATRUDA: No.

Thank you, Judge.

THE COURT: Thank you, Ms. Hyatt. You can step down.

MR. AMATRUDA: Waiting for me? I'm sorry.

THE COURT: Yes.

MR. AMATRUDA: Your Honor, the Government calls Officer Matthew Pendleton.

(Officer Pendleton enters the courtroom.)

THE COURT: Raise your right hand.

OFFICER MATTHEW PENDLETON, after having been duly sworn, was examined and testified as follows:

THE COURT: Please be seated. State and spell your name for the record.

THE WITNESS: Matthew Aaron Pendleton, M-A-T-T-H-E-W, A-A-R-O-N, P-E-N-D-L-E-T-O-N.

DIRECT EXAMINATION

BY MR. AMATRUDA:

Q. Where do you work, sir?

A. Kingsport Police Department.

Q. What's your job there?

A. I'm a police officer.

Q. How long have you worked there?

A. About a year and three months.

Q. What capacity -- what's your -- as a police officer, what do you do up there?

A. Patrol the city.

Q. Are you assigned to any particular region of the city --

A. I'm assigned --

Q. -- or do you patrol the whole city?

A. We usually patrol the whole city, but we're broken up into

zones.

Q. Sir, if you can just make sure and talk close to the microphone so the jury can hear you.

A. Sorry.

Q. What did you do before you were a police officer?

A. Before that I served in the United States Marine Corps for four years.

Q. And on the night of October 19th and 20th of 2008, were you working?

A. Yes, sir.

Q. And where were you assigned in Kingsport that night?

A. I was assigned to the Fourth Zone in Kingsport, which is the East Stone Drive area.

Q. And what is that? Where's that relative to downtown Kingsport?

A. It's roughly three miles northeast of downtown Kingsport.

Q. Did you -- without going into what was said, did you receive a radio call that night?

A. Yes, sir.

Q. After you got the call, where did you go?

A. I responded to Stratford Inn in reference to a disturbance call, possible man with a knife.

Q. And did you eventually end up at a different hotel?

A. Yes, sir. I ended up at America's Best Inn.

Q. And was that after speaking with some people at the first

inn, the Stratford Inn?
A. Yes, sir.
Q. What happened when you went to America's Best? Is that what it is?
A. Yeah.
Q. What happened when you went there?
A. Responded to America's Best Inn after speaking with people at Stratford Inn who stated there were possible drugs being sold out of Room 127 at that location. We went to Room 127, myself and another officer. Done the knock and talk on the door and spoke with --
Q. What's a "knock and talk"?
A. It's basically where you show up to the door, to a residence, location, wherever you need to be, and speak with the owners, residence of that individual, determine if there's any grounds to proceed with an investigation.
Q. When you spoke -- did someone come to the door?
A. Yes, sir.
Q. And was that a male or female?
A. It was a male, sir.
Q. Did you later learn his name?
A. Yes, sir. His name was Michael Darnell.
Q. And did you eventually go inside this room?
A. Yes, sir. After speaking with Mr. Darnell, we asked for consent to search the room for possible drugs, at which time he

stated that we could. He was the lessee on the room.
Q. So, did you go inside the hotel room at that point?
A. Yes, sir.
Q. Who was in there?
A. It was Mr. Darnell, a lady identified as Angie Herringa and two others, one identified as Chandra Fetherman and Terra Fetherman.
Q. What, if anything, did you find inside the hotel room?
A. We found numerous drug paraphernalia, crack cocaine, and digital scales.
Q. How much crack cocaine?
A. Over half an ounce.
Q. I'd like to show you what's been marked as Government Exhibits 42 through 48.
Do you recognize those?
A. Yes, sir, I do.
Q. What are they?
A. This was a little small baggie containing a glass pipe --
Q. I'm referring generally. Those are photographs, correct?
A. Correct, sir.
Q. And what are they photographs -- when were they taken?
A. They were taken that night.
THE COURT: What's that date again?
THE WITNESS: I believe it's October.

BY MR. AMATRUDA:

Q. Well, let me -- I'll clarify that in a moment.

Those are photographs of what, generally speaking? Is that -- are those materials related to the hotel room?

A. Is of the evidence we seized that night in the hotel room.

Q. Okay. And is the evidence that you seized, with the exception of in some of the photographs it's displayed, is it any different than when you seized it?

A. No, sir.

MR. AMATRUDA: I would offer Exhibits -- let me see to make sure I have the numbers right -- 42 through 48 into evidence.

MR. STERN: No objection.

MR. KAMDANG: No objection.

THE COURT: No objection. They'll be received.

(Government's Exhibits 42 through 48 received in evidence.)

BY MR. AMATRUDA:

Q. Let me ask you, Officer, do you remember off the top of your head what date you arrested or that -- this -- you went to this hotel room?

A. Not right off the top of my head.

Q. Is there anything that would refresh your memory about that date?

A. Just I remember the circumstances of being there. I

remember the call step by step. The exact date I just -- I don't remember. I've not looked at the case file.

Q. Is there anything that you would look at to refresh your memory?

A. Normally the case file which I file with my department.

Q. Let me show you what I'll mark for identification as Government Exhibit 55. Without going into the contents of that, do you know what that document is?

A. It's a Kingsport Police Department offense report.

Q. Is that part of the case file?

A. Yes, sir.

Q. All right. Having taken a look at that, does it refresh your recollection at all as to what the date was?

A. It does, sir.

Q. Okay. If I could just take it back and you can -- if you would tell the jury what date you went to that hotel room.

A. 10/19/2008.

THE COURT: I'm sorry. What?

THE WITNESS: 10/19/2008, your Honor.

BY MR. AMATRUDA:

Q. And what time of day was it?

A. It was nighttime, sir.

Q. Okay. What happened after you found the things you took the pictures of in 42 through 48?

A. All parties in the room were arrested and taken to the

Kingsport Police Department for booking and processing.

Q. Did you have anything to do with the case after that?

A. Yes, sir. I -- the case was sent through our General Sessions court and adjudicated.

Q. So, you participated in the process that followed the case --

A. Yes, sir.

Q. -- afterwards.

Okay. And if you can just, since we don't have the -- I don't have the overhead up, if you could just explain very briefly for the jury what are these photographs. You said the first one, which is Exhibit 42, is a zip bag.

MR. AMATRUDA: Your Honor, may he show them to the jury while he's talking about this?

THE COURT: Yeah.

BY MR. AMATRUDA:

Q. And how about 43? Where was that zip bag, by the way?

A. The zip bag was located in the bathroom. It was hidden under a towel.

Q. Okay. Exhibit 44 is what?

A. Exhibit 44 is the same black bag. All contents were taken out and placed to show.

Q. Okay. How about 45?

A. 45, that is the crack cocaine that was located in the red pill carrier that was located in the black bag. We put it on

display there to show what the digital scales read.

Q. Was the scale inside the hotel room, or was it one that you bought?

A. This scale was inside the hotel room, and we later put it on the one that we had at the department.

Q. Okay. Continue, if you would, Exhibit 46.

A. 46 was --

Q. I don't want you to explain it too much 'cause I don't want you to guess what it is; but is it a piece of paper with some numbers and dollar figures on it and names?

A. Yes, sir.

Q. Okay. Exhibit 47 is what?

A. Exhibit 47 is a pass for one of the suspects in the room identified as Angie Herringa.

Q. It's a Dollywood pass? What's Dollywood?

A. It's a local amusement park.

Q. Okay. And then Exhibit 48, which I believe is the last one, what is it?

A. It is the red pill carrier that was located in the black bag that contains crack cocaine that was found.

Q. Okay. Thank you.

And you said that you -- the people who were arrested, it was everyone in the room; is that correct?

A. Yes, sir.

Q. And that included someone named Michael Darnell?

A. Yes, sir.

Q. And someone named Angie Herringa?

A. Yes, sir.

MR. AMATRUDA: I have nothing further.

MR. STERN: I have no questions.

THE COURT: Mr. Kamdang, do you have anything?

MR. KAMDANG: No, your Honor.

THE COURT: Okay. You can step down.

MR. AMATRUDA: Judge, I have no more witnesses at this point. I only have the evidence that we discussed.

THE COURT: So, do you want to read a few -- we'll probably take a break at 11:30. Do you want to read a few stipulations before then?

MR. AMATRUDA: It might be helpful just to, if we could, break now and we can -- I get with defense counsel to get organized to which ones we're going through rather than.

THE COURT: All right. Ladies and gentlemen, we'll take about a 15-minute recess. If it's a little longer than that, I apologize but there's another -- lawyers are coming in on another case at 11:30. That should just take a couple of minutes. It might be a little longer than ten minutes. Okay.

(The jury leaves the courtroom; off the record.)

(In open court; all parties present.)

(Defendants enter the courtroom.)

MR. AMATRUDA: Your Honor, we were going to read the stipulations at this point. I didn't know if it makes sense. I know that you've already instructed the jury that it will have access to the exhibits afterwards. I just didn't know if it would be helpful to just remind them of that so they don't get nervous when we're listing -- I've got about six or seven stipulations to sort of try to follow what's going on but just a thought.

THE COURT: I don't think I need to.

MR. AMATRUDA: Not necessary? Yeah. Okay.

MR. STERN: One additional stipulation -- it's not in written form -- that's just going to be, I don't know, announced or stated by Mr. Amatruda when he plays the tape, that the single tape that involves my client and it just establishes who he's talking about.

So, that was not one of the written ones.

THE COURT: Who's he talking about?

MR. STERN: He's talking about his girlfriend, Belinda. It will just say this conversation is about the defendant's relationship with his girlfriend, Belinda Jones.

THE COURT: Is that the stipulation, Mr. Amatruda?

MR. AMATRUDA: Yes, it is, Judge.

THE COURT: Okay. My clerk wanted me to remind you we

don't have an expert witness charge in this draft. I didn't hear any real expert witness testimony. And there's also in the other charge there was a defendant's admission charge; and we took that out, as well. There might be statements that the Government views as admissions, but I don't think that charge really pertains to those kind of admissions. So, I just wanted you to know that.

Is there going to be a defense case?

MR. STERN: There is not.

MR. KAMDANG: No, your Honor.

THE COURT: How long will it take you, Mr. Amatruda, to do all these stipulations? You're going to do the similar act, as well?

MR. AMATRUDA: It's going to be -- my guess with that it will be maybe 20 minutes.

THE COURT: So, you'll be prepared to sum up then, since there's no --

MR. AMATRUDA: Yeah, before lunch, Judge? Yeah, that's fine.

THE COURT: How long's your summation?

MR. AMATRUDA: Twenty minutes, half an hour at the most.

MR. KAMDANG: Your Honor, we'll sum up after lunch. I just want to prepare myself emotionally.

THE COURT: Emotionally?

MR. KAMDANG: Yes.

THE COURT: In that case, I'm not going tell you -- no, I understand. I'm sorry. I couldn't resist it.

No, I would imagine that we wouldn't get to the other summations 'til after lunch. I don't want to break anybody's summation up, if possible.

(The jury enters the courtroom.)

THE COURT: All right. Ladies and gentlemen, please be seated.

Mr. Amatruda.

MR. AMATRUDA: Your Honor, at this point the Government has a number of stipulations that we would move into evidence, and if I may, I'll just -- I'll just go through them.

They start with Exhibit 20, and the stipulation is actually Exhibit 20A. It refers to Exhibit 20 which are the telephone records.

THE COURT: Okay.

MR. AMATRUDA: All of the stipulations that I'll read to you have the same caption. In other words, they all read the same at the top of the page which states: United States District Court in the Eastern District of New York, United States of America against Darien Pughe and Dewayne Taylor, Defendants. I won't repeat that section.

All of them start also with, "It is hereby stipulated and agreed by and between the United States of America, by

Assistant United States Attorney Michael Amatruda, and the defendants, Darien Pughe, by his attorney, David Stern, Esquire, and Dewayne Taylor, by his attorney, Len Kamdang, Esquire."

And then each of the stipulations refers to specific documents. So, that's the part that I'll read with each one.

Government Exhibit 20 is a true and accurate copy of AT&T telephone records related to telephone number (423) 366-4040.

The information in Government Exhibit 20 was recorded and maintained in the ordinary course of business of AT&T.

It was the regular practice of AT&T to record the information contained in Government Exhibit 20. AT&T recorded and maintained the information contained in Government Exhibit 20 at or near the time of its making from information made or transmitted by a person with knowledge.

The parties agree to the admissibility of Government Exhibit 20 without the need to call a records custodian.

And the parties further agree to the admissibility of the stipulation which has been marked as Government Exhibit 20A.

THE COURT: All right. So, 20 and 20A are received.

(Government Exhibits 20 and 20A received in evidence.)

MR. AMATRUDA: The next stipulation reads: Government Exhibit 26 is a true and accurate copy of Western Union records

relating to Dewayne Taylor.

The information in Government Exhibit 26 was recorded and maintained in the ordinary course of business of Western Union.

It was the regular practice of Western Union to record and maintain the information contained in Government Exhibit 26. Western Union recorded and maintained the information contained in Government Exhibit 26 at or near the time of its making from information made or transmitted by a person with knowledge.

The parties agree to the admissibility of Government Exhibit 26 without the need to call a records custodian.

The parties agree to the admissibility of the stipulation which is Exhibit 25.

THE COURT: All right. 25 and 26 will received.

(Government Exhibits 25 and 26 received in evidence.)

MR. AMATRUDA: Next stipulation reads: Government Exhibit 28 is a true and accurate copy of Sprint account records relating to Belinda Jones.

The information in Government's Exhibit 28 was recorded and maintained in the ordinary course of business of Sprint.

It was the regular practice of Sprint to record and maintain information contained in Government Exhibit 28. Sprint recorded and maintained the information in Exhibit 28 at

or near the time of its making from information made or transmitted by a person with knowledge.

The parties agree to the admissibility of Exhibit 28 without the need to call a records custodian.

And the parties further agree to the admissibility of the stipulation as Exhibit 27.

THE COURT: 27 and 28 are received.

(Government Exhibits 27 and 28 received in evidence.)

MR. AMATRUDA: The next stipulation reads: Governments Exhibits 21 through 24 are true and accurate copies of Pay-O-Matic records.

The information contained in Exhibits 21 through 24 was recorded and maintained in the ordinary course of business of Pay-O-Matic.

It was the record practice of Pay-O-Matic to record and maintain the information contained in Government Exhibits 21 through 24.

Pay-O-Matic recorded and maintained the information contained in Government Exhibits 21 through 24 at or near the time of their making from information made or transmitted by a person with knowledge.

The parties agree to the admissibility of Government Exhibits 21 through 24 without the need to call a records custodian.

The parties further agree to the admissibility of the

 stipulation which has been marked as Exhibit 29.

THE COURT: All right. Exhibit 21 through 24 and 29 are received.

(Government Exhibits 21 through 24 and 29 received in evidence.)

MR. AMATRUDA: Next, the next stipulation reads: The substance contained in Government Exhibit 31 is cocaine base. Total net weight of the cocaine base is 29.6 grams.

The substance contained in Government Exhibit 32 is cocaine base. The total net weight of the cocaine base is 92.8 grams.

Cocaine base, also known as crack cocaine, is a Schedule II controlled substance and is cocaine in its basic, pure form.

"Net weight" is the weight of the substance analyzed, excluding its packing material.

The parties agree to the admissibility of the stipulation which has been marked as Exhibit 30.

THE COURT: All right. 30's received.

(Government Exhibit 30 received in evidence.)

MR. AMATRUDA: Government Exhibit 37 is a true and accurate copy of recordings of telephone calls made on the following dates at the following times:

January 18th, 2009, 9:11:00 a.m.; March 20th, 2009, at 11:31 a.m.; March 28th, 2009, at 6:24 p.m.; March 29th of 2009,

 at 10:41 p.m.; March 30th, 2009, at 10:50 a.m.; April 5th, 2009, at 9:15 p.m.; April 20th, 2009, at 8:48 a.m.

The person placing the above telephone calls was Dewayne Taylor.

The calls were recorded at the time they were made.

The parties agree to the admissibility of Government Exhibit 37 without the need to call a records custodian.

The parties further agree to the admission of the stipulation which has been marked as Exhibit 36.

THE COURT: So, 36 is the stipulation. 37 is the calls?

MR. AMATRUDA: Correct, Judge.

THE COURT: All right. They'll be received.

(Government Exhibits 36 and 37 received in evidence.)

MR. AMATRUDA: The next stipulation is Exhibit 38 which states Government Exhibit 39 is a true and accurate copy of recordings of phone calls, or a phone call, I should say, made on the following date at the following time:
January 28th, 2009, at 10:35 a.m.

The person placing the call was Darien Pughe. The calls were recorded.

The call was recorded at the time it was made.

And the parties agree to the admissibility of Government Exhibit 39 without the need to call a records custodian.

And the parties further agree to the admissibility of the stipulation which is marked as Exhibit 38.

And just mark for identification, as Government Exhibit 38A, the parties further stipulate that the conversation in Government's Exhibit 38, the recorded conversation, relates to Mr. Pughe's relationship with his girlfriend, Belinda Jones.

THE COURT: All right. So, 38, 38A, 39 are received.

(Government Exhibits 38, 38A, and 39 received in evidence.)

MR. AMATRUDA: The next stipulation states that if called to testify, Belinda Jones would state she was Darien Pughe's girlfriend in October and November of 2008.

The parties agree to the admissibility of Exhibit 40, which is the stipulation.

THE COURT: All right. 40 is received.

(Government Exhibit 40 received in evidence.)

MR. AMATRUDA: And Exhibit 41 states at the time of his arrest, Darien Pughe possessed approximately $50.

And, again, this is Exhibit 41, which the parties agree is admissible.

THE COURT: All right. 41's received.

(Government Exhibit 41 received in evidence.)

MR. AMATRUDA: And then the last one I have is Government Exhibit 50 is a true and accurate copy of the record

 of court proceedings in the United States District Court for the Eastern District of Tennessee, located in Chattanooga, Tennessee, on September 29th, 1995. Government Exhibit 51 is a true and accurate copy of the record of court proceedings from the United States District Court for the Eastern District of Tennessee located in Chattanooga, Tennessee, on November 14th of 1995.

Transcripts were made at the time of the transcribed testimony and accurately reflects the testimony.

The person testifying in Government Exhibits 50 and 51 is Dewayne Taylor.

The parties agree to the admissibility of Government Exhibits 50 and 51 without the need to call a court reporter.

And the parties agree to the admissibility of the stipulation which is Exhibit 49.

THE COURT: All right. 49, 50, and 51 will received.

(Government Exhibits 49, 50, and 51 received in evidence.)

MR. AMATRUDA: Okay. And with respect to Exhibit 50, which is the -- by the stipulation is the court proceeding on September 29th, 1995, in the Eastern District of Tennessee, the -- it states as follows:

THE COURT: Are you going to read the testimony now?

MR. AMATRUDA: I was. Should I not do that, Judge?

THE COURT: You could. I was going to give a

preliminary instruction.

MR. AMATRUDA: I'm sorry.

THE COURT: You are going to read that testimony at this point, though.

MR. AMATRUDA: Yes, your Honor.

THE COURT: Ladies and gentlemen, I'm anticipating that you will hear testimony that the defendant, Dewayne Taylor, engaged in criminal activity that is not the subject of the charges in this indictment. In that connection I want to remind you that the defendant is not on trial for committing acts not alleged in the indictment. Accordingly, you may consider this evidence of similar acts. You may not, rather, consider this evidence of similar acts as substitute for the proof that the defendant committed the crime charged, nor may you consider this evidence as proof that the defendant has a criminal personality or bad character.

You may consider this evidence on the issue of whether or not the defendant possessed the necessary knowledge and intent to commit the crime charged in the indictment.

The evidence of these similar acts about which you are about to hear is admitted for this limited purpose, and you may consider it only for this limited purpose. You may consider it for no purpose whatsoever against the defendant, Darien Pughe. Okay.

MR. AMATRUDA: Thank you, Judge. The exhibit begins

with the Court saying, asking the clerk to read Count One of an indictment. And it states that:

"Grand Jury charges that on or about August 7th of 1995, in the Eastern District of Tennessee, Dewayne Taylor and Gregory McKay, also known as "Cortez," the defendants, aided and abetted by the other, did unlawfully, willfully, knowingly, intentionally, and without authority, possess with the intent to distribute cocaine base or crack, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

The Court asks, "How do you plead to Count One in the indictment, Mr. Taylor? Guilty or not guilty?"

The defendant states, "Guilty."

The Court then asks, "Will the Government state the factual basis for its case against Mr. Taylor?"

At which time the attorney for the Government states, "Officers of the Chattanooga Police Department went to Apartment 1511, Oak Crest Apartments, 7310 Sandifer Gap Road, here in Chattanooga, Tennessee.

Police officer set up surveillance, and approximately 20 minutes later they saw the defendant and Mr. McKay come towards the apartment. Mr. Taylor was finally apprehended a short distance away. Approximately 4 ounces of crack cocaine was found in his left front pants pocket."

You heard -- and then the Court asked, "You heard what

Mr. Sullivan said, Mr. Taylor".

And the defendant says, "Yes."

"And is what he said, is that true as far as your involvement in it?"

And Mr. Taylor's lawyer states, "Yes."

And then the Court says, "Did you have cocaine in your pocket?"

And Mr. Taylor says, "Yes."

Exhibit 51 refers to or is trial testimony from November 14th, 1995; and the person testifying at that trial is the defendant, Dewayne Taylor. The questioning in pertinent part states:

"What is your name?"

"Dewayne Taylor."

"You are from where originally?"

"Brooklyn, New York."

"Born and raised in Brooklyn?"

"Yes."

"That's your home?"

"Yes."

"Has that been where you lived most of your life?"

"Yes."

"Back in August of this year, 1995, you were arrested by the Chattanooga Police Department; is that correct?"

"Yes, sir."

"And were you with someone else at the time of your arrest?"

"Yes."

"And who was that?"

"Gregory McKay."

"When did you first meet Mr. McKay?"

"'87."

"You knew him basically from 1987 to 1990; is that right?"

"Yes."

"After 1990, where did you know Mr. McKay to spend some time at?"

"Here in Tennessee, Chattanooga."

"As a result of your arrest in August -- in August of 1995 here in Chattanooga, did you plead guilty here in court?"

"Yes."

"Do you remember what you pled guilty to?"

"Possession."

"Of what?"

"Crack cocaine."

"With intent to sell it?"

"Intent to sell."

"Did there come a point in time where you and Mr. McKay came to Chattanooga?"

"Yes. That was in August."

"In August of?"

"'95."

"What was your reason for coming to Tennessee?"

"Basically we was coming from New York. I was coming here with him because he wanted to show me around in Chattanooga. He was telling me how the clubs was here, how it was with the girls and everything else. So, we were just going to stay here and just to have some fun. I was going to be with him just to have some fun, ride around in Tennessee to see how Tennessee was, the comparison to see how the clubs was. I wanted to compare it to see how the clubs was from New York to Tennessee."

"While you were here in Chattanooga, of course, you were arrested; is that correct?"

"Yes."

"When the officers arrested you on that day, August 17th, what did you have in your possession?"

"What I possessed in my pocket. I had drugs, my wallet, and a beeper."

"Where did the drugs come from?"

And then the defendant asked, "Where did I get it from?"

"Yes."

The answer is: "Mr. McKay."

"When did you get it from Mr. McKay?"

"At Kentucky Fried Chicken."

"How did you actually get there to Kentucky Fried Chicken?"

"We drove."

"Who drove?"

"Gregory McKay."

"And what happened when you and Mr. McKay got to Kentucky Fried Chicken?"

"He made a phone call. As he was making a phone call, I was in line at Kentucky Fried Chicken, ordering some food. There was two people in front of me in line. By the time I got in front, him and the other guy came inside Kentucky Fried Chicken."

The answer continues: "Before I got the food, him and the other guy went on the side of Kentucky Fried Chicken and sat down. I came back with the food, sat across from them as they were talking."

"Did you know this person Mr. McKay was with?"

"Yeah."

"What was his name?"

"Hector."

"Hector. Okay. Where was Hector from?"

"New York."

"How did you know that?"

"I seen him out there."

"How long had you known Hector?"

"I don't know him know him. I know who he are -- who he is. I know who he is. I know what he is about."

"All right. Who is Hector connected to?"

"Francisco."

"How do you know that Hector was connected with Francisco?"

"They all used to be together."

"Do you know Francisco's last name?"

"Francisco Palin."

"And where did Francisco Palin live?"

"In Manhattan."

"What was the connection to Mr. McKay?"

"They did business together."

"What do you mean they did business together?"

"They sold drugs."

"And how do you know that?"

"'Cause Gregory McKay told me that and as I have seen them do business."

"What happened involving the drugs that were in your pocket when the police arrested you?"

"Excuse me? In other words, how did I get it?"

"Yes, sir."

"Gregory McKay got it from Hector. Gregory McKay had shorts on, the gym shorts on that didn't have any pockets.

When he got to the car, he told me to put this in my pocket; and I put it in my pocket."

Then it says, it refers -- "And you were arrested?"

At that point he says, "Yes."

Actually, let me put that in context.

"We left Kentucky Fried Chicken."

"Is that when you went to the apartment?"

And the answer was, "Ms. Kilgrim's house."

The question was, "So, you got to the apartment; and we heard testimony that you and Mr. McKay were walking up the steps to go to the apartment. Is that right?"

And the defendant says, "Yes."

And then the question is, "Were you arrested at that point?"

The answer, "Yes."

"And that's when the police took the drugs off of you?" And then further asks, "What were you and Mr. McKay going to do with those drugs?"

He said, "Sell them."

And the last thing, Mr. Taylor refers to selling drugs.

And the question to him was, "What's a large quantity to you?"

And the answer was, "A large quantity to me is an ounce."

I'll -- if your Honor -- with your Honor's permission, I'll go ahead and go through the phone calls at this point.

THE COURT: Okay. Uh-huh.

MR. AMATRUDA: Your Honor, I had forgotten. I have a further stipulation that the parties agreed upon. I'll just mark it as Defendant Taylor's Exhibit No. 2, and in substance it states that Agent R.H. McQueen reviewed records of the Kingsport jail. He did not discover any records reflecting that the defendant, Dewayne Taylor, provided bail money to secure the release of the individuals that Officer Matthew Pendleton arrested at the America's Best Inn in Kingsport, Tennessee, on the night of October 19th, 2008.

Your Honor, at this point I'll refer the jury to the binders.

THE COURT: Okay.

MR. AMATRUDA: Start with the call labeled DT11809 at 9:11. It's the second tab.

THE COURT: Is this part of Exhibit 37?

MR. AMATRUDA: Yes, Judge.

THE COURT: Does everyone have that? Okay.

(Audio recordings played in open court.)

MR. AMATRUDA: The next one should be March 20th of 2009.

(Audio recording played in open court.)

MR. AMATRUDA: Next one is March 29th.

(Audio recording played in open court.)

MR. AMATRUDA: All right. One more.

(Audio recording played in open court.)

MR. AMATRUDA: The next one is March 30.

(Audio recording played in open court.)

MR. AMATRUDA: If we go back to the first one which refers to -- it's part of exhibit, I believe, 39? 39.

THE COURT: This is the call you're playing at 1-28-09, 10:35.

MR. AMATRUDA: Correct, Judge.

THE COURT: Where the stip refers to Defendant Pughe?

MR. AMATRUDA: That's right, Judge.

THE COURT: Does everyone have that tape?

THE JURORS: (Nod heads affirmatively.)

THE COURT: Okay.

MR. AMATRUDA: I'm -- Judge, I'm going to just listen so I don't play something -- the wrong one by mistake.

(Brief pause.)

(Audio recording played in open court.)

MR. AMATRUDA: That's all for the phone calls.

Your Honor, can I just take one moment? I think we may be done with our case. I just want to make sure I haven't missed anything.

(Brief pause.)

MR. AMATRUDA: Your Honor, at this point the

371
USA V. PUGHE, ET AL

Government rests.

THE COURT: Can I see parties at sidebar?

(Discussion at sidebar; continued on the following page.)

Nicole M. Warren, CSR, RMR, CRR

THE COURT: All right. For the record, do you want to make any motions?

MR. STERN: I do.

THE COURT: Okay.

MR. STERN: You want to make them here?

THE COURT: Yeah.

MR. KAMDANG: I'll go first. I move to dismiss pursuant to Rule 29. We'll submit on the record.

MR. STERN: That's what I want to do. Pursuant to Rule 29, the evidence in this case is insufficient to sustain a conviction as to Mr. Pughe. There's not a single piece of evidence in the light most favoring to the Government that makes him guilty of this conspiracy. You heard the case. I don't have to go through the whole record, telling you my thoughts about it; but I don't even believe the Government can point to a fact that ties him into this conspiracy.

He's in the car. That, of course, is true. He knows Mr. Taylor. That, of course, is true. But beyond that -- and shows they would say he has a razor blade but there's no connection to that razor blade and the drugs or the razor blade or anything like that. People can leave New York to go somewhere for a better life. That's not a crime.

So, I can't -- I don't think there's a single piece of evidence the Government can point to that any jury could interpret to be consistent with his guilt beyond a reasonable

doubt because they have insufficient evidence to sustain a conviction. The case should be dismissed under Rule 29.

MR. AMATRUDA: Judge, under the Rule 29 standard, taking the inferences most favorable to the Government, the Government would point to the evidence of Mr. Taylor's -- Mr. Pughe's relationship with Mr. Taylor dating back at least until October of 2008; Mr. Taylor's near constant drug activities during the time period of the indictment; Mr. Taylor's payment of Mr. Pughe's expenses for his bus ticket down to Tennessee; Mr. Pughe's intent to arrive in Tennessee to, quote, 'make things better' for him and his girlfriend.

In addition, Agent Hammonds testified about detecting the smell of cocaine in Mr. Pughe's bag. Mr. Pughe had a razor blade. There was a lot of testimony or at least some testimony from Ms. Hyatt concerning the use of a razor blade to cut crack cocaine; the car had crack cocaine out in the open at the time that it was pulled over. At least it was showing through the glove compartment.

Based on that evidence, I believe a jury could find, based on the inferences in the Government's favor, with regard to Mr. Pughe's guilt in the case.

THE COURT: I deny the motion as to Mr. Taylor.

I'll reserve decision on Mr. Pughe.

Are you ready?

MR. AMATRUDA: Yeah, can I go now?

THE COURT: Okay.

MR. AMATRUDA: You want me to start?

THE COURT: Yeah.

(Discussion at sidebar concludes; in open court.)

THE COURT: Mr. Stern, does the defendant Pughe rest?

MR. STERN: He does.

THE COURT: And, Mr. Kamdang?

MR. KAMDANG: Yes, your Honor.

THE COURT: Mr. Taylor rests, as well.

All right. Ladies and gentlemen, we are at that part of the trial where the attorneys will give you their summations. That's where they go over the evidence with you and explain to you what evidence, inferences they believe you should draw from the evidence.

Just let me remind you, as I said earlier, that the summations themselves are not evidence; and if you happen to remember testimony differently from what you may hear one of the attorneys say about the testimony, of course, it's always your recollection that governs; and if there was something you were or perhaps didn't remember correctly, we could have parts of the trial read back to you, if that was a problem.

So, we'll begin now with the -- as I told you before, the Government sums up first, followed by the defendants. The Government then has an opportunity, because it has the burden, to give a brief rebuttal summation.

MR. AMATRUDA: If I could have one moment to get this organized here.

THE COURT: Sure.

(Brief pause.)

MR. AMATRUDA: The evidence in this case is proof beyond a reasonable doubt that the men in front of you participated in a conspiracy, an agreement to distribute crack cocaine. As you heard, defendant Taylor was the center of that conspiracy.

The proof that you saw, I would suggest to you, comes in three categories. The first is small picture proof which refers to the car stop and those 120-plus grams of crack and the other items that you heard about from the officers in that car. That's a small picture because you know that Mr. Taylor was part of a longstanding conspiracy that operated for months and months; and I would suggest to you that what the officers saw that day was just one slice of Mr. Taylor's life of drug dealing over that time.

The third part that I would like to just review briefly is corroborative proof, because part of your job and probably the most important part of your job is to determine the facts of the case and determine who to believe. One thing about who to believe that's helpful is corroboration, things you can look to that the person says and see if they're documented, if they happened; and I suggest to you that there is corroborative proof in this case.

So, let's start with the car stop. I know you heard a number of officers testify about that. I appreciate your patience as we went through that evidence, but we were talking

about 120-plus grams of crack cocaine. Ms. Hyatt testified that Mr. Taylor was selling this for about a hundred dollars a gram. So, if he was selling it at that, you're talking over $12,000 worth of crack cocaine sitting in a car that day in Kingsport.

It explains a lot about why Mr. Taylor was in New York -- was in Kingsport, why Mr. Pughe was there. There was a lot of money to be made. It's probably one of the few things that's cheaper outside of New York than in New York is cocaine, crack.

The car, if you look at the circumstances in that small picture, the car has crack coming out of the glove compartment. There's the scale out in the open, the box of baggies in the back. The car is held under someone else's name. The registration information goes with someone else.

That adds up, it's a drug car. You probably didn't need Ms. Hyatt to tell you that. It's -- that's what it was used for. When Agent Hammonds and Officer Brumfield walked up to the SUV, what did they see? They see Ms. Wright frantically trying to hide drugs, and it makes sense that they saw that because they told you the big concern was safety when they're walking up. They're nervous about hands, what's happening with hands; and they see someone frantically moving, obviously they're going to pay attention to that and remember it.

You heard from Officer Taylor that Ms. Wright had the

drugs in her pants. He saw her pull it out. And, so, if you think about what happens when this car is being pulled over, you have people moving frantically around, you have drugs out in the open, and you have Ms. Wright doing a job that she was supposed to do, or at least that they referred to, the conspirators referred to, as doing.

I submit to you that it's fair to say that the two men in the car knew what Ms. Wright was up to. How could someone not know what's going on in the car? People frantically moving around, those bags of crack.

And it may seem kind of strange to hear that the drugs were visible after this supposed car chase. Obviously, that wouldn't seem normal to have drugs out in the open when the police pull you over. But I would suggest to you what if the officers were actually mistaken about this Crazy Ivan move or stopping in the middle of the street? Is the evidence consistent with a car full of people who didn't know they were being followed? They stopped in the driveway to talk to somebody, a woman, who was on the sidewalk? That's not something you probably would do if you're being followed or you know you're in the middle of a police chase.

And the actions of the people in the car are consistent with that of Ms. Wright frantically moving around, trying to hide stuff. That's sort of an, oh, whatever moment. That's what the police happened upon.

Officer Brumfield and Agent Hammonds, they both saw the crack there. They were both from different sides of the car, and nothing they said was inconsistent with being able to see the crack where it was. It's not fantastic or whatever it was that they -- however they saw that.

There's some other information to take from this stop. One is Mr. Taylor got his identification from where? From Ms. Wright's purse. It's a small fact. It's one of a piece of the puzzle that you might add up together. But doesn't that tell you something about how well these people know each other? It's a pretty relatively intimate act to carry a wallet in someone else's purse and reach over for the wallet and pull it out of the purse and grab it.

What you're going to be asked to look for is an agreement between Mr. Taylor and someone -- and other people to sell drugs. And given the context that you've heard, what Ms. Wright did, what Mr. Taylor did, the fact that they were that close and they were close enough for Mr. Taylor to be carrying his wallet around in her purse, tells you a lot about what his state of mind was and how much he knew about her and how much she knew about him.

What about -- what about Mr. Pughe? Well, his ticket -- and you can see it in evidence -- is not in his name. He gets the ticket paid for by Mr. Taylor through his girlfriend, Belinda Jones; and in some of these stipulations,

this is what they --

MR. STERN: Objection. Objection.

THE COURT: Overruled.

MR. AMATRUDA: You'll see that the -- there's Western Union evidence of transfers, the last one being on the day before Mr. Pughe arrives in Tennessee when his bus -- the day his bus leaves. There's a wire transfer of $400 to Ms. Belinda Jones on November 15th.

On November 2nd there's another one for $600.

And before that in October of 2008, there's another one for $500.

In addition, you have these Pay-O-Matic records in evidence with two of the wire transfers showing Ms. Jones' picture as the one picking up the money order.

I would suggest to you that money orders received the day before the trip, certainly it's a fair inference that that money was going up to Mr. Pughe for the bus ticket down to Tennessee.

And if -- just to go a little bit further with that, Mr. Taylor's sending money to the defendant's girlfriend, that says something about their relationship. And when you combine that with what Mr. Taylor did, he was a full-time drug dealer. All he did, as Ms. Hyatt tells you. If these guys are good enough friends to be sending each other money, for Mr. Taylor to be paying this guy's ticket down to Tennessee, it says a lot

about what it is that they know each other to do and what it is that -- what it is Mr. Pughe is on his way down to join up with his friend to do.

In addition, I'll just -- well, I'll come back to that in a second, but -- and what about the razor blade? Well, it is -- it is not -- I would submit to you that it's hardly a usual thing to keep in your pocket, a naked razor blade. It's not even safe to do that, and it's not something that people do every day. You heard testimony about what razor blades are used for. They're used to cut up crack.

And if you combine that with Mr. Pughe's luggage, and I imagine you'll hear a lot about this from Mr. Stern, but he -- Agent Hammonds did say that he smelled cocaine in the luggage. Makes sense then that he would have a blade for cutting up the drugs. And the way that you heard Mr. Taylor operated, going from customer to customer, selling drugs, this is consistent with what it is that he -- what it is that they did.

Now, next you might come up with or might -- there might be a question posed to you: How do you know the drugs belonged to Mr. Taylor? Setting aside all the other evidence about that Ms. Hyatt gave you and that you heard, you know that the car in April of 2008 went to Mr. Taylor. So, he's got the car, what is it, six, seven months before he's ever pulled over in it in this event.

It's -- so, you know he's at least the person using the car, the person responsible for the car. You also know that he had Ms. Hyatt put it in her name, which tells you something about the defendant's state of mind when he did that.

If you look at it from a little bit of a bigger picture, I would suggest that the phone records mean a lot in this case. Ms. Jones' phone records are in -- Ms. Jones' subscriber information are in evidence, as are the phone records from Mr. Watts' phone; and you can see calls between Mr. Watts and Ms. Jones, between their numbers in October of 2008 and November of 2008.

You also heard testimony about Mr. Pughe's telephone number and in those phone records there are also -- and you'll have a chance to look at the evidence yourselves, but there are many calls between Mr. Taylor and Mr. Pughe up to and including right before Mr. Pughe gets picked up at Mr. Taylor's bus stop.

In addition, just looking at the calls themselves, I just want to mention to you this phone record for a cell phone is from September 22nd, 2008, until about November 15th, 2008, 6,000 phone calls, each about a minute long. That's a drug phone, if you want to see one. That's exactly what this is, and it's consistent with what you heard from Ms. Hyatt. It's consistent with what you heard from her about Mr. Taylor's use of this phone.

And I would just add that when you start looking at

things from a little bit of a bigger picture, does it match what's -- what was told to you from the stand? Well, the agents did tell you that Mr. Pughe is making phone calls; and if you look at the phone records, he's in touch with Mr. Taylor's phone. Those agents had no way of knowing when they testified whether or not what they were saying was going to be documented in any way but it is and I submit to you the reason it is is because they're telling you the truth about what they saw that day.

Next, I'd suggest that if you look at the picture from a little broader perspective, it doesn't take too much to understand that Mr. Taylor was a big-time drug dealer. He was doing a great job. He -- even when things are slow, he's moving half a kilo from New York to Tennessee a week, at a minimum. You're talking about at a hundred dollars a gram, it's thousands and thousands of dollars in profit. And the customer base he had was so steady that he could show up after another 18 months, find everybody, round everybody up again; and here he was started again.

He had at least four or five spots that you heard about that he sold from. He was buying trailers to sell out of where he didn't live. He had addicts that he used their houses and was paying for their rent. And just in case -- I think you probably caught this but Ms. Hyatt, what she was saying about mister -- Michael Darnell and Angie's house, is that Mr. Taylor

would give them money and they would -- supposed to be paying the rent for the money in exchange for using their house but, in reality, they were using it to buy crack. So, they couldn't pay the rent; and they got kicked out.

You heard details from Ms. Hyatt about Mr. Taylor weighing drugs on the kitchen table. This is how comfortable he was with drugs, out in the open. At the trailer event that you heard about, he's sitting there just at the kitchen table, cutting crack up the way, you know, a family member might be cutting onions up or something for dinner. It's that straightforward to Mr. Taylor.

There's evidence about this raid at the hotel or the arrest that happened in the hotel. The main significance of that is that Linsey Hyatt tells you, "Well, Mr. Taylor tells me about this raid at the hotel."

Well, who comes in but the officer to say, "Yeah, there was a raid at a hotel; and look who I arrested."

It's the exact same people as she said; and, again, it's a situation where she doesn't have any way of making up what Officer Pendleton's going to say. She says what she remembers and it turns out that she's right and that's going to tell you, again, something about whether you can believe her.

Again, I imagine you'll hear a lot about Ms. Hyatt. It's very easy for her to come up and make up stuff and just say whatever she feels like saying; but in the end, there's

hard facts that show what she's saying is true.

So, you have the issue with the hotel room. There's one that's important simply from a standpoint of corroboration, and that's that if you look at Mr. Taylor's wallet -- it's Government 18 that was seized when he was arrested -- there's a traffic ticket from October 1st, 2008, in here. You know what kind of car it is? It's a Nissan Xterra. How would she possibly know that he's got a ticket from a Nissan Xterra that he's driving if she wasn't telling you the truth about these details?

It just tells you something. It's a small piece; but it tells you something about how you can assess her testimony and how you know that you can, I submit, rely on what she says that she's telling you. If she's saying that there's -- that it's a Nissan Xterra and it turns out she's lying for some reason, well, you heard she understood what would happen to her if that's what happens.

Instead, she goes under oath. She says this was a Nissan Xterra. Turns out she's right.

I'd also suggest that you not, when you assess a witness, throw out your common sense. It's a pretty plain idea, but sometimes it goes without mentioning and sometimes people miss in a courtroom, it's maybe a different environment that you're having your casual conversations with people and sometimes people throw their common sense out the window, which

is, I submit, the last thing that you can do because what everybody does and what people are good at is assessing other people. It's why, if there's somebody who stands up, a caricature of the salesman who's snapping and going "bad-da bing" and come on, let's do this and this deal, there's almost everybody reacts the same way to that person. It's because you're good at reading people. And I submit to you, I would ask you scrutinize Linsey Hyatt. Read her, see what you think, when you get back in the jury room.

She's a young woman, 23 years old, two kids, got up there on the stand, confessed that she had done crack. She confessed that she had taken a kilogram of crack that belonged part to this guy from Vic in New York, part to her boyfriend. Did she seem evasive to you? Did she seem like she was hiding things or trying to get over on somebody, trying to minimize her own conduct? She told you when she didn't tell the truth and told you she forgot things and told you there was a difference between those two things.

So, I would submit to you that her testimony really does have some -- an echo of truth to it. And the way she answered the questions and carried herself when she testified, I think, goes a lot of way towards that.

There's also this -- the issue that I told you before about corroboration. You can talk about that on your own, all the different ways. It's been a short trial. So, I'm not

going to try and go through everything. You probably remember a lot of them, but you have the phone records that are going to corroborate how often she was in touch with Mr. Taylor, even to the fact that where she says I used to be in touch with him more than I was at the end, which is exactly, I submit to you, what those records show.

She told you about the raid on the hotel. That turns out to be true. She tells you about Mr. Taylor carrying money. Well, you heard him on the tapes talking about having 7,000 or however much money it was hidden in a bag in a hotel room.

This is exactly what she told you. She had no way of knowing that -- what it was that Mr. Taylor said on the phone.

She says that Jessie Wright, yeah, her job is to hold the drugs. Well, sure enough, she's the one holding the drugs. And that's the way these guys saw her, as somebody who just held drugs.

Make sure I hit on at least all of the -- oh, yeah, there's another -- just some other exhibits we put in, Exhibit 21. This relates to a wire transfer from Mr. Taylor from Tennessee to Brooklyn, New York, and if you remember what Ms. Hyatt said about this guy, Vic, right. So, she says Vic, does Vic have a girlfriend? Yeah, her name's Chrystal. Well, who's picking up a wire transfer? Chrystal from Brooklyn.

Her testimony, she had no way of knowing about these Western Union records, but it documents what she said and it

provides more support for what she tells you for your ability to rely on what she told you.

There were some other things about the way that the conspiracy operated, about Mr. Taylor bringing in other people from out of town to work on -- work in this drug business with the guy who shows up in the bus who's involved with them all through the fall of 2008. That I urge you to consider.

There's also, in case the argument comes up, that Mr. Taylor happens to not know that the drugs are in his car or he happens to not have an intent to sell the drugs that are in the car. Well, you heard his own testimony about knowing about drugs, four ounces of crack he had in his pocket, that he's arrested in 1995. This is not a guy who is going to be duped into becoming a carrier without knowing it.

In the same instance he told you that a lot of -- or he testified that what he considered to be a lot of drugs was an ounce. Here he had four then, and now he had almost four again when the arrest happened.

Now I'd just like to touch on a couple of things that I anticipate Judge Amon's going to tell you about when she gives you the legal instructions, to instruct you on how to evaluate the facts you've heard against the law; and I would just ask that you pay particular attention to the part when Judge Amon gets to what it takes to be a member of a conspiracy and how it is that people can be a member of a conspiracy.

It's not mere presence. It's not mere presence with knowledge where a crime happens. At the same time, conspiracy isn't something that has to be spoken. It's not something that has to be charted out. And a conspiracy is an agreement or an understanding followed by action.

In this case, I would submit to you that you've heard evidence that establishes that Mr. Taylor, Mr. Pughe, Ms. Wright, Ms. Hyatt at times, Vic, the person who came down on the bus, were all part of a conspiracy or an agreement to sell crack cocaine and that that agreement involved over 50 grams of crack cocaine.

And, finally, you may hear something in the jury instructions about that may already have came to your mind, which is why are we here in New York when all of this stuff happens in Tennessee?

And that question is answered by the fact that there were acts that happened in furtherance of this conspiracy up here in this district, in Brooklyn, in Queens, New York, and that's what Linsey Hyatt tells you that she waits, that Mr. Taylor was going back and forth to New York, going back and forth to his home in Brooklyn. She had been there before when he had picked up drugs. She had stayed with him in Brooklyn or stayed with his aunt in Brooklyn when he came back to pick her up with drugs in his car.

In addition, Mr. Taylor sent him money -- you heard he

doesn't have a job -- to his family members or whoever appears on the Western Union records up here in New York. That's the disposition of drug funds here in New York.

So, there's a number of reasons why you can find that acts in furtherance of this conspiracy happened here.

Then, lastly, I don't think I really need to talk very much about the phone calls you've heard; but just in terms of speaking about a consciousness of guilt and somebody who knows that they're caught, it can't really get much more explicit than that. I submit to you that with all these facts in mind, I ask you to return a guilty verdict against both defendants, having seen evidence beyond a reasonable doubt that we've proved their guilt.

THE COURT: Ladies and gentlemen, at this point in time, we'll take luncheon recess. We'll resume at 2:00 with summations of defense counsel, rebuttal of the Government, and then I'll instruct you on the law.

So, let me excuse you now for your luncheon recess.

(The jury leaves the courtroom.)

MR. STERN: I'm going to move for a mistrial on behalf of Mr. Pughe because the Government, in a highly prejudicial way, mischaracterized the evidence in their summation. The Government had a conversation which Mr. Pughe, admitted he got money from Belinda Jones, and paid for the bus ticket with it.

The Government, for their own reasons, decided not to

 use that conversation; and the evidence, as it stands now, is that money was sent to Mr. Jones, who's Mr. Pughe's girlfriend. There's not a shred of that evidence that money was ever given to my client, that it was used to pay for a bus ticket, anything like that; and it's pure speculation to ask the jury to assume that money sent by Mr. Taylor to Ms. Jones goes to Mr. Pughe.

It's the kind of speculation that causes a jury to say, oh, it must be drug money, A; and it must go to Mr. Pughe. I objected to it at the time. I object to it now, and I seek a mistrial.

THE COURT: Mr. Amatruda.

MR. AMATRUDA: I'm not sure I really need to respond, Judge. I think it's fair argument. He's sending -- the money is going from Mr. Taylor to Mr. Pughe's girlfriend. I think that it's a fair argument from that evidence that, especially on the day before Mr. Pughe leaves for Tennessee, I think it's fair argument that the money went to pay for his bus ticket. It's certainly not an extraordinary leap to get there and I think Mr. Stern can make his equivalent, turn his mistrial motion into an impassioned argument to the jury about why my factual inferences are wrong, and I would suggest he do that then.

MR. STERN: Judge, how is it fair argument when there is no evidence of what the relationship between Mr. Taylor and

Ms. Jones is? For all the jury knows, it could be his sister, it could be his aunt, it could be anybody with him. How is it fair to say? How is it a fair inference to say that because he sends money to Ms. Jones, it goes to Mr. Pughe? There's just no evidence of it. The Government isn't allowed to make arguments out of thin air for which there's no basis whatsoever.

THE COURT: Well, I don't think that a mistrial is required under any circumstances.

Mr. Amatruda made it plain what he was asking them to draw that inference on. In other words, he -- I understand when he said it the first time, that he then thereafter made plain what it was he was basing his argument on. So, I don't think under any circumstances there's a basis for a mistrial but -- and I think that you can rebut it in your summation in the way that you just have.

What other relief would you be seeking from the Court, other than a mistrial?

MR. STERN: Well, first, let me say this. I think when we all read the record, we'll see that what he said was Mr. Taylor sent money to Mr. Pughe and there's just no evidence of that, but my motion's for a mistrial.

Short of that, I'd like a curative instruction that there was no evidence that Mr. Taylor ever sent money to Mr. Pughe.

THE COURT: Did you make the statement that mister -- I just -- that Mr. Taylor sent money to Mr. Pughe? I think you did.

MR. AMATRUDA: Judge, if I did, I thought that I clarified how it was that I -- but you know what? I'd be prepared, I mean, if I stated it incorrectly, certainly Mr. Stern raises the issue, I'll be happy to get in front of the jury and tell them that the only evidence that I have of money going to Mr. Pughe is through Ms. Jones.

MR. STERN: I have no --

MR. AMATRUDA: I'll be happy to do that.

MR. STERN: I have no interest in the Government getting up and continuing their summation.

MR. AMATRUDA: That's not what I'm saying. I'm talking about rebuttal.

MR. STERN: I don't know if there will be rebuttal or not.

THE COURT: I think he can clarify on his rebuttal summation that they had no evidence of any direct transfers of money to the extent that he said that, he has -- that there's no evidence in the case of any direct transfers of money from Mr. Taylor to Mr. Pughe. That would --

MR. STERN: You asked me the remedy I would like. I'd like an instruction from you, not from the Government.

THE COURT: Where is -- there was a tape where he

admitted getting the money?

MR. AMATRUDA: There was, Judge.

THE COURT: And you decided not to put that in?

MR. AMATRUDA: That's right.

THE COURT: All right. I'll take it under advisement.

MR. AMATRUDA: Thank you.

MR. STERN: Thank you.

(Off the record.)

(In open court; all parties present.)

(The defendants enter the courtroom.)

THE COURT: I've considered your argument, Mr. Stern; and I think that these are just arguments about inferences that be drawn from evidence. The Government made an argument. I don't think the argument is so speculative as to be one that the Court precludes the Government from making. I think it's a matter of what weight the jury gives to that argument.

As to the question about whether there was any concern that the Government was saying that there was wires that went directly from Mr. Taylor to Mr. Pughe, I think it's sufficient if the Government in the rebuttal summation just clarifies that. I don't --

MR. AMATRUDA: Judge, I guess I was just -- my only concern is I did have a chance to ask the court reporter to read from the record the summation, and at least the portion that she read for me, I don't say that.

THE COURT: You don't?

MR. AMATRUDA: I do not.

MR. STERN: I agree with that. I had it read to me, as well; and he did not say it. I was mistaken.

THE COURT: I thought I heard it.

So, there's no need to do anything about it.

There is one thing that I heard that I may have misheard and, Mr. Amatruda, that gave me a little bit of pause

and it deals with the venue issue.

MR. AMATRUDA: Oh.

THE COURT: It's -- and I'm not sure that I heard it correctly. I don't think that the mere sending of proceeds of the activity to New York would necessarily be in furtherance of the conspiracy. In other words, if you were sending home money to Mom, I don't think that would establish a venue. I'm not -- maybe I misheard it.

MR. AMATRUDA: I did say that, Judge. My theory was that the directing of drug proceeds towards New York, towards this jurisdiction, would establish venue here, some act directly toward this jurisdiction.

THE COURT: I don't think so. The charge says it has to be in furtherance of the conspiracy.

MR. AMATRUDA: Well, sure, but, I mean, I -- I mean, my argument was that if there's -- there's drug money and you do something with the drug money, it's certainly in furtherance of the drug conspiracy. If your Honor disagrees with me, I apologize.

As a legal matter, I thought that was my theory; and I believed it was right. If you want to issue some kind of corrective instruction to the jury, you know, I certainly don't have an issue with that, if I got it wrong.

THE COURT: Is that an issue, Mr. Stern?

MR. STERN: I think that's right. To be as honest as

I can, I'm not really trying this case on venue. I could have, but I'm not. I'm not summing up on venue. I'm summing up on the facts of the case. I think it's an accurate statement of the law that spending money, however you spend it elsewhere, is not in furtherance of a conspiracy, unless you intend just to launder it somehow. I think if you send money to friends or family, that's not money laundering. That's something else.

MR. KAMDANG: I think Mr. Amatruda's contemplating a curative instruction. I think that's probably a sensible way to proceed in this case. I also was not going to close on venue. I think it's in there. I think it's proper for it to be in there in a case like this. I think, given the statement that's out there, that it's proper to instruct the jury as to the correct statement of the law, unless Mr. Amatruda wants to stand up in rebuttal and say he was wrong on the law. That would be fine, too.

THE COURT: Maybe just when I charge it, I can say, "In addition to the elements I've described to you, you must decide whether any act in furtherance of the crimes charged occurred within the Eastern District of New York."

I guess I can say, "Merely sending the proceeds of drug activity to friends or family would not constitute an act in furtherance of the crime."

MR. STERN: That would satisfy us.

MR. KAMDANG: That's fine.

THE COURT: Is that right?

MR. AMATRUDA: Like I said, Judge, if I was wrong on the law, I'll accept whatever instruction you want to give on that.

(Brief pause.)

THE COURT: It might be I would say merely sending the proceeds of narcotics to friends and family unrelated to the conspiracy would not be in furtherance of the conspiracy.

MR. STERN: That's fine.

THE COURT: Okay.

MR. STERN: Maybe instead of "friends or family," you can say "others."

THE COURT: To other people unrelated to the conspiracy.

MR. STERN: Yeah.

THE COURT: I'll have to rephrase that because that brings into play the money sent to Ms. Jones.

(The jury enters the courtroom.)

THE COURT: Okay. Please be seated.

Mr. Stern?

MR. STERN: Yes. Good afternoon.

If you're with a drug dealer, you must be a drug dealer.

That, in essence, is the Government's case. The problem is that that argument is neither true legally, nor is

it true factually. The judge will tell you when she gives you the charge that just being present with someone who's committing a crime doesn't make you guilty of that crime. You're with a friend who's shoplifting, you're not a shoplifter, even if you know there's shoplifting.

You're with friends who are smoking pot, you don't possess that pot unless you agree with them to somehow possess it jointly.

So, when the Government says to you he was with drug dealers and there were drugs there, he's guilty, you have to reject that. It's not true as a factual matter. You all know in your day-to-day lives, if you're in the car of a plumber and the plumber has pipe wrenches and pipes and U-joints around, doesn't make you a plumber, unless you're working with him or her.

So, don't let the Government tell you he's in a car with drugs and in the car is a drug dealer, therefore, he's a drug dealer. You might not like it, but it's not a crime to be friends with people involved in crime.

The Government stood up and said to you we've proven the case against Mr. Pughe beyond a reasonable doubt, and that's the only person I'm talking to you about is Darien Pughe.

The judge will tell you he's entitled to have you make a decision about him on his own. Is he guilty beyond a

reasonable doubt or not? And a good place to start is to look at the people who provided the bulk of the evidence to you, and that's officers and agents in Kingsport, Tennessee.

Now, I'm sure that they're good people. They seem to be nice enough people; but you learned things about them, about the quality of the work they do, about their ability to jump to unfounded conclusions, that should make you wonder if the Government has carried their burden.

A whole part of this case had to do with the initial attention paid to Mr. Pughe. And, really, that has very little to do with your resolution of the case, because Mr. Pughe was not the man they were looking for. They agree with that.

But it did tell you something, something important about the kind of work the Kingsport Police Department does. They had what they agree was a general description, a vague description; and even with that vague description, they didn't look to see if Mr. Pughe matched it. The description was a person from Detroit. They made no effort to find out if that bus was from Detroit.

The description was a young man; and much to his chagrin, Mr. Pughe is no longer a young man.

They had no description of age or height or weight or hairstyle, scars or tattoos.

They did have a time. The time was in the morning, but they all got tired that night and went to sleep. And by

the time they got to the bus station, it was 2:15. It was no longer the morning. So, they just looked at the first black man to get off the bus and said that must be him.

Was it way he behaved that made them say that? Well, they agree that it wasn't.

He did the same exact things that people do every single day all over the country when they get on a bus -- get off a bus. They phone someone and say, "Hey, come get me." He didn't act nervous. He didn't act anxious, but they said that's our man. We're going to follow him. It's not really the kind of police work that you should accept as providing proof beyond a reasonable doubt.

But it's not only those things that let us know that they weren't really interested in getting to the bottom of things, that they were just interested in making arrests, because we know that when they fill out documents -- and you can look at, I think it's Government's 16, Government Exhibit 16 filled out by Agent Hammonds -- that he puts down information that's just wrong on this one short document.

The whole document is about ten lines. He gets the make of the car wrong. He calls it a Ford Explorer when it's an Expedition. He gets the place where he finds things wrong. He says it's inside the Ford Explorer. This is his work, the kind of work that you're asked to rely on in finding proof beyond a reasonable doubt.

You also note that when there's an opportunity to really find things out, they don't do it. I think you'll remember that Agent Hammonds said there was this scale with this flat plastic surface. I know we can take fingerprints off of it and we have the ability to do so. Now, had Mr. Pughe's fingerprint been on that scale, that would have meant something; and had it not been on that scale, that would have meant something.

Now, the Judge will tell you that there is no obligation to use any particular investigative techniques and that, of course, is true, but when it comes to someone on trial in serious cases, the Government should do everything they can to find out if they're right or wrong when they bring someone to court.

They don't fingerprint that scale. They don't fingerprint the baggies. They don't check the razor to see if it has traces of drugs on it. They don't even try to fingerprint the bags that has the cocaine in it, the crack cocaine in it.

Now, what if his fingerprints were on that? It would say he's guilty. He's participating. And if they weren't, you would have reasons to doubt. Now, be clear about something. Mr. Pughe cannot do these things. It's in the hands of the Government. Only they can do these things; and when they choose not to, it's them you have to look to, not Mr. Pughe.

So, what does the Government say proves that Mr. Pughe is guilty beyond a reasonable doubt? Is it Mr. Taylor, his friend? Well, it can't be that. It's not against the law to have bad friends. Is it that he's in a car with drugs? It can't be that. That's not enough to prove guilt. They rely on several things, none of which prove his guilt.

They rely on the baggies in the back seat, and they say these baggies are used to package drugs. These baggies are also used to package sandwiches and all kinds of things, but there is no evidence connecting those baggies to Mr. Pughe. You'll recall that he's in the back seat of the Expedition and he's sitting here and his bag is here and over here behind the driver's seat are those baggies. No one sees him touch them. No one sees him hold them. No one knows when those baggies came to be there. No officer ever says to you, I saw him fumble with his bag, I saw him unzip his bag, I saw him take something out of his bag, I saw him hand something to anyone. All they see is him get off the bus, get in a car, and 20 minutes later he's arrested.

Well, what else do they say proves that he's guilty? They say he has a razor. Now, that razor, you don't know if it's ever been used or not; and razors have many different purposes. I'm sure one is for cutting up crack and one is for cutting lines of coke and one is for cutting open boxes, and maybe there's even still people who shave with single-edged

razor blades.

But is there any evidence produced by the Government that connects Mr. Pughe and that razor blade to this conspiracy? Ask yourselves when you go into the room together to deliberate: What single piece of evidence shows us that he joined, that he agreed, that he decided to work with anyone else in this narcotics conspiracy?

It also doesn't really make sense that he would come from New York to Kingsport, a place filled with drugstores -- he also told you you could buy these razor blades in Kingsport -- and bring with him a razor blade. Why would he do that if his intent was to do something illicit?

Not only that, but you know that every time he was asked to do something by the police, he agreed. One of those things he was asked to do was to let them search him. He didn't try to keep them out of his pocket. He didn't throw the razor blade. He said, "Go ahead. Here I am. Search."

But the Government has their ace in the hole, right. They have the socks that Agent Hammonds tell you smell like cocaine.

Now, what happens is this: The car is stopped, and Agent Hammonds looks in the glove compartment and sees what he knows to be crack. He knows when he looks through Mr. Pughe's bag that he's looking for evidence of criminality and he has in mind drugs and he knows very well what drugs smell like.

He also tells that you the bags of crack he finds in the car do not have a smell. They're sealed. And as he's going through this bag at the scene, looking for evidence of criminality, he says, "I find no piece of evidence, nothing incriminating," right there while it's in his mind, "I'm looking for something connecting Mr. Pughe to drugs." But he tells you a day later, "I go back and I smell these socks and these socks smell to me like coke." There's two things to be said about that.

First this: He didn't say that in the hearing in Tennessee. When he was asked in Tennessee could it have been powerful foot odor, he said absolutely.

But he tells you here -- no, no, I was being facetious. The lawyer was picking on me. I've testified three times in connection with this case and every other answer I've ever given was the truth, but this answer, even though I was under oath and had sworn to tell the truth, this answer was facetious.

He was asked this question.

"QUESTION: But you never found cocaine in the sock?

"ANSWER: No.

"QUESTION: Could it be a bad case of foot odor?

"ANSWER: Absolutely.

"QUESTION: Okay.

"ANSWER: Unlikely, but anything is possible."

Another thing to be said about this. Mr. Amatruda stood in front of you, and he said corroboration is the key to a case. Two separate officers saw this coke, this crack that was in the glove compartment. Two separate officers saw Ms. Wright fussing around with her hands. For everything we bring you, there's corroboration.

Well, where's the corroboration for this? Were those socks sent for testing? Did you see a lab report saying there was coke present on these socks?

Did he call in another officer and say, "Look, I'm not sure about this. Maybe I'm crazy. Smell this and tell me if had smells like coke." Did he bring them in to you and say, "Here's the coke. Here's the socks. Smell them and see if they're the same." No.

Why? Because they really have no case against Mr. Pughe. What are one of the things that should create a reasonable doubt in your mind that Mr. Pughe was in a conspiracy? Well, one of the things that happened you know about from Ms. Hyatt. You know from Ms. Hyatt, who the Government vouches for, the Government tells you Ms. Hyatt came in here and told you the truth, that she herself was in a car where someone had narcotics paraphernalia and she didn't know about it until they were stopped by the police. Only then did she become aware that she was in a car where there was narcotics paraphernalia.

So, when the Government says to you how in the world could that happen? Isn't that a ridiculous thing to say? Then their own witness is ridiculous.

Don't let them say that it can't -- they say, well, he must have known when Ms. Wright began fussing around with her hands. Well, maybe he did know then. Does that make him a member of a conspiracy? Does it make you a member of a conspiracy when you're with your shoplifting friend and a security guard comes up to her? It doesn't. Might make you nervous, might make you unhappy, but it doesn't make you guilty.

Mr. Pughe never acted like a guilty person. The police approached the car, and they see him doing absolutely nothing. They asked him for ID, and he gives it to them in his real name. They ask him to step out, and he agrees. They ask if they can search him, and he says sure. They ask can they search his bag, and he says go ahead.

Not really the way that a guilty person acts.

Let's compare him for a minute to the way Ms. Wright behaved. Ms. Wright was fussing around with her hands. She was trying to shove the glove compartment shut. She gives them a fake name. Astrop, I think was the name she gave them. Everything about her and the way she acted made clear that she knew she was doing something wrong. The opposite is true of Mr. Pughe.

He had been in town about 20 minutes when this happened and now he sits here and for the most part that's the Government's case. But there is one other thing. The Government called Ms. Hyatt and the Government says that Ms. Hyatt came here and told you the truth and Ms. Hyatt was someone who claims that she was intimately involved with Mr. Taylor's life, that she knew people he knew in New York and she knew people he knew in Tennessee and she knew people who were his customers and she knew people who were his partners and she named people and identified people in pictures.

But when she saw Mr. Pughe's picture in the paper after he was arrested, she said, "Who the hell is that guy?"

She had never seen him. She had no idea who he was.

That's the case. In the end, the Government has failed to give you sufficient evidence to prove Mr. Pughe guilty of the crime of which he is charged. They ask you to speculate, and it's your job to say, no, we demand proof beyond a reasonable doubt and, without it, we'll do what we have to do. We have ample reasons to doubt it.

And in the end it's your job to say Darien Pughe is not guilty.

Thank you.

MR. KAMDANG: Good afternoon, ladies and gentlemen.

Dewayne Taylor has done nothing wrong here. This is a case about assumptions, about cutting corners, and about bias.

Over the course of the trial you've seen that the Government's case is entirely built on innuendo, bias of police officers, and a self-serving witness.

When Dewayne Taylor was arrested, the police discovered that he had a record. So, they made assumptions. He's not the type of person that they want in the city of Kingsport, Tennessee. Only in this case Mr. Taylor didn't do anything wrong. So, we ask you to enter a verdict of not guilty.

Now, I hope I've done enough to show all of you that Dewayne Taylor did nothing wrong in this case; but the fact is you don't have to agree with me. This isn't a whodunit novel. It's not your job to figure out what happened out there that day.

As Judge Amon will explain to you, the question before you is this: Has the Government proven their case beyond a reasonable doubt?

So, before we talk about the actual facts of this case, we need to talk about three guiding bedrock principles that will guide your deliberations; and Judge Amon will tell you about them.

Now, the first principle I'd like to talk about is something you've already heard about. It's the presumption of innocence. Now, I know that in a case like this, the presumption of innocence is hard to give. We're all sitting

here in Federal Court. Mr. Taylor's been sitting at that desk the whole time. And the Government's marched witness after witness after witness and said guilty, guilty, guilty.

The Government's stood up; and they said guilty, guilty, guilty.

But the presumption of innocence is something that's fundamental to our system. It's what sets us apart from Iran. You might have wondered what we were talking about. There are a lot -- we were picking the jury, there were a lot of people in this room and jury selection took a long time and we are all thankful for all of you being here.

And it took a long time to do that, and the reason why is that there were a whole lot of people in the jury who said they couldn't give that presumption of innocence. When Judge Mann and the Government and Mr. Stern and I, we went over there and we all spoke, you might have wondered what we were saying. I'll tell you. We all came to an agreement. We all came to an agreement about all of you. All of us believe in all of you because we believe that all of you can give that presumption of innocence, that you can give Mr. Taylor that fair trial.

So, Mr. Taylor's presumed innocent. Nobody can take that presumption of innocence away, not me, not the Government, not even Judge Amon. Mr. Taylor wears that presumption of innocence like a cloak; and the only way he loses that presumption is if you, the jury, make a determination that the

Government has proved its case beyond a reasonable doubt. And that brings us to our second guiding principle, the burden of proof.

Now, when Judge Amon instructs you, she's going to tell you that the burden of proof is on the Government. Mr. Taylor's presumed innocent. It would be fundamentally unfair for anyone to have to come into court, to be accused of a crime, and have to prove their innocence. So, what does that mean? It means that if there's -- and it's true, as Mr. Stern pointed out, that Judge Amon will instruct you that no specific investigative techniques were required, but that instruction will also say -- and it's going to start off by saying that the burden of proof always remains on the Government.

So, if there's anything in this case that you would have wanted to see, anything that would have made your decision easier -- for example, maybe you wanted to meet this reliable confidential informant; maybe would you have wanted to see some fingerprints or DNA testing -- if there's anything in this case you wanted to see and that gives you a reason to doubt, don't look to me, don't look to Mr. Taylor, don't look to anybody but the Government, because the Government carries the burden of proof. And if they haven't carried the burden of proof, then you have a reason to doubt; and you should vote to acquit.

And that brings us to our last and most important guiding principle, reasonable doubt. Reasonable doubt is the

highest standard that exists in the entire American system of justice. If the Government wanted to take your house, if the Government wanted to take your children, they could do so; and the standard of proof that they would have to meet would be lower than the standard of proof than you will all apply today.

Now, we hear about reasonable doubt all the time. We hear about it on television shows. We hear about it on the news. Sometimes we read about it. Sometimes we hear people talking about it on the street. But it's not a common conversation to come home to dinner and say, what's reasonable doubt? But that's the exact question that all of you have to ask today.

So, at the close of this case, Judge Amon's going to give you a whole bunch of instructions and it is important that you listen to everything that she says, but I'm going to ask you a favor. When Judge Amon explains reasonable doubt, make sure you listen to that part, because this is what Judge Amon's going to tell you.

She's going to tell you that you should apply the same standard of care and consideration that you would in one of the most important affairs in your own life, and that's because there is no more an important decision than the decision that you're going make for Mr. Taylor.

So, those are the stakes; and here's the standard. This is what reasonable doubt means. Judge Amon will tell you

that in applying that standard of care and consideration in one of the most important affairs of your life, if you hesitate to act, then you have a reasonable doubt; and you must vote to acquit. If you would hesitate, if you would pause. So, what does that mean? It means you might not agree with me. You might think that Mr. Taylor's guilty. In fact, you might think that he's probably guilty. You might be pretty sure that Mr. Taylor is guilty after hearing all of the evidence.

But if there is anything in the Government's case that makes you hesitate in one of the most important affairs of your own life, applying that standard, then you have reason to doubt; and you must vote to acquit.

So, let's give that some life. Imagine you're -- let's think of an important parallel. Let's think that we're home and we're with our family and watching TV, "American Idol" or "The Wire" or you're watching PBS and you hear an unexpected knock on the door. You're not expecting anybody. You're a little confused but you're with your family and you get up and you answer the door. And you open the door and Linsey Hyatt is at the door and Linsey Hyatt is at the door and she asks you for a check, a check for $200 for Katrina relief.

Knowing everything that we know about Linsey Hyatt, with her history and all the lies that she's told, would you hesitate before writing that check? Would you pause before

writing that check? Of course you would, if it was your own life; but that's the check that the Government's trying to cash in this case.

The reasonable doubt, ladies and gentlemen, it only takes one; and finding a reasonable doubt in a case like this shouldn't be difficult.

Now, I'm going to speak about some of the bigger reasons for doubt in this case, but the fact is we've heard a lot of evidence and you all heard and you all have your own thoughts on the case. So, one thing I'll ask you is that if there's anything that I didn't have time to talk about, hold on to those thoughts. Those thoughts are valid. If you think of any other reasons to doubt, share them with your fellow jurors. That's part of your oath.

So, let's start with the police in this case, because the police give us a number of reasons to doubt; and let's start with the police have told us that they had a reason to be looking for a black male when they put that bus stop under surveillance, only none of their actions seem to back that up.

Now, Agent Hammonds came in and he's the Government's lead witness and he gave you a very specific act and he told you, he said, well, we were looking for a guy from Detroit. He's going to be young. He's going to be black. He's going to be carrying a duffel bag.

Now, we know that's not true. Although Agent Hammonds

put on a suit and said that, in 2009 we know that's not true. And why? Because we heard from Agent MacDonald and Agent MacDonald is his boss, he's Officer Hammonds' boss, and he told you in November he spoke -- he talked to Agent Hammonds and he asked him about what the tip was and the tip was black male. That's it.

And I asked him. Did he say anything about a duffel bag?

No.

Did he say anything about age?

No. Just a black male.

Now, that in itself might just be a small inconsistency. But what's really troubling in this case is that Agent Hammonds, who's very sure, and he wanted you to believe this informant was reliable. I called him a confidential informant. Agent Hammonds always said reliable confidential informant. He's reliable. The one piece of information they had in this case for this tip, this alleged tip, was that this person was going to come on the morning of November 16th, 2008.

So, the police officers of the Kingsport Drug Task Force started their surveillance that previous night at 10:00 o'clock. Why would they do that if the tip was reliable? What's even more interesting is that on redirect, Mr. Amatruda asked and he gave Agent Hammonds a chance to explain himself

and he said, well, you know what? What we learned is the buses are a little bit unreliable, and they come different times. So, we started at 10:00 o'clock the night before; and we all got tired. So, we all went home.

But then he said a curious thing; and you can ask to hear the transcript read back you to, if you'd like. He said, well, you know, we knew the only bus coming back was the 2:15. One bus comes that day. So, we just left and came back. We came back that afternoon in time for the 2:15 bus.

The only time these police officers weren't there was the one time that this so-called reliable informant told them that this so-called shipment was coming in.

Now, the details of the car stop are equally shaky; and I asked you at the beginning of the case to listen to the story the officers give you, because the story doesn't quite make sense.

Now, if you listen to Agent Hammonds, there's this thrilling account. It's almost like being in a movie. Agent Hammonds says he's sitting. He's got the bus stop under surveillance, and this car pulls up in full acceleration and picks up this guy and then speeds off and then stops in the middle of the road and then turns left and then turns right and then conducts this U-turn. And Agent Hammonds says he's absolutely sure that this car is trying to avoid being followed, that whoever's driving this car is afraid they're

being followed.

But -- and he even uses all these official sounding terms like "counter-surveillance techniques" and "Crazy Ivan."

But the problem with that and what doesn't make sense is if someone was truly driving up to get a shipment of drugs from New York and they were that suspicious that they feel the need to stop in the middle of the road, conduct this Crazy Ivan, cut through a parking lot, and then come to a screeching halt, wouldn't that person be suspicious enough to close their glove compartment? But that's not the story that Agent Hammonds wants you to believe. He wants you to believe that for some reason they left this glove compartment open so he could walk up, stroll up to the car, and see some crack in the glove compartment; but that doesn't make any sense.

And if that gives you a reason to hesitate, then you should vote to acquit.

Now, the police had an explanation for that. Okay? And they came up and they gave the Government this video. They said we have this video and we will prove to you that this lock is broken. Now, what's curious in this case is although they made this video, the Government didn't show you that video. I put that video in. When I -- at the beginning of this case I told you to test the evidence that you see and test the evidence that they don't -- that you don't see. Test the evidence that the Government doesn't want to show you. That

video's in evidence, and you can watch it. Think there's some shenanigans going on? You think that the officers are padding their case? That makes you hesitate or pause, that's a reason to doubt.

Now, the most curious thing about this stop is that Mr. Amatruda himself took a different position and contradicted his only officer; and Mr. Amatruda just stood up and said, you know what, it's probably the case they didn't know they were being followed. That's not what Agent Hammonds' story was and you can ask to hear that testimony or your own recollection will recall.

So, then this car gets pulled over; and it's undisputed that Jessie is the only person in the car who has drugs. It's undisputed that Jessie has a serious crack problem. It's undisputed that Mr. Taylor voluntarily gave consent for the police officer to search his car. It's undisputed that Mr. Taylor got out of car when he was asked; and there's no allegations, nobody's suggesting he was acting furtively.

Now, the other thing that's really important here is that when Agent Hammonds comes up, he tells you, safety is my most important consideration. Safety. I'm looking at everybody's hands. I'm looking all over the car. And he told you when he went up there, he didn't see an open glove compartment; and he didn't see that console. All right. He

told you that when Mr. Taylor went to get his wallet, he reached towards that area. Didn't see a console. Didn't see the digital scale.

It's not until after Mr. Taylor gets out of the car that Agent Hammonds turns his attention back to the car and sees Jessie taking the crack out of her pants and trying to hide them in the glove compartment.

Now, the Government wants you to believe that the crack and the scale belong to Mr. Taylor. As Mr. Stern said, why didn't they send any of this out? Why don't they give us any corroboration? This is the highest standard that exists in the law, and the burden remains on the Government.

When I was in second grade, I had a teacher; and she always used to have this expression. I never understood what it meant. She would say, "Len, don't make a Federal case out of this." I never understood what it meant until I came to Federal Court. Don't make a big deal about it. Don't make a Federal case about it.

Folks, this is a Federal case. We're in Federal Court. That's a Federal judge and we are all sitting here and you should demand more. The stakes couldn't be higher in this case.

So, the police find Jessie with drugs; and she's the only person with drugs on her.

Let's talk about assumptions. Now, the Government

introduced a 14-year-old transcript from a 1995 drug case and Judge Amon gave you instructions and she told you that you can only consider that for proof that he had knowledge, that there were drugs in that glove compartment, that he had knowledge of drugs in this case.

Now, if you listen to the testimony, that case from 14 years ago didn't have anything to do with the car. It didn't have anything to do with the glove compartment. It had to do with some guy named Hector that we've never heard about. It had nothing to do with this case.

Why would the Government introduce this? How does this prove he had knowledge of crack in -- this isn't a case about 1995. This isn't a case about 2006. This is a case about 2008.

How does this case from 14 years ago show you anything about what Mr. Taylor knew in 2008? The only thing it shows you is the one impermissible thing Judge Amon will tell you that you cannot do. The reason why the Government introduced that is they want you to think that he's a drug dealer. They want to stain him. They want you to think that he's a bad person and bad people commit crimes. That is precisely the type of logic that Judge Amon will tell you is improper. And it's very important you follow that instruction because this isn't a case about rumor, and innuendo and rumor and innuendo is not a substitute for evidence.

Now, I'm going to turn to the jailhouse phone calls. Now, during the opening, I told all of you you were going to hear so many things that would make you not like Mr. Taylor; and, of course, I was referring to those prison phone calls. The Government's right, that if you take those phone calls in isolation, they do seem to show that Mr. Taylor's guilty.

Why would an innocent person want to pay somebody not to testify against him, if they truly did nothing wrong? And those phone calls seem to suggest that. The problem here, though, is that we know that these phone calls didn't just happen in isolation. I'm going to ask you to try and imagine the situation from Mr. Taylor's perspective. Imagine you're Dewayne Taylor and you're pulled over in a car in Kingsport, Tennessee, and next to you is a white crack addict and you're pulled over by four white police officers. He's been to jail. He's no stranger to the game. Is it that hard for Dewayne Taylor to look at Agent Hammonds' playbook and know what the next move is going to be? Of course not.

Now, you might sit there and say, Mr. Kamdang, that is crazy. Mr. Kamdang, that -- that is a bold assertion that he's afraid that these police officers will go out of their way to make their case against him.

But in this case we don't have to speculate. Because look at the facts of this case, ladies and gentlemen. This is a case where Dewayne Taylor is pulled over in a car. Jessie

 Wright has 122 grams of crack in her pants.

The Government's star witness in this case took the stand, told you that she used drugs, that she sold drugs, that she packaged drugs, and in one incident went to a Government agency, an impound lot, and stole a bag with a thousand grams of crack. 122 grams of crack from Mr. Taylor, a thousand grams of crack for the Government's star witness.

Now, what does she get for that? Does she get prosecuted? No. Because Agent Hammonds made her a promise. Is she facing anything? Is she even getting a parking ticket for this? No.

In fact, aside from not getting prosecuted, she -- they're actually paying her. They're giving her money. She gets off scot-free. So, is it crazy to sit here and suggest that Mr. Taylor would think, you know what, I'm not going to get a fair shake here? When he's arrested, he is sitting next to his girlfriend. He knows she's got a problem. He knows he has got to stay on her good side because he knows what the next play in the playbook is and you may not believe me, but this is a case where we see it.

So, that brings us to Linsey Hyatt. Ladies and gentlemen, I hope I did a decent job of showing you what Linsey Hyatt's motivations are in this case. All I ask you to do is test her evidence. Think carefully about what her allegations were against Mr. Taylor in this case. Think carefully about

what her context was and what her basis of knowledge is for knowing about this case. Again, we're not hiding from the '95 conviction. We're not hiding from the fact that in 2006 Mr. Taylor went to jail. All right. And we're not hiding from the fact that in 2006, that they were dating, Mr. Taylor had some problems, and Linsey Hyatt knew all about it. And she met all the characters. She met all the people. Then Mr. Taylor went away for 18 months.

And when he came back, when he came back, they dated for a month. She saw him once a week, she said. Now, note that when she's talking about 2006, her level of specificity doesn't change in 2008; and that's how you know she's just saying what she needs to say.

And think about the situation. It's April of 2009 when the police approach Linsey Hyatt. They tell her we are investigating Dewayne Taylor. They tell her we are investigating conduct that happened between September of 2008 and November of 2008 and we need to know about Dewayne Taylor and we know that you're involved in drugs. We impounded this car, and we suspect that you're involved in drugs.

From Linsey Hyatt's perspective, what can she do? She can say, yeah, I know all this stuff about in 2006; but I don't really mess with the man anymore. In 2008, in fact, he has my car; but I told him I wanted him to register it in his own name. I didn't want anything to do with the guy.

What does she do? So, what does she do? What is she left to do? With all that she's facing, you heard she has two young children, you heard that she's working her best, and I'm happy for her, that she is trying to get past her crack addiction. I'm happy for her that she's trying to get her life on track. But what does she have to lose? All that shows you is how much she has to lose in this case.

Now, Mr. Amatruda talked about corroboration; and he says that one of the keys to this case, one of his three keys was corroboration. And Linsey Hyatt came in, and she made a number of flagrant allegations against Mr. Taylor. She was saying everything and everything she -- anything and everything she could to make out a case against Mr. Taylor.

And Mr. Amatruda gave you a parking ticket. He gave you this Nissan Xterra parking ticket. He says, look, this is corroboration; so, you know she's telling the truth.

If you want to talk about corroboration, if he's a major drug dealer like Mr. Amatruda's saying, where are the drugs? Where's his huge stash? Where are these thousands of dollars of cash they're talking about? Where's any of this? According to Linsey, she knows where his stash house is; she knows where he sells drugs out of. There's this trailer. Now, she didn't give us an address, she didn't tell us where it was, we didn't see any pictures of it, but she says that she knows. So, why don't they go there and find something, if he's this

major drug dealer? What's backing that up? Nothing.

Two other things. On the issue of the trailer, one of the things she told you is that he bought this trailer in 2008 and he's selling drugs out of this trailer. Great. That's wonderful. That's something that we can check. That's something we can corroborate. Where is the evidence of that? She talks about this car-switching scheme. Where are these rental car records? Where's anything? What is the -- does the Government honestly think that they can just mail this in in a Federal case? That's why we have the reasonable doubt standard, because the Government's in a position to find that evidence; and Mr. Taylor's not.

Now, the last thing, of course, that I'd like to talk about is the one specific incident that there should definitely be corroboration for and that's the one specific thing that the Government will even stipulate that they couldn't find the corroboration for and that's this incident where there's this hotel raid and all these people are arrested.

Now, Mr. Amatruda put a police officer on the stand and says that's corroboration. Look, it really happened. The police officer took the stand, and this raid really happened. That's how you know she's telling the truth.

But, ladies and gentlemen, we're not talking about New York. If there's a police raid in Coney Island, you might not hear about it; but as Mr. Amatruda said in his opening

statement, Kingsport, Tennessee, is a small town. If you think about it being a small town, imagine how much smaller the community is for the crack addicts in Tennessee. If there's a police -- if there's a police raid, it's not that surprising that you would hear about it. So, she makes these allegations. She says Mr. Taylor went, he bailed everyone out 'cause those were his drug dealers. And Agent McQueen went there. He's like, okay. That's -- thinks that something that I can work with. He goes there. He tries to make the case. He can't. The Government stipulated to that.

So, where is the corroboration in this case? Every single fact that we've trying to corroborate doesn't pan out in this case, and we see nothing of the big facts.

Is that proof beyond a reasonable doubt?

In the end, ladies and gentlemen, I'm not asking you to believe me; and the fact is you don't have to believe me. All I'm asking for is an acknowledgment in this case. All I'm asking for is an acknowledgment that the Government hasn't carried their burden; that if you look at the witnesses, if you test their story, if you test their motivations, their reasons to hesitate, and if this was an important decision in your own life, would you hesitate before acting.

All we're asking for is an acknowledgment that the Government hasn't carried their case.

I'm going to sit down now and Mr. Amatruda's going to

get up and he's going to make a couple more arguments. But I want you all to know that Mr. Amatruda doesn't have the last word here. All of you do. So, if there's anything that I haven't had time to talk about, anything that you've thought about that I haven't been able to say, when you retire to the jury room, share those thoughts with your fellow jurors.

'Cause if you do, if you test the evidence, you're going to see that the only verdict supported by the evidence in this case is not guilty.

Thank you.

THE COURT: Thank you, Mr. Kamdang.

MR. AMATRUDA: Your Honor, I believe if it's okay with you, I need to approach for a moment.

THE COURT: Actually, why don't we take just a ten-minute break now? So, then I can go with my charge right after this.

(The jury leaves the courtroom.)

(Discussion at sidebar; continued on the following page.)

MR. AMATRUDA: Judge, I have a couple of issues. One is that the -- the bags of drugs were fingerprinted and I did give the lab reports to counsel that shows that no fingerprints were found on the bags. You know --

THE COURT: You made the argument.

MR. STERN: I did, and that's true. I mean, I didn't remember at the time; but that is true.

MR. AMATRUDA: I mean, I can -- I guess I can -- I don't know what to do. I can make the argument. I don't want to make a big deal about it.

I don't think it's -- it's not the center-point of my case. We didn't bring it into evidence because there was really no result from it.

MR. STERN: It is true, however; and I should have been aware of it. I think it's fair for him to make the argument.

I don't want to speak for Mr. Kamdang.

MR. KAMDANG: The only thing I would say is -- the only thing I would say is I think the -- Mr. Amatruda's right but if he brings that argument out, I think a number of -- the flavor of Mr. Stern's argument -- and I made the same argument -- is they should send the other stuff out, too, the digital scale and that stuff was not.

I think to say, well, the bags were sent out without talking about everything else, it -- if Mr. Amatruda's going to

say, look, they sent the bags out, we couldn't get fingerprints, they didn't send the scales out, they couldn't get fingerprints.

MR. STERN: I guess the problem is that's what objections are for, to warn people when they do something that's objectionable.

MR. AMATRUDA: I'm not sure I handled that the best way.

MR. STERN: As I think about it, as eager to agree to this, had I been warned at the time, admittedly it's my fault. I'm not saying it's anyone's fault other than mine; but having been warned of the objection, I would have withdrawn it.

I don't want it to appear that I lied to the jury, because I didn't. I made a mistake rather than lying to them.

MR. AMATRUDA: You know, Judge, I think on balance I can just leave it alone. I mean, it's fine.

I know that it's -- like I said, I don't think it's really -- I don't know that it's the focal point of the case and I guess since I didn't jump up and object, I don't know that it --

THE COURT: It's however you want to handle it, Mr. Amatruda. If that's your -- the way you want to resolve it, then fine.

MR. AMATRUDA: Okay. Let me just think about it for one second.

But there was another issue; and that's that Mr. Kamdang, when he was mentioning the prior conviction, was saying that it doesn't have anything to do with this case, it's very different from this case. The one way that it is similar to this case is that there was the connection between New York and Tennessee for the drugs. That's not the same people, but there is a connection there.

I was reluctant -- you know, I'd like to argue it but I'm reluctant to do it without running it by your Honor and hearing what Mr. Kamdang has to say about it 'cause I don't want to --

MR. KAMDANG: I think he should be able to argue that.

THE COURT: I think you can argue that, you know, among other things the Court will give you an instruction about similar acts. This was a similar act. I think that's the way you can argue it. Because one of the -- for it to be relevant, it has to be similar.

MR. STERN: The only thing I think he should be cautious about is making clear he's only talking about Mr. Taylor because that was evidence admitted solely against Mr. Taylor.

MR. AMATRUDA: Yeah. Let me talk to you for one second.

(Discussion between all attorneys; off the record.)

MR. AMATRUDA: Judge, I think we worked something out.

I think what I'm going to argue is that go back to the record where the question was put to Agent Hammonds that he didn't send it out, which is true. I don't believe he did specifically -- was -- he was the one to ask, specifically ask for it to be fingerprinted and I actually know that was the case because what really happened was that I told them -- I asked them not to fingerprint it because I wanted the FBI to do it.

They sent it out; and it was actually fingerprinted anyway by the lab down there which turned out to be fortuitous because the FBI, if anybody's interested, wouldn't touch it after it'd been up here and handled.

So, the bottom line is I'm just going to argue that Agent Hammonds said that he didn't send it out; but that's where the record ends of this. You're not supposed to speculate about things that aren't on the record.

MR. STERN: I think that's a fair solution.

THE COURT: By that -- why would you make that argument? Because your argument was they were not sent out, correct?

MR. STERN: It was, yes.

THE COURT: That was your argument.

MR. STERN: It was.

THE COURT: I don't know where that argument takes you to explain anything. I mean, if you're concerned about that,

that argument doesn't take you anywhere.

I'm not trying to -- believe me. Don't get me wrong. I'm not trying to try this case for either side, but I think in fairness I don't know where that takes you.

Do you have the document that says there were no print on it?

MR. AMATRUDA: (Nods head affirmatively.)

THE COURT: Can I see it?

MR. AMATRUDA: Uh-huh.

(Brief pause).

THE COURT: Do you have it there?

MR. AMATRUDA: I'm sorry, Judge. You know what? I --

MR. KAMDANG: I think I have it.

THE COURT: Do you have it?

(Brief pause.)

THE COURT: The only thing that comes to mind is whether, Mr. Stern, you wanted to deal with it and just say --

MR. STERN: I would, yeah.

THE COURT: I'd give you the opportunity to do it now.

MR. STERN: I would say I was mistaken about the bags. The other things were not sent out but the bags were and there were no results. It's not in evidence. I think we'd have to --

THE COURT: Do you want to -- something can be admitted, I think, at any time.

MR. STERN: I do, too.

THE COURT: If you want to stipulate to its admission, we can do that now.

MR. KAMDANG: I think I would object because I made a similar argument.

THE COURT: You didn't say that, did you?

MR. KAMDANG: I talked about them not sending things out; and if they did send something out, that would seem to undermine that argument.

THE COURT: Then you shouldn't have said it either.

MR. KAMDANG: I knew that he -- they didn't send the scales out.

THE COURT: No, but I mean I think what Mr. Stern can do is say we'll all agree. Nobody sent anything else out.

MR. STERN: Right. What I would say is I made arguments of them not sending things out for fingerprinting. I included in that argument the bags in which the crack was packaged. I was mistaken about that. Those were sent out, and there were no latent fingerprints on them.

THE COURT: So, why don't we just admit that as the exhibit?

MR. AMATRUDA: Fine with me 'cause it's right.

MR. KAMDANG: My perspective is I think the Government waived the objection. It wasn't even --

THE COURT: I just don't like there to be mistakes. I

mean, I corrected the Government when nobody made an objection about the issue of law either; and, oftentimes, I've had people say that they specifically reserved decisions until the end of summations because they think it's disrespectful to interrupt someone.

You know, that happens often that lawyers come up to me after a summation is over and say, "I want to raise this point because I didn't want to object."

Now I'm giving Mr. Stern the opportunity to handle it however he wants to do it. It gives him a few more minutes of argument to say they didn't or, you know, nonetheless they didn't --

MR. STERN: I'm not arguing with you. I think it's a fine solution.

THE COURT: Okay.

MR. KAMDANG: The thing I think is unfair, especially since it comes after my summation, it seems like the objection is something I did but that's speculative but I didn't argue things that in retrospect I should have brought out.

THE COURT: You didn't what?

MR. KAMDANG: I didn't argue things in my summation that I think are true on the record. For example, I did not ask Linsey Hyatt if in this hotel raid it was in the newspaper. That was an argument that Mr. Amatruda made and I think that once the record's closed, the record is closed and the fair

 thing to do is to make the strongest arguments that you can make on what's been admitted at that time.

THE COURT: Look, this is it seems like to me Mr. Stern's issue. Mr. Stern is agreeing to it. I don't see how it affects you.

MR. KAMDANG: It affects me because I made a similar argument.

THE COURT: So, do you want to say something?

MR. KAMDANG: I mean --

THE COURT: Do you want to make another comment about it?

MR. KAMDANG: I don't think that cures the issue. I think that we should leave it be.

THE COURT: I think that the way that Mr. Stern has agreed to it is fine and deals with it. We can admit this as an exhibit now.

Either one of you can deal with it. If you want to say something about it, I'll let you. If you don't want to say something about it, you don't have to.

MR. KAMDANG: Without waiving my objection, I will not say anything about it.

THE COURT: Okay.

MR. STERN: Will this -- we'll make it a Government exhibit, I guess.

MR. AMATRUDA: Sure. It will be 56 I believe it is.

MR. STERN: Can I just write on it?

THE COURT: Sure.

If you want to make any further argument about this, I'll permit you to do it, Mr. Kamdang. I mean, I'll let you get back up and say anything else you want, since this wasn't in before.

If you want to do that, you can do it.

MR. KAMDANG: I understand. I think -- and, granted, speculating what's going on in the jury box is voodoo -- my only concern is that because we're taking so long after my argument, I think that if Mr. Stern gets up, it will be clear that the issue is there.

So, I'm happy to sit down.

THE COURT: Okay.

MR. KAMDANG: No principled reason for saying that.

THE COURT: The record should reflect if you wanted to say anything else, I'm giving you the opportunity.

MR. KAMDANG: I'm putting on the record that I won't. So, don't ask me.

THE COURT: I won't ask you in front of the jury if you want to say anything else.

MR. KAMDANG: Thank you.

THE COURT: I was going to add with respect to the venue charge, in addition -- the venue charge begins, "In addition to the elements I've described for you, you must

decide whether any act in furtherance of the crimes charged occurred within the Eastern District of New York.

The act -- an act must further an aim or objective of the conspiracy. For example, if drug proceeds were sent to New York for purposes unrelated to the conspiracy, again, for example, as a gift to a family member, that act standing alone would not support venue in the Eastern District of New York."

Is that acceptable?

MR. STERN: It is.

MR. KAMDANG: It is to me.

MR. AMATRUDA: Okay.

THE COURT: Mr. Stern, I'm just going to indicate to the jury that, I'm permitting Mr. Stern to speak to you again for a moment on -- because there was an inadvertent error or something -- inadvertent mistake.

MR. STERN: That's fine.

THE COURT: Okay.

(Off the record.)

(In open court; all parties present.)

(The defendants enter the courtroom.)

THE COURT: Are you ready, Mr. Amatruda?

MR. AMATRUDA: Yes, I am, Judge. Sorry.

(The jury enters the courtroom.)

THE COURT: All right. Ladies and gentlemen, please be seated. Before we proceed with Mr. Amatruda's rebuttal summation, I think -- I'm giving Mr. Stern the opportunity to address you. I think based on an inadvertent mistake that he made, he wants to just clarify. So, he has that opportunity.

MR. STERN: I think you remember that I talked about the Government not sending out things to be fingerprinted; and I was partly right and partly wrong, because they did send out the bags to be fingerprinted and they're Government Exhibit 56. It came back showing that there were no viable prints, but the argument remains the same about the scale which Officer Hammonds conceded to you was a perfect surface for fingerprints and was not sent out.

The fact remains the Government's failed in their attempt to prove Mr. Pughe guilty beyond a reasonable doubt, and the fact remains the same that in the end you should find him not guilty.

I'm sorry about the error. Thank you.

THE COURT: Okay. Mr. Amatruda?

MR. AMATRUDA: Thank you, Judge.

Make no mistake about when this case was made, when this case was proven. This case was proven when these people were pulled over in a car with 130 grams of crack in it.

The rest of the evidence that you heard is to give you context of things. And I think one example of context, Mr. Stern says that, well, someone's in a plumber's car and they're not a plumber. Well, when somebody has a wrench in their pocket and has a washer in their other pocket, they start to look more and more like a plumber and then you find out that they happen to know the person who is the plumber and then you happen to find out that they get in a car after their girlfriend has been sent money for long plane -- for a bus ride. Things start to add up. It's really a question of context and it's easy to pick apart individual things and to say, well, the glovebox with crack in it doesn't make any sense at all. It must be made up by these officers who are out to get somebody.

Well, when you look at it in context, it's really not that unbelievable that -- I would submit you to that it is believable what happened and these officers who supposedly, you know, the defendants are in a lot of sense trying to have it both ways. On one hand, the specific evidence, well, that doesn't make sense because you pick it apart that way that it doesn't -- it doesn't mean anything but if you look at the bigger pictures, well, the bigger picture must be that these

officers have realty concocted this story.

Well, if they concocted a story, why weren't the drugs in Mr. Pughe's bag? Why did he say, well, it just smelled like it? I mean, hardly ideal to, you know, to say that you found crack because the socks smelled; but that's what he says because that's the truth. It's not -- I submit to you that that was the truth. It's not that he -- it's not -- if he really had a couple of days to find, to come up with all this evidence, and the best he could do was odor on a pair of socks, he's a terrible liar, terrible.

And I submit to you that Agent Hammonds was trying to be truthful with you. There was that comment that he made about being facetious on the record. Again, not a good thing to be facetious under oath with somebody. It's not something that we would run from, but it's also not something that he ran from. He said what happened. He said that the defense attorney was giving him a hard time; and the guy says, well, could it be foot odor? All of a sudden things start to take a little bit of a different turn in the flavor of it, the sense that it almost does sound, are you kidding?

And that's the answer -- that's the answer that he gave is anything is possible. I don't think -- I think if you discuss Agent Hammonds' testimony, I submit to you that this idea that anything is possible is not -- obviously not what he meant. I think he certainly was clear about what he smelled

and what he saw when he searched the bag. So, I don't think that -- I think that's a lot of smoke about something that's not really, really an egregious error that they made it out to be.

Look, these officers talking about counter-surveillance and talking about all these other things, does it really change the fact that the car was stopped with 130 grams of crack in it? Maybe they are the Keystone Cops, but who cares. There was drugs in the car when it got pulled over; and there's really been, I submit to you, nothing that's been raised that draws that into question. There just -- there just hasn't been.

And that's what the case ultimately comes down to; and it comes down to that, plus all this other stuff.

I mean, when you start thinking about the testimony of Linsey Hyatt, right, well, Mr. Taylor would say, well, yeah, she's got every incentive to lie and make up this great story about Mr. Taylor. Why does she tell us that he was actually the least busy during the period of time that he's charged for? How good of a story is that? Well, you know what, Government? Even though he's dealing well over 50 grams of crack cocaine in a very short period of time during the period he was charged for, wouldn't she have done a lot better if instead of saying, oh, I saw 5 kilos in 2006, she said I saw it in 2008? Isn't that what you want to hear, Government?

Or is it more like she got on the stand and told us what she saw? I submit to you that it's the second thing.

I don't think -- I think that -- I submit to you that a lot of -- when you go back and talk, you're going to put together a lot of different pieces of the puzzle that you heard. You're going to talk about the testimony of Linsey Hyatt. I submit to you that her testimony was truthful and that it matched with things that you heard. And the point of a traffic ticket isn't that that's the best she could do in terms of telling us something that was truthful. It's the sense that she's in a precarious position. She gets up there on the stand and she testifies and she knows that her life is on the line if she lies.

So, where does that leave her? If she tells a lie, does she know that something in that wallet, it doesn't totally contradict what she says, and all of a sudden she's looking at this huge jail time? That's why the little details are important.

They come out. You can evaluate them against evidence that you know, and her life is on the line for that. In this case she told you that there was an Xterra in there. Her life was on the line for that if she was lying about it. She got it right. That's what happened, I submit to you.

I think as to Mr. Pughe, it's one thing to say, well, somebody has a razor blade in their pocket. It could be for

anyone. I won't belabor this too long 'cause this is probably a horrible analogy, but if you were ever to go into, say, a restaurant and you saw somebody standing at a counter where they're preparing food and there's sugar and chocolate and flour on the counter and they have eggs there, what are they doing? They're making dessert, right? What about if you go to the next counter; and the guy's got salad, tuna fish, green beans, and eggs? What's he making? He's making a salad with the eggs.

So, can you really take -- does that mean that that egg is not used because you see it in the context of he's making a salad? Does that mean it's not used for dessert, or does that mean it couldn't be used for anything? No. But in the context that you're looking at it, he's not making a making dessert out of an egg that he mixed the tuna fish. Just doesn't happen.

That's the case you're looking at here. He's meeting a friend. He obviously has a connection to this guy. This guy is a major drug dealer. You've heard his conversations. He's there with a razor blade. He shows up. He's got the smell of crack in his bag. It's about context. That's what it is.

And I guess I'd just like to conclude -- I mean, I don't think it belabors the point to talk about the phone calls where Mr. Kamdang, who is implying that somehow there's something nefarious about this guy's phone calls and that he

needs to engage in a sort of a double play against the Government because they're going to get him. So, he's going to make up something to do with this woman, Nicole. Well, you heard the tone of his voice. You heard how he was talking. You heard how he was talking about her, and Ms. Wright told you exactly how the drug dealers view her. She's standing up. She's gonna hold it down. You got to keep her comfortable so she won't be snitching. I mean, it's -- there's really nothing else it could be.

And I submit to you that as to both defendants, that's what this case comes down to. There's -- against Mr. Taylor there is an enormous weight of evidence against him showing that he was a major crack dealer engaged in interstate crack dealing, which is only one other point about his testimony. Mr. Kamdang had highlighted, well, what does that have to do with this case? How you can draw any conclusions in this case? Well, another thing that it shows you is his drug connections to New York. He had them ten years ago. He obviously got started again in Tennessee, and it was really the same pattern over and over again. He comes back where he went. He says, "Where's the old gang? Let's get started."

I don't mean to imply to you that he was dealing drugs with the same people in 1995. He was testifying about those folks. There's not evidence that that's the case. What I do mean is that he has engaged in drug dealing before with this

interstate nexus between New York and Tennessee, and that's part of what he was doing here.

Lastly, again, I just urge you to listen to Judge Amon's instructions when you come to the conspiracy charge. Listen with respect to Mr. Pughe; and, as I said, the case comes down to it really just cannot be anything else.

THE COURT: All right. Ladies and gentlemen of the jury, it is now my responsibility to instruct you on the law.

Your duty is to follow these instructions. You should not be concerned about the wisdom of any rule of law that I state. Regardless of any opinion that you may have on what the law may be or should be, it would be a violation of your oaths as jurors to base your verdict upon any view of the law other than that given to you in the instructions of the Court. You have the important responsibility to judge the facts, and you alone are the judges of the facts -- not counsel and not I.

I express no opinion to you whether the defendants are guilty or not guilty. Nothing I have said or done should be used by you in determining whether the defendants are guilty or not guilty. You will decide the case solely on the evidence before you and the law.

Your recollection of the evidence governs, not that of counsel.

You are the sole judges of the credibility -- that is, the believability -- of all witnesses and the weight of all

evidence, consistent with the instructions of this Court.

The fact that the prosecution is brought in the name of the United States does not entitle the Government to any greater consideration than any other litigant. By the same token, it is entitled to no less consideration. No party is entitled to sympathy or favor. You must carefully and impartially consider all the evidence, follow the law as I state it, and reach a just verdict, regardless of the consequences.

It is the duty of the attorneys on each side of the case to object when the other side offers testimony or other evidence that the attorney honestly believes is not properly admissible. You should not hold it against an attorney or the attorney's client, meaning either a defendant or the Government, because the attorney has made objections or because of anything else the attorney may have said or done.

When the Court has sustained an objection to a question addressed to a witness, you must disregard the question entirely and may draw no inferences from the wording of it or speculate about what the witness would have said if he or she had been permitted to answer the question.

The evidence upon which you are to decide what the facts are comes in several forms.

First, the sworn testimony of witnesses, both on direct and cross-examination, and regardless of who called the

witness;

Second, exhibits that have been received by the Court in evidence;

Finally, facts to which all the lawyers have agreed or stipulated.

The parties have stipulated to certain facts in this case. Such a stipulation is an agreement among the parties that a certain fact is true. You must consider such stipulated facts as true.

In addition, the parties have stipulated to certain testimony. Such a stipulation is an agreement among the parties that, if called, a witness would have given certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the weight or effect to be given to that testimony.

What is not evidence:

Certain things are not evidence and are to be disregarded by you in deciding what the facts are.

First, the indictment is not evidence against the defendants. It's merely the Government's accusation in writing, and it is entitled to no weight in your judgment of the facts.

As I've said before, argument or statements of lawyers are not evidence.

Questions alone put to the witness are not evidence.

 Objections to the questions or to offered exhibits are not evidence.

Anything said or done by the Court is not evidence.

Obviously, anything you may have seen or heard outside the courtroom is not evidence.

There are, generally speaking, two types of evidence from which you may find the truth as to the facts. One is direct evidence such as the testimony of an eyewitness or physical evidence. The other is indirect or circumstantial evidence, evidence of facts and circumstances from which it is reasonable to infer or deduce connected facts that reasonably follow in common experience.

A simple example would be the following:

You come to court on a day when the weather is clear and dry. After some hours in the courtroom, a person enters through the rear door, wearing a raincoat and shaking a wet umbrella. Without your ever looking outside, you might infer from these circumstances that while you were sitting in court, it had rained outdoors. That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact the existence or the nonexistence of some other fact.

There is no distinction between the weight to be given either direct or circumstantial evidence. No greater degree of certainty is required of circumstantial evidence than of direct

evidence.

Now, the counsel in summing up have asked you to draw certain inferences from the evidence in this case. Any inferences you draw must be reasonably based on the evidence, and you may infer only such facts as your reason and common sense lead you to believe follow from the evidence. You are not to engage in speculation based on matters that are not in evidence.

The defendants have pled not guilty, thereby placing in issue each element of the crime charged in the indictment.

The Government has the burden of proving guilt beyond a reasonable doubt with respect to each element of the crimes that the defendants are charged with committing. The burden never shifts throughout the trial. A defendant does not have to prove his innocence and need not submit any evidence at all.

The defendants are presumed to be innocent, and that presumption of innocence remains with the defendants throughout the trial and must be considered by you in your deliberations.

Under our Constitution, a defendant has no obligation to testify or present any other evidence because the burden is upon the prosecution to prove a defendant's guilt beyond a reasonable doubt as to every element of the crime charged. You may draw no inference whatsoever from the fact that the defendants did not take the witness stand. You must not consider the fact that the defendants did not testify. You are

not to speculate why the defendants did not testify or about what they might have said if they had elected to testify.

I have said that the Government must prove the defendants' guilt beyond a reasonable doubt. The question naturally is: What is a reasonable doubt? Well, the words almost define themselves. It is a doubt based upon reason and common sense. It is a doubt that a reasonable person has after carefully weighing all of the evidence. It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life.

Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs. A reasonable doubt is not a doubt that arises out of a whim, it's not a doubt based upon speculation or suspicion, it is not an excuse to avoid the performance of an unpleasant duty, and it's not sympathy.

In a criminal case, the burden is at all times upon the Government to prove guilt beyond a reasonable doubt. The law does not require that the Government prove guilt beyond all possible doubt. Proof beyond a reasonable doubt is sufficient to convict.

If, after a fair and impartial consideration of all of the evidence, you have a reasonable doubt based on the evidence or lack of evidence presented at trial, it is your duty to

acquit. On the other hand, if, after fair and impartial consideration of all the evidence, you are satisfied of the guilt of a defendant beyond a reasonable doubt, you should vote to convict that defendant.

Now, the defendants in this case are on trial together. In reaching a verdict, however, you must bear in mind that guilt is individual. You must consider the case of each defendant on the crime charged against that defendant separately, and you must return a separate verdict for each defendant as to the single count against that defendant. Your verdict as to each defendant for the single crime charged against that defendant must be determined separately, solely on the evidence or lack of evidence presented against that defendant, without regard to the guilt or innocence of anyone else. Your verdict as to one defendant should not control your decision as to the crime charged against the other defendant.

I'm now going to proceed to discuss the offense charged in the indictment. The defendants are charged with one count or crime.

The indictment charges as follows:

On or about and between September 1st, 2008 and November 16th, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants, Darien Pughe, Dewayne Taylor, and Jesse Wright, together with others, did knowingly and

intentionally conspire to distribute and possession with intent to distribute a controlled substance, which offense involved 50 grams or more of a substance containing cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code Section 841(a)(1).

Section 841(a)(1) provides in pertinent part: It shall be unlawful for any person knowingly and intentionally to distribute or possess with intent to distribute a controlled substance.

Cocaine base, which is commonly referred to as crack cocaine, is a controlled substance within the meaning of this section. The conspiracy charge alleges that the defendants violated Section 846 of Title 21, which provides that any person who conspires to commit any offense defined in this subchapter commits a crime.

Here the Government charges that the defendants violated Section 846 by conspiring to distribute and to possess with intent to distribute 50 grams or more of a substance containing cocaine base.

Now I will charge you what is meant by the -- explain to you, rather, what is ment by the charge of conspiracy.

Conspiring to commit a crime is an offense separate and distinct from the substantive crime that is the object of the conspiracy. Forming a conspiracy -- a partnership for criminal purposes -- is in and of itself unlawful. The essence

of the crime of conspiracy is an agreement to violate the law.

A conspiracy, even if it should fail of its purposes, is, nevertheless, a crime and, therefore, it is not necessary for the Government to prove the commission of any substantive offense for you to find a defendant guilty of conspiracy.

In order to prove a defendant guilty of conspiring to violate the narcotics law, the Government must establish three elements beyond a reasonable doubt;

First, that two or more persons knowingly and willfully conspired or agreed;

Second, that they agreed to commit an unlawful accounts;

And, third, that the defendant knowingly and willfully joined the conspiracy.

I will first discuss the second element of the crime of conspiracy, an agreement to commit an unlawful act. Then I will explain the first and third elements of the crime.

The unlawful acts alleged in the indictment are the distribution and the possession with intent to distribute 50 grams or more of a substance containing cocaine base in violation of Section 841(a)(1) of Title 21 of the United States Code.

The indictment, therefore, charges the defendants with conspiring to commit two separate unlawful acts: The distribution of cocaine base and the possession with intent to

distribute cocaine base. It is not necessary for the Government to prove that the defendants conspired to commit both of these unlawful acts. If you find the Government has proven beyond a reasonable doubt that a defendant conspired to commit either one of these unlawful acts, you should find that defendant guilty of the conspiracy charged in the indictment.

Let me caution you, however, that your decision as to whether a defendant conspired to commit a particular unlawful act, either distribution of cocaine base or possession with intent to distribute cocaine base, must be unanimous.

The unlawful acts of distribution and possession with intent to distribute themselves have several elements. Again, I remind you the defendants are not charged with actually committing these unlawful acts, but, rather, with conspiring to commit them. I, therefore, describe for you the elements of these unlawful acts only so you can understand what the Government must prove was an objective of the conspiracy.

In order for a defendant to be guilty of possession with intent to distribute, the Government must prove the following two elements beyond a reasonable doubt.

First, that the defendant knowingly and intentionally possessed cocaine base as charged, and, second, that the defendant possessed cocaine base with intent to distribute it.

To do something knowingly means to act voluntarily and purposely and not because of mistake or accident.

 To act intentionally means to act willfully with a bad purpose, to do something the law forbids; that is, to possess narcotics intending to distribute it.

The Government need not prove, however, that the defendant knew the exact nature of the drug or its exact amount. It is enough that the Government proves that the defendant knew the substance was some kind of controlled substance.

The element of knowledge which the Government must prove requires you to make a decision about the defendant's state of mind. It may be difficult to prove directly the operation of a defendant's mind, but a wise and intelligent consideration of all the facts and circumstances shown by the evidence and exhibits in the case may enable you to infer what the defendant's state of mind was.

To possess a substance, a person need not own it. The person may be possessing it for someone else. The word "possession" as used in the statute encompasses two kinds of possession: Actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is in constructive possession of it.

The word "distribute" means to deliver, and deliver has a simple meaning. It means to transfer to another person by sale or gift or otherwise. When I instruct you that you must find that a defendant intended to distribute narcotics, this does not mean that you must find that he intended personally to deliver or distribute it. It is sufficient if you find that the defendant intended to cause or assist in its distribution.

In order for a defendant to be guilty of distributing cocaine base, the Government must prove beyond a reasonable doubt;

First, the defendant knowingly and intentionally possessed cocaine base, as charged;

And, second, the defendant actually distributed the cocaine base.

I have just explained what it means to act knowingly and intentionally. I also have told you what it means to distribute under the narcotics law. Those instructions apply in the context of this unlawful act, as well.

Now, I will instruct you on the first element of conspiracy, which requires that two or more persons knowingly and willfully conspired or agreed. For you better to determine whether the defendants and others knowingly and willfully conspired or agreed, I will explain to you more fully the nature of a conspiracy and the kind of evidence that proves the

existence of a knowing and willful agreement.

A conspiracy is a combination of two or more persons to accomplish an unlawful purpose or purposes.

Although conspiracy involves an agreement to effect an unlawful act, it is not necessary for those persons who have entered into an express or formal agreement, or to have stated orally in writing, what the unlawful act was or how it was accomplished. It is sufficient to show that they came to a mutual understanding to accomplish the unlawful act.

You may, of course, find that the existence of an agreement to effect an unlawful act has been established by direct proof. Because, however, a conspiracy is often characterized by secrecy, such an agreement might therefore be inferred from the circumstances and conduct of the parties; but mere association or mere physical contact with conspirators, even with an awareness of their unlawful activity, does not make a person a co-conspirator.

In a very real sense, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed, consider the actions and statements of all those you find to be participants as proof that a common design existed on the part of those persons to act together for the accomplishment of an unlawful purpose.

I will now instruct you on the third element of

conspiracy. For the Government to prove the conspiratorial guilt of a defendant, it must establish both that a conspiracy existed and that the defendant became a member of or participated in the conspiracy willfully and with knowledge and in furtherance of its unlawful purpose. In deciding whether a defendant was, in fact, a member of the conspiracy, you should consider whether, based on all of the evidence, it has been shown that the defendant knowingly and willfully joined the conspiracy. Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objectives?

If the defendant did so participate, the extent of his participation has no bearing on the issue of his guilt. Each member of a conspiracy may perform different acts and may perform them at different times. Even if the defendant played only a minor role in the conspiracy, you may find him guilty of participation.

The Government must prove beyond a reasonable doubt a defendant's participation in the conspiracy by proof based on reasonable inferences drawn from evidence of his own acts, conduct, statements, or declarations, and his connection with the acts and conduct of other alleged co-conspirators.

A defendant need not have been a member of the conspiracy from its very start to be a co-conspirator. He may have joined in at any point during its progress and be held

responsible for all that was done thereafter, so long as he remained a member of the conspiracy. He also need not have been acquainted all the other members of a conspiracy or have been fully informed as to all the details or the entire scope of the agreement.

On the other hand, a person who has no knowledge of the conspiracy but happens to act in a way that furthers some object or purpose of the conspiracy does not thereby become a co-conspirator. To find that a defendant joined in a conspiracy, you must be convinced beyond a reasonable doubt that he did not act unknowingly or out of mistake, but, rather, that he knowingly and voluntarily entered into the alleged agreement.

The mere presence of a person at the scene of the commission of a crime, even coupled with proof that the person was aware that a crime was being committed, is not in and of itself sufficient to establish his membership in a conspiracy to commit a crime. Rather, the evidence must show beyond a reasonable doubt that he in some way associated himself with the venture and participated in it as something he wished to bring about.

Now, if you determine that either of the defendants are guilty of the crime charged in the indictment, you must next determine whether the Government has established beyond a reasonable doubt that the offenses involved the type and

quantity of narcotics charged in this indictment. In this case, the Government has alleged that the crimes charged in the indictment involved 50 grams or more of a substance containing cocaine base.

I'm just going to have my law clerk show you the verdict sheets at this point so you can understand this part of my charge. There are separate verdict sheets, as you will note, for each defendant. There's a separate verdict sheet.

All right. Everybody has a copy now. Let me just begin again.

In this case, the Government has alleged the crimes charged in the indictment involved 50 grams or more of a substance containing cocaine base. To prove this charged quantity, the Government need not prove that either defendant had specific knowledge of the type or amount of drugs involved; but it must prove beyond a reasonable doubt that 50 grams or more of cocaine base was actually involved in the crime charged.

For this reason you will see two questions on the verdict sheet relating to narcotics. This is on each defendant's verdict sheet. It asks:

"Do you find that the Government proved beyond a reasonable doubt that the conspiracy charged in the indictment involved cocaine base?"

You will answer that question "yes" or "no." If you

answer "yes," then you proceed to the next question.

"Do you find that the Government proved beyond a reasonable doubt that the conspiracy charged in the indictment involved 50 grams or more?"

And you will answer "yes" or "no."

Of course, you only answer these questions if you've already found that that particular defendant that that you're considering is guilty. If you find not guilty, you obviously don't go to these further questions. So, you can just hand those down. You'll get the verdict sheet later. You can just pass them over to the foreperson.

In addition to the elements that I have described for you, you must decide whether any act in furtherance of the crimes charged occurred within the Eastern District of New York. The act must further an aim or objective of the conspiracy. For example, if drug proceeds were sent to New York for purposes unrelated to the conspiracy, such as a gift to a family member, that act standing alone would not support venue in the Eastern District of New York.

Now, the Eastern District of New York includes Brooklyn, Queens, Staten Island, Nassau, and Suffolk Counties. I should note that on this issue, and this issue alone, the Government need not prove venue beyond a reasonable doubt but only by a preponderance of the evidence. To establish something by a preponderance of the evidence means to prove

that it is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, produces in your mind the belief that what is sought to be proved is more likely than not true.

If you find the Government has failed to prove this venue requirement as to the count in the indictment, then you must acquit the defendants.

You may have noticed that the indictment refers to on or about a certain date. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the dates alleged.

You have heard testimony that the defendant, Dewayne Taylor, engaged in criminal activity not charged in the indictment. In that connection, let me remind you that the defendant is not on trial for committing these acts not alleged in the indictment. Accordingly, you may not consider this evidence of similar acts as substitute or proof that the defendant committed the crimes charged, nor may you consider this evidence as proof that the defendant has a criminal personality or bad character. You may consider this evidence on the issue of whether or not the defendant possessed the necessary knowledge and intent to commit the crime charged in

the indictment. The evidence of the other similar acts was admitted for this more limited purpose, and you may consider it only for this limited purpose.

If you determine that the defendant committed the acts charged in the indictment and the similar acts, as well, then you may, but you need not, draw any inference that in doing the acts charged in the indictment, the defendant acted knowingly and intentionally and not because of some mistake, accident, or other innocent reason.

Evidence of a similar act may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that because the defendant committed the other act, that he must also have committed the acts charged in the indictment. You may not consider this evidence for any purpose as against the defendant Darien Pughe.

Evidence has been introduced as to the involvement of other persons in the crimes charged in the indictment. That these individuals are not on trial before you is not a matter of concern to you. You should not speculate as to the reason that these individuals are not on trial before you. The fact that these individuals are not on trial before you should not control or influence your verdict with reference to the defendants.

Although the Government bears the burden of proof, and although a reasonable doubt can arise from the lack of

 evidence, I instruct you that the law does not require the Government to call as witnesses all persons who may appear to have some knowledge of the matters in issue at this trial. The law further does not require that any particular investigative techniques be used by law enforcement authorities to uncover or prosecute crime. Law enforcement techniques are not your concern. Your concern is to determine whether or not, based upon all the evidence or lack of evidence in the case, the Government has proven the defendants are guilty beyond a reasonable doubt.

In deciding whether to find that each defendant is guilty or not guilty of the crime alleged in the indictment, you must weigh all the evidence before you. You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

You should carefully scrutinize all the testimony given, the circumstances under which each witness testified, and every matter in evidence which tends to indicate whether a witness is or is not worthy of belief. Consider each witnesses' appearance, conduct, intelligence, motive, state of mind, demeanor, and manner while on the stand. Consider the witness' ability to observe the matters as to which the witness testified and whether the witness impresses you as having an accurate recollection of these matters. Consider particularly the relationship each witness bears to either side of the case.

You should also consider the manner in which each witness might be affected by the verdict and the extent to which, if at all, the testimony of each witness is supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to discredit their testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience.

In weighing the effect of a discrepancy, consider whether it pertains to a matter of importance or to an unimportant detail and whether it results from innocent error or intentional falsehood. If you believe that a witness has willfully given false testimony with respect to a material matter, you may disregard the witness' testimony in whole or in part; but a witness may be mistaken or may have lied about part of the testimony and be accurate about another part.

You have heard testimony from law enforcement officers. The fact that a witness may be employed by the Government as a law enforcement official or a police officer does not mean that his testimony is deserving of more or less consideration or greater or lesser weight than that of an ordinary witness. It is for you to decide, after weighing all the evidence and in light of the instructions I have given you

about the factors relevant to determining the credibility of any witness, whether to accept the testimony of a law enforcement witness and what weight, if any, it deserves.

You have heard testimony from a prosecution witness, Linsey Hyatt, who has received a nonprosecution agreement. The testimony of this witness was given in exchange for a promise by the Government that she would not be prosecuted and that her testimony would not be used against her, as long as she does not violate her agreement.

The Government is permitted to enter into such agreements and to make such promises.

The testimony of a witness who has been given a nonprosecution agreement should be scrutinized with greater care than the testimony of an ordinary witness. You should, for example, ask yourselves whether the witness would benefit more by lying or by telling the truth. Was the testimony of the witness made up in any way because she believed or hoped that she would receive favorable treatment by testifying falsely? Or did she believe that her interests would be best served by testifying truthfully?

If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause her to lie; or was it one that would cause her to tell the truth? Did this motivation color the witness' testimony?

In sum, you should look at all of the evidence in

deciding whether you believe the witness and what weight, if any, to give her testimony.

There has been evidence introduced at trial that the Government called as a witness a person who was using drugs when the events she observed took place. Again, this is Ms. Hyatt. I instruct you that there is nothing improper about calling such a witness to testify about events within her personal knowledge.

On the other hand, her testimony must be examined with greater scrutiny than the testimony of any other witness. The testimony of a witness who was using drugs at the time of the events she is testifying about may be less believable because of the effects the drugs may have on her ability to perceive or relate the events in question.

If you decide to accept her testimony, after considering it in light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves.

The question of possible punishment of the defendants are of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively with the Court. Your function is to weigh the evidence in the case and to determine whether or not the defendants are guilty beyond a reasonable doubt, solely upon the basis of such evidence.

Under your oath as jurors, you cannot allow a

consideration of the punishment that may be imposed upon a defendant, if he is convicted, to influence your verdict in any way or to in any sense enter into your deliberations.

Remember, your recollection of the evidence governs. If you wish to have some part of the testimony repeated, you may make that request. I will call you into court and have the court reporter read those portions of the testimony you desire to hear. You can have anything read back to you. I suggest, however, that you be specific in your requests to avoid hearing something that you do not need to assist you in your deliberations.

I will also send into the jury room the exhibits admitted into evidence, except for the narcotics and the razor blade. If, during your deliberations, you wish to examine the narcotics or the razor blade, you may send me a note; and I will bring you in the courtroom where you will be able to examine these exhibits.

If in the course of your deliberations you wish for further help on the law or if you wish to hear any further explanation of law, you may send me a note telling me what you would like. I will, however, provide you with a copy of my jury instructions. You must consider the jury instructions as a whole and not single out any one instruction as stating the law.

If you wish during your deliberations to communicate

with the Court, you may send a note by a marshal. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing; and the Court will never communicate with any member of the jury on any subject touching on the merits of this case other than in writing or orally here in open court.

Bear in mind that you are never to reveal to any person, not even in open court, how the jury stands, numerically or otherwise, on the question of the guilt or the innocence of the accused until after you have reached a unanimous verdict.

You are entitled to your own opinions, but you should exchange your views with your fellow jurors and listen carefully to each other. Do not hesitate to change your opinion if you become convinced that another person is correct. But you must each make your own decision.

I will send you in a very straightforward verdict form for each defendant which simply lists the space for you to mark off your verdict, either guilty or not guilty as to the defendant on the single count of the indictment.

As I've previously indicated to you, if you make a finding of guilt, then you have to answer the other two questions.

Any verdict you reach must be unanimous. That means that the verdict as to each defendant, whether guilty or not

guilty, must be agreed upon by all of you. If your verdict is guilty and you proceed to the questions, your answers to those questions must also be unanimous. When you reach a verdict, send me a note saying that you've reached a verdict; but do not state in the note what your verdict is.

Traditionally, Juror No. 1 serves as your foreperson. If, however, Juror No. 1 does not wish to serve as foreperson, when you go to the jury room to begin considering the evidence in this case, I suggest that you first select another member of the jury to act as your foreperson.

Finally, your oath sums up your duty and that is: Without fear or favor to any person, you will well and truly try the issues before these parties, according to the evidence given to you in court and the laws of the United States.

Now, before I excuse you for your deliberations, I need to touch base at sidebar with counsel.

(Discussion at sidebar; continued on the following page.)

THE COURT: Are there any objections to the charge, Mr. Stern?

MR. STERN: Not as to Mr. Pughe.

MR. KAMDANG: The jury instructions are going back with the jury?

THE COURT: Yeah. Any objections to those charges?

MR. KAMDANG: No.

MR. AMATRUDA: No, Judge. Thank you.

THE COURT: All right. I added a paragraph that we talked about that will go in the draft of the instructions before it goes back.

MR. STERN: Yeah.

THE COURT: Okay.

MR. STERN: Judge, how late are you going to keep them today?

THE COURT: 5:00 o'clock. Maybe 5:30, depending on how long.

MR. STERN: I have theater at 7:00; so, it's not a problem.

THE COURT: Mr. Stern, depends on whether they want to stay.

MR. STERN: If they want to stay, I'll stay.

(Discussion at sidebar concludes; in open court.)

THE COURT: At this point in time, the law requires me to excuse our alternate jury. Thank you.

(The alternate is excused from the courtroom.)

THE COURT: All right. Ladies and gentlemen, after the marshal is sworn in and you begin your deliberations, we'll get the exhibits together and send them back and the charge and the verdict sheets.

COURTROOM DEPUTY: Please raise your right hand.

(The marshal is sworn.)

THE COURT: All right. Ladies and gentlemen, you're excused to begin your deliberations.

(The jury retires to the jury room to begin deliberations.)

THE COURT: All right. Now, have the parties gotten the exhibits together and reviewed each other's exhibits?

MR. AMATRUDA: Judge, I'm just going through the book to make sure everything's here. It will take me maybe a minute or two. I'll just flip through.

THE COURT: Were there defense exhibits?

MR. STERN: Not as to Mr. Pughe. The one exhibit was the last one we did that went in as the Government exhibit.

THE COURT: Mr. Kamdang?

MR. KAMDANG: The video.

MR. AMATRUDA: I marked the video as Taylor Exhibit 1. Is that okay?

MR. KAMDANG: (Nods head affirmatively.)

MR. AMATRUDA: And the stipulation as to the bail money is Defendant Exhibit 2, and that one we handwrote. So, we'll have to get a typed version of it for the jury.

MR. KAMDANG: I can run and type.

MR. AMATRUDA: I could fax it to my office, and they could probably send it back.

THE COURT: I want to give the exhibits to the jury now. Is there any problem with giving it that way?

MR. KAMDANG: Handwritten?

THE COURT: Yeah.

MR. KAMDANG: No.

THE COURT: Okay. Just make sure it has an exhibit tag on it.

MR. STERN: I guess we should also staple or something the addendum, that there was -- remember, we read a small part where Mr. Amatruda had written and we agreed that this conversation was between or about Mr. Pughe's relationship with his girlfriend. I have no problem with that being stapled or somehow attached to the stipulation that goes with. It was like 38, 38A, maybe.

MR. KAMDANG: Your Honor, for the record, I'm not sure I actually said I move in Exhibit 22. For the record --

THE COURT: Okay. It's in.

(Brief pause.)

THE COURT: Is there any objection to the transcripts going back as opposed to the reporter --

MR. STERN: Judge, I didn't go through them and take out objections, although I'm not sure there's a whole lot in there.

THE COURT: I said not the transcripts. I meant the transcripts of the phone calls.

MR. STERN: Oh, no.

MR. KAMDANG: Can I raise an issue while we're all here? Speaking to my client about the -- sorry, Mr. Amatruda. In speaking to my client about the video of the latch, we received that after we held the suppression hearing and he would like that to be part of the records and I think that that -- that's a reasonable request. At this time I would move to reopen the suppression hearing to include that video as part of the record.

THE COURT: You didn't have it before?

MR. KAMDANG: No, your Honor.

THE COURT: Was it done -- was the video done after the suppression hearing?

MR. AMATRUDA: I think it was, Judge. You know how I can tell? Give me one moment. I can look at my computer and see has date but I believe it was either -- if it wasn't after the suppression hearing it was --

THE COURT: You know, instead of getting in the middle

of that right now while we're trying to find the exhibits, why don't you all figure it out? If was received afterwards, then you make a -- I think you'd make a letter motion to reopen it to have the Court consider it and tell me in the letter why it's significant.

MR. KAMDANG: Very well, Judge.

(Brief pause.)

MR. STERN: Can I go out in the hall and make a phone call?

THE COURT: What I want to happen, Mr. Stern, based on prior experience, once the Government pulls all the stuff together, I want both defendants to state on the record they've looked through it and they know what's going back to the jury.

(Off the record.)

MR. AMATRUDA: Can I put something else on the record related to the exhibits to go back? I believe by all our agreement we're going to remove the evidence slips from the individual evidence envelopes because it refers to Mr. Taylor's alias. So, all it is is the list of what is in each exhibit; and there's actually a separately existing copy that matches that sheet with what's in the envelope.

MR. STERN: Okay. As long as Exhibit 16 is available for the jury to look at if they want to, which is the one I referred to in my summation, as long as that's available, I don't care about the rest of it.

MR. AMATRUDA: How about can you guys work out something with 16 then?

THE COURT: What's the issue?

MR. AMATRUDA: The issue, Judge, is that all of the exhibit -- there's evidence slips that the agents used and they put them inside of each envelope and it labels what's in the envelope and it also says where the envelope -- where the evidence was recovered from. There's two issues.

One is that all of the evidence slips refer to Mr. Watts, and we've agreed that the jury didn't need to know about the alias "Watts." That's why I was proposing to take them all out.

THE COURT: They don't need to have a slip inside telling them what it is.

MR. STERN: That Agent Hammonds was impeached with inaccuracy with respect to one of those slips, as to --

MR. AMATRUDA: I think if we take a marker and draw through the name and write "Dewayne Taylor" on top, I don't --

THE COURT: You want to do that?

MR. AMATRUDA: I'm fine with that, Judge.

THE COURT: Okay. You're fine with going back with those descriptions of where everything was seized from? Is that what they are?

MR. STERN: Doesn't matter to me because my point was it was inaccurate.

MR. AMATRUDA: It says, the example would be digital scales, razor, box of Glad bags, location inside Ford Explorer. It's really nothing --

THE COURT: As long as the defendants are seeing what's going back.

MR. STERN: Once everything's together, we'll take a look.

THE COURT: I'm going to send an additional note to the jury with these exhibits that says:

"Ladies and gentlemen of the jury, also in evidence are tape-recordings of phone conversations and a video of the glove compartment. If you wish to hear these conversations or see that video, you can send me a note. I will bring you into court. I will not send the recordings or video in the jury room because you have no equipment in the jury room to listen to them or watch the video."

(Off the record.)

MR. KAMDANG: Do you mind if Mr. Taylor has a seat back there so he can have a seat with his daughter?

THE COURT: No, he can't do that. That's a security issue with the marshals. I can't permit that.

MR. KAMDANG: Could they approach to here (indicates)?

THE COURT: No. You know, I just -- while Mr. Amatruda's getting that, if they want to sit in the -- not in the first row, in the second row and say something to

Mr. Taylor, they can. Once the Court starts talking, there's no conversations; and they cannot come and sit at the table.

(off the record.)

MR. AMATRUDA: Judge, there's one other issue; and that's with the 404(b) evidence. I don't think we can send that back because it was -- we read pieces of the transcript.

THE COURT: That's in the transcript. If they want to hear about that, they can --

MR. AMATRUDA: That's what I was going to propose.

THE COURT: We didn't introduce the exhibits. You just read.

MR. AMATRUDA: No, they're not in evidence.

(Off the record.)

THE COURT: Do you have part of the exhibits that can go back?

MR. AMATRUDA: I think we're just working on it.

THE COURT: Are you almost ready?

MR. STERN: I think we are almost ready.

THE COURT: Okay. Have we got everything together?

MR. STERN: The last thing is being written out.

THE COURT: Have you looked, Mr. Kamdang, through the exhibits that the Government intends to send back?

MR. KAMDANG: I have, your Honor.

THE COURT: Are you satisfied they're all in evidence?

MR. KAMDANG: I'm satisfied.

THE COURT: Mr. Stern, have you looked that the exhibits the Government proposes to send back?

MR. STERN: I have.

THE COURT: Are you satisfied they're all in evidence?

MR. STERN: I will be, as soon as we have this written out.

THE COURT: But what they have you've looked through.

MR. STERN: Yes.

THE COURT: There's one further exhibit that's being written out.

MR. STERN: Exactly.

THE COURT: Okay. And, Mr. Amatruda, your exhibits are in that U.S. Postal Service box?

MR. AMATRUDA: Judge, yes, the physical evidence is in the United States Postal Service box; and the documentary evidence is in a binder labeled with the exhibits.

THE COURT: Is that also in the box?

MR. AMATRUDA: It's -- we can put it in now, though, Judge.

THE COURT: The aerial photo is in or not? The aerial photo is in evidence, correct, Mr. Stern?

MR. STERN: As far as I know, it is, yes. I'm sure it is because he was testifying about it. We were standing over there.

MR. AMATRUDA: Is there a final version of the charge;

or is that what you gave us, Judge?

THE COURT: I sent the charge back, the verdict sheet, and my note that if they want to listen to the recordings.

MR. AMATRUDA: This is ready to go.

THE COURT: Okay. All right. I guess they can take the defendants downstairs, unless we get a note. Then we'll bring them back up.

(The defendants leave the courtroom; off the record.)

(In open court; all parties present.)

(Defendants enter the courtroom.)

THE COURT: Okay. The parties have seen the note?

MR. AMATRUDA: Yes, Judge.

MR. KAMDANG: Yes, Judge.

MR. STERN: Yes.

THE COURT: "Dear Judge Amon, we believe we've completed deliberations for today and would like to reconvene for tomorrow morning. We have reached a verdict for one of the defendants and are still deliberating on the other."

Now, there was -- the parties had wanted the verdict reported on the one defendant? Was that their --

MR. STERN: I would prefer to it have that way; but, obviously, whatever you want to do is fine.

THE COURT: What's your position, Mr. Kamdang?

MR. KAMDANG: No problem either way.

MR. AMATRUDA: I don't have a position either way.

THE COURT: Under the law, as I understand it -- and this is a case, a dated case, I guess, United States v. Delappe, under circumstances like this I should just explain to the jury that referencing this part of the note that they have the option, if they choose, to report that verdict now or to wait until they've completed their deliberations and report both verdicts.

If they wish to report that verdict now, they have to

understand that it is not subject to any later revisions.

MR. STERN: Fine.

MR. AMATRUDA: (Nods head affirmatively.)

THE COURT: That's what I will instruct them and send them back out and ask them to tell me what they want to do.

Is that acceptable to every?

MR. STERN: It is.

MR. KAMDANG: Fine.

MR. AMATRUDA: Yes, Judge.

(Brief pause.)

(The jury enters the courtroom.)

THE COURT: All right. Ladies and gentlemen, just be seated for a moment. I have your note which says:

"We believe we have completed deliberations for today and would like to reconvene tomorrow morning."

That's fine. We have no possible with that.

The second part of your note, it says:

"We have reach a verdict for one of the defendants and are still deliberating on the other."

Let me just advise you of the following options. If you wish to do it, you could report now the verdict on the one defendant that you've reached a verdict on; or you could wait until you completed all of your deliberations and report a verdict as to both defendants.

One thing I should caution you about. If it is your

decision to report the verdict on one of the defendants at this point in time, that verdict would not be subject to any later revision. In other words, you couldn't change your mind about that verdict. So, let me just send you back and just so you can answer that question, whether you would want to report the one verdict now or whether you would wait, prefer to wait until the conclusion of your deliberations. So, you can just send me a note and tell me how you want to proceed as to that particular matter. Okay? So, I'll just send you back; and we'll just wait to hear from you.

(The jury leaves the courtroom.)

MR. KAMDANG: I just have a question. The note is Court Exhibit 5?

THE COURT: Yes.

MR. KAMDANG: We're curious what 1 through 4 was.

THE COURT: One through four. I don't know the exact order; but it was my jury instructions, the two verdict sheets, and the note I sent them about listening to the recordings.

MR. KAMDANG: Okay. Thank you, your Honor.

(Off the record.)

THE COURT: All right. The jury instruction's Court Exhibit 1.

Mr. Pughe's verdict sheet was No. 2.

COURTROOM DEPUTY: And Dewayne Taylor's verdict sheet is No. 3.

THE COURT: Mr. Taylor's sheet was No. 3.

And then my note about the recordings was No. 4.

An No. 5 was the note we just got from the jury.

(Brief pause.)

THE COURT: Okay. "We have decided not to give any verdict at this time."

So, why don't you just bring them back out; and I'll tell them they're excused for the evening and not to discuss the case.

(Brief pause.)

(The jury enters the courtroom.)

THE COURT: All right. Just be seated for a moment. I have your note that you've decided not to give any verdict at this time. That's fine.

So, I'm going to excuse you for the evening with the admonition, of course, not to discuss this case with anyone.

Do not resume your deliberations tomorrow morning until everybody, all twelve of you, are there in the room. Okay. So, don't start talking about it until everyone is there; and we'll resume at 9:30 tomorrow morning.

So, okay. Have a nice evening. Thank you.

(The jury leaves the courtroom.)

MR. KAMDANG: Your Honor, should we leave our cell phones? We don't have to be here at 9:30? The jury will start deliberating?

THE COURT: Well, you have to be here to be around for notes and all. I don't -- I think when I am satisfied that all twelve are there, I'll just tell them to resume deliberations. We don't need to call the case I don't think.

MR. KAMDANG: Would it be acceptable to be on five-minute call?

THE COURT: Five minute meaning you're really five minutes?

MR. KAMDANG: I'll keep my suit on.

THE COURT: Just be somewhere else in the courthouse, you mean?

MR. KAMDANG: Just in my office.

THE COURT: Where's your offers?

MR. KAMDANG: Federal Defenders.

THE COURT: Okay. Just give your -- make sure Ms. Holley has your number. Okay. All right. So, then if there's no objection, I'll just make sure that they're all here and then tell -- them to send a note in saying, "I understand all twelve of you are here. Resume deliberations," without calling the case.

That's acceptable to everyone?

MR. STERN: Yes.

MR. AMATRUDA: It is.

MR. KAMDANG: Yeah.

THE COURT: If there's a problem, we'll notify

486
USA V. PUGHE, ET AL

everyone and bring them in.

(Whereupon the proceedings adjourned to Wednesday, June 24, 2009.)

Nicole M. Warren, CSR, RMR, CRR

487
USA V. PUGHE, ET AL

I N D E X

WITNESSES FOR THE GOVERNMENT:

| | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| LINSEY HYATT | 290 | 302 | 334 | 340 |
| P/O MATTHEW PENDLETON | 342 | -- | -- | -- |

Closing Arguments by Mr. Amatruda ...................... 376

Closing Arguments by Mr. Stern ......................... 398

Closing Arguments by Mr. Kamdang ...................... 408

Closing Arguments by Mr. Amatruda ...................... 438

Jury Charge ............................................ 445

Jury Deliberations .................................... 472

Nicole M. Warren, CSR, RMR, CRR

GOVERNMENT'S EXHIBIT INDEX

| No. | Received |
|---|---|
| Government Exhibit 35 | 339 |
| Government Exhibit 42 | 346 |
| Government Exhibit 48 | 346 |
| Government Exhibit 20 | 354 |
| Government Exhibit 20A | 354 |
| Government Exhibit 25 | 355 |
| Government Exhibit 26 | 355 |
| Government Exhibit 27 | 356 |
| Government Exhibit 28 | 356 |
| Government Exhibits 21-24 | 357 |
| Government Exhibit 30 | 357 |
| Government Exhibit 36 | 358 |
| Government Exhibit 37 | 358 |
| Government Exhibit 38 | 359 |
| Government Exhibit 38A | 359 |
| Government Exhibit 39 | 359 |
| Government Exhibit 40 | 359 |
| Government Exhibit 41 | 359 |
| Government Exhibit 49 | 360 |
| Government Exhibit 50 | 360 |
| Government Exhibit 51 | 360 |

**$**

**$12,000 [1]** 377/4
**$200 [1]** 413/21
**$400 [1]** 380/7
**$50 [1]** 359/19
**$500 [1]** 380/11
**$600 [1]** 380/9

**'**

**'08 [1]** 295/14
**'87 [1]** 364/7
**'95 [3]** 281/22 365/2 423/2
**'cause [19]** 275/11 275/11 276/15 279/13 280/4 281/1 282/13 282/21 284/1 324/5 327/2 330/14 349/8 367/18 426/6 427/7 430/10 433/22 443/1
**'make [1]** 373/11
**'til [1]** 353/5
**'Two,' [1]** 305/6

**-**

**-against [1]** 273/4

**0**

**0003 [1]** 273/2
**0442 [1]** 293/1
**09 [1]** 370/9
**09-CR-0003 [1]** 273/2

**1**

**1-28-09 [1]** 370/9
**1/28/2009 [1]** 275/4
**10/19/2008 [2]** 347/17 347/19
**100 [1]** 273/18
**10013 [1]** 273/18
**108 [1]** 285/22
**10:00 [2]** 415/22 416/3
**10:35 [1]** 370/9
**10:35 a.m [1]** 358/19
**10:41 p.m [1]** 358/1
**10:50 a.m [1]** 358/1
**11201 [1]** 273/15
**11241 [1]** 273/21
**11:30 [2]** 350/12 350/20
**11:31 a.m [1]** 357/25
**120-plus [2]** 376/8 377/1
**122 grams [2]** 422/1 422/6
**127 [2]** 344/9 344/9
**130 [1]** 441/8
**130 grams [1]** 439/3
**14 [2]** 420/6 420/15
**14-year-old [1]** 420/1
**1496 [1]** 285/22
**14th [2]** 360/6 363/10
**15-minute [1]** 350/18
**1511 [1]** 362/18
**15th [2]** 380/8 382/19
**16 [5]** 273/21 401/17 401/18 475/22 476/2
**16th [3]** 315/13 415/20 451/22
**1753 [1]** 275/5
**17th [1]** 365/17
**18 [7]** 285/7 321/6 321/7 362/10 383/18 385/5 423/8
**18th [1]** 357/24
**19 [1]** 309/19
**1987 [1]** 364/8
**1990 [2]** 364/8 364/11
**1995 [11]** 360/3 360/7 360/21 362/4 363/10 363/23 364/15 388/13 420/1 420/13 444/23
**19th [2]** 343/8 369/12
**1st [2]** 385/6 451/21

**2**

**20 [17]** 279/24 298/19 298/20 352/15 353/14 353/15 354/7 354/10 354/13 354/15 354/18 354/22 354/23 362/21 403/18 408/1 488/6
**2006 [41]** 285/6 287/8 291/2 291/19 291/23 293/24 302/25 306/9 306/16 306/24 307/13 308/4 310/11 310/15 310/17 310/21 310/24 318/24 319/10 319/14 319/16 319/18 319/21 319/23 320/3 320/9 320/16 320/16 320/18 321/1 321/6 322/1 327/2 327/4 327/7 420/13 423/3 423/5 423/11 423/22 441/24
**2008 [50]** 291/21 292/10 292/24 292/24 293/20 294/2 294/7 294/24 301/22 320/11 321/18 322/6 322/9 322/20 323/16 323/19 327/17 327/20 327/24 328/14 328/14 329/2 329/12 336/19 338/2 343/8 347/17 347/19 359/13 369/12 373/7 380/10 381/23 382/11 382/11 382/19 382/19 385/6 388/7 415/20 420/14 420/16 423/12 423/17 423/18 423/23 425/3 441/24 451/21 451/22
**2009 [15]** 273/8 275/4 325/8 357/24 357/24 357/25 357/25 358/1 358/2 358/2 358/19 369/23 415/1 423/14 486/3
**205 [3]** 297/4 297/15 297/16
**205A [1]** 297/5
**205B [1]** 298/5
**20A [5]** 353/15 354/21 354/22 354/23 488/7
**20th [4]** 343/8 357/24 358/2 369/22
**21 [12]** 356/10 356/12 356/17 356/19 356/23 357/2 357/4 362/9 387/19 452/4 452/13 453/21
**21-24 [1]** 488/12
**22 [1]** 473/23
**22nd [1]** 382/19
**23 [2]** 273/8 386/10
**24 [9]** 356/10 356/12 356/17 356/19 356/23 357/2 357/4 486/3 488/12
**25 [4]** 355/14 355/15 355/16 488/8
**26 [8]** 354/25 355/2 355/7 355/8 355/12 355/15 355/16 488/9
**27 [4]** 356/6 356/7 356/8 488/10
**271 [1]** 273/15
**28 [8]** 355/18 355/20 355/24 355/25 356/3 356/7 356/8 488/11
**28th [2]** 357/25 358/19
**29 [7]** 357/1 357/2 357/4 372/8 372/10 373/2 373/3
**29.6 grams [1]** 357/8
**290 [1]** 487/4
**29th [4]** 357/25 360/3 360/21 369/25
**2:00 [1]** 390/15
**2:15 [3]** 401/1 416/7 416/9
**2nd [1]** 380/9

**3**

**30 [7]** 275/17 277/17 308/5 357/18 357/20 370/4 488/13
**30's [1]** 357/19
**302 [1]** 487/4
**30th [1]** 358/1
**31 [1]** 357/7
**32 [1]** 357/9
**334 [1]** 487/4
**339 [1]** 488/3
**34 [1]** 283/9
**340 [1]** 487/4
**342 [1]** 487/5
**346 [2]** 488/4 488/5
**35 [5]** 339/8 339/9 339/19 339/23 488/3
**35's [1]** 339/22
**354 [2]** 488/6 488/7
**355 [2]** 488/8 488/9
**356 [2]** 488/10 488/11
**357 [2]** 488/12 488/13
**358 [2]** 488/14 488/15
**359 [5]** 488/16 488/17 488/18 488/19 488/20
**36 [4]** 358/9 358/10 358/14 488/14
**360 [3]** 488/21 488/22 488/23
**366-0442 [1]** 293/1
**366-4040 [2]** 298/24 354/9
**37 [6]** 357/21 358/7 358/10 358/14 369/18 488/15
**376 [1]** 487/7
**38 [7]** 358/15 359/2 359/5 359/8 359/9 473/21 488/16
**38A [5]** 359/4 359/8 359/9 473/21 488/17
**39 [7]** 358/16 358/24 359/8 359/9 370/7 370/7 488/18
**398 [1]** 487/8

**4**

**40 [5]** 308/5 359/14 359/16 359/17 488/19
**404 [2]** 281/21 478/5
**4040 [2]** 298/24 354/9
**408 [1]** 487/9
**41 [4]** 359/18 359/20 359/23 488/20
**41's [1]** 359/22
**42 [6]** 345/14 346/11 346/16 347/24 348/12 488/4
**423 [3]** 293/2 298/24 354/8
**43 [1]** 348/17
**438 [1]** 487/10
**44 [2]** 348/20 348/21
**445 [1]** 487/11
**45 [2]** 348/23 348/24
**46 [2]** 349/6 349/7
**47 [2]** 349/12 349/13
**472 [1]** 487/12
**48 [6]** 345/14 346/11 346/16 347/24 349/17 488/5
**49 [4]** 360/15 360/16 360/17 488/21

**5**

**5 kilos [1]** 441/24
**50 [8]** 359/25 360/10 360/13 360/16 360/17 360/19 460/12 488/22
**50 grams [8]** 389/11 441/21

**5**

**50 grams... [6]** 452/3 452/18 453/20 460/3 460/16 461/4
**501 [1]** 273/18
**51 [7]** 360/3 360/10 360/13 360/16 360/17 363/9 488/23
**55 [1]** 347/7
**56 [2]** 435/25 438/14
**5:00 o'clock [1]** 471/16
**5:30 [1]** 471/16
**5th [1]** 358/1

**6**

**6,000 [1]** 382/20
**6:24 p.m [1]** 357/25

**7**

**7,000 [1]** 387/9
**706 [1]** 275/19
**7310 [1]** 362/18
**7:00 [1]** 471/18
**7th [1]** 362/3

**8**

**841 [4]** 362/10 452/5 452/6 453/21
**846 [2]** 452/13 452/17
**8:48 a.m [1]** 358/2

**9**

**92.8 grams [1]** 357/11
**9:11 [1]** 369/17
**9:11:00 a.m [1]** 357/24
**9:15 p.m [1]** 358/2
**9:30 [3]** 273/9 484/20 484/24

**A**

**A-A-R-O-N [1]** 342/10
**a.m [6]** 273/9 357/24 357/25 358/1 358/2 358/19
**Aaron [1]** 342/9
**abetted [1]** 362/6
**abiding [1]** 286/25
**ability [5]** 388/1 400/6 402/5 464/22 467/13
**able [7]** 299/18 320/20 335/15 379/3 427/5 430/12 468/16
**about [305]**
**above [1]** 358/3
**absolutely [5]** 283/3 405/12 405/23 407/13 416/24
**acceleration [1]** 416/20
**accept [5]** 398/3 401/11 447/13 466/2 467/15
**acceptable [4]** 437/8 482/6 485/5 485/21
**access [1]** 351/6
**accident [4]** 341/6 341/7 454/25 463/8
**accidental [3]** 341/2 341/9 341/13
**accomplish [2]** 457/3 457/9
**accomplished [1]** 457/8
**accomplishment [1]** 457/23
**according [2]** 424/21 470/13
**Accordingly [2]** 361/11 462/19
**account [2]** 355/18 416/18
**accounts [1]** 453/12
**accurate [13]** 332/21 332/24 354/7 354/25 355/18 356/10 357/22 358/16 359/25 360/4 397/3 464/24 465/18
**accurately [1]** 360/9
**accusation [1]** 447/20
**accused [2]** 411/7 469/10
**ace [1]** 404/18
**acknowledgment [3]** 426/17 426/18 426/23
**acquainted [1]** 459/3
**acquit [6]** 411/23 413/4 413/12 417/16 451/1 462/8
**across [1]** 366/16
**act [41]** 282/12 285/17 285/23 286/8 286/24 352/13 379/11 396/11 397/19 397/22 401/9 401/9 413/3 414/21 430/15 437/1 437/3 437/3 437/6 450/9 450/13 453/16 454/9 454/24 455/1 455/1 456/16 456/19 457/5 457/7 457/9 457/11 457/23 459/7 459/11 461/13 461/15 461/18 463/10 463/13 470/10
**acted [3]** 407/12 407/23 463/7
**acting [2]** 418/18 426/22
**action [1]** 389/5
**actions [4]** 378/22 414/19 457/19 457/21
**activities [1]** 373/8
**activity [5]** 361/8 396/5 397/22 457/16 462/16
**acts [26]** 284/15 361/11 361/12 361/13 361/20 389/17 390/5 407/18 430/15 453/18 453/24 454/3 454/5 454/11 454/14 454/16 458/14 458/20 458/22 462/18 462/20 463/1 463/4 463/5 463/7 463/13
**actual [4]** 409/18 455/19 455/21 455/22
**actually [22]** 301/18 309/25 310/6 321/13 321/15 330/7 338/3 338/3 353/15 366/2 368/5 378/15 422/13 427/14 431/5 431/9 441/18 454/13 456/14 460/17 473/23 475/20
**add [5]** 288/4 379/9 382/25 436/23 439/13
**added [4]** 277/23 284/11 287/24 471/9
**addendum [1]** 473/16
**addict [1]** 421/14
**addicted [1]** 309/17
**addiction [1]** 424/5
**addicts [3]** 322/18 383/22 426/3
**addition [12]** 310/5 310/15 373/12 380/12 381/4 382/17 389/25 397/18 436/24 436/25 447/10 461/12
**additional [3]** 332/10 351/13 477/8
**address [2]** 424/23 438/9
**addressed [3]** 285/17 285/20 446/18
**adds [1]** 377/16
**adjourned [1]** 486/2
**adjudicated [1]** 348/4
**admissibility [15]** 354/17 354/19 355/11 355/13 356/3 356/5 356/22 356/25 357/17 358/6 358/23 359/1 359/14 360/12 360/14
**admissible [2]** 359/21 446/13
**admission [6]** 341/2 341/10 341/14 352/3 358/8 433/2
**admissions [3]** 286/10 352/5 352/6
**admit [6]** 282/8 282/9 285/23 287/3 433/20 435/15
**admitted [14]** 284/23 298/19 309/8 309/11 309/13 310/5 361/21 390/23 394/1 430/20 432/25 435/2 463/2 468/13
**admittedly [2]** 286/21 429/10
**admonition [1]** 484/16
**advanced [2]** 285/24 287/11
**advise [1]** 482/20
**advisement [1]** 394/5
**aerial [2]** 479/20 479/20
**affairs [4]** 412/21 413/2 413/10 450/14
**affected [1]** 465/2
**affects [2]** 435/5 435/6
**affirmatively [4]** 370/14 432/7 473/1 482/3
**afraid [3]** 326/11 416/25 421/21
**after [45]** 287/1 288/24 291/6 292/1 299/6 314/22 314/25 315/9 321/10 321/13 321/15 342/5 343/20 343/25 344/7 344/24 347/23 348/2 352/23 353/5 364/11 378/12 383/17 408/12 410/2 410/3 413/8 419/4 427/16 431/12 434/7 434/17 436/10 439/11 448/15 450/7 450/23 451/1 465/24 467/15 469/10 472/4 474/12 474/19 474/23
**afternoon [3]** 398/21 408/23 416/9
**afterwards [3]** 348/8 351/6 475/2
**again [25]** 277/18 287/13 287/17 291/21 292/10 295/3 296/9 345/23 359/20 383/18 383/19 384/18 384/22 384/23 388/18 423/2 437/5 437/13 440/13 444/19 444/20 445/3 454/12 460/10 467/5
**against [31]** 273/4 274/2 285/2 326/21 353/22 361/23 362/15 388/22 390/11 399/21 403/3 406/15 421/8 421/22 422/25 424/11 424/13 430/20 442/19 444/1 444/11 444/12 446/13 447/19 451/8 451/10 451/12 451/13 451/16 463/15 466/8
**age [2]** 400/22 415/10
**agency [1]** 422/5
**Agent [46]** 289/21 305/23 306/18 307/15 325/8 326/17 332/2 334/4 334/18 338/23 340/12 340/14 340/18 340/22 369/7 373/12 377/18 379/1 381/13 401/18 402/3 404/19 404/22 414/20 414/25 415/2 415/2 415/4 415/14 415/16 415/25 416/17 416/18 416/23 417/10 418/9 418/21 419/5 421/17 422/9 426/7 431/2 431/14 440/11 440/23 476/15
**agents [4]** 383/3 383/5 400/3 476/5
**ago [5]** 286/22 315/15 420/7 420/15 444/18
**agree [29]** 275/8 279/13 333/15 354/17 354/19 355/11 355/13 356/3 356/5 356/22 356/25 357/17 358/6 358/8 358/23

**A**

**agree... [14]** 359/1 359/14 359/21 360/12 360/14 395/20 399/7 400/12 400/15 401/5 409/12 413/5 429/9 433/14
**agreed [15]** 274/22 275/22 353/25 369/5 404/6 404/14 435/15 447/4 453/10 453/11 456/22 456/24 470/1 473/17 476/10
**agreeing [1]** 435/4
**agreement [50]** 312/14 312/17 312/19 313/11 314/23 315/1 315/11 315/13 315/18 315/18 315/21 317/4 317/6 317/12 317/17 334/24 335/13 335/21 335/24 336/6 336/10 336/13 338/10 339/11 339/14 339/16 340/11 376/3 379/15 389/4 389/9 389/10 410/17 410/18 447/7 447/11 453/1 453/16 457/1 457/4 457/6 457/11 457/13 457/20 459/5 459/13 466/5 466/9 466/13 475/17
**agreements [1]** 466/11
**agrees [1]** 407/15
**ahead [5]** 289/8 299/12 369/2 404/17 407/17
**aided [2]** 273/25 362/5
**aim [2]** 437/3 461/15
**air [1]** 392/6
**alias [2]** 475/19 476/11
**all [174]** 278/7 281/22 283/22 283/25 285/24 289/3 289/14 289/18 289/25 290/5 291/1 291/14 291/21 292/14 295/8 295/15 301/11 304/15 305/11 315/3 319/5 320/21 327/4 327/6 332/13 333/17 341/16 341/19 347/12 347/13 347/25 348/21 350/17 351/1 352/12 353/8 353/18 353/19 353/24 354/22 355/15 357/2 357/19 358/13 359/8 359/16 359/22 360/16 367/4 367/8 370/2 370/20 372/1 375/6 380/23 381/21 386/24 387/17 388/6 389/9 389/14 390/10 392/1 392/20 394/5 395/1 399/11 400/25 401/7 403/9 403/18 409/10 409/25 410/10 410/11 410/16 410/17 410/17 410/18 410/18 410/18 410/19 412/5 412/6 412/11 413/8 413/24 414/9 414/9 416/3 416/4 417/2 418/23 418/25 419/20 421/2 422/23 423/4 423/6 423/7 423/7 423/22 424/2 424/6 425/18 426/17 426/17 426/23 427/2 427/3 430/24 433/14 438/1 438/6 439/16 440/8 440/18 441/6 441/14 442/16 445/7 445/25 445/25 446/7 447/4 448/19 449/15 450/8 450/18 450/20 450/23 451/2 455/13 457/21 458/7 459/1 459/3 459/4 460/9 464/2 464/8 464/13 464/16 465/2 465/24 466/25 467/16 470/1 471/9 472/4 472/10 472/14 474/9 475/2 475/11 475/16 475/19 476/4 476/9 476/12 478/24 479/4 480/5 481/1 482/12 482/23 483/21 484/12 484/18 485/2 485/2 485/16 485/17 485/19
**allegations [4]** 418/18 422/24 424/11 426/5
**alleged [13]** 284/15 286/4 361/11 415/18 453/18 458/22 459/12 460/2 460/11 462/11 462/14 462/18 464/12
**alleges [1]** 452/12
**allow [3]** 284/1 318/5 467/25
**allowed [1]** 392/5
**allowing [1]** 294/19
**almost [9]** 274/19 297/3 386/5 388/17 416/18 440/20 450/6 478/17 478/18
**alone [6]** 429/16 437/6 445/16 447/25 461/18 461/22
**already [7]** 290/4 313/8 326/13 351/5 389/13 409/23 461/7
**also [40]** 273/6 273/8 285/1 293/17 301/7 301/7 318/9 322/16 323/8 327/16 327/23 329/21 352/2 353/24 357/12 362/5 382/2 382/12 382/13 385/20 386/23 388/8 397/10 402/1 403/9 404/8 404/10 405/1 411/12 440/15 456/17 459/2 463/13 465/1 468/12 470/3 473/15 476/7 477/10 479/17
**alternate [2]** 472/2 472/3
**although [8]** 331/7 414/25 417/20 455/22 457/4 463/24 463/25 474/4
**always [6]** 295/3 295/4 375/14 411/13 415/16 419/14
**am [5]** 285/5 285/7 404/17 438/4 485/2
**Amanda [1]** 274/15
**AMATRUDA [34]** 273/16 274/6 280/13 282/4 285/6 290/13 317/9 351/15 351/23 352/11 353/10 354/1 391/12 392/10 395/25 397/14 406/1 415/24 418/6 418/7 424/8 424/14 425/19 425/25 427/2 429/22 434/24 438/3 438/24 473/17 474/10 479/12 487/7 487/10
**Amatruda's [7]** 397/8 424/18 426/25 428/19 428/25 438/7 477/24
**AMERICA [3]** 273/2 353/22 353/25
**America's [4]** 343/24 344/3 344/7 369/11
**American [2]** 412/1 413/16
**AMON [14]** 273/11 316/14 388/24 409/15 409/20 410/23 411/4 411/10 412/16 412/25 420/2 420/17 420/22 481/7
**Amon's [4]** 388/20 412/13 412/17 445/4
**among [3]** 430/14 447/7 447/11
**amount [2]** 455/6 460/15
**amounts [2]** 291/24 291/25
**ample [1]** 408/19
**amusement [1]** 349/16
**analogy [1]** 443/2
**analysis [1]** 287/10
**analyzed [1]** 357/15
**Angie [9]** 304/12 322/16 329/22 330/2 331/1 332/4 345/5 349/14 350/2
**Angie's [1]** 383/25
**announced [1]** 351/15
**another [18]** 279/9 344/10 350/19 350/20 380/9 380/10 383/18 387/18 406/1 406/10 430/1 435/10 444/17 455/24 456/2 465/18 469/15 470/9
**answer [19]** 283/11 365/24 366/14 368/8 368/15 368/24 405/15 405/16 405/17 413/19 440/21 440/21 446/21 460/25 461/1 461/5 461/6 469/22 483/5
**answered [3]** 339/2 386/21 389/16
**answers [2]** 314/18 470/2
**Anthony [1]** 273/8
**anticipate [1]** 388/20
**anticipating [1]** 361/6
**anxious [1]** 401/9
**any [87]** 282/6 283/20 284/4 285/2 287/15 288/1 293/8 299/23 302/23 302/23 311/6 311/9 331/9 332/25 337/3 342/22 344/16 346/8 352/2 367/25 369/8 372/2 372/24 383/7 384/19 392/9 392/14 393/19 393/21 395/9 397/19 402/10 404/2 414/13 417/14 419/10 419/11 424/20 424/24 432/25 436/3 437/1 439/15 444/16 445/10 445/11 445/13 446/3 446/4 449/3 449/15 449/20 452/7 452/13 452/14 453/4 458/25 461/13 463/6 463/11 463/14 464/4 466/2 466/3 466/17 467/2 467/10 467/17 467/19 468/2 468/3 468/19 468/23 469/3 469/4 469/4 469/7 469/24 470/12 471/1 471/6 473/9 474/1 482/1 483/2 484/5 484/13
**anybody [4]** 334/5 392/2 411/20 413/18
**anybody's [2]** 353/5 431/11
**anymore [2]** 321/25 423/23
**anyone [10]** 278/4 297/8 298/5 298/12 403/17 404/6 411/7 443/1 451/14 484/16
**anyone's [1]** 429/11
**anything [65]** 274/17 278/19 287/20 288/17 290/3 294/18 297/25 298/21 299/17 301/4 301/25 303/15 311/9 322/14 325/5 333/1 334/21 335/5 335/9 340/1 340/11 340/15 345/8 346/23 347/3 348/2 350/6 370/23 372/21 391/5 395/23 405/25 409/8 411/14 411/15 411/18 413/9 414/11 415/7 415/10 420/7 420/8 420/15 422/10 423/25 424/12 425/8 427/3 427/4 430/3 431/25 433/14 435/21 436/5 436/17 436/21 439/24 440/22 440/24 443/13 445/6 446/16 448/3 448/4 468/8
**anyway [1]** 431/10
**anywhere [1]** 432/1
**apart [3]** 410/7 439/14 439/23
**apartment [5]** 362/18 362/22 368/7 368/9 368/11
**Apartments [1]** 362/18
**apologize [2]** 350/19 396/19
**appear [3]** 279/14 429/13 464/2
**appearance [1]** 464/20
**appearances [2]** 274/4 274/5

A

**appears [1]** 390/1
**applied [1]** 274/20
**apply [3]** 412/5 412/19 456/18
**applying [2]** 413/1 413/11
**appreciate [1]** 376/24
**apprehended [1]** 362/22
**approach [4]** 334/11 423/15 427/13 477/22
**approached [2]** 305/22 407/13
**approximate [1]** 451/22
**approximately [3]** 359/19 362/20 362/23
**April [9]** 313/5 313/6 314/6 325/8 326/9 358/1 358/2 381/23 423/14
**April 20th [1]** 358/2
**April 5th [1]** 358/1
**are [132]** 281/17 283/2 283/4 283/7 283/7 284/1 284/14 286/10 286/11 288/22 289/25 297/16 305/19 311/3 342/22 345/17 345/19 345/21 346/3 346/4 348/11 350/19 353/15 354/22 356/7 356/10 357/3 359/8 360/23 361/3 361/20 363/15 367/2 373/24 375/6 375/12 378/22 380/23 381/9 382/7 382/8 382/8 382/13 382/14 383/13 386/2 387/2 388/9 388/10 389/14 391/22 395/4 399/6 403/8 403/8 403/13 406/16 410/8 410/10 412/24 414/12 416/2 416/13 418/2 419/20 422/23 423/15 423/16 424/18 424/19 425/7 425/18 429/5 434/22 438/3 439/16 439/21 440/20 441/8 442/17 443/5 445/16 445/17 445/19 445/24 446/22 446/23 447/17 447/17 447/18 447/24 447/25 448/1 448/6 449/6 449/7 449/13 449/16 449/25 451/2 451/5 451/18 453/18 454/13 459/23 460/7 463/18 463/20 463/21 464/6 464/9 464/13 467/19 467/23 469/7 469/12 471/1 471/4 471/14 476/23 477/4 477/11 478/17 478/18 478/24 479/4 479/13 481/10 482/19 484/18 485/3 485/19
**area [5]** 286/12 293/2 304/16 343/13 419/2
**aren't [1]** 431/16
**argue [10]** 281/2 287/18 430/8 430/12 430/13 430/16 431/1 431/13 434/18 434/21
**argued [1]** 287/6
**arguing [3]** 277/22 282/7 434/13
**argument [38]** 279/8 279/9 281/2 286/23 388/8 391/14 391/16 391/18 391/21 391/24 392/13 395/3 395/5 395/6 395/8 396/16 398/25 428/5 428/9 428/16 428/20 428/21 428/22 431/19 431/19 431/22 431/24 432/1 433/5 433/9 433/17 434/11 434/24 435/7 436/3 436/11 438/16 447/23
**arguments [10]** 287/5 392/6 395/4 427/1 433/16 435/1 487/7 487/8 487/9 487/10
**arise [1]** 463/25
**arises [1]** 450/15
**around [17]** 292/10 293/6 295/13 296/1 313/5 338/6 365/5 365/9 378/3 378/10 378/23 379/19 399/13 406/5 407/5 407/20 485/1
**arrangement [1]** 294/10
**arrest [6]** 288/13 359/19 364/2 364/14 384/13 388/18
**arrested [31]** 288/18 291/2 291/4 291/11 291/15 295/14 299/6 304/25 313/8 329/22 330/2 332/19 338/7 346/20 347/25 349/22 363/23 365/14 365/16 367/21 368/3 368/13 369/11 384/17 385/5 388/13 403/19 408/12 409/4 422/16 425/18
**arrests [1]** 401/15
**arrive [1]** 373/10
**arrives [1]** 380/6
**articles [1]** 328/9
**as [171]** 273/6 273/8 278/2 278/22 281/24 282/13 284/16 284/18 287/12 287/12 289/15 289/16 289/16 290/20 297/5 297/15 298/4 298/9 303/12 305/6 307/9 310/12 321/25 321/25 332/11 334/5 334/25 334/25 337/3 337/3 337/4 337/13 338/11 339/8 342/6 342/19 345/5 345/6 345/13 347/6 347/13 349/14 352/4 352/5 352/13 354/20 356/6 357/1 357/12 357/18 358/9 359/2 359/3 360/22 361/13 361/15 362/5 363/3 363/3 364/14 366/9 366/16 367/18 369/6 372/11 373/22 375/5 375/11 375/18 376/4 376/25 378/6 380/14 380/23 382/8 384/18 387/15 391/1 395/6 395/9 395/21 396/20 396/25 396/25 397/13 399/11 401/11 405/2 409/15 411/9 419/9 425/25 429/9 429/9 433/20 435/15 437/6 442/24 444/10 445/5 445/13 446/7 447/9 447/13 447/23 448/7 448/8 449/5 449/22 451/10 451/11 451/15 451/16 451/20 452/10 454/7 454/22 455/18 456/13 456/19 457/22 459/1 459/4 459/20 460/7 461/17 462/2 462/7 462/20 462/22 463/5 463/15 463/16 463/19 464/2 464/22 464/23 465/21 466/8 466/8 467/4 467/25 468/22 468/23 469/19 469/21 469/25 470/6 470/7 470/10 471/3 472/20 472/21 472/24 473/2 474/2 474/15 475/22 475/22 475/24 475/24 476/16 477/4 477/4 479/5 479/5 479/22 479/22 481/18 482/24 483/8
**aside [2]** 381/21 422/12
**ask [34]** 297/20 300/4 330/22 330/25 331/7 331/9 332/1 336/5 346/19 386/8 388/23 390/11 391/5 395/15 404/4 407/15 407/15 407/16 408/16 409/8 412/12 412/15 414/10 416/5 418/10 421/11 422/23 431/4 431/4 434/23 436/19 436/20 466/15 482/5
**asked [22]** 288/14 288/16 293/17 314/16 344/24 362/25 365/21 379/14 393/23 401/24 404/14 404/15 405/11 405/19 407/14 415/5 415/7 415/25 416/14 418/17 431/7 449/2
**asking [10]** 282/6 301/9 336/15 336/16 362/1 392/10 426/15 426/17 426/18 426/23
**asks [5]** 362/11 362/14 368/17 413/21 460/21
**asleep [1]** 295/8
**assertion [1]** 421/20
**assess [2]** 385/12 385/20
**assessing [1]** 386/2
**assigned [4]** 342/22 342/23 343/11 343/12
**assist [2]** 456/7 468/10
**Assistant [1]** 354/1
**associate [1]** 274/12
**associated [1]** 459/19
**association [1]** 457/15
**assume [3]** 284/7 284/8 391/6
**assumptions [3]** 408/25 409/5 419/25
**Astrop [1]** 407/22
**attached [1]** 473/20
**attempt [2]** 438/20 469/2
**attention [4]** 377/24 388/23 400/10 419/5
**attorney [9]** 354/1 354/2 354/3 362/16 440/17 446/12 446/13 446/15 446/16
**attorney's [1]** 446/14
**attorneys [5]** 273/14 375/7 375/14 430/24 446/10
**Audio [8]** 300/2 300/9 369/21 369/24 370/1 370/3 370/5 370/19
**August [10]** 310/8 310/11 321/1 362/3 363/23 364/14 364/14 364/25 365/1 365/17
**August 17th [1]** 365/17
**August 7th [1]** 362/3
**aunt [2]** 389/23 392/2
**authorities [2]** 312/22 464/5
**authority [1]** 362/7
**available [2]** 475/22 475/24
**avoid [3]** 416/24 450/16 468/9
**aware [4]** 278/13 406/24 428/15 459/16
**awareness [1]** 457/16
**away [9]** 285/7 291/6 292/1 321/1 321/6 326/15 362/23 410/22 423/8

B

**back [64]** 277/24 288/4 288/9 288/10 292/10 295/22 297/12 306/9 306/16 309/25 320/3 320/9 321/17 321/20 322/1 347/15 363/23 366/16 370/6 373/6 375/17 377/14 381/4 386/9 389/20 389/20 389/23 403/7 403/11 405/7 414/19 416/6 416/7 416/8 416/9 419/5 423/9 423/9 431/1 436/5 438/15 442/4 444/20 468/8 471/4 471/11 472/6 473/7 474/2 475/13 475/16 476/21 477/5 477/19 478/6 478/15 478/22 479/2 480/2 480/7 482/5 483/4

B

**back... [2]** 483/9 484/7
**background [1]** 287/13
**backing [1]** 425/1
**bad [10]** 284/19 327/6 361/16 386/4 403/4 405/22 420/20 420/21 455/1 462/23
**bad-da [1]** 386/4
**bag [21]** 348/12 348/17 348/18 348/21 348/25 349/20 373/13 387/10 403/12 403/16 403/16 403/17 404/24 405/3 407/17 414/24 415/8 422/5 440/3 441/1 443/21
**baggie [1]** 345/18
**baggies [10]** 306/14 306/20 377/14 402/16 403/7 403/8 403/8 403/10 403/13 403/14
**bags [12]** 378/10 402/18 405/1 428/2 428/4 428/24 429/1 432/20 432/21 433/17 438/14 477/2
**bail [9]** 330/18 330/21 330/22 330/25 332/18 332/22 332/25 369/9 473/2
**bailed [8]** 330/4 330/7 330/8 330/15 332/4 332/13 332/16 426/6
**bailing [3]** 330/25 332/8 333/5
**balance [1]** 429/15
**base [26]** 357/7 357/8 357/10 357/10 357/12 362/8 383/17 445/13 452/3 452/10 452/19 453/20 453/25 454/1 454/9 454/10 454/22 454/23 456/10 456/13 456/15 460/4 460/13 460/17 460/24 470/16
**based [15]** 287/11 295/3 302/19 373/19 373/20 438/9 449/4 449/7 450/6 450/15 450/24 458/7 458/19 464/7 475/10
**basic [2]** 284/6 357/13
**basically [4]** 277/20 344/13 364/8 365/4
**basing [1]** 392/13
**basis [7]** 300/18 362/15 392/6 392/14 423/1 448/20 467/24
**bathroom [1]** 348/18
**be [204]** 275/3 275/8 276/2 276/6 276/12 277/5 277/6 279/16 280/2 282/16 286/14 286/18 286/18 287/6 288/6 289/8 290/12 293/13 295/21 295/21 295/22 299/14 303/9 312/10 314/16 315/25 316/4 316/7 316/10 317/24 318/9 318/21 323/11 326/20 328/5 332/21 332/24 333/14 335/15 340/8 340/18 342/7 344/14 346/15 350/14 350/21 351/7 351/14 352/4 352/8 352/14 352/15 352/16 353/9 358/13 365/8 367/8 369/22 370/22 372/25 373/2 377/8 379/14 379/18 380/24 380/25 381/20 383/7 384/1 384/9 387/4 387/8 388/13 388/16 388/24 388/25 389/3 389/4 391/9 392/1 392/2 392/2 392/17 393/5 393/7 393/11 393/16 395/5 395/6 396/5 396/14 396/25 397/12 397/16 398/6 398/8 398/19 398/22 399/18 400/5 401/3 402/22 403/3 403/5 403/15 404/23 405/8 405/22 406/1 411/6 411/7 412/4 413/7 414/6 414/17 414/23 414/23 414/24 415/12 417/9 419/21 421/18 425/15 430/12 430/16 430/17 430/18 431/5 431/10 432/24 433/25 435/13 435/25 436/11 438/7 438/12 438/14 439/16 439/25 440/12 440/14 440/18 441/4 442/25 443/13 444/8 444/9 445/6 445/10 445/12 445/12 445/12 445/18 447/15 447/17 448/13 448/23 449/4 449/16 449/18 450/11 451/12 452/7 454/10 454/18 455/11 455/17 456/9 457/13 457/21 458/24 458/25 459/10 462/4 463/10 464/5 465/2 465/17 465/18 465/20 466/7 466/8 466/13 466/19 467/9 467/12 468/1 468/9 468/16 469/24 470/1 470/3 474/13 477/1 479/5 482/12 483/2 484/12 484/24 485/1 485/1 485/5 485/5 485/10
**beans [1]** 443/8
**bear [2]** 451/6 469/7
**bearing [1]** 458/13
**bears [2]** 463/24 464/25
**became [1]** 458/3
**because [79]** 275/9 276/11 276/14 276/21 277/4 277/6 279/19 286/10 286/24 299/23 306/22 312/14 322/22 328/6 329/6 332/11 335/21 340/11 365/5 373/1 375/20 376/10 376/16 377/21 383/8 386/1 386/6 390/21 392/3 398/16 400/11 401/16 406/15 410/19 411/21 412/17 412/21 414/15 415/2 416/15 420/23 421/23 422/9 422/18 425/11 428/12 429/14 430/16 430/20 431/6 431/7 431/11 431/19 433/4 434/4 434/8 435/6 436/10 437/14 438/13 439/23 440/5 440/6 443/11 444/2 446/15 446/15 449/20 454/25 457/12 463/8 463/12 466/17 467/12 475/18 476/24 477/15 478/6 479/23
**become [3]** 406/24 459/8 469/15
**becomes [1]** 286/13
**becoming [1]** 388/14
**bedrock [1]** 409/19
**been [50]** 286/24 288/1 290/4 290/19 296/1 298/18 313/8 313/19 313/21 314/1 314/3 314/5 339/7 339/8 342/5 345/13 354/20 357/1 357/18 358/9 363/21 386/25 389/21 402/6 402/7 403/22 405/11 408/1 410/1 421/15 427/5 428/15 429/10 429/12 431/12 435/2 439/12 441/10 441/11 441/12 446/21 447/2 457/11 458/7 458/23 459/3 459/4 463/16 466/12 467/3
**beeper [1]** 365/19
**before [53]** 273/11 274/17 282/9 290/24 298/14 301/1 306/10 306/12 313/15 313/19 313/21 327/6 329/24 330/1 334/23 335/6 335/13 340/15 340/15 340/16 343/5 343/6 350/13 352/18 366/14 375/18 380/6 380/10 380/16 381/24 382/16 386/23 389/21 391/17 409/15 409/18 413/25 413/25 416/3 426/22 436/6 438/7 444/25 445/21 447/23 463/18 463/20 463/21 464/13 470/13 470/15 471/11 474/17
**began [1]** 407/5
**begin [9]** 275/15 276/5 276/7 375/18 460/10 470/8 472/5 472/11 472/12
**beginning [4]** 300/12 338/4 416/14 417/22
**begins [3]** 275/10 361/25 436/24
**behalf [2]** 274/14 390/20
**behaved [2]** 401/4 407/20
**behind [1]** 403/12
**being [33]** 302/14 311/6 311/8 311/11 311/14 311/16 311/18 311/20 312/14 325/21 328/6 335/16 344/8 346/25 378/2 378/18 378/20 379/3 380/5 399/2 405/13 410/11 416/18 416/24 417/1 418/9 426/2 440/13 451/22 459/16 473/19 478/20 479/9
**belabor [1]** 443/1
**belabors [1]** 443/23
**belief [2]** 462/4 464/19
**believability [1]** 445/25
**believable [2]** 439/20 467/12
**believe [38]** 275/9 285/25 286/18 286/25 290/1 334/10 334/16 345/24 349/17 370/7 372/15 373/19 375/9 376/18 376/19 384/22 410/18 410/19 415/15 417/11 417/11 419/8 422/19 426/16 426/16 427/12 431/3 432/2 435/25 449/6 465/14 466/19 466/21 467/1 474/23 475/16 481/7 482/14
**believed [3]** 311/1 396/21 466/17
**believes [3]** 318/17 318/20 446/12
**believing [1]** 300/18
**Belinda [11]** 276/11 276/14 276/24 351/21 351/22 355/19 359/7 359/12 379/25 380/7 390/24
**belong [1]** 419/9
**belonged [2]** 381/21 386/12
**benefit [1]** 466/15
**bent [1]** 297/24
**best [10]** 334/9 343/24 344/3 344/7 369/11 424/3 429/7 440/9 442/9 466/19
**better [4]** 280/18 372/22 441/23 456/22
**better' [1]** 373/11
**between [16]** 308/8 353/25 379/15 382/9 382/10 382/15 386/18 391/25 423/17 430/5 430/24 445/1 448/23 451/21 465/6 473/18
**beyond [38]** 286/3 372/18 372/25 376/2 390/12 399/21 399/25 401/12 401/25 403/2 408/17 409/16 411/1 426/14 438/20 449/11 449/21 450/4 450/11 450/19 450/20 450/21

B

**beyond... [16]** 451/3 453/8 454/4 454/20 456/10 458/18 459/10 459/18 459/24 460/16 460/22 461/2 461/23 462/12 464/9 467/23
**bias [2]** 408/25 409/2
**big [6]** 278/8 377/21 383/12 419/17 426/13 428/10
**big-time [1]** 383/12
**bigger [5]** 382/5 383/1 414/7 439/25 439/25
**binder [2]** 299/15 479/16
**binders [4]** 289/21 289/24 299/20 369/14
**bing [1]** 386/5
**birthday [3]** 292/11 295/13 338/6
**bit [7]** 311/23 380/19 382/5 383/1 395/25 416/2 440/19
**black [8]** 348/21 348/25 349/19 401/2 414/18 414/23 415/5 415/11
**blade [15]** 372/19 372/20 372/20 373/14 373/15 381/5 381/7 381/14 404/3 404/11 404/17 442/25 443/20 468/14 468/15
**blades [3]** 381/9 404/1 404/10
**blame [1]** 277/5
**BMW [2]** 296/17 298/3
**bold [1]** 421/20
**Bonnie [2]** 275/21 275/23
**book [1]** 472/16
**booking [1]** 348/1
**books [1]** 299/22
**Born [1]** 363/17
**borrow [1]** 319/18
**boss [2]** 415/3 415/3
**both [15]** 296/18 296/20 379/1 379/2 390/11 439/22 444/10 446/24 451/22 454/3 455/22 458/2 475/12 481/24 482/24
**bottom [3]** 288/16 401/14 431/13
**bought [9]** 329/1 329/12 337/10 337/11 337/12 337/17 337/22 349/3 425/3
**box [6]** 377/13 436/9 477/2 479/13 479/15 479/17
**boxes [1]** 403/24
**boyfriend [1]** 386/13
**break [5]** 277/25 350/12 350/15 353/5 427/15
**brief [18]** 283/7 290/9 299/11 300/1 323/1 323/2 370/18 370/24 375/21 375/25 398/5 432/10 432/15 473/25 475/7 482/10 484/4 484/10
**briefly [4]** 285/19 321/20 348/11 376/16
**bring [18]** 281/23 283/8 285/5 285/7 289/18 290/5 295/21 402/13 404/11 406/6 406/12 428/12 459/21 468/16 477/13 480/7 484/7 486/1
**bringing [1]** 388/4
**brings [5]** 398/17 411/2 411/24 422/21 428/20
**broad [2]** 276/25 278/17
**broader [1]** 383/11
**broken [2]** 342/25 417/20
**Brooklyn [13]** 273/4 273/15 273/21 337/21 363/16 363/17 387/20 387/23 389/18 389/21 389/22 389/23 461/21
**brother [1]** 301/12
**brought [3]** 275/12 434/19 446/2
**Brumfield [2]** 377/18 379/1
**built [1]** 409/2
**bulk [1]** 400/2
**bullshit [1]** 276/6
**bunch [3]** 328/1 333/9 412/14
**burden [14]** 375/20 400/8 411/2 411/5 411/13 411/21 411/22 419/12 426/19 449/11 449/13 449/20 450/18 463/24
**bus [22]** 373/9 380/6 380/7 380/17 382/16 388/6 389/9 390/24 391/4 391/18 400/19 401/1 401/3 401/7 401/8 403/18 414/18 416/7 416/8 416/9 416/19 439/12
**buses [1]** 416/1
**business [10]** 279/3 354/11 355/3 355/21 356/13 367/14 367/15 367/19 388/5 458/11
**busy [1]** 441/19
**buy [5]** 329/6 329/13 329/13 384/3 404/10
**buying [1]** 383/21

C

**Cadman [1]** 273/15
**call [44]** 274/22 274/24 275/5 275/18 276/16 276/19 276/20 276/22 277/1 277/18 279/10 280/16 280/22 289/22 299/8 299/13 299/16 300/5 300/12 300/25 343/18 343/20 343/22 347/1 354/18 355/12 356/4 356/23 358/7 358/17 358/20 358/22 358/24 360/13 366/9 366/9 369/16 370/8 406/10 464/2 468/6 475/9 485/4 485/6
**called [10]** 288/22 299/5 359/12 408/4 415/15 416/11 416/12 446/25 447/12 467/4
**calling [2]** 467/7 485/20
**calls [29]** 274/20 278/7 278/11 278/13 289/25 342/1 357/22 358/3 358/5 358/11 358/17 358/21 369/2 370/20 382/9 382/15 382/17 382/20 383/3 390/7 401/21 421/1 421/4 421/5 421/9 421/10 443/23 443/25 474/7
**came [29]** 304/24 313/24 314/20 320/1 321/17 326/8 334/23 338/2 364/24 366/12 366/16 389/8 389/13 389/23 403/15 406/20 408/5 410/17 410/17 414/20 416/8 416/9 417/18 419/16 423/9 423/9 424/10 438/15 457/8
**can [115]** 278/13 279/8 279/9 281/2 286/14 286/18 287/6 288/15 289/14 297/5 297/20 297/22 300/4 318/8 324/12 324/12 324/13 324/15 331/11 333/8 334/8 334/11 336/21 339/9 341/23 343/2 343/3 347/15 348/9 350/8 350/15 370/21 371/2 372/15 372/21 372/24 373/25 376/20 379/23 382/9 384/22 385/12 385/13 386/1 386/24 388/25 390/4 391/20 392/15 393/18 397/1 397/17 397/21 398/12 401/17 402/4 402/12 402/24 407/16 407/16 410/19 410/20 410/21 416/5 418/1 418/10 420/2 423/21 423/22 425/5 425/6 425/9 426/8 427/15 428/8 428/8 428/9 429/16 430/13 430/16 432/8 432/24 433/3 433/13 435/1 435/15 435/17 436/1 436/7 442/19 443/10 444/16 454/16 460/6 461/9 461/10 463/25 468/8 473/5 474/9 474/22 474/22 475/8 475/15 476/1 477/13 477/19 478/1 478/5 478/8 478/14 479/18 480/5 483/5 483/7
**can't [10]** 280/7 280/8 372/23 390/9 403/3 403/5 407/4 426/9 477/20 477/21
**cannot [5]** 402/23 420/18 445/6 467/25 478/2
**capacity [1]** 342/19
**caption [1]** 353/19
**capture [1]** 328/24
**car [85]** 282/16 294/1 296/14 296/25 298/1 298/2 298/17 303/1 303/3 303/7 303/9 303/22 308/19 310/16 319/18 319/21 319/23 322/7 322/11 323/14 325/21 337/17 337/20 337/23 368/1 372/17 373/16 376/8 376/10 376/23 377/4 377/11 377/12 377/14 377/16 378/2 378/8 378/9 378/12 378/17 378/22 379/3 381/23 381/24 382/2 382/2 385/7 388/9 388/11 389/24 399/12 399/16 399/17 401/21 403/4 403/18 404/21 405/2 406/21 406/24 407/13 416/13 416/20 416/24 416/25 417/13 418/12 418/13 418/16 418/17 418/23 419/4 419/5 420/7 421/13 421/25 423/20 423/24 425/7 425/8 439/3 439/6 439/11 441/7 441/9
**car-switching [1]** 425/7
**care [6]** 336/24 336/25 412/20 413/1 466/14 475/25
**carefully [7]** 302/16 422/24 422/25 446/6 450/8 464/16 469/14
**cares [1]** 441/9
**caricature [1]** 386/4
**CAROL [1]** 273/11
**carried [5]** 386/21 400/8 411/22 426/19 426/24
**carrier [3]** 348/25 349/19 388/14
**carries [1]** 411/21
**carry [2]** 292/20 379/11
**carrying [4]** 292/19 379/19 387/8 414/24
**cars [7]** 295/18 295/18 296/5 296/7 296/14 296/16 296/17
**case [152]** 278/10 279/19 279/23 282/17 283/2 283/21 291/16 303/12 304/20 304/25 312/23 313/17 315/4 318/9 323/13 330/23 333/2 333/14 347/2 347/5 347/10 348/2 348/3 348/6 350/20 352/8 353/2 362/15 370/22 372/10 372/13

**C**

**case... [121]** 373/2 373/21 376/1 376/18 376/22 382/7 383/23 388/8 389/6 393/21 397/1 397/3 397/10 397/12 398/24 399/21 400/9 400/11 405/15 405/22 406/3 406/15 408/3 408/14 408/25 409/2 409/7 409/11 409/16 409/19 409/24 411/1 411/14 411/18 412/13 413/9 414/3 414/5 414/8 414/10 414/15 415/13 415/18 416/14 417/20 417/22 418/3 418/8 419/15 419/18 419/19 419/22 420/1 420/5 420/6 420/10 420/12 420/13 420/13 420/15 420/24 421/22 421/23 421/24 421/25 422/2 422/20 422/23 422/25 423/2 424/7 424/9 424/13 425/10 426/9 426/11 426/13 426/17 426/24 427/9 428/12 429/18 430/3 430/4 430/5 431/6 432/3 439/1 439/2 439/2 441/13 442/21 443/17 444/11 444/16 444/16 444/24 445/5 445/20 446/11 447/7 449/3 450/18 451/5 451/7 455/14 460/2 460/11 464/8 464/25 465/4 467/16 467/22 469/5 470/9 481/19 481/19 484/9 484/16 485/4 485/20

**cases [2]** 402/12 457/19

**cash [2]** 414/2 424/20

**casual [1]** 385/24

**categories [1]** 376/7

**caught [3]** 292/21 383/24 390/9

**cause [6]** 273/10 450/9 456/7 465/7 466/22 466/23

**causes [1]** 391/8

**caution [3]** 287/5 454/7 482/25

**cautious [1]** 430/19

**CBA [1]** 273/2

**cell [2]** 382/18 484/23

**center [2]** 376/4 428/11

**center-point [1]** 428/11

**certain [8]** 293/11 447/6 447/8 447/10 447/12 447/17 449/3 462/10

**certainly [9]** 279/8 313/7 332/17 380/16 391/19 393/6 396/17 396/22 440/25

**certainty [2]** 448/25 462/11

**chagrin [1]** 400/21

**challenge [2]** 284/4 284/6

**chance [3]** 382/14 395/15 415/25

**Chandra [1]** 345/6

**change [4]** 423/12 441/7 469/14 483/3

**changed [2]** 337/25 338/1

**character [4]** 284/19 361/16 450/12 462/23

**characterized [1]** 457/13

**characters [1]** 423/7

**charge [22]** 284/11 288/7 352/1 352/3 352/3 352/5 396/13 397/17 399/2 427/15 436/24 436/24 445/4 452/12 452/20 452/21 460/7 471/1 472/6 479/25 480/2 487/11

**charged [51]** 284/18 284/22 286/6 286/21 287/13 288/25 311/11 311/14 311/16 311/18 311/20 335/16 335/17 335/20 340/8 340/11 361/14 361/19 397/19 408/16 437/1 441/19 441/22 449/10 449/13 449/22 451/8 451/11 451/16 451/18 451/18 454/6 454/13 454/22 456/13 459/23 460/1 460/2 460/12 460/13 460/18 460/23 461/3 461/14 462/16 462/21 462/25 463/5 463/7 463/13 463/17

**charges [11]** 276/25 277/4 277/6 311/9 311/24 361/9 362/3 451/20 452/16 453/23 471/6

**charted [1]** 389/4

**chase [2]** 378/12 378/21

**Chattanooga [10]** 360/2 360/6 362/17 362/19 363/24 364/13 364/15 364/24 365/6 365/13

**cheaper [1]** 377/9

**check [9]** 329/4 330/11 402/16 413/21 413/21 413/25 414/1 414/2 425/5

**Chicken [7]** 366/1 366/3 366/8 366/10 366/13 366/15 368/6

**children [3]** 283/10 412/3 424/3

**chocolate [1]** 443/4

**choose [2]** 402/25 481/22

**Chrystal [2]** 387/22 387/23

**circumstances [10]** 346/25 377/11 392/9 392/14 448/10 448/18 455/13 457/14 464/17 481/20

**circumstantial [4]** 448/9 448/19 448/24 448/25

**city [5]** 342/21 342/22 342/24 342/25 409/6

**claim [1]** 277/3

**claims [1]** 408/6

**clarified [1]** 393/5

**clarifies [1]** 395/12

**clarify [5]** 319/8 340/5 346/2 393/18 438/10

**clear [10]** 291/18 293/13 317/16 332/11 402/22 407/23 430/19 436/11 440/25 448/14

**clerk [3]** 351/25 362/1 460/5

**client [6]** 278/13 351/16 391/4 446/14 474/10 474/11

**cloak [1]** 410/24

**close [9]** 299/22 319/5 321/25 343/2 379/18 379/18 397/10 412/13 417/9

**closed [2]** 434/25 434/25

**Closing [4]** 487/7 487/8 487/9 487/10

**clubs [3]** 365/6 365/10 365/11

**Clyde [2]** 275/21 275/23

**co [4]** 457/17 458/22 458/24 459/9

**co-conspirator [3]** 457/17 458/24 459/9

**co-conspirators [1]** 458/22

**cocaine [52]** 282/8 282/12 309/13 311/12 345/9 345/11 348/24 349/20 357/7 357/8 357/10 357/10 357/12 357/12 357/13 362/8 362/23 363/6 364/20 373/13 373/16 373/16 376/4 377/1 377/4 377/9 381/13 389/10 389/11 402/18 402/19 404/20 405/20 441/21 452/3 452/10 452/11 452/19 453/20 453/25 454/1 454/9 454/10 454/22 454/23 456/10 456/13 456/15 460/4 460/13 460/17 460/24

**Code [5]** 293/2 362/9 362/10 452/5 453/22

**coke [6]** 403/24 405/8 406/3 406/9 406/12 406/13

**color [1]** 466/24

**combination [1]** 457/2

**combine [2]** 380/21 381/11

**come [34]** 275/24 277/23 277/25 283/21 295/17 295/25 299/24 317/22 318/1 318/10 318/15 331/10 335/22 344/17 362/21 364/23 365/20 381/4 381/19 384/24 386/5 401/8 404/8 411/7 412/10 415/19 416/2 417/8 434/6 440/8 442/19 445/4 448/14 478/2

**comes [18]** 274/18 284/9 288/9 376/6 384/16 388/8 402/11 407/9 416/8 418/21 432/16 434/17 441/13 441/14 444/11 444/20 445/6 446/23

**comfortable [2]** 384/6 444/7

**coming [10]** 281/22 313/15 330/1 350/19 365/3 365/4 365/4 377/12 416/7 416/12

**comment [2]** 435/10 440/12

**commission [2]** 453/4 459/15

**commit [14]** 284/21 361/19 420/21 452/14 452/22 453/11 453/16 453/24 454/2 454/5 454/8 454/15 459/18 462/25

**commits [1]** 452/15

**committed [8]** 284/17 361/14 459/16 462/13 462/21 463/4 463/12 463/13

**committing [6]** 284/15 361/10 399/3 449/13 454/14 462/18

**common [8]** 385/21 385/25 412/9 448/12 448/21 449/5 450/7 457/22

**commonly [1]** 452/10

**communicate [3]** 468/25 469/2 469/4

**community [1]** 426/3

**compare [2]** 365/11 407/19

**compared [1]** 462/3

**comparison [1]** 365/10

**compartment [15]** 281/25 282/21 373/18 377/13 404/22 406/4 407/21 417/10 417/12 417/14 418/25 419/7 420/4 420/8 477/12

**completed [4]** 481/8 481/23 482/14 482/23

**completes [2]** 275/14 276/11

**compromise [1]** 275/24

**computer [2]** 273/25 474/22

**Computer-aided [1]** 273/25

**computerized [1]** 273/24

**conceded [1]** 438/17

**concern [8]** 377/21 395/9 395/15 436/10 463/19 464/7 464/7 467/19

**concerned [2]** 431/25 445/10

**concerning [1]** 373/15

**conclude [2]** 443/22 463/12

**concludes [4]** 290/25 333/18 374/4 471/23

**conclusion [1]** 483/7

**conclusions [2]** 400/7 444/16

## C

**concocted [2]** 440/1 440/2
**conduct [7]** 386/16 417/7 423/17 457/14 458/21 458/22 464/20
**conducted [1]** 287/10
**conducts [1]** 416/23
**Coney [2]** 320/14 425/24
**confessed [2]** 386/11 386/12
**confidential [3]** 411/17 415/16 415/17
**confused [1]** 413/18
**congregate [1]** 328/20
**connected [3]** 367/4 367/6 448/11
**connecting [2]** 403/10 405/6
**connection [11]** 282/6 304/25 361/9 367/13 372/20 405/15 430/5 430/7 443/18 458/21 462/17
**connections [1]** 444/17
**connects [1]** 404/3
**consciousness [1]** 390/8
**consent [2]** 344/25 418/16
**consequences [2]** 311/23 446/9
**consider [31]** 284/16 284/18 284/20 284/23 285/1 361/12 361/13 361/15 361/17 361/22 361/22 388/7 420/3 446/7 447/8 449/25 451/7 457/20 458/7 462/19 462/21 462/23 463/2 463/14 464/19 464/21 464/24 465/1 465/11 468/22 475/4
**consideration [10]** 412/20 413/1 418/22 446/4 446/5 450/23 451/2 455/13 465/23 468/1
**considered [5]** 388/16 395/3 449/18 462/3 463/10
**considering [4]** 285/23 461/8 467/16 470/8
**consistent [7]** 372/25 378/17 378/23 381/17 382/22 382/23 446/1
**console [2]** 418/25 419/2
**conspiracy [71]** 286/4 287/13 311/11 312/6 325/22 334/16 335/4 372/13 372/16 376/3 376/5 376/11 388/4 388/24 388/25 389/2 389/4 389/9 389/17 390/5 396/6 396/14 396/18 397/5 398/8 398/8 398/14 404/4 404/7 406/18 407/7 407/8 437/4 437/5 445/4 452/12 452/21 452/24 452/24 453/1 453/2 453/5 453/14 453/16 454/6 454/17 456/21 456/25 457/2 457/4 457/12 457/18 458/1 458/2 458/4 458/6 458/9 458/14 458/16 458/19 458/24 459/2 459/3 459/7 459/8 459/10 459/17 460/23 461/3 461/16 461/17
**conspirator [3]** 457/17 458/24 459/9
**conspiratorial [1]** 458/1
**conspirators [3]** 378/6 457/15 458/22
**conspire [1]** 452/1
**conspired [6]** 453/10 454/2 454/4 454/8 456/22 456/24
**conspires [1]** 452/14
**conspiring [5]** 452/17 452/22 453/6 453/24 454/14
**constant [1]** 373/7
**constitute [1]** 397/22
**Constitution [1]** 449/19
**constructive [2]** 455/19 455/25
**contact [1]** 457/15
**contacted [3]** 312/23 325/9 325/11
**contained [10]** 354/13 354/14 355/6 355/8 355/24 356/12 356/16 356/19 357/7 357/9
**containing [6]** 345/18 452/3 452/19 453/20 460/3 460/13
**contains [1]** 349/20
**contemplating [1]** 397/8
**contents [2]** 347/7 348/21
**context [19]** 277/3 279/7 279/10 280/18 281/1 281/6 288/20 368/5 379/16 423/1 439/5 439/5 439/14 439/18 443/11 443/14 443/21 456/19 457/18
**contiguous [1]** 280/4
**Continue [1]** 349/6
**continued [6]** 290/21 321/10 331/13 371/3 427/18 470/17
**continues [1]** 366/14
**continuing [1]** 393/13
**contradict [1]** 442/16
**contradicted [2]** 418/6 465/3
**control [4]** 451/15 455/20 455/24 463/22
**controlled [7]** 357/13 362/8 452/2 452/4 452/8 452/11 455/7
**conversation [19]** 277/3 277/24 278/3 278/18 278/21 279/4 279/11 292/10 292/15 292/18 300/21 300/22 351/21 359/5 359/6 390/23 391/1 412/10 473/18
**conversations [10]** 295/4 332/11 336/19 336/21 336/23 385/24 443/19 477/11 477/12 478/2
**convict [2]** 450/22 451/4
**convicted [3]** 312/5 312/9 468/2
**conviction [4]** 372/11 373/2 423/3 430/2
**convictions [1]** 281/22
**convinced [2]** 459/10 469/15
**convincing [1]** 450/12
**cooked [2]** 306/9 306/12
**cooperate [2]** 312/19 336/14
**cooperation [2]** 315/11 315/13
**copies [2]** 287/23 356/10
**Cops [1]** 441/8
**copy [13]** 275/2 276/1 276/9 354/7 354/25 355/18 357/22 358/16 359/25 360/4 460/9 468/21 475/20
**corners [1]** 408/25
**Corps [1]** 343/6
**correct [21]** 277/17 282/17 285/13 293/20 312/21 316/12 316/18 327/17 330/6 339/14 345/19 345/20 349/23 358/12 363/24 365/14 370/10 397/14 431/20 469/15 479/21
**corrected [1]** 434/1
**corrective [1]** 396/22
**correctly [2]** 375/16 396/4
**corroborate [3]** 387/3 425/6 426/12
**corroboration [15]** 376/19 385/3 386/24 406/2 406/6 406/7 419/11 424/8 424/10 424/16 424/17 425/15 425/17 425/20 426/11
**corroborative [2]** 376/16 376/22
**Cortez [1]** 362/5
**could [61]** 275/22 276/12 277/4 277/8 278/22 280/1 280/5 283/4 283/5 285/1 286/7 288/10 302/19 310/16 312/6 315/25 316/4 316/7 317/22 317/24 318/1 318/9 318/9 318/10 318/13 319/21 324/1 329/4 330/11 345/1 347/15 348/10 350/15 360/25 372/24 373/19 375/16 375/22 378/8 383/17 392/1 392/2 392/2 397/1 404/10 405/11 405/22 407/2 412/3 417/13 424/13 440/9 440/18 442/9 442/25 444/9 473/6 473/7 477/22 482/21 482/22
**couldn't [9]** 353/3 384/3 410/14 419/21 425/16 429/1 429/2 443/13 483/3
**counsel [8]** 280/3 350/15 390/16 428/3 445/16 445/23 449/2 470/16
**counsel's [1]** 280/2
**count [6]** 362/1 362/11 451/10 451/19 462/7 469/20
**counter [5]** 417/3 441/6 443/3 443/5 443/7
**counter-surveillance [2]** 417/3 441/6
**Counties [1]** 461/21
**country [1]** 401/7
**couple [15]** 280/11 290/24 295/22 297/2 300/11 331/6 332/7 332/12 340/2 340/5 350/20 388/19 427/1 428/1 440/8
**coupled [1]** 459/15
**course [20]** 327/22 331/3 354/11 355/3 355/21 356/13 365/13 372/17 372/18 375/14 402/11 409/1 414/1 421/4 421/18 425/13 457/10 461/6 468/18 484/16
**court [70]** 273/1 273/11 273/21 273/23 273/23 274/1 285/22 287/9 300/2 300/9 302/13 302/14 333/18 335/10 348/4 351/1 353/21 360/1 360/1 360/4 360/5 360/13 360/20 362/1 362/11 362/14 362/25 363/6 364/15 369/21 369/24 370/1 370/3 370/5 370/19 374/4 392/17 395/1 395/7 395/15 402/14 410/1 411/7 419/17 419/20 430/14 438/1 445/14 446/1 446/17 447/2 448/3 448/14 448/18 467/21 468/6 468/7 469/1 469/2 469/3 469/6 469/8 470/14 471/23 475/4 477/14 478/1 481/1 483/13 483/21
**Court's [1]** 323/1
**courthouse [2]** 273/4 485/10
**courtroom [24]** 274/1 290/7 290/10 342/3 350/22 351/2 353/7 385/23 390/19 395/2 398/18 427/17 438/2 438/5

C

**courtroom... [10]** 448/5 448/15 468/16 472/3 480/8 481/2 482/11 483/11 484/11 484/22
**CR [1]** 273/2
**crack [94]** 282/8 282/12 286/1 287/1 291/8 293/5 293/5 293/8 294/9 306/9 306/12 306/14 306/19 306/24 307/2 307/3 307/7 307/9 307/11 308/9 308/11 308/21 309/15 309/17 309/19 310/3 310/5 310/6 310/8 310/12 310/15 319/20 322/5 322/18 323/24 324/3 324/8 340/25 341/8 341/13 345/9 345/11 348/24 349/20 357/12 362/8 362/23 364/20 373/15 373/16 376/3 376/8 377/1 377/4 377/10 377/12 378/10 379/2 379/4 381/10 384/3 384/9 386/11 386/12 388/12 389/10 389/11 402/18 403/23 404/23 405/1 406/3 417/13 418/14 419/6 419/9 420/12 421/14 422/1 422/6 422/6 422/7 424/4 426/3 433/17 439/3 439/15 440/5 441/8 441/21 443/21 444/13 444/13 452/10
**crazy [6]** 378/15 406/11 417/3 417/7 421/20 422/14
**create [1]** 406/16
**creates [1]** 280/15
**credibility [3]** 445/24 464/14 466/1
**Crest [1]** 362/18
**crime [37]** 284/17 284/21 286/5 286/6 286/21 361/14 361/19 372/22 389/2 397/23 399/3 399/3 399/18 399/19 408/16 411/8 449/10 449/22 451/8 451/11 451/16 451/19 452/15 452/22 452/23 453/1 453/3 453/15 453/17 459/15 459/16 459/18 459/23 460/17 462/25 464/6 464/12
**crimes [11]** 309/8 311/4 397/19 420/21 437/1 449/12 460/2 460/11 461/14 462/21 463/17
**criminal [8]** 273/10 284/19 361/8 361/16 450/18 452/25 462/16 462/22
**criminality [2]** 404/24 405/4
**cross [7]** 278/23 285/8 288/3 302/3 305/15 446/25 487/3
**cross-examination [5]** 285/8 288/3 302/3 305/15 446/25
**CRR [1]** 273/23
**CSR [1]** 273/23
**curative [2]** 392/23 397/9
**cures [1]** 435/12
**curious [4]** 416/5 417/20 418/5 483/15
**currently [4]** 288/1 288/3 288/8 288/8
**custodian [6]** 354/18 355/12 356/4 356/24 358/7 358/25
**customer [4]** 294/22 381/16 381/16 383/17
**customers [1]** 408/9
**cut [3]** 373/15 381/10 417/8
**cutting [7]** 381/15 384/9 384/10 403/23 403/24 403/24 408/25

D

**da [1]** 386/4
**dad's [1]** 337/24
**danger [3]** 286/16 286/19 309/25
**DARIEN [12]** 273/6 285/2 353/22 354/2 358/20 359/12 359/19 361/23 399/22 408/20 451/24 463/15
**Darnell [5]** 344/22 344/24 345/5 349/25 383/25
**date [12]** 312/24 345/23 346/20 346/24 347/1 347/13 347/16 358/18 462/10 462/11 462/13 474/23
**dated [2]** 423/9 481/19
**dates [5]** 313/24 319/8 357/23 451/22 462/14
**dating [4]** 318/24 321/25 373/6 423/5
**daughter [4]** 309/21 309/23 309/25 477/19
**DAVID [3]** 273/19 274/8 354/2
**day [21]** 301/16 310/3 314/1 338/5 347/21 365/16 376/13 377/4 380/5 380/6 380/16 381/9 383/9 391/17 399/12 399/12 401/7 405/7 409/14 416/8 448/14
**day-to-day [1]** 399/12
**days [6]** 295/22 295/23 296/4 315/15 332/14 440/8
**deal [6]** 288/23 386/5 419/17 428/10 432/17 435/17
**dealer [15]** 280/21 287/7 307/7 307/11 380/22 383/12 398/22 398/23 399/17 399/18 420/19 424/18 425/1 443/19 444/13
**dealers [3]** 399/10 426/7 444/6
**dealing [10]** 286/1 287/1 291/24 292/4 327/23 376/14 441/21 444/14 444/22 444/25
**deals [2]** 396/1 435/15
**dealt [1]** 289/10
**Dear [1]** 481/7
**decent [1]** 422/22
**decide [13]** 280/6 316/14 316/17 316/20 316/25 317/2 397/19 437/1 445/20 446/22 461/13 465/24 467/15
**decided [5]** 390/25 394/3 404/6 484/5 484/13
**deciding [4]** 447/18 458/5 464/11 467/1
**decision [16]** 285/11 285/21 287/17 304/19 317/19 373/23 399/25 411/15 412/22 412/22 426/21 451/16 454/7 455/10 469/16 483/1
**decisions [1]** 434/3
**declarations [1]** 458/21
**deduce [1]** 448/11
**defendant [85]** 273/9 273/17 273/20 284/17 284/19 284/21 285/2 286/6 286/8 287/12 361/7 361/10 361/14 361/15 361/18 361/23 362/13 362/21 363/2 363/11 365/21 368/12 369/6 369/9 370/11 375/1 376/4 446/14 449/14 449/19 451/3 451/4 451/8 451/8 451/10 451/10 451/11 451/12 451/14 451/15 451/16 453/5 453/6 453/13 454/4 454/6 454/8 454/18 454/21 454/23 455/5 455/7 456/4 456/7 456/9 456/12 456/14 458/2 458/3 458/6 458/8 458/12 458/15 458/23 459/9 460/8 460/14 461/7 462/15 462/18 462/21 462/22 462/24 463/4 463/7 463/12 463/15 464/11 468/2 469/18 469/20 469/25 473/3 481/12 482/22
**defendant's [13]** 278/11 285/25 286/10 351/22 352/3 380/20 382/4 449/21 455/10 455/12 455/15 458/19 460/21
**defendants [46]** 274/1 284/14 351/2 353/23 354/2 362/5 375/19 390/11 395/2 438/2 439/21 444/10 445/17 445/19 447/20 449/9 449/13 449/16 449/17 449/24 449/25 450/1 451/5 451/18 451/24 452/12 452/16 453/23 454/2 454/13 456/23 459/22 462/8 463/23 464/9 467/18 467/23 475/12 477/4 480/6 480/8 481/2 481/10 482/18 482/24 483/1
**defendants' [1]** 450/4
**Defenders [2]** 273/20 485/14
**defense [7]** 282/14 282/18 350/15 352/8 390/16 440/16 472/19
**define [1]** 450/6
**defined [1]** 452/14
**definitely [3]** 308/24 330/11 425/14
**degree [1]** 448/24
**Delappe [1]** 481/20
**deliberate [1]** 404/5
**deliberating [3]** 481/10 482/19 484/25
**deliberations [21]** 409/20 449/18 467/20 468/3 468/11 468/14 468/18 468/25 470/15 472/5 472/11 472/13 481/8 481/23 482/14 482/23 483/7 484/17 485/3 485/19 487/12
**deliver [3]** 456/1 456/1 456/6
**demand [2]** 408/17 419/21
**demeanor [1]** 464/21
**Demetrius [1]** 283/13
**deny [1]** 373/22
**department [8]** 342/14 347/5 347/9 348/1 349/5 362/17 363/24 400/14
**depending [1]** 471/16
**depends [1]** 471/20
**describe [2]** 297/22 454/15
**described [3]** 397/18 436/25 461/12
**description [6]** 400/15 400/16 400/16 400/17 400/20 400/22
**descriptions [1]** 476/22
**deserves [3]** 464/15 466/3 467/17
**deserving [1]** 465/22
**design [1]** 457/22
**desire [1]** 468/7
**desk [1]** 410/1
**dessert [3]** 443/6 443/12 443/15
**detail [1]** 465/13
**details [6]** 320/13 384/5 385/10 416/13 442/17 459/4
**detecting [1]** 373/12

D

**determination [2]** 316/3 410/25
**determine [16]** 315/22 315/24 317/8 317/18 338/11 338/12 344/15 376/17 376/18 447/15 456/22 459/22 459/24 463/4 464/7 467/22
**determined [2]** 332/5 451/12
**determines [7]** 316/2 316/6 316/9 317/23 318/2 318/11 318/14
**determining [3]** 445/19 457/20 466/1
**Detroit [3]** 400/18 400/19 414/22
**DEWAYNE [30]** 273/8 283/13 325/24 326/23 326/25 329/1 329/11 330/4 353/22 354/3 355/1 358/4 360/11 361/7 362/4 363/11 363/14 369/9 408/24 409/4 409/11 421/13 421/16 421/25 423/16 423/18 451/24 462/15 476/18 483/24
**Diamond [1]** 283/13
**did [141]** 277/5 282/15 286/8 288/14 289/1 291/18 291/21 292/7 293/8 293/8 294/8 294/16 294/18 295/3 295/4 295/7 295/10 295/13 295/14 295/14 295/17 295/24 298/12 298/14 299/14 300/15 301/1 301/7 301/20 302/23 303/7 304/17 311/9 324/1 324/4 328/13 329/13 329/13 330/18 330/21 331/2 332/12 332/18 334/5 334/24 334/25 335/6 335/6 335/24 336/2 336/4 336/19 337/1 337/3 337/10 338/3 338/3 338/10 338/18 338/19 339/4 339/12 340/14 343/5 343/17 343/17 343/20 343/23 344/17 344/21 344/23 345/2 345/8 348/2 362/6 363/6 364/6 364/11 364/15 364/23 365/17 365/20 365/21 365/25 366/2 366/18 366/24 367/11 367/14 367/15 367/22 369/8 377/19 379/17 379/17 380/22 380/23 381/13 381/18 382/4 383/3 386/14 386/14 393/1 393/3 393/4 395/15 395/21 396/9 400/13 400/24 401/6 406/8 406/10 406/12 406/23 407/6 409/11 415/7 415/10 421/8 422/22 428/2 428/6 431/3 433/6 433/8 434/18 434/22 438/13 440/3 449/24 449/25 450/1 451/25 458/9 458/12 459/11 466/19 466/24 472/21
**didn't [89]** 276/4 278/19 301/16 301/17 303/17 303/19 304/22 305/3 306/3 306/18 306/21 306/22 307/15 307/18 307/20 307/22 308/24 309/1 309/2 309/4 313/10 313/13 315/13 320/11 322/14 327/9 330/22 330/25 332/21 332/22 334/21 337/12 337/12 338/23 339/3 339/4 341/8 341/12 351/4 351/6 352/1 367/25 375/16 377/16 378/17 383/22 386/16 400/16 401/9 401/9 404/16 404/16 405/10 406/22 409/7 414/11 417/21 418/8 418/24 418/25 419/2 419/2 419/10 420/7 420/7 421/10 423/25 424/23 424/23 424/24 428/6 428/12 429/2 429/14 429/19 431/2 431/14 433/6 433/11 434/8 434/11 434/12 434/18 434/20 434/21 474/3 474/17 476/10 478/10
**difference [2]** 336/7 386/18
**different [17]** 275/7 337/13 337/15 343/23 346/8 379/2 385/23 386/25 403/22 416/2 418/6 430/4 440/19 442/5 458/14 458/15 465/6
**differently [2]** 375/13 465/9
**difficult [2]** 414/6 455/11
**digital [5]** 345/10 349/1 419/3 428/23 477/1
**dinner [2]** 384/10 412/10
**direct [12]** 285/4 290/21 342/11 393/19 393/21 446/25 448/8 448/24 448/25 455/20 457/12 487/3
**directing [1]** 396/10
**directly [4]** 395/11 396/12 455/11 455/24
**dirt [1]** 326/25
**dirty [1]** 325/1
**disagree [1]** 275/9
**disagrees [1]** 396/18
**disclosed [1]** 288/25
**discover [1]** 369/8
**discovered [1]** 409/5
**discredit [1]** 465/7
**discrepancies [1]** 465/5
**discrepancy [1]** 465/11
**discuss [7]** 274/17 331/10 440/23 451/17 453/15 484/8 484/16
**discussed [8]** 274/21 285/14 285/18 295/17 310/19 313/17 314/11 350/10
**Discussion [8]** 331/13 333/18 371/3 374/4 427/18 430/24 470/17 471/23
**dismiss [1]** 372/7
**dismissed [2]** 303/12 373/2
**display [1]** 349/1
**displayed [1]** 346/7
**disposition [1]** 390/3
**dispute [4]** 275/2 276/1 276/4 277/19
**disregard [2]** 446/18 465/16
**disregarded [1]** 447/18
**disrespectful [1]** 434/4
**distance [1]** 362/23
**distinct [1]** 452/23
**distinction [1]** 448/23
**distribute [21]** 283/24 311/11 362/8 376/3 452/1 452/2 452/8 452/8 452/17 452/18 453/19 454/1 454/10 454/12 454/19 454/23 455/3 456/1 456/4 456/6 456/18
**distributed [1]** 456/14
**distributing [1]** 456/9
**distribution [5]** 453/19 453/25 454/9 454/11 456/8
**district [20]** 273/1 273/1 273/11 273/14 353/21 353/21 360/1 360/2 360/5 360/5 360/21 362/4 389/18 397/20 437/2 437/7 451/23 461/14 461/19 461/20
**disturbance [1]** 343/21
**DNA [1]** 411/18
**do [175]** 276/1 276/3 277/8 278/19 280/12 280/12 283/5 283/23 285/5 285/9 285/10 289/5 289/11 289/13 289/14 289/16 290/3 292/17 294/8 294/10 296/9 296/21 296/24 297/7 297/10 297/25 298/5 298/7 298/16 298/20 299/4 300/4 300/15 301/7 301/9 301/15 301/25 313/1 313/24 322/14 323/4 324/15 325/5 332/16 333/6 333/8 334/21 335/5 335/8 335/11 336/4 336/4 336/6 336/14 337/3 337/10 337/20 337/23 339/9 342/13 342/20 342/20 342/24 343/5 345/15 345/16 346/19 347/8 348/2 350/6 350/11 350/12 352/12 352/12 360/24 362/11 364/17 367/6 367/9 367/15 367/17 367/19 368/18 372/1 372/3 372/9 378/5 378/20 381/1 381/3 381/8 381/8 381/20 386/1 386/5 391/22 393/11 395/19 395/23 396/17 400/6 400/9 400/11 401/6 402/2 402/5 402/12 402/23 402/24 403/20 404/11 404/12 404/14 404/15 405/2 408/18 408/19 409/7 410/12 412/3 415/23 420/7 420/8 420/8 420/10 420/18 421/6 422/23 423/21 423/25 424/1 424/1 424/2 427/3 427/7 428/9 429/5 430/3 430/9 431/7 432/5 432/11 432/14 432/19 432/24 433/1 433/3 433/14 434/10 435/1 435/8 435/10 436/4 436/7 436/7 440/9 442/9 444/3 444/15 444/24 454/24 455/2 460/22 461/2 468/10 469/14 470/4 476/19 477/18 477/20 478/14 481/14 482/5 482/21 484/17
**document [4]** 347/8 401/19 401/20 432/5
**documentary [1]** 479/15
**documented [2]** 376/21 383/7
**documents [3]** 354/6 387/25 401/16
**does [54]** 276/16 276/18 278/1 278/9 282/10 313/5 324/11 329/18 336/10 336/10 347/12 347/14 369/20 370/13 375/1 375/2 383/1 386/2 386/20 387/22 400/14 403/1 407/6 407/7 411/8 413/5 420/11 420/15 422/8 422/8 424/1 424/1 424/6 425/8 440/20 441/7 441/18 442/14 442/15 443/10 443/12 443/13 444/15 446/3 449/14 450/20 456/5 457/16 459/8 464/1 464/4 465/22 466/8 470/7
**doesn't [37]** 278/6 278/10 280/3 282/8 282/9 315/24 316/14 316/20 316/25 317/2 329/18 336/8 379/9 383/11 384/19 390/1 399/3 399/14 404/8 407/9 407/10 416/15 417/4 417/14 417/25 423/12 426/12 427/2 430/3 432/1

D

**doesn't... [7]** 439/15 439/23 439/24 439/24 442/15 443/16 476/24
**doing [9]** 304/22 378/4 378/6 383/13 407/13 407/24 443/6 445/2 463/6
**dollar [2]** 301/12 349/10
**dollars [5]** 310/24 377/2 383/15 383/16 424/20
**Dollywood [2]** 349/15 349/15
**domestic [1]** 288/12
**dominion [1]** 455/23
**don't [124]** 274/12 275/10 275/15 275/25 275/25 276/5 277/19 277/25 278/19 279/3 279/14 279/19 281/24 281/24 282/2 283/8 283/20 283/21 286/17 287/15 287/20 287/25 288/5 289/7 289/14 297/1 305/11 316/17 324/17 329/19 330/7 331/9 332/15 347/2 348/9 348/10 349/8 349/8 351/7 351/11 351/14 352/1 352/5 353/5 367/2 370/17 372/14 372/15 372/23 390/6 392/8 392/13 393/16 395/6 395/13 395/17 395/18 396/4 396/7 396/13 396/22 399/6 399/16 402/2 402/15 402/15 402/16 402/17 403/21 407/4 409/12 411/19 411/20 411/20 417/24 417/24 419/10 419/15 419/17 419/17 421/23 423/22 424/25 426/16 427/14 428/9 428/9 428/11 428/17 429/13 429/17 429/18 429/19 430/10 431/3 431/24 432/2 432/4 433/20 433/25 435/4 435/12 435/18 435/19 436/19 440/22 441/1 442/3 443/23 444/22 461/9 475/2 475/25 476/13 476/18 478/5 481/17 483/16 484/7 484/19 484/24 485/2 485/4 485/4
**done [15]** 290/4 297/3 303/15 344/10 370/22 386/11 408/24 409/10 441/23 445/18 446/16 448/3 459/1 474/19 474/19
**door [9]** 344/11 344/13 344/17 413/17 413/19 413/19 413/20 413/20 448/16
**double [1]** 444/1
**doubt [66]** 286/3 373/1 376/2 390/12 399/21 400/1 401/12 401/25 402/22 403/2 406/17 408/18 408/19 409/17 411/1 411/19 411/23 411/25 411/25 412/6 412/11 412/16 412/25 413/3 413/12 414/4 414/5 414/8 414/13 414/16 418/4 425/10 426/14 438/20 449/12 449/22 450/4 450/5 450/6 450/7 450/8 450/11 450/14 450/15 450/15 450/19 450/21 450/21 450/24 451/3 453/8 454/4 454/20 456/11 458/18 459/10 459/19 459/25 460/16 460/23 461/3 461/23 462/13 463/25 464/10 467/24
**down [25]** 275/12 279/20 279/20 279/21 279/24 297/24 301/17 341/23 350/8 366/16 373/10 380/17 380/25 381/2 389/8 401/18 426/25 431/10 436/13 441/13 441/14 444/7 444/11 445/6 461/10
**downstairs [1]** 480/6
**downtown [2]** 343/14 343/16
**draft [3]** 287/23 352/1 471/10
**draw [9]** 375/10 392/11 444/16 446/19 449/2 449/4 449/23 463/6 476/17
**drawn [2]** 395/5 458/20
**draws [1]** 441/11
**Drive [1]** 343/13
**driver's [1]** 403/13
**driveway [1]** 378/18
**driving [4]** 337/16 385/9 416/25 417/5
**dropped [1]** 291/17
**drove [3]** 308/4 366/4 366/5
**drug [44]** 280/21 286/12 287/7 303/10 303/24 310/16 311/1 311/9 325/22 327/23 330/2 345/9 373/7 376/13 377/16 380/22 382/20 383/12 388/5 390/3 391/9 396/10 396/16 396/17 396/18 397/22 398/22 398/22 399/9 399/17 399/18 415/21 420/1 420/19 424/18 425/1 426/7 437/4 443/19 444/6 444/17 444/25 455/5 461/16
**drug-related [1]** 303/10
**drugs [92]** 275/12 276/13 279/15 282/15 282/20 282/21 287/25 288/1 288/3 291/13 291/23 292/2 292/19 293/14 293/23 303/17 303/22 304/16 321/11 321/13 321/15 324/15 325/5 326/1 326/3 326/6 327/12 328/2 335/6 336/24 338/24 344/8 344/25 365/18 365/20 367/16 367/20 368/16 368/18 368/21 372/20 377/20 378/1 378/3 378/11 378/13 379/16 381/15 381/16 381/20 384/6 384/7 387/14 387/14 387/16 388/9 388/10 388/12 388/16 389/22 389/24 399/10 399/17 402/17 403/4 403/8 404/25 404/25 405/6 417/5 418/14 419/23 419/24 420/4 420/5 422/3 422/3 422/4 423/19 423/20 424/19 424/22 425/4 428/2 430/6 440/2 441/9 444/22 460/15 467/4 467/11 467/13
**drugstores [1]** 404/9
**dry [1]** 448/15
**DT11809 [1]** 369/16
**due [1]** 335/15
**duffel [2]** 414/24 415/7
**duly [2]** 290/19 342/5
**duped [1]** 388/13
**during [15]** 285/8 285/8 291/6 293/4 296/3 314/9 327/14 338/9 373/8 421/2 441/19 441/22 458/25 468/14 468/25
**duty [6]** 445/9 446/10 450/17 450/25 467/20 470/11
**Dwayne [1]** 323/16

E

**each [28]** 354/5 354/6 379/10 380/24 381/1 382/20 446/10 449/10 449/12 451/8 451/9 451/11 458/13 460/8 460/20 464/11 464/17 464/19 464/25 465/1 465/3 469/14 469/16 469/18 469/25 472/15 475/19 476/6
**eager [1]** 429/9
**earlier [1]** 375/11
**easier [1]** 411/16
**East [2]** 273/15 343/13
**EASTERN [14]** 273/1 273/14 353/21 360/2 360/5 360/21 362/4 397/20 437/2 437/7 451/23 461/14 461/19 461/20
**easy [2]** 384/24 439/14
**echo [1]** 386/20
**edged [1]** 403/25
**effect [5]** 293/8 447/15 457/4 457/11 465/11
**effects [1]** 467/13
**effort [1]** 400/18
**egg [2]** 443/11 443/15
**eggs [3]** 443/5 443/8 443/9
**egregious [1]** 441/3
**eight [1]** 319/3
**either [20]** 278/23 328/2 330/17 335/3 432/3 433/10 434/2 435/17 446/14 448/24 454/5 454/9 455/24 459/22 460/14 464/25 469/19 474/23 481/16 481/17
**elected [1]** 450/2
**element [7]** 449/10 449/12 449/22 453/15 455/9 456/20 457/25
**elements [9]** 286/2 397/18 436/25 453/8 453/17 454/12 454/15 454/20 461/12
**elicit [1]** 285/12
**eliminated [2]** 288/2 288/8
**else [27]** 277/6 279/16 288/21 295/7 297/25 298/12 303/9 305/14 332/23 364/1 365/7 377/15 397/7 403/20 404/7 428/25 433/14 436/5 436/17 436/21 444/9 445/6 446/16 451/15 455/17 475/15 485/10
**else's [2]** 377/14 379/12
**elsewhere [2]** 397/4 451/24
**emotionally [2]** 352/24 352/25
**employed [1]** 465/20
**enable [1]** 455/14
**encompasses [1]** 455/18
**end [11]** 289/14 291/1 302/7 343/23 384/25 387/5 408/14 408/20 426/15 434/3 438/21
**ended [2]** 301/18 343/24
**ends [3]** 275/17 277/17 431/15
**enforcement [5]** 464/5 464/6 465/19 465/21 466/3
**engage [2]** 444/1 449/7
**engaged [4]** 361/8 444/13 444/25 462/16
**enormous [1]** 444/12
**enough [10]** 292/20 329/20 379/18 380/24 387/14 400/5 403/5 409/10 417/9 455/6
**enter [9]** 274/1 351/2 395/2 409/8 438/2 466/10 467/20 468/3 481/2
**entered [2]** 457/6 459/12
**enters [9]** 290/7 290/10 342/3 353/7 398/18 438/5 448/15 482/11 484/11
**entire [4]** 275/19 279/10 412/1 459/4

**E**

**entirely [2]** 409/2 446/19
**entitle [1]** 446/3
**entitled [5]** 399/24 446/5 446/6 447/21 469/12
**envelope [4]** 475/21 476/6 476/7 476/7
**envelopes [1]** 475/18
**environment [1]** 385/23
**equally [1]** 416/13
**equipment [1]** 477/15
**equivalent [1]** 391/20
**equivocal [1]** 278/17
**error [4]** 437/14 438/23 441/3 465/13
**especially [3]** 278/14 391/16 434/16
**ESQ [3]** 273/16 273/19 273/22
**Esquire [2]** 354/3 354/4
**essence [3]** 285/22 398/24 452/25
**essential [1]** 282/16
**establish [8]** 296/9 396/7 396/11 453/7 458/2 459/17 461/24 462/10
**established [3]** 448/21 457/11 459/24
**establishes [3]** 351/17 389/7 462/12
**estimate [2]** 291/18 296/2
**evaded [1]** 328/23
**evaluate [2]** 388/22 442/19
**evasive [1]** 386/14
**even [27]** 275/14 277/10 278/25 305/11 311/20 324/20 372/15 381/8 383/13 387/3 399/5 400/16 402/17 403/25 405/16 410/23 415/24 417/2 422/10 425/16 433/24 441/21 453/2 457/16 458/15 459/15 469/8
**evening [4]** 274/18 484/8 484/15 484/21
**event [2]** 381/25 384/7
**events [4]** 467/5 467/7 467/12 467/14
**eventually [3]** 335/17 343/23 344/23
**ever [12]** 304/17 334/5 337/25 381/24 391/3 392/24 403/15 403/22 405/16 443/2 448/17 469/2
**every [17]** 274/11 274/19 278/10 278/11 296/4 310/3 314/1 338/5 381/9 401/6 404/13 405/15 426/11 441/17 449/22 464/18 482/6
**everybody [6]** 383/18 383/18 386/2 386/6 460/9 484/18
**everybody's [1]** 418/23
**everyone [8]** 289/17 349/23 369/20 370/13 426/6 484/19 485/21 486/1
**everything [13]** 365/7 387/1 402/12 406/5 407/23 412/15 413/23 424/12 424/12 424/12 428/25 476/22 478/19
**everything's [2]** 472/17 477/6
**evicted [1]** 322/20
**evidence [185]** 284/16 284/20 284/22 285/17 285/25 286/8 286/14 286/20 287/1 287/5 297/4 297/13 297/15 333/10 339/19 339/23 346/5 346/6 346/12 346/17 350/10 353/13 354/23 355/16 356/8 357/5 357/20 358/14 359/10 359/17 359/23 360/18 361/12 361/13 361/15 361/17 361/20 372/10 372/12 372/24 373/1 373/5 373/19 375/8 375/9 375/10 375/12 376/1 376/25 378/16 379/23 380/5 380/13 381/21 382/8 382/14 384/12 389/7 390/12 390/22 391/1 391/3 391/16 391/25 392/5 392/21 392/24 393/8 393/19 393/21 395/5 400/2 403/10 404/2 404/5 404/24 405/3 405/4 408/15 413/8 414/9 417/23 417/24 417/25 418/1 420/25 422/24 425/6 425/12 427/7 427/8 428/12 430/20 432/22 439/4 439/22 440/9 442/19 444/12 444/24 445/20 445/22 446/1 446/7 446/12 446/22 447/3 447/16 447/17 447/19 447/24 447/25 448/2 448/3 448/5 448/6 448/8 448/9 448/10 448/10 448/20 448/24 448/25 449/1 449/3 449/4 449/6 449/8 449/15 449/20 450/8 450/24 450/24 450/25 451/2 451/13 451/13 455/14 456/25 458/7 458/20 459/18 461/24 461/25 462/2 462/2 462/3 462/12 462/20 462/22 462/23 463/1 463/10 463/12 463/14 463/16 464/1 464/8 464/8 464/13 464/18 465/4 465/25 466/25 467/3 467/16 467/22 467/24 468/4 468/13 470/8 470/13 475/17 475/18 476/5 476/8 476/9 477/10 478/5 478/12 478/24 479/4 479/14 479/16 479/21
**exact [8]** 347/1 384/18 401/6 412/11 455/5 455/5 462/11 483/16
**exactly [10]** 332/24 333/1 334/7 334/12 334/14 382/21 387/5 387/11 444/6 479/11
**examination [9]** 285/8 288/3 290/21 302/3 305/15 334/1 340/3 342/11 446/25
**examine [2]** 468/14 468/17
**examined [3]** 290/20 342/6 467/9
**example [11]** 280/20 328/7 411/16 434/22 437/4 437/6 439/5 448/13 461/16 466/15 477/1
**except [1]** 468/13
**exception [1]** 346/7
**exchange [3]** 384/2 466/6 469/13
**excited [1]** 328/21
**exclude [2]** 278/20 283/22
**excluded [1]** 286/14
**excluding [1]** 357/16
**exclusively [1]** 467/21
**excuse [9]** 316/1 325/16 330/24 367/22 390/18 450/16 470/15 472/2 484/15
**excused [3]** 472/3 472/11 484/8
**exercise [1]** 455/23
**exhibit [106]** 297/4 297/15 298/19 298/20 298/21 339/8 339/9 339/19 339/23 347/7 348/12 348/20 348/21 349/6 349/12 349/13 349/17 352/14 353/15 353/15 354/7 354/10 354/13 354/14 354/18 354/20 354/25 355/2 355/6 355/8 355/12 355/14 355/18 355/20 355/24 355/25 356/3 356/6 357/1 357/2 357/7 357/9 357/18 357/20 357/21 358/7 358/9 358/15 358/16 358/24 359/2 359/4 359/5 359/14 359/17 359/18 359/20 359/23 359/25 360/3 360/15 360/19 361/25 363/9 369/6 369/18 370/7 387/18 401/17 433/21 435/16 435/24 438/14 472/20 472/21 472/24 473/3 473/13 473/23 475/19 475/22 476/5 479/9 483/13 483/22 488/1 488/3 488/4 488/5 488/6 488/7 488/8 488/9 488/10 488/11 488/13 488/14 488/15 488/16 488/17 488/18 488/19 488/20 488/21 488/22 488/23
**exhibits [40]** 297/2 345/14 346/10 346/16 351/6 354/23 355/16 356/8 356/10 356/12 356/16 356/19 356/23 357/4 358/14 359/9 360/10 360/13 360/17 387/18 447/2 448/1 455/14 468/12 468/17 472/6 472/15 472/15 472/19 473/8 475/1 475/16 477/9 478/10 478/14 478/22 479/2 479/12 479/16 488/12
**exist [1]** 329/18
**existed [3]** 457/20 457/22 458/3
**existence [3]** 448/21 457/1 457/10
**existing [1]** 475/20
**exists [2]** 412/1 419/11
**expecting [1]** 413/17
**Expedition [9]** 293/14 293/18 322/4 322/4 325/15 325/16 334/22 401/22 403/11
**expenses [1]** 373/9
**experience [5]** 302/19 448/12 448/20 465/10 475/11
**expert [2]** 352/1 352/2
**explain [14]** 276/23 297/20 299/17 334/8 348/10 349/8 375/9 409/15 415/25 431/25 452/20 453/17 456/24 481/20
**explained [4]** 283/14 314/15 337/1 456/16
**explains [3]** 275/13 377/6 412/16
**explanation [3]** 276/10 417/17 468/20
**explicit [1]** 390/9
**Explorer [4]** 325/14 401/21 401/23 477/2
**express [2]** 445/17 457/6
**expression [1]** 419/14
**extent [3]** 393/20 458/12 465/2
**extraordinary [1]** 391/19
**eyewitness [1]** 448/8

**F**

**face [2]** 334/6 334/15
**facetious [4]** 405/14 405/18 440/13 440/14
**facing [6]** 312/3 312/10 316/7

F

**facing... [3]** 316/10 422/10 424/2
**fact [34]** 279/18 282/5 312/5 322/3 322/11 325/6 326/19 372/16 379/8 379/17 387/4 389/16 409/11 413/6 414/8 422/12 423/3 423/5 423/23 426/12 426/16 438/19 438/21 441/7 446/2 447/8 447/13 448/21 448/22 449/23 449/25 458/6 463/20 465/20
**factors [1]** 466/1
**facts [21]** 376/18 385/1 388/22 390/10 397/3 409/18 421/24 426/13 445/15 445/16 446/23 447/4 447/6 447/9 447/18 447/22 448/7 448/10 448/11 449/5 455/13
**factual [3]** 362/15 391/22 399/11
**factually [1]** 399/1
**fail [1]** 453/2
**failed [3]** 408/15 438/19 462/6
**failure [1]** 465/9
**fair [19]** 304/4 305/11 321/24 329/20 378/7 380/16 391/14 391/16 391/18 391/24 392/3 392/3 410/20 422/16 428/15 431/17 434/25 450/23 451/1
**fairness [1]** 432/4
**fake [1]** 407/22
**fall [4]** 292/24 294/24 295/8 388/7
**false [1]** 465/15
**falsehood [1]** 465/14
**falsely [2]** 311/20 466/19
**family [10]** 384/9 390/1 397/7 397/22 398/7 398/11 413/15 413/18 437/6 461/18
**fantastic [1]** 379/4
**far [4]** 334/25 337/3 363/3 479/22
**fashion [1]** 283/4
**father [4]** 288/22 288/23 319/25 337/17
**fault [6]** 275/14 277/10 278/25 284/7 429/10 429/11
**favor [4]** 373/20 412/16 446/6 470/12
**favorable [2]** 373/4 466/18
**favoring [1]** 372/12
**fax [1]** 473/6
**FBI [2]** 431/7 431/11
**fear [1]** 470/12
**February [1]** 321/18
**Federal [10]** 273/20 410/1 419/15 419/17 419/18 419/19 419/19 419/20 425/10 485/14
**feel [1]** 417/6
**feels [1]** 384/25
**fellow [3]** 414/13 427/6 469/13
**female [1]** 344/19
**Fetherman [2]** 345/6 345/7
**few [8]** 289/7 295/22 296/4 332/14 350/11 350/12 377/8 434/10
**fight [4]** 277/12 277/14 288/20 319/25
**figure [3]** 279/16 409/13 475/2
**figures [1]** 349/10
**figuring [1]** 277/13
**file [4]** 347/2 347/5 347/5 347/10
**fill [1]** 401/16
**filled [2]** 401/18 404/9
**final [1]** 479/25
**finally [4]** 362/22 389/12 447/4 470/11
**find [36]** 286/7 286/7 345/8 373/19 383/18 390/4 400/18 402/2 402/13 405/4 419/23 424/25 425/11 425/16 438/21 439/9 439/11 440/8 448/7 453/5 454/3 454/5 456/4 456/5 456/7 457/10 457/21 458/16 459/9 460/22 461/2 461/8 462/6 464/11 467/17 475/1
**finding [3]** 401/24 414/5 469/22
**finds [2]** 401/22 405/1
**fine [28]** 281/12 281/13 282/24 284/3 284/25 289/4 318/16 331/12 332/9 332/19 333/7 352/19 397/16 397/25 398/9 429/16 429/23 433/22 434/14 435/15 437/16 476/20 476/21 481/14 482/2 482/8 482/16 484/14
**fingerprint [5]** 402/6 402/15 402/16 402/18 431/7
**fingerprinted [5]** 428/2 431/5 431/9 438/12 438/14
**fingerprinting [1]** 433/16
**fingerprints [8]** 402/4 402/20 411/18 428/3 429/2 429/3 433/19 438/17
**first [50]** 274/22 276/4 280/16 281/22 283/9 285/24 290/6 291/1 297/3 302/10 305/22 306/19 307/16 308/24 312/22 313/11 314/22 322/4 325/8 326/9 326/13 328/16 334/18 334/20 334/21 334/22 336/1 341/9 343/25 348/12 364/6 370/6 372/7 375/19 376/7 392/12 392/19 401/2 405/10 409/22 446/24 447/19 453/9 453/15 453/17 454/21 456/12 456/20 470/9 477/25
**fish [2]** 443/7 443/15
**five [5]** 315/15 383/20 485/6 485/7 485/7
**five-minute [1]** 485/6
**flagrant [1]** 424/11
**flat [1]** 402/4
**flavor [2]** 428/21 440/19
**flip [2]** 318/1 472/18
**floorboard [1]** 291/14
**flour [1]** 443/5
**focal [1]** 429/18
**folks [2]** 419/19 444/24
**follow [8]** 334/3 351/9 401/10 420/23 445/9 446/7 448/12 449/6
**followed [8]** 348/5 375/19 378/18 378/20 389/5 416/25 417/1 418/9
**following [12]** 276/6 331/13 357/23 357/23 358/18 358/18 371/3 427/18 448/13 454/20 470/17 482/20
**follows [4]** 290/20 342/6 360/22 451/20
**food [4]** 366/10 366/14 366/16 443/4
**foot [3]** 405/12 405/22 440/18
**forbids [1]** 455/2
**Force [1]** 415/22
**Ford [5]** 325/14 325/16 401/21 401/23 477/2
**foreperson [4]** 461/11 470/6 470/7 470/10
**forget [1]** 293/11
**forgot [1]** 386/17
**forgotten [1]** 369/4
**form [3]** 351/14 357/14 469/17
**formal [1]** 457/6
**formally [2]** 285/16 285/19
**Forming [1]** 452/24
**forms [1]** 446/23
**forth [2]** 389/20 389/21
**fortuitous [1]** 431/10
**found [10]** 291/14 336/9 345/9 347/23 349/20 362/24 405/20 428/4 440/4 461/7
**foundation [2]** 294/14 296/10
**four [11]** 285/22 304/4 313/22 314/20 343/7 383/20 388/12 388/17 388/17 421/15 483/16
**four-part [1]** 285/22
**Fourth [1]** 343/12
**Fox [1]** 283/13
**frame [1]** 293/13
**Francisco [4]** 367/5 367/7 367/10 367/11
**Francisco's [1]** 367/9
**frantically [5]** 377/19 377/23 378/3 378/9 378/23
**free [1]** 422/14
**Fried [7]** 366/1 366/2 366/8 366/10 366/12 366/15 368/6
**friend [5]** 381/3 399/4 403/3 407/8 443/18
**friends [8]** 380/24 397/6 397/22 398/7 398/11 399/6 399/19 403/4
**front [10]** 298/19 298/20 331/9 362/24 366/11 366/12 376/2 393/7 406/2 436/20
**Fu [1]** 273/7
**full [4]** 308/8 378/17 380/22 416/20
**full-time [1]** 380/22
**fully [2]** 456/24 459/4
**fumble [1]** 403/16
**fun [2]** 365/8 365/9
**function [1]** 467/22
**fundamental [1]** 410/7
**fundamentally [1]** 411/6
**funds [1]** 390/3
**further [25]** 289/5 301/25 302/1 331/5 339/24 340/1 341/20 350/4 354/19 356/5 356/25 358/8 359/1 359/4 368/17 369/5 380/19 436/3 437/3 461/9 461/15 464/4 468/19 468/19 479/9
**furtherance [12]** 389/17 390/5 396/5 396/14 396/17 397/5 397/19 397/23 398/8 437/1 458/5 461/13
**furthering [1]** 458/10
**furthers [1]** 459/7
**furthest [1]** 298/11
**furtively [1]** 418/19
**Fuso [1]** 273/7
**fussing [3]** 406/5 407/5 407/20

G

**gain [1]** 466/22

## G

**glove [15]** 281/25 282/21 373/18 377/12 404/22 406/4 407/21 417/10 417/12 417/14 418/24 419/7 420/4 420/8 477/12
**game [1]** 421/16
**gang [1]** 444/21
**Gap [1]** 362/18
**gave [18]** 288/7 314/23 314/25 315/9 315/10 320/13 381/22 395/25 407/22 414/21 415/25 417/18 418/15 420/2 424/14 424/14 440/22 480/1
**general [2]** 348/3 400/15
**generally [4]** 282/2 345/19 346/3 448/6
**gentlemen [19]** 290/11 299/23 350/17 353/8 361/6 375/6 390/14 408/23 414/4 421/24 422/22 425/23 426/15 438/6 445/7 472/4 472/10 477/10 482/12
**get [66]** 278/7 292/8 292/21 293/18 306/3 306/22 307/20 308/7 316/14 316/17 316/20 316/25 317/2 318/3 318/11 321/3 321/20 322/5 322/7 323/19 324/13 324/15 327/9 329/7 332/13 350/15 350/16 351/8 353/4 365/21 365/25 366/2 367/22 375/22 386/9 386/15 390/9 391/19 393/7 401/3 401/7 401/7 401/8 403/18 403/18 413/19 417/5 419/1 422/8 422/8 422/16 424/4 424/5 427/1 429/1 429/3 432/2 436/5 439/11 439/17 444/2 444/21 461/10 472/6 473/4 480/6
**gets [16]** 278/23 315/22 317/8 317/18 317/18 330/14 379/24 382/16 388/24 401/20 401/22 418/12 419/4 422/14 436/11 442/11
**getting [9]** 293/14 329/15 393/13 394/1 401/14 422/10 422/12 474/25 477/24
**gift [3]** 437/6 456/3 461/17
**girl [1]** 276/24
**girlfriend [17]** 275/22 280/19 320/22 327/2 351/20 351/22 359/7 359/13 373/11 379/25 380/20 387/22 391/2 391/15 422/17 439/12 473/19
**girls [1]** 365/7
**give [33]** 284/9 288/19 293/17 313/10 314/18 327/16 360/25 375/7 375/21 384/1 398/3 408/15 409/25 410/14 410/19 410/20 412/14 413/13 414/16 416/15 419/10 424/23 428/3 430/14 432/19 439/4 467/2 467/17 473/8 474/22 484/5 484/13 485/15
**given [20]** 275/2 285/4 287/23 379/16 391/3 397/12 405/16 445/14 447/12 447/14 447/15 448/23 455/21 455/23 464/17 465/15 465/25 466/6 466/12 470/14
**gives [8]** 388/21 395/8 399/1 407/14 407/21 411/19 417/15 434/10
**giving [7]** 322/23 422/13 434/9 436/17 438/8 440/17 473/9
**Glad [1]** 477/2
**glass [1]** 345/18
**glovebox [1]** 439/15
**go [50]** 280/17 283/8 288/15 289/8 290/24 291/21 299/12 307/22 312/6 320/11 322/5 326/15 330/18 330/21 335/25 343/20 344/23 345/2 353/13 368/11 369/2 369/2 370/6 372/7 372/14 372/21 373/25 375/8 380/19 387/1 391/9 404/4 404/17 405/7 407/17 421/21 424/25 427/15 431/1 442/4 443/2 443/6 461/9 470/8 471/10 474/3 475/8 475/16 478/15 480/4
**goes [16]** 281/25 282/2 282/5 282/5 283/20 283/23 337/3 377/15 385/18 385/22 386/22 391/6 392/4 426/9 471/11 473/20
**going [118]** 276/25 277/1 278/7 278/17 278/24 280/14 284/13 285/5 285/6 285/7 288/13 289/8 289/8 292/10 292/20 295/15 295/20 295/24 296/25 299/12 304/20 318/21 326/11 326/20 333/8 334/25 335/3 335/14 335/25 338/11 338/11 339/7 340/7 340/18 341/12 343/17 347/7 350/16 351/3 351/9 351/14 352/8 352/12 352/14 353/2 360/23 360/25 361/3 365/7 365/8 368/18 370/16 377/24 378/9 379/14 380/17 381/16 383/6 384/20 384/21 386/4 387/1 387/2 388/13 388/20 389/20 389/20 390/20 391/15 393/9 397/10 401/10 405/3 411/4 411/12 412/13 412/15 412/18 412/19 412/23 414/7 414/23 414/23 414/23 415/19 418/2 421/1 421/2 421/11 421/18 422/16 426/25 426/25 427/1 427/8 428/25 431/1 431/13 436/9 436/23 437/12 442/4 442/6 444/2 444/2 451/17 460/5 471/4 471/14 472/16 474/2 475/13 475/17 476/21 477/5 477/8 478/9 484/15
**gone [2]** 293/7 295/22
**gonna [1]** 444/7
**good [21]** 274/7 274/8 274/16 281/16 283/16 290/11 301/1 301/5 305/17 305/18 305/21 380/23 386/2 386/7 398/21 400/1 400/4 408/23 422/18 440/13 441/20
**got [53]** 275/13 277/9 278/24 288/23 288/25 291/11 291/13 291/14 291/17 293/23 295/14 302/25 308/13 308/18 308/21 322/20 324/20 329/6 329/22 330/2 338/7 343/20 351/8 366/7 366/11 366/14 367/24 368/1 368/9 379/7 381/23 384/4 385/8 386/10 390/23 396/23 400/25 401/1 416/4 416/19 418/17 422/17 422/18 441/9 441/17 442/1 442/22 443/7 443/20 444/7 444/18 478/19 484/3
**gotten [1]** 472/14
**Government [235]**
**Government's [24]** 278/6 278/24 332/2 339/23 346/16 355/20 359/5 373/20 398/24 401/17 408/3 409/1 410/2 410/4 413/9 414/2 414/20 421/5 422/2 422/7 425/11 438/19 447/20 488/1
**Governments [1]** 356/10
**governs [3]** 375/15 445/22 468/4
**grab [1]** 379/13
**grade [1]** 419/13
**gram [5]** 292/6 292/6 292/8 377/3 383/15
**grams [19]** 357/8 357/11 376/8 377/1 389/11 422/1 422/5 422/6 422/6 439/3 441/8 441/21 452/3 452/18 453/20 460/3 460/12 460/16 461/4
**Grand [1]** 362/3
**granted [1]** 436/8
**great [4]** 305/20 383/13 425/4 441/17
**greater [5]** 446/4 448/24 465/23 466/13 467/10
**green [1]** 443/7
**Gregory [6]** 362/5 364/5 366/6 367/18 367/24 367/24
**grew [1]** 319/5
**Ground [1]** 320/16
**grounds [1]** 344/16
**guard [1]** 407/9
**guess [18]** 279/17 289/19 289/24 297/5 334/14 337/22 349/9 352/14 395/14 397/21 428/8 429/4 429/19 435/24 443/22 473/15 480/5 481/19
**guide [1]** 409/20
**guiding [3]** 409/19 411/2 411/25
**guilt [18]** 372/25 373/21 390/8 390/13 403/5 403/6 449/11 449/21 450/4 450/19 450/20 451/3 451/7 451/14 458/2 458/13 469/9 469/22
**guilty [59]** 277/4 277/4 277/6 336/9 362/12 362/12 362/13 364/15 364/17 372/13 390/11 399/3 399/10 399/25 402/21 403/2 403/20 407/11 407/12 407/18 408/16 408/21 409/9 410/3 410/3 410/3 410/4 410/5 410/5 413/6 413/7 413/8 421/6 427/9 438/20 438/22 445/18 445/18 445/19 445/20 449/9 453/5 453/6 454/6 454/18 456/9 458/16 459/23 461/8 461/8 464/9 464/12 464/12 467/23 469/19 469/19 469/25 470/1 470/2
**guy [24]** 291/12 298/13 298/14 302/21 304/8 304/17 305/5 305/11 319/16 319/20 366/12 366/15 386/13 387/21 388/6 388/13 408/12 414/22 416/21 420/9 423/25 440/17 443/18 443/18
**guy's [3]** 380/25 443/7 443/25
**guys [4]** 321/25 380/23 387/15 476/1
**gym [1]** 367/25

## H

**had [113]** 275/19 276/7 276/12 278/3 282/5 282/20 282/20 283/10 288/11 288/20 291/12 292/14 292/15 292/18 294/11 294/19 296/1 299/5 300/20 301/12 301/16 303/3 303/9 303/15 303/22 304/22 313/8 319/25 324/3 325/11 325/14 325/14 325/19 328/19 328/23 328/23 329/1 329/13 329/14 329/15 329/24 330/1 332/16 333/4 335/9 335/21 337/1 337/22 338/2 340/12 340/15 340/22 340/24 349/5 365/18 367/1 367/24 369/4 373/13 373/16 377/25 382/3 383/5 383/17 383/20 383/22 386/11 386/12 387/11 387/24 388/12 388/17 388/17 389/21 389/22 389/22 390/23 393/19 395/20 400/9 400/15 400/22 402/5 402/7 405/17 406/12 406/22 408/1 408/13 408/13 409/5 414/17 415/18 417/17 419/13 420/3 420/4 420/8 420/10 420/12 423/5 427/4 429/10 434/2 440/8 444/15 444/18 446/21 448/19 450/2 460/15 473/17 481/11
**hadn't [2]** 303/15 305/25
**hairstyle [1]** 400/23
**half [4]** 308/8 345/12 352/21 383/14
**hall [1]** 475/8
**halt [1]** 417/9
**Hammond [1]** 335/21
**Hammonds [38]** 305/23 306/18 307/15 325/8 326/17 334/4 334/18 338/24 340/12 340/14 340/18 340/22 373/12 377/18 379/1 381/13 401/18 402/3 404/19 404/22 414/20 414/25 415/4 415/14 415/16 415/25 416/17 416/19 416/23 417/11 418/21 419/5 422/9 431/2 431/14 438/17 440/11 476/15
**Hammonds' [4]** 415/3 418/9 421/17 440/23
**hand [10]** 289/23 299/9 342/4 403/17 439/22 451/1 459/6 461/9 467/9 472/8
**handle [2]** 429/21 434/9
**handled [2]** 429/7 431/12
**hands [7]** 377/22 377/23 402/23 406/5 407/6 407/20 418/23
**Handwritten [1]** 473/10
**handwrote [1]** 473/3
**hanging [1]** 304/15
**happen [10]** 334/25 335/14 375/12 385/16 407/2 421/11 439/10 439/11 443/16 475/10
**happened [33]** 288/16 288/19 289/2 291/11 291/16 293/9 301/4 301/11 303/9 319/10 334/9 334/12 344/3 344/6 347/23 366/7 367/20 376/21 378/25 384/13 388/18 389/17 390/5 406/18 408/2 409/13 423/17 425/20 425/21 431/6 439/20 440/16 442/23
**happening [1]** 377/22
**happens [9]** 378/2 385/17 388/9 388/10 389/2 389/15 404/21 434/6 459/7
**happy [7]** 287/18 336/16 393/7 393/11 424/4 424/5 436/13
**hard [5]** 277/13 385/1 409/25 421/16 440/17
**hardly [2]** 381/6 440/4
**has [87]** 274/24 275/7 277/23 277/24 280/16 280/18 283/21 284/8 284/19 286/2 286/21 324/10 325/4 336/12 353/12 354/20 357/1 357/18 358/9 361/15 363/21 372/19 375/20 375/20 377/12 389/3 389/4 393/20 396/13 399/13 400/8 400/10 402/17 402/18 403/21 404/18 404/24 408/14 408/24 409/16 411/1 418/13 418/14 422/1 422/18 423/23 424/2 424/7 430/10 430/17 435/14 438/10 439/7 439/8 439/12 442/25 443/18 444/25 446/15 446/17 449/11 449/19 450/7 454/3 455/20 455/22 456/2 457/11 458/7 458/13 459/6 459/24 460/2 460/9 460/11 462/6 462/22 463/16 464/9 465/14 466/5 466/12 467/3 473/13 474/23 477/18 485/16
**hasn't [3]** 426/18 426/24 441/12
**hated [1]** 325/6
**have [235]**
**haven't [5]** 282/9 370/22 411/22 427/4 427/5
**having [12]** 276/14 277/13 287/4 290/19 300/13 342/5 347/12 385/24 387/9 390/12 429/11 464/23
**he [367]**
**he'd [1]** 295/21
**he's [70]** 276/14 277/3 279/10 279/18 280/19 281/8 282/12 286/24 297/24 298/11 348/14 351/17 351/20 372/17 381/23 381/24 382/1 383/4 383/13 384/8 385/8 385/9 388/12 391/14 399/10 399/16 399/17 399/24 402/21 402/21 403/4 403/11 403/12 403/19 403/20 404/24 405/2 409/6 413/7 414/20 414/23 414/23 414/23 415/3 415/17 416/19 416/19 416/23 420/19 420/20 421/15 421/16 421/20 422/16 424/17 424/25 425/4 426/7 427/1 430/19 440/10 441/19 441/21 443/8 443/11 443/14 443/17 443/19 443/20 444/2
**head [6]** 306/13 346/20 346/22 432/7 473/1 482/3
**heads [1]** 370/14
**hear [29]** 278/4 299/18 324/19 343/3 352/2 361/7 361/21 375/13 378/11 381/12 384/23 389/12 412/6 412/7 412/7 412/8 413/17 416/6 418/10 421/3 425/25 426/5 441/25 465/8 468/8 468/19 477/12 478/8 483/10
**heard [51]** 284/16 286/21 323/8 324/22 337/21 362/25 362/25 368/10 372/13 376/4 376/9 376/23 377/25 379/16 381/9 381/15 381/22 382/12 382/22 382/23 383/20 384/5 384/8 385/16 387/9 388/11 388/22 389/6 389/25 390/7 395/22 395/24 396/3 409/23 414/8 414/9 415/2 420/9 424/2 424/3 439/4 442/6 442/8 443/19 444/4 444/4 444/5 448/4 462/15 465/19 466/4
**hearing [8]** 405/10 413/8 430/10 468/9 474/12 474/15 474/20 474/24
**heavy [3]** 291/9 323/22 324/11
**Hector [8]** 366/21 366/22 366/22 367/1 367/4 367/6 367/24 420/9
**height [1]** 400/22
**held [4]** 377/14 387/16 458/25 474/12
**hell [2]** 305/9 408/12
**help [6]** 275/24 304/20 322/7 323/17 336/25 468/19
**helpful [3]** 350/14 351/7 376/19
**her [88]** 276/25 287/8 288/1 288/18 288/21 288/21 288/22 288/22 288/23 288/23 292/21 294/7 294/22 301/5 323/19 324/6 324/8 332/22 336/24 336/25 336/25 378/1 378/1 379/19 379/20 382/3 382/23 384/22 384/24 385/12 385/16 386/8 386/13 386/16 386/19 387/13 387/15 387/22 387/24 389/23 399/15 406/5 407/5 407/9 407/20 407/23 413/24 419/6 419/24 422/1 422/9 422/13 422/13 422/18 422/24 422/24 423/1 423/1 423/11 423/15 423/16 424/3 424/4 424/4 424/5 424/5 442/7 442/12 442/14 442/20 442/21 444/5 444/6 444/7 450/10 450/14 466/7 466/8 466/9 466/19 466/22 466/23 467/2 467/7 467/9 467/13 467/15
**here [69]** 274/12 275/24 277/9 281/24 285/25 286/9 286/16 288/22 290/1 290/3 302/13 313/15 313/22 314/7 314/20 317/22 318/10 330/1 331/10 335/24 337/21 362/19 364/13 364/15 364/15 365/5 365/6 365/8 365/13 372/5 375/23 383/19 385/6 388/17 389/14 389/18 390/2 390/3 390/5 396/11 403/12 403/12 403/12 404/17 405/13 406/21 408/2 408/5 408/24 410/1 410/11 418/20 419/20 421/9 422/14 422/16 427/3 431/12 443/17 445/2 452/16 469/5 472/17 474/10 477/22 484/24 485/1 485/17 485/19
**here's [4]** 276/9 406/13 406/13 412/24
**hereby [1]** 353/24
**Herringa [3]** 345/5 349/14 350/2
**herself [3]** 288/24 386/21 406/21
**hesitate [11]** 413/2 413/4 413/10 413/25 417/15 418/3 426/21 426/22 450/9 450/13

## H

**hesitate... [1]** 469/14
**Hey [1]** 401/8
**hid [1]** 339/5
**hidden [2]** 348/18 387/10
**hide [3]** 377/20 378/24 419/7
**hiding [4]** 386/14 423/2 423/3 423/4
**high [1]** 293/10
**higher [1]** 419/21
**highest [2]** 412/1 419/11
**highlight [1]** 285/5
**highlighted [1]** 444/15
**highly [2]** 286/16 390/21
**him [87]** 276/15 291/13 293/18 293/18 294/11 294/16 294/19 294/22 295/4 295/15 295/20 296/1 296/3 298/16 302/23 304/3 305/25 306/19 307/16 307/18 319/3 322/11 328/2 329/14 333/5 334/20 336/19 337/2 338/3 338/7 339/3 339/5 340/15 364/8 365/5 365/9 366/12 366/14 366/25 367/2 367/2 368/22 372/13 372/16 373/11 379/21 387/4 387/9 389/22 389/25 392/2 399/14 399/25 401/3 401/10 403/13 403/14 403/15 403/16 403/16 403/17 403/18 404/11 404/15 407/6 407/13 407/14 407/15 407/16 407/19 408/13 415/5 415/7 415/15 420/20 421/8 421/22 423/10 423/24 423/24 428/15 434/10 438/22 440/17 444/2 444/12 458/16
**himself [5]** 275/21 330/21 415/25 418/6 459/19
**his [103]** 275/17 275/20 275/22 276/10 276/25 277/3 277/20 278/7 278/12 280/19 287/1 291/14 294/22 295/15 298/22 301/12 322/11 327/2 330/7 330/18 332/19 344/21 344/22 351/20 351/22 354/2 354/3 359/6 359/19 362/24 366/20 372/25 373/9 373/11 379/7 379/19 379/20 379/22 379/23 379/24 380/6 380/7 381/2 381/3 388/9 388/11 388/12 389/21 389/23 389/24 390/1 391/18 391/20 391/20 392/1 392/2 392/13 393/18 399/25 400/20 401/23 402/20 403/2 403/6 403/12 403/16 403/16 403/17 404/12 404/16 405/5 407/14 407/17 408/9 408/9 415/3 418/7 418/16 419/1 419/5 422/17 423/24 424/9 424/19 424/21 425/25 426/7 443/19 443/21 444/4 444/14 444/17 449/15 450/10 450/14 458/12 458/13 458/20 458/21 459/17 465/22 473/19 477/19
**history [1]** 413/24
**hit [2]** 290/3 387/17
**hold [7]** 310/21 310/24 387/13 403/14 414/11 444/7 446/13
**holding [1]** 387/14
**hole [1]** 404/18
**Holley [1]** 485/16
**home [8]** 288/21 304/10 363/19 389/21 396/6 412/10 413/15 416/4
**honest [1]** 396/25
**honestly [2]** 425/9 446/12
**Honor [37]** 274/7 277/7 278/14 280/11 281/21 284/8 285/13 287/18 290/14 299/9 299/12 333/17 334/11 339/24 342/1 347/19 348/13 350/7 351/3 352/10 352/23 353/11 361/5 369/1 369/4 369/13 370/21 370/25 375/4 396/18 427/12 430/9 473/22 474/18 478/23 483/19 484/23
**Honor's [2]** 282/22 369/1
**HONORABLE [1]** 273/11
**hope [2]** 409/10 422/22
**hoped [1]** 466/17
**hopes [2]** 309/6 466/21
**horrible [1]** 443/2
**hotel [21]** 296/22 329/22 332/4 343/23 345/2 345/8 346/4 346/5 346/21 347/16 349/2 349/4 384/12 384/13 384/15 384/17 385/2 387/7 387/10 425/18 434/23
**hour [1]** 352/21
**hours [1]** 448/15
**house [7]** 288/22 294/23 368/8 383/25 384/2 412/2 424/21
**houses [1]** 383/22
**how [88]** 275/21 276/10 277/22 278/19 279/17 281/24 282/2 282/5 283/10 285/4 289/25 291/18 291/23 292/1 292/7 293/5 295/17 295/17 295/19 295/19 296/2 296/2 296/7 296/14 305/19 309/15 326/13 334/6 334/6 335/13 335/24 338/2 338/3 338/7 342/17 345/11 348/17 348/23 352/11 352/20 362/11 365/6 365/6 365/9 365/10 365/11 366/2 366/24 367/1 367/6 367/17 367/22 378/8 379/10 379/20 379/21 381/20 384/6 385/7 385/12 385/13 387/3 388/21 388/25 391/24 392/2 392/3 393/5 407/1 420/11 420/15 423/12 424/7 425/22 426/2 435/5 441/20 444/4 444/5 444/6 444/16 457/7 469/8 471/14 471/17 474/21 476/1 483/8
**however [15]** 289/16 379/5 387/10 397/4 428/14 429/21 434/10 447/14 451/6 454/7 455/4 457/12 468/9 468/21 470/7
**Huddleston [1]** 285/21
**huge [2]** 424/19 442/17
**huh [5]** 310/20 312/12 328/18 369/3 432/9
**hundred [3]** 301/12 377/2 383/15
**hundred-dollar [1]** 301/12
**Hyatt [48]** 290/7 290/16 290/19 290/23 299/4 299/17 300/4 305/17 305/22 312/13 323/4 334/3 340/5 341/23 373/15 377/1 377/17 380/23 381/22 382/3 382/22 383/24 384/5 384/14 384/23 386/8 387/21 389/8 389/19 406/19 406/19 406/20 408/4 408/5 408/5 413/20 413/20 413/23 422/21 423/6 423/15 424/10 434/23 441/16 442/7 466/5 467/6 487/4
**Hyatt's [2]** 422/23 423/21

## I

**I'd [17]** 279/16 297/3 299/8 328/14 332/1 345/13 383/10 385/20 388/19 392/23 393/5 393/23 409/22 425/13 430/8 432/19 443/22
**I'll [46]** 280/3 283/22 284/1 288/4 294/13 295/21 295/22 297/4 298/4 298/18 299/16 300/23 317/14 318/5 346/2 347/6 353/13 353/13 353/18 354/6 369/1 369/2 369/5 369/13 372/7 373/23 381/4 381/4 390/17 393/7 393/11 394/5 398/3 398/16 410/17 414/10 435/18 436/4 436/4 471/22 472/18 483/9 484/7 485/3 485/9 485/17
**I'm [93]** 274/11 275/25 277/13 280/14 280/17 282/14 282/18 284/13 285/16 285/19 287/18 289/8 290/16 295/1 297/2 299/12 308/15 312/24 313/1 316/2 317/16 332/10 334/14 335/10 339/7 341/24 342/16 342/23 345/19 347/18 353/2 353/3 361/2 361/6 370/16 370/16 386/25 390/20 391/13 393/14 393/14 396/3 396/7 397/1 397/2 397/2 397/2 399/22 400/4 403/23 405/5 406/10 406/11 412/15 414/7 418/22 418/23 421/1 421/11 422/15 424/3 424/5 426/15 426/17 426/17 426/25 429/7 429/11 430/9 431/1 431/13 432/2 432/3 432/12 434/9 434/13 436/13 436/17 436/18 437/12 437/13 438/8 438/23 451/17 460/5 472/16 473/22 474/4 476/20 477/8 478/25 479/22 484/15
**I've [14]** 275/2 287/23 314/1 347/2 351/8 395/3 397/18 405/14 405/15 409/10 434/2 436/25 447/23 469/21
**ID [1]** 407/14
**idea [3]** 385/22 408/13 440/24
**ideal [1]** 440/4
**identification [3]** 347/6 359/3 379/7
**identified [4]** 345/5 345/6 349/14 408/10
**identify [1]** 302/19
**identity [1]** 282/15
**Idol [1]** 413/16
**II [3]** 357/13 362/8 452/4
**illegal [1]** 326/3
**illicit [1]** 404/12
**imagine [7]** 353/4 381/12 384/23 413/13 421/11 421/12 426/2
**impact [2]** 336/10 336/12
**impartial [2]** 450/23 451/1
**impartially [1]** 446/7
**impassioned [1]** 391/21
**impeached [1]** 476/15
**impermissible [1]** 420/17
**implication [1]** 277/5
**imply [1]** 444/22
**implying [1]** 443/24

## I

**importance [2]** 450/10 465/12
**important [18]** 276/22 376/17 385/3 400/13 411/24 412/14 412/21 412/22 413/2 413/10 413/14 418/20 418/22 420/23 426/21 442/18 445/15 450/14
**imposed [1]** 468/1
**imposing [1]** 467/21
**impound [14]** 293/14 293/23 308/5 308/7 308/13 308/16 308/18 308/22 310/19 322/6 322/7 337/21 341/12 422/5
**impounded [1]** 423/19
**impresses [1]** 464/23
**improper [2]** 420/22 467/6
**inaccuracy [1]** 476/16
**inaccurate [1]** 476/25
**inadvertent [3]** 437/14 437/15 438/9
**Inc [1]** 273/20
**incentive [1]** 441/17
**incident [13]** 296/21 308/4 310/19 322/5 322/6 328/16 329/21 331/1 332/4 422/4 425/14 425/17 465/8
**incidents [3]** 322/4 328/1 328/13
**inclination [1]** 274/25
**include [1]** 474/15
**included [3]** 276/7 349/25 433/17
**includes [1]** 461/20
**including [1]** 382/15
**inclusive [1]** 451/23
**income [3]** 307/5 307/9 310/13
**Inconsistencies [1]** 465/5
**inconsistency [1]** 415/13
**inconsistent [1]** 379/3
**incorrectly [1]** 393/6
**incriminating [2]** 278/15 405/5
**Indeed [1]** 286/25
**INDEX [1]** 488/1
**indicate [2]** 437/12 464/18
**indicated [1]** 469/21
**indicates [1]** 477/22
**indictment [32]** 284/15 284/22 361/9 361/11 361/19 362/2 362/12 373/8 447/19 449/10 451/18 451/20 453/18 453/23 454/6 459/23 460/1 460/3 460/12 460/23 461/3 462/7 462/9 462/17 462/19 463/1 463/5 463/7 463/14 463/17 464/12 469/20
**indirect [1]** 448/9
**individual [5]** 292/9 344/15 439/14 451/7 475/18
**individuals [4]** 369/10 463/18 463/20 463/21
**indulgence [1]** 323/1
**infer [5]** 448/11 448/17 448/20 449/5 455/14
**inference [5]** 380/16 392/3 392/11 449/23 463/6
**inferences [9]** 373/4 373/20 375/9 391/22 395/4 446/19 449/3 449/4 458/20
**inferred [1]** 457/14
**influence [3]** 463/22 467/20 468/2
**informant [5]** 411/17 415/15 415/16 415/17 416/11
**information [24]** 289/1 327/16 338/19 354/10 354/13 354/14 354/15 355/2 355/6 355/7 355/9 355/20 355/24 355/25 356/1 356/12 356/16 356/18 356/20 377/15 379/6 382/8 401/19 415/18
**informed [1]** 459/4
**initial [2]** 338/9 400/9
**inn [7]** 343/21 343/24 344/1 344/1 344/7 344/8 369/11
**innocence [12]** 409/24 409/25 410/6 410/14 410/20 410/22 410/24 411/8 449/15 449/17 451/14 469/10
**innocent [7]** 410/21 411/6 421/7 449/16 463/9 465/9 465/13
**innuendo [3]** 409/2 420/24 420/24
**inside [10]** 344/23 345/2 345/8 349/2 349/4 366/12 401/23 476/6 476/13 477/2
**insisted [1]** 279/17
**instance [2]** 286/23 388/15
**instances [2]** 293/20 338/17
**instead [4]** 385/18 398/11 441/23 474/25
**instruct [11]** 388/21 390/17 397/13 411/10 445/8 456/3 456/20 457/25 464/1 467/6 482/4
**instructed [1]** 351/5
**instruction [17]** 282/6 284/8 284/11 284/14 287/3 287/15 287/24 361/1 392/23 393/24 396/22 397/9 398/3 411/11 420/23 430/14 468/23
**instruction's [1]** 483/21
**instructions [16]** 287/24 388/21 389/13 412/14 420/2 445/4 445/9 445/14 446/1 456/18 465/25 468/22 468/22 471/4 471/10 483/17
**instructs [1]** 411/4
**insufficient [2]** 372/10 373/1
**intelligence [1]** 464/20
**intelligent [1]** 455/12
**intend [2]** 284/10 397/5
**intended [3]** 456/4 456/5 456/7
**intending [1]** 455/3
**intends [2]** 280/16 478/22
**intent [23]** 283/24 284/1 284/21 286/3 286/17 287/6 361/19 362/7 364/21 364/22 373/10 388/10 404/12 452/1 452/8 452/18 453/19 453/25 454/10 454/12 454/19 454/23 462/25
**intention [2]** 455/23 458/10
**intentional [1]** 465/14
**intentionally [10]** 338/18 339/5 362/7 452/1 452/7 454/21 455/1 456/12 456/17 463/8
**interest [1]** 393/12
**interested [4]** 326/23 401/14 401/15 431/11
**interesting [1]** 415/24
**interests [1]** 466/19
**intern [1]** 274/15
**interpret [1]** 372/25
**interrupt [1]** 434/4
**interstate [2]** 444/13 445/1
**interview [2]** 326/19 327/14
**intimate [1]** 379/11
**intimately [1]** 408/6
**introduce [2]** 420/11 478/10
**introduced [4]** 420/1 420/18 463/16 467/3
**investigating [2]** 423/16 423/17
**investigation [2]** 288/18 344/16
**investigative [3]** 402/10 411/11 464/4
**involved [21]** 296/7 296/14 303/17 304/16 326/5 327/12 327/23 388/6 389/10 399/19 408/6 423/19 423/20 452/2 459/25 460/3 460/12 460/15 460/17 460/24 461/4
**involvement [3]** 326/1 363/4 463/16
**involves [2]** 351/16 457/4
**involving [1]** 367/20
**Iran [1]** 410/7
**is [544]**
**Island [3]** 320/14 425/24 461/21
**isn't [16]** 278/5 278/13 281/6 282/3 282/12 282/23 305/11 389/3 392/5 407/2 409/12 420/12 420/13 420/24 441/24 442/9
**isolation [2]** 421/6 421/11
**issue [38]** 274/19 281/25 282/13 282/16 282/22 283/24 283/24 284/20 285/4 286/17 289/19 332/3 332/10 361/17 385/2 386/23 393/7 396/1 396/21 396/23 396/24 425/2 430/1 434/2 435/4 435/12 436/12 449/10 458/13 461/22 461/22 462/24 464/3 474/9 476/3 476/4 477/21 478/4
**issues [8]** 274/18 280/11 283/20 284/1 289/10 428/1 470/13 476/8
**it [553]**
**it'd [1]** 431/12
**it's [157]** 275/5 277/2 279/3 279/6 281/1 281/2 281/3 282/11 282/14 282/15 284/22 285/24 286/5 286/9 286/11 286/13 286/16 286/20 286/23 289/8 290/4 297/4 297/24 299/14 299/19 314/3 315/21 321/24 329/11 332/22 343/16 344/13 345/24 346/7 347/9 349/15 349/16 350/18 351/13 352/14 369/17 370/7 375/14 377/8 377/16 377/17 378/7 379/4 379/8 379/8 379/11 380/16 381/6 381/7 381/8 382/1 382/22 382/22 383/16 384/10 384/18 384/19 384/24 385/4 385/7 385/11 385/15 385/21 385/23 386/3 386/6 386/25 389/1 389/1 389/3 391/5 391/8 391/14 391/16 391/17 391/19 395/7 395/11 396/3 396/17 397/3 397/11 397/11 397/13 399/11 399/18 401/10 401/13 401/17 401/21 401/23 402/23 402/25 403/3 403/22 405/5 408/17 408/20 409/13 409/23 410/7 411/9 411/12 412/9 416/18 418/8 418/12 418/14 418/15

## I

**it's... [43]** 418/16 419/4 420/23 423/14 426/4 427/12 428/11 428/11 428/15 429/10 429/11 429/16 429/17 429/17 429/18 429/21 430/3 432/22 433/22 434/4 434/13 439/13 439/14 439/18 440/6 440/7 440/7 440/14 440/15 442/2 442/10 442/24 443/12 443/21 444/8 447/20 450/15 450/17 471/18 473/24 475/5 477/3 479/18
**items [1]** 376/9
**its [17]** 286/15 354/15 355/8 356/1 357/13 357/16 362/15 411/1 433/2 453/2 455/5 456/7 458/5 458/9 458/11 458/24 458/25
**itself [3]** 415/12 452/25 459/17
**Ivan [3]** 378/15 417/3 417/8

## J

**jail [28]** 278/5 278/7 279/14 279/18 279/19 279/21 285/7 301/13 301/21 307/22 308/2 309/6 312/3 312/6 321/4 321/7 321/10 321/13 321/15 326/11 327/6 334/6 335/3 338/2 369/8 421/15 423/4 442/17
**jailhouse [1]** 421/1
**January [3]** 310/8 357/24 358/19
**January 18th [1]** 357/24
**January 28th [1]** 358/19
**Jesse [1]** 451/25
**Jessie [11]** 282/19 282/20 323/4 323/8 323/10 387/13 418/13 418/14 419/6 419/23 421/25
**job [11]** 342/15 376/16 376/17 378/4 383/13 387/13 390/1 408/17 408/20 409/13 422/22
**join [1]** 381/2
**joined [5]** 404/6 453/14 458/8 458/25 459/9
**jointly [1]** 399/8
**joints [1]** 399/13
**Jones [17]** 278/14 281/6 281/8 351/22 355/19 359/7 359/12 379/25 380/8 382/10 390/24 391/2 391/6 392/1 392/4 393/9 398/17
**Jones' [3]** 380/13 382/7 382/7
**judge [82]** 273/11 276/3 276/20 277/11 277/15 279/1 279/5 280/6 280/15 288/14 289/7 289/13 290/4 299/21 300/23 302/1 316/14 333/3 333/15 338/16 341/22 350/9 351/24 352/18 358/12 360/24 361/25 369/19 370/10 370/12 370/16 373/3 388/20 388/24 391/14 391/24 393/4 394/2 395/14 396/9 398/2 399/1 399/24 402/9 409/15 409/20 410/14 410/23 411/4 411/10 412/13 412/16 412/17 412/25 419/20 420/2 420/17 420/22 428/1 429/15 430/25 432/12 438/4 438/25 445/3 445/15 471/8 471/14 472/16 474/3 474/21 475/6 476/4 476/20 478/4 479/14 479/19 480/1 481/4 481/5 481/7 482/9
**judges [3]** 445/16 445/24 464/14
**judgment [1]** 447/21
**jump [2]** 400/6 429/19
**June [3]** 273/8 315/13 486/3
**June 16th [1]** 315/13
**jurisdiction [2]** 396/11 396/12
**Juror [2]** 470/6 470/7
**jurors [6]** 299/19 414/13 427/6 445/13 467/25 469/13
**jury [86]** 273/11 274/17 279/14 280/19 281/3 286/7 286/21 287/16 287/21 289/20 290/6 290/10 299/10 317/2 331/10 334/8 336/21 343/3 347/16 348/11 348/14 350/22 351/5 353/7 362/3 369/13 372/24 373/19 386/9 389/12 390/19 391/5 391/8 391/21 392/1 393/8 395/8 396/22 397/13 398/18 410/9 410/10 410/13 410/25 427/6 427/17 429/13 436/9 436/20 437/13 438/5 445/8 467/19 468/12 468/22 468/22 469/2 469/4 469/8 470/8 470/10 471/4 471/5 472/2 472/12 472/12 473/4 473/8 475/13 475/23 476/10 477/9 477/10 477/14 477/15 481/21 482/11 483/11 483/17 483/21 484/3 484/11 484/22 484/24 487/11 487/12
**just [149]** 277/8 277/25 282/2 282/24 284/13 284/16 285/5 287/16 288/19 289/13 289/23 290/24 291/18 293/13 297/2 297/4 297/20 298/20 299/8 299/16 299/22 300/11 303/19 308/11 313/10 319/7 321/3 324/1 324/12 328/23 331/6 332/13 333/6 334/3 334/8 334/22 337/6 339/4 340/2 340/5 343/2 346/25 347/1 347/15 348/9 348/10 350/14 350/20 351/6 351/7 351/9 351/14 351/16 351/21 352/6 352/24 353/13 353/13 359/3 365/7 365/8 365/9 369/5 370/16 370/21 370/22 375/11 376/13 376/15 380/19 381/4 382/17 382/18 382/25 383/23 384/8 384/24 385/11 387/15 387/18 388/19 388/23 390/7 392/4 392/16 392/21 393/2 395/4 395/12 395/14 397/5 397/17 399/2 401/2 401/15 401/19 415/11 415/12 416/8 418/7 421/10 423/12 425/9 427/14 429/16 429/24 431/13 432/17 433/20 433/25 436/1 437/12 438/10 440/3 441/11 441/12 443/15 443/22 445/3 445/6 446/8 456/16 460/5 460/9 461/9 461/10 472/16 472/18 473/13 477/23 478/11 478/16 481/20 482/12 482/20 483/4 483/4 483/7 483/9 483/10 483/12 484/3 484/7 484/12 485/3 485/10 485/12 485/15 485/17
**justice [1]** 412/2

## K

**KAMDANG [26]** 273/22 274/14 283/14 287/16 287/25 333/4 336/15 338/18 338/23 340/1 350/6 354/3 375/3 421/19 421/20 427/11 428/17 430/2 430/10 436/4 443/24 444/15 472/22 478/21 481/15 487/9
**Kate [2]** 274/10 274/12
**Katrina [1]** 413/21
**keep [6]** 297/5 381/7 404/16 444/7 471/14 485/9
**Kentucky [7]** 366/1 366/2 366/8 366/10 366/12 366/15 368/6
**key [1]** 406/2
**keys [2]** 424/9 424/9
**Keystone [1]** 441/8
**kicked [1]** 384/4
**kidding [1]** 440/20
**kids [2]** 336/25 386/10
**Kilgrim's [1]** 368/8
**kilo [5]** 308/8 308/8 308/21 322/5 383/14
**kilogram [2]** 341/13 386/12
**kilos [1]** 441/24
**kind [11]** 336/25 352/6 378/11 385/7 391/8 396/21 400/14 401/11 401/24 455/7 456/25
**kinds [2]** 403/9 455/18
**Kingsport [21]** 304/16 304/24 342/14 343/11 343/12 343/15 343/16 347/9 348/1 369/8 369/11 377/5 377/7 400/3 400/14 404/9 404/11 409/7 415/21 421/13 426/1
**kitchen [2]** 384/6 384/8
**knew [26]** 282/19 303/17 313/7 324/5 326/3 326/5 326/25 327/12 340/22 364/8 378/8 379/20 379/21 407/24 408/7 408/7 408/8 408/8 408/8 408/9 416/7 420/16 423/6 433/11 455/5 455/7
**knife [1]** 343/22
**knock [3]** 344/10 344/12 413/17
**know [142]** 275/25 277/11 278/6 278/19 278/23 279/3 279/4 280/12 280/17 282/15 287/15 287/25 288/5 292/17 294/10 295/21 300/15 301/7 303/7 303/19 305/6 305/11 309/4 312/5 312/9 313/1 323/4 323/13 324/22 325/24 326/1 328/5 329/19 330/7 330/14 330/20 332/12 332/14 332/15 332/16 332/17 332/18 333/16 335/9 336/4 336/6 337/1 337/10 337/20 337/23 347/8 351/4 351/5 351/6 351/14 352/7 364/11 366/18 366/24 367/2 367/2 367/2 367/3 367/3 367/6 367/9 367/17 376/10 376/23 378/9 378/17 378/21 379/10 381/1 381/20 381/22 382/1 382/2 384/9 385/6 385/8 385/13 388/9 393/5 393/16 396/22 399/5 399/11 401/13 401/16 402/4 403/21 404/13 406/18 406/19 406/22 407/6 409/24 413/23 414/25 415/1 416/1 416/7 418/8 418/8 421/10 421/17 422/15 423/12 423/18 423/19 423/22 424/16 425/22

## K

**know... [28]** 427/2 428/4 428/9 429/15 429/17 429/18 429/19 430/8 430/13 431/5 431/24 432/4 432/12 434/6 434/11 439/10 439/21 440/4 441/20 442/15 442/20 474/21 474/25 475/13 476/10 477/23 479/22 483/16
**knowing [8]** 383/5 387/12 387/24 388/11 388/14 413/23 423/2 457/1
**knowingly [16]** 362/6 451/25 452/7 453/9 453/13 454/21 454/24 455/20 455/22 456/12 456/16 456/21 456/23 458/8 459/12 463/7
**knowledge [30]** 281/25 282/3 282/3 282/16 282/22 283/1 283/9 284/1 284/21 286/3 286/17 287/6 354/16 355/10 356/2 356/21 361/18 389/2 420/3 420/4 420/12 423/1 455/9 458/4 458/9 459/6 460/15 462/25 464/3 467/8
**known [7]** 273/6 273/8 304/3 357/12 362/5 367/1 407/5
**knows [14]** 372/17 390/8 392/1 403/14 404/23 404/23 404/25 422/17 422/18 422/18 424/21 424/22 424/24 442/12

## L

**lab [3]** 406/8 428/3 431/10
**labeled [2]** 369/16 479/16
**labels [1]** 476/6
**lack [4]** 450/25 451/13 463/25 464/8
**ladies [19]** 290/11 299/22 350/17 353/8 361/6 375/6 390/14 408/23 414/4 421/24 422/21 425/23 426/15 438/6 445/7 472/4 472/10 477/10 482/12
**lady [1]** 345/5
**Lafayette [1]** 273/18
**large [4]** 283/17 283/19 368/22 368/24
**last [18]** 274/18 283/12 285/4 299/4 314/1 337/21 339/12 349/17 359/24 367/9 368/20 380/5 386/1 411/24 425/13 427/2 472/21 478/20
**Lasted [1]** 321/22
**lastly [4]** 298/18 339/7 390/6 445/3
**latch [1]** 474/11
**late [1]** 471/14
**latent [1]** 433/19
**later [10]** 299/24 300/25 344/21 349/4 362/21 403/19 405/7 461/10 482/1 483/2
**launder [1]** 397/6
**laundering [1]** 397/7
**law [34]** 286/25 388/22 390/17 397/4 397/14 397/15 398/3 403/3 419/12 434/2 445/8 445/10 445/12 445/13 445/21 446/7 450/20 453/1 453/7 455/2 456/18 460/5 464/1 464/4 464/5 464/6 465/19 465/21 466/2 468/19 468/20 468/24 472/1 481/18
**law-abiding [1]** 286/25
**laws [1]** 470/14
**lawyer [2]** 363/5 405/14
**lawyers [4]** 350/19 434/6 447/4 447/23
**lead [2]** 414/21 449/6
**leading [1]** 286/25
**leap [1]** 391/19
**learn [1]** 344/21
**learned [2]** 400/5 416/1
**least [11]** 332/19 338/5 373/6 373/14 373/17 378/5 382/1 383/20 387/17 395/16 441/19
**leave [6]** 372/21 429/16 435/13 442/14 480/8 484/23
**leaves [7]** 350/22 380/7 390/19 391/17 427/17 483/11 484/22
**led [1]** 301/5
**left [11]** 276/10 276/15 288/20 298/13 298/14 362/24 368/6 416/8 416/22 417/12 424/2
**legal [2]** 388/21 396/20
**legally [1]** 398/25
**LEN [4]** 273/22 274/14 354/3 419/15
**length [1]** 303/25
**less [4]** 321/22 446/5 465/22 467/12
**lessee [1]** 345/1
**lesser [1]** 465/23
**let [33]** 280/3 287/17 292/21 294/22 297/7 297/12 297/20 317/14 317/16 319/18 334/3 336/4 346/2 346/10 346/19 347/6 368/5 375/11 390/18 392/19 399/16 401/13 404/15 407/4 429/24 430/22 435/18 436/4 454/7 460/9 462/17 482/20 483/4
**let's [14]** 315/17 318/23 319/13 321/3 376/23 386/5 407/19 413/13 413/14 413/14 414/15 414/16 419/25 444/21
**letter [2]** 475/3 475/4
**level [1]** 423/11
**liar [1]** 440/10
**lie [8]** 306/7 318/1 318/10 318/15 336/14 441/17 442/14 466/23
**lied [5]** 307/24 326/13 341/4 429/13 465/17
**lies [2]** 413/24 442/13
**life [18]** 286/25 312/7 316/7 363/21 372/22 376/13 408/7 412/21 413/2 413/11 413/13 414/2 424/5 426/22 442/12 442/20 442/21 450/10
**light [3]** 372/12 465/25 467/16
**like [55]** 275/12 280/1 282/11 292/1 297/3 299/8 324/17 328/14 333/5 337/1 345/13 372/21 376/15 384/25 386/14 388/19 391/5 392/23 393/23 393/24 397/12 398/2 399/18 404/19 404/25 405/8 406/12 407/12 409/22 409/24 410/24 414/5 416/6 416/18 417/3 421/3 424/18 425/13 426/8 429/17 430/8 433/25 434/17 435/3 439/9 440/3 442/1 443/22 465/9 468/21 473/21 474/13 481/8 481/20 482/15
**likely [2]** 462/1 462/5
**limited [6]** 284/23 284/24 361/21 361/22 463/2 463/3
**limiting [1]** 287/3
**line [8]** 280/17 288/16 366/10 366/11 431/13 442/12 442/20 442/22
**lines [2]** 401/20 403/24
**LINSEY [19]** 290/19 384/14 386/8 389/19 413/20 413/20 413/23 422/21 422/22 423/6 423/15 423/21 424/10 424/21 434/23 441/16 442/6 466/5 487/4
**list [1]** 475/19
**listen [12]** 278/11 370/16 412/15 412/17 416/14 416/17 420/6 445/3 445/5 469/13 477/15 480/3
**listening [2]** 289/21 483/18
**listing [1]** 351/8
**lists [1]** 469/18
**litigant [1]** 446/4
**little [14]** 311/23 345/18 350/18 350/21 380/19 382/5 383/1 383/11 395/25 400/10 413/18 416/2 440/19 442/17
**live [2]** 367/11 383/22
**lived [5]** 319/1 319/3 319/5 327/4 363/21
**lives [1]** 399/12
**living [2]** 309/23 309/24
**local [1]** 349/16
**located [6]** 348/18 348/24 348/25 349/19 360/2 360/6
**location [3]** 344/9 344/14 477/2
**lock [1]** 417/19
**locked [3]** 275/13 277/9 278/25
**logic [1]** 420/22
**logistically [1]** 289/20
**long [20]** 286/22 287/7 289/8 289/16 296/1 342/17 352/11 367/1 382/20 410/10 410/12 436/10 439/12 443/1 459/1 466/8 471/17 475/22 475/24 477/4
**long's [1]** 352/20
**long-term [1]** 287/7
**longer [5]** 289/22 350/18 350/21 400/21 401/2
**longstanding [1]** 376/11
**look [35]** 277/16 347/3 347/12 376/20 377/11 379/14 382/5 382/14 383/4 383/10 384/17 385/4 400/1 400/17 401/17 402/25 406/10 411/20 411/20 411/20 421/17 421/24 424/15 425/20 426/19 429/1 435/3 439/9 439/18 439/24 441/5 466/25 474/22 475/23 477/7
**looked [9]** 302/16 305/3 332/3 347/2 401/2 475/13 478/21 479/1 479/7
**looking [17]** 281/22 298/9 298/20 382/17 382/25 400/12 404/24 405/3 405/6 414/18 414/22 418/22 418/23 442/16 443/14 443/17 448/17
**looks [2]** 404/22 404/23
**lose [2]** 424/6 424/7
**loses [1]** 410/24
**losing [1]** 309/25
**lot [43]** 293/15 293/23 304/6 304/13 308/5 308/7 308/14 308/16 308/18 308/22 310/19

L

**lot... [32]** 319/10 322/6 322/7 323/24 325/4 336/2 337/21 341/13 373/14 377/6 377/8 379/19 380/25 381/12 382/6 384/23 386/22 387/2 388/15 388/16 410/9 410/9 410/13 414/9 417/8 422/5 439/21 441/2 441/23 442/4 442/5 474/4
**lots [1]** 320/24
**louder [1]** 457/19
**lower [1]** 412/5
**luggage [2]** 381/11 381/14
**lunch [3]** 352/18 352/23 353/5
**luncheon [2]** 390/15 390/18
**lying [7]** 309/6 311/18 317/24 385/15 429/14 442/22 466/16

M

**M-A-T-T-H-E-W [1]** 342/9
**ma'am [1]** 302/5
**MacDonald [2]** 415/2 415/3
**made [46]** 277/3 287/4 288/12 304/19 312/14 324/19 324/25 340/12 340/22 354/15 355/9 356/1 356/20 357/22 358/5 358/18 358/22 360/8 366/9 377/8 392/10 392/12 395/5 400/18 401/4 407/23 409/5 411/15 417/21 422/9 424/10 428/5 428/21 429/14 433/4 433/15 434/1 434/24 435/6 438/10 439/1 439/16 440/12 441/3 446/15 466/17
**mail [1]** 425/9
**main [1]** 384/13
**maintain [3]** 355/6 355/24 356/16
**maintained [8]** 354/11 354/14 355/3 355/7 355/21 355/25 356/13 356/18
**major [4]** 424/18 425/1 443/19 444/13
**make [72]** 275/12 279/8 279/9 279/9 280/18 310/16 317/16 317/18 320/21 340/14 343/2 346/11 370/22 372/2 372/5 384/24 387/17 391/20 392/5 393/1 399/3 399/14 399/24 400/7 401/21 404/8 407/6 407/7 407/9 407/10 407/10 410/25 412/16 412/23 416/16 417/4 417/14 419/15 419/17 419/17 421/3 421/22 424/13 426/9 427/1 428/9 428/10 428/15 431/18 435/1 435/2 435/10 435/23 436/3 439/1 439/15 439/23 441/17 444/3 455/10 457/17 466/11 468/6 469/16 469/21 472/17 473/13 475/3 475/3 475/8 485/15 485/17
**makes [10]** 316/3 333/6 336/6 351/4 372/13 377/20 381/14 413/10 418/3 426/5
**making [17]** 285/11 354/15 355/9 356/1 356/20 366/9 383/3 384/19 395/7 401/15 430/19 443/6 443/8 443/8 443/12 443/14 443/14
**male [5]** 344/19 344/20 414/18 415/5 415/11
**man [10]** 303/20 303/21 304/10 343/22 400/12 400/20 400/21 401/3 401/10 423/23
**mandatory [2]** 312/10 316/10
**Manhattan [1]** 367/12
**Mann [1]** 410/15
**manner [2]** 464/21 465/1
**Mannigo [1]** 283/13
**many [8]** 283/10 291/18 296/7 296/14 334/6 382/15 403/22 421/3
**March [7]** 357/24 357/25 357/25 358/1 369/22 369/25 370/4
**March 20th [2]** 357/24 369/22
**March 28th [1]** 357/25
**March 29th [2]** 357/25 369/25
**March 30 [1]** 370/4
**March 30th [1]** 358/1
**marched [1]** 410/2
**marijuana [1]** 309/11
**Marine [1]** 343/6
**mark [6]** 297/5 298/4 347/6 359/3 369/6 469/18
**marked [11]** 297/3 298/18 339/8 339/8 345/13 354/20 357/1 357/18 358/9 359/2 472/24
**marker [1]** 476/17
**marshal [3]** 469/1 472/5 472/9
**marshals [1]** 477/21
**match [1]** 383/1
**matched [2]** 400/17 442/8
**matches [1]** 475/20
**material [2]** 357/16 465/15
**materials [1]** 346/4
**Matic [5]** 356/11 356/14 356/15 356/18 380/12
**matter [11]** 312/10 395/8 396/20 399/11 450/9 463/18 464/18 465/12 465/16 476/24 483/9
**matters [4]** 449/7 464/3 464/22 464/24
**MATTHEW [7]** 273/16 274/6 342/2 342/5 342/9 369/10 487/5
**may [66]** 284/16 284/18 284/19 284/23 285/1 290/14 297/21 313/6 333/14 348/13 353/13 361/11 361/12 361/14 361/17 361/21 361/22 370/22 375/13 378/11 389/12 389/13 395/24 422/19 445/11 445/12 446/16 446/19 448/4 448/7 449/5 449/23 455/11 455/14 455/17 457/10 457/20 458/14 458/14 458/16 458/24 462/9 462/19 462/21 462/23 463/2 463/6 463/10 463/11 463/14 464/2 465/6 465/7 465/8 465/16 465/17 465/17 465/20 467/12 467/13 467/17 468/1 468/6 468/15 468/20 469/1
**maybe [17]** 283/4 288/21 338/8 352/15 385/23 396/8 397/17 398/11 403/25 406/11 407/6 411/16 411/17 441/8 471/16 472/17 473/21
**McKay [17]** 362/5 362/21 364/5 364/6 364/11 364/24 365/24 365/25 366/6 366/7 366/18 367/13 367/18 367/24 367/24 368/10 368/17
**McMillan [1]** 274/10
**McMillan's [1]** 274/12
**McNally [1]** 334/5
**McNally's [1]** 289/22
**McQueen [4]** 332/3 332/11 369/7 426/7
**me [89]** 274/13 274/15 275/11 282/11 282/14 283/19 287/20 295/21 297/7 297/12 297/20 300/20 301/13 309/24 316/1 317/16 325/16 330/24 332/24 334/3 335/15 335/21 335/22 336/5 337/1 340/15 341/24 346/2 346/10 346/19 347/6 351/25 365/5 365/6 366/11 367/18 367/22 368/1 368/5 368/24 374/2 375/11 384/14 390/18 392/19 393/23 395/17 395/20 395/25 396/18 401/8 405/8 405/14 406/11 409/12 410/22 411/20 413/5 422/20 426/16 426/16 429/24 430/22 432/2 432/2 433/22 434/7 435/3 435/6 436/19 437/10 454/7 460/9 462/17 468/15 468/20 468/20 470/4 472/1 472/17 474/22 475/4 476/24 477/13 482/5 482/20 483/4 483/7 483/8
**mean [43]** 277/9 278/20 278/24 279/6 280/3 280/20 288/15 317/4 317/12 318/17 324/11 325/3 326/17 330/14 334/4 367/15 382/6 393/6 396/15 396/15 411/9 413/5 428/6 428/8 429/16 431/25 433/13 434/1 435/9 436/4 439/24 440/4 441/15 443/10 443/12 443/13 443/22 444/8 444/22 444/25 456/5 465/22 485/11
**meaning [4]** 446/14 452/11 456/2 485/7
**means [13]** 411/9 412/25 413/5 454/24 455/1 456/1 456/2 456/16 456/17 461/25 462/2 469/3 469/24
**meant [9]** 307/3 324/8 402/6 402/8 419/15 419/16 440/25 452/20 474/6
**meet [3]** 364/6 411/16 412/4
**meeting [5]** 314/5 314/22 315/9 315/10 443/17
**meetings [6]** 314/9 315/3 326/20 334/3 335/25 338/9
**member [15]** 384/9 388/24 388/25 407/7 407/7 437/6 458/3 458/6 458/14 458/23 459/2 461/18 469/1 469/4 470/9
**members [2]** 390/1 459/3
**membership [1]** 459/17
**memory [2]** 346/23 347/4
**men [2]** 376/2 378/7
**ment [1]** 452/21
**mention [1]** 382/18
**mentioned [4]** 294/4 296/5 296/13 296/14
**mentioning [2]** 385/22 430/2
**mere [6]** 389/1 389/1 396/4 457/15 457/15 459/14
**merely [3]** 397/21 398/6 447/20
**merits [1]** 469/5
**mess [1]** 423/23
**met [15]** 301/12 304/6 313/11 313/14 314/9 319/13 319/16 334/18 334/20 335/23 335/23 337/14 340/16 423/6 423/7
**Michael [4]** 344/22 349/25 354/1 383/25
**Michelle [2]** 300/16 300/19
**microphone [1]** 343/3

M

**middle [6]** 311/4 378/16 378/21 416/22 417/7 474/25
**might [26]** 324/25 350/14 350/21 352/4 379/9 381/19 381/19 381/20 384/9 398/6 399/18 407/9 407/10 410/8 410/16 413/5 413/6 413/6 413/7 415/12 421/19 425/24 448/17 450/2 457/13 465/1
**Mike [6]** 304/12 322/16 329/22 330/2 330/25 332/4
**miles [1]** 343/16
**mind [17]** 379/20 382/4 389/13 390/10 404/25 405/5 406/17 432/16 451/7 455/11 455/12 455/15 462/4 464/21 469/7 477/18 483/3
**mine [1]** 429/11
**minimize [1]** 386/15
**minimum [3]** 312/10 316/10 383/15
**minor [2]** 332/14 458/16
**minute [7]** 350/18 382/20 407/19 427/15 472/17 485/6 485/7
**minutes [16]** 275/17 275/18 277/16 277/17 277/18 279/25 308/5 350/21 350/21 352/15 352/21 362/21 403/19 408/1 434/10 485/8
**mischaracterized [1]** 390/22
**mischaracterizes [1]** 278/2
**misheard [2]** 395/25 396/8
**misled [1]** 289/2
**misrecollection [1]** 465/9
**miss [1]** 385/23
**missed [1]** 370/23
**misstate [1]** 275/15
**mistake [8]** 370/17 429/14 437/15 438/9 439/1 454/25 459/11 463/8
**mistaken [6]** 282/14 378/15 395/21 432/20 433/18 465/17
**mistakes [1]** 433/25
**mister [2]** 383/25 393/2
**mistrial [7]** 390/20 391/11 391/20 392/8 392/14 392/18 392/22
**mixed [1]** 443/15
**mom [2]** 301/19 396/7
**moment [11]** 297/12 303/19 346/2 370/21 375/22 378/24 427/13 437/14 474/22 482/13 484/12
**money [52]** 276/13 300/13 301/10 301/11 301/12 301/18 308/8 308/10 310/22 311/1 319/22 319/23 322/23 330/18 332/23 369/9 377/8 380/14 380/15 380/17 380/20 380/24 384/1 384/2 387/8 387/10 389/25 390/24 391/2 391/3 391/6 391/9 391/14 391/18 392/4 392/21 392/24 393/2 393/9 393/20 393/21 394/1 396/6 396/16 396/17 397/4 397/6 397/7 398/17 422/13 439/12 473/3
**month [6]** 314/2 314/3 314/7 321/22 327/20 423/10
**months [13]** 279/12 279/18 279/20 285/7 319/3 321/6 321/7 342/18 376/11 376/12 381/24 383/18 423/8
**more [42]** 276/7 276/12 276/12 282/5 283/6 286/13 286/20 287/14 288/15 302/13 321/13 321/15 350/9 370/2 387/5 388/1 390/9 412/22 415/24 419/21 427/1 434/10 439/9 439/9 442/1 452/3 452/18 453/9 453/20 456/21 456/24 457/2 460/3 460/12 460/17 461/4 462/1 462/5 463/2 465/7 465/22 466/16
**morning [19]** 274/7 274/8 274/9 274/16 290/11 290/23 299/15 302/5 302/6 305/17 305/18 320/6 400/24 401/2 415/19 481/9 482/15 484/17 484/20
**most [13]** 352/22 363/21 372/12 373/4 376/17 408/2 411/24 412/21 413/2 413/10 418/5 418/22 450/13
**Mostly [1]** 295/18
**mother's [1]** 288/21
**motion [3]** 373/22 391/21 475/3
**motion's [1]** 392/22
**motions [1]** 372/2
**motivated [1]** 466/21
**motivation [2]** 466/22 466/24
**motivations [2]** 422/23 426/20
**motive [1]** 464/20
**move [8]** 300/23 353/12 372/7 378/15 390/20 421/18 473/23 474/14
**movie [1]** 416/18
**moving [5]** 377/23 378/3 378/9 378/23 383/14
**Mr [64]** 275/16 333/4 334/5 335/21 336/15 338/18 338/23 340/1 344/24 345/5 350/6 359/6 375/1 375/3 381/12 391/20 395/3 395/11 396/24 399/21 400/10 400/11 400/17 400/21 402/5 402/23 402/25 403/1 403/10 404/3 404/23 405/6 410/15 411/9 419/9 421/19 421/20 428/17 428/21 432/17 433/13 434/9 436/4 438/8 438/20 440/3 442/24 443/24 444/15 445/5 471/3 472/20 472/22 473/18 475/10 478/21 479/1 479/21 481/15 483/23 487/7 487/8 487/9 487/10
**Mr. [276]**
**Mr. Amatruda [29]** 280/13 282/4 285/6 290/13 317/9 351/15 351/23 352/11 353/10 391/12 392/10 395/25 397/14 406/1 415/24 418/6 418/7 424/8 424/14 425/19 425/25 427/2 429/22 434/24 438/3 438/24 473/17 474/10 479/12
**Mr. Amatruda's [7]** 397/8 424/18 426/25 428/19 428/25 438/7 477/24
**Mr. Jones [1]** 391/2
**Mr. Kamdang [6]** 283/14 287/16 287/25 427/11 430/2 430/10
**Mr. McKay [11]** 362/21 364/6 364/11 364/24 365/24 365/25 366/7 366/18 367/13 368/10 368/17
**Mr. McQueen [1]** 332/11
**Mr. Pughe [33]** 274/8 274/20 276/24 289/22 305/8 372/11 372/13 372/23 377/7 379/22 380/6 380/17 381/2 382/15 382/16 383/3 389/7 390/21 390/23 391/7 391/9 391/17 392/4 392/21 392/25 393/2 393/9 393/22 406/16 406/17 407/12 407/25 408/15
**Mr. Pughe's [11]** 277/22 373/6 373/9 373/10 373/13 373/21 381/11 382/12 391/2 391/15 408/11
**Mr. Stern [17]** 277/23 278/12 278/22 279/7 302/2 316/20 316/23 393/7 398/20 435/4 435/14 436/11 437/12 437/13 439/6 471/2 471/20
**Mr. Stern's [4]** 275/20 277/15 277/16 435/4
**Mr. Sullivan [1]** 363/1
**Mr. Taylor [127]** 274/14 280/21 285/6 285/14 287/9 291/6 291/19 291/25 292/1 293/6 293/17 294/10 294/16 294/24 295/13 299/5 301/8 304/1 305/25 310/11 310/16 310/21 310/24 313/7 314/11 314/13 318/24 319/1 319/14 320/1 320/5 321/3 321/10 321/17 322/3 322/22 323/13 324/19 327/19 327/23 332/3 332/8 332/16 332/18 336/9 336/17 337/14 337/16 338/2 341/4 341/5 362/12 362/15 362/22 363/1 363/8 368/20 372/18 373/6 373/22 375/5 376/10 377/2 377/6 379/7 379/15 379/17 379/18 379/24 380/22 380/24 381/15 381/21 381/23 382/15 383/12 383/25 384/5 384/11 384/14 387/3 387/8 387/12 387/19 388/4 388/9 389/7 389/20 389/25 391/6 391/15 391/25 392/21 392/24 393/2 393/22 395/11 403/2 409/7 410/20 410/23 411/20 412/23 413/8 418/15 418/17 419/1 419/4 419/9 420/16 421/3 422/6 422/15 422/25 423/4 423/5 423/7 424/11 424/13 426/6 430/20 430/21 441/16 441/18 444/11 477/18 478/1
**Mr. Taylor's [24]** 276/24 292/11 320/21 337/25 363/5 373/5 373/7 373/9 376/13 380/20 382/16 382/23 383/5 385/4 408/7 410/1 410/21 411/6 413/6 421/6 421/12 425/12 475/18 484/1
**Mr. Watts [2]** 382/10 476/10
**Mr. Watts' [1]** 382/9
**Mr. Who [1]** 316/22
**Ms [26]** 278/14 334/3 340/5 341/23 373/15 377/1 377/17 380/13 380/23 381/22 382/3 382/7 382/7 382/10 382/22 383/24 384/5 384/23 391/6 392/1 393/9 406/19 406/19 406/20 408/4 467/6
**Ms. [34]** 281/6 281/8 290/7 290/16 290/23 299/4 299/17 300/4 305/17 305/22 312/13 323/4 368/8 377/19 377/25 378/4 378/8 378/23 379/8

## M

**Ms.... [15]** 379/17 380/7 387/21 389/8 389/8 392/4 398/17 406/5 407/5 407/19 407/20 408/5 408/5 444/5 485/16
**Ms. Belinda [1]** 380/7
**Ms. Holley [1]** 485/16
**Ms. Hyatt [14]** 290/7 290/16 290/23 299/4 299/17 300/4 305/17 305/22 312/13 323/4 387/21 389/8 408/5 408/5
**Ms. Jones [4]** 281/6 281/8 392/4 398/17
**Ms. Kilgrim's [1]** 368/8
**Ms. Wright [12]** 377/19 377/25 378/4 378/8 378/23 379/17 389/8 406/5 407/5 407/19 407/20 444/5
**Ms. Wright's [1]** 379/8
**much [19]** 277/19 277/22 286/22 291/23 292/1 293/5 293/7 334/6 345/11 349/8 379/20 379/21 383/11 387/10 390/7 390/9 400/20 424/7 426/2
**must [51]** 277/6 391/9 391/9 397/18 398/22 401/3 407/5 413/3 413/12 436/25 437/3 439/16 439/25 446/6 446/18 447/8 447/13 449/4 449/18 449/24 450/3 450/11 451/6 451/7 451/9 451/12 453/7 454/10 454/17 454/19 455/9 456/4 456/5 456/10 458/2 458/18 459/10 459/18 459/23 460/16 461/13 461/15 462/8 463/13 464/13 467/9 468/22 469/16 469/24 470/1 470/3
**mutual [1]** 457/9
**my [57]** 274/12 274/15 275/14 276/9 277/10 278/25 279/3 284/7 284/11 288/19 301/19 307/13 332/11 337/24 346/22 347/5 351/16 351/25 352/14 365/18 365/18 368/1 368/2 372/14 391/4 391/21 392/22 395/14 396/9 396/16 396/20 418/21 423/23 427/15 428/11 429/10 433/23 434/17 434/21 435/20 436/9 436/10 445/8 460/5 460/7 468/21 473/6 474/10 474/11 474/22 475/24 476/24 480/3 483/17 484/2 485/9 485/12
**myself [5]** 287/19 334/5 335/16 344/10 352/24

## N

**naked [1]** 381/7
**name [22]** 283/12 310/16 322/12 323/8 325/17 332/19 337/23 342/8 344/21 344/22 363/13 366/20 367/9 377/15 379/23 382/3 407/15 407/22 407/22 423/25 446/2 476/18
**name's [1]** 387/22
**named [8]** 294/4 304/8 323/4 323/7 349/25 350/2 408/10 420/9
**names [2]** 304/11 349/10
**narcotics [12]** 398/7 404/7 406/22 406/25 453/7 455/3 456/4 456/18 460/1 460/20 468/13 468/15
**narrative [1]** 275/14
**Nassau [1]** 461/21
**naturally [1]** 450/5
**nature [2]** 455/5 456/25
**near [6]** 354/15 355/8 356/1 356/19 373/7 462/13
**necessarily [1]** 396/5
**necessary [6]** 351/12 361/18 453/3 454/1 457/5 462/25
**need [36]** 274/17 332/20 332/24 333/1 333/13 344/14 351/11 354/18 355/12 356/4 356/23 358/7 358/24 360/13 377/17 390/6 391/13 395/23 409/19 417/7 423/18 427/13 449/15 455/4 455/16 458/23 459/2 460/14 461/23 462/10 463/6 468/10 470/16 476/10 476/13 485/4
**needed [1]** 308/1
**needs [4]** 299/17 322/6 423/13 444/1
**nefarious [1]** 443/25
**negatively [1]** 306/13
**neither [1]** 398/25
**nervous [4]** 351/8 377/22 401/9 407/10
**net [3]** 357/8 357/10 357/15
**never [12]** 329/16 338/1 338/1 405/20 407/12 408/13 419/14 419/16 420/9 449/14 469/3 469/7
**nevertheless [1]** 453/3
**NEW [57]** 273/1 273/4 273/14 273/15 273/18 273/20 276/15 280/20 282/6 291/19 294/1 295/15 295/20 295/24 310/17 313/19 313/24 320/5 320/11 320/13 322/7 341/4 353/21 363/16 365/4 365/11 366/23 372/21 377/6 377/9 377/9 383/14 386/13 387/20 389/14 389/18 389/20 390/2 390/3 396/5 396/10 397/20 404/9 408/7 417/6 425/23 430/5 437/2 437/4 437/7 444/18 445/1 451/23 461/14 461/16 461/19 461/20
**news [1]** 412/8
**newspaper [2]** 304/24 434/23
**next [20]** 301/16 354/24 355/17 356/9 357/6 357/6 358/15 359/11 369/22 369/25 370/4 381/19 383/10 421/14 421/18 422/17 422/19 443/7 459/24 461/1
**nexus [1]** 445/1
**nice [2]** 400/5 484/21
**Nicole [23]** 273/23 292/19 292/22 301/2 301/4 301/9 301/14 323/5 323/7 323/10 323/14 323/17 323/22 324/3 324/17 324/20 324/23 325/1 325/6 336/16 336/17 336/23 444/3
**Nicole's [1]** 301/17
**night [13]** 295/3 295/5 295/7 295/9 343/8 343/11 343/18 345/22 346/5 369/12 400/25 415/22 416/3
**nighttime [1]** 347/22
**Nissan [5]** 385/7 385/8 385/15 385/19 424/15
**no [173]** 276/16 278/3 278/10 280/8 280/8 280/18 281/1 283/3 284/5 285/3 286/20 286/23 288/18 289/22 291/22 292/1 292/1 292/19 294/20 295/6 299/21 300/22 301/6 302/1 302/12 302/24 303/6 303/8 303/16 304/18 306/4 306/21 307/8 307/17 307/23 309/1 309/24 311/7 311/13 311/15 311/17 311/19 311/22 312/10 313/13 314/1 314/19 314/24 315/2 315/12 316/24 317/1 317/7 320/12 322/23 322/25 326/16 326/18 328/5 328/7 328/7 328/9 328/11 329/17 331/4 332/8 332/25 333/4 337/5 339/6 339/20 339/21 341/21 346/9 346/13 346/14 346/15 350/5 350/7 350/9 352/10 352/17 353/3 353/4 361/23 369/6 372/19 383/5 387/11 387/24 391/25 392/5 392/6 392/21 392/24 393/10 393/12 393/19 393/21 395/23 400/18 400/21 400/22 401/1 402/9 403/10 403/13 403/14 403/14 403/15 405/4 405/13 405/13 405/21 406/14 406/15 408/13 408/17 411/10 412/22 415/9 415/11 418/18 421/16 422/9 422/11 428/3 428/13 432/5 432/22 433/13 433/19 436/15 438/15 439/1 443/13 445/17 446/5 446/5 446/19 447/21 448/23 448/24 449/19 449/23 458/13 459/6 460/25 461/5 467/19 469/1 470/6 470/7 471/7 471/8 473/12 473/19 474/8 474/18 477/15 477/20 477/23 478/2 478/12 481/16 482/16 483/23 483/25 484/1 484/2 484/3 485/17 488/2
**nobody [3]** 410/21 433/14 434/1
**nobody's [1]** 418/18
**Nod [1]** 370/14
**Nods [3]** 432/7 473/1 482/3
**none [3]** 336/11 403/6 414/19
**nonetheless [1]** 434/11
**nonexistence [1]** 448/22
**nonpros [1]** 339/11
**nonprosecution [10]** 312/17 313/11 314/23 315/1 315/18 317/17 334/23 335/13 466/5 466/13
**normal [1]** 378/13
**Normally [1]** 347/5
**northeast [1]** 343/16
**not [338]**
**note [24]** 402/1 423/10 460/8 461/22 468/15 468/20 469/1 470/4 470/5 477/8 477/13 480/3 480/6 481/3 481/21 482/13 482/17 483/8 483/12 483/18 484/2 484/3 484/13 485/18
**notes [1]** 485/2
**nothing [22]** 301/6 302/1 305/14 326/20 331/5 339/24 341/19 350/4 379/3 405/4 407/14 408/24 409/11 420/10 421/8 425/1 426/13 441/10 444/8 445/18 467/6 477/3
**noticed [1]** 462/9
**notify [1]** 485/25

**N**

**novel [1]** 409/12
**November [13]** 301/22 328/14 359/13 360/6 363/10 380/8 380/9 382/11 382/19 415/4 415/20 423/18 451/22
**November 14th [2]** 360/6 363/10
**November 15th [2]** 380/8 382/19
**November 16th [2]** 415/20 451/22
**November 2nd [1]** 380/9
**now [101]** 277/23 287/20 294/24 299/23 302/25 303/25 304/19 308/4 309/8 310/8 312/13 312/22 313/10 314/20 315/21 319/20 321/3 321/17 322/16 323/4 323/7 324/10 325/8 326/3 326/13 326/17 327/22 333/6 337/20 340/24 350/15 360/23 373/25 375/18 381/19 388/17 388/19 390/18 391/1 391/10 400/4 402/5 402/9 402/20 402/22 403/21 404/21 408/2 409/10 409/22 409/24 411/4 412/6 414/7 414/20 414/25 415/12 416/13 416/17 417/17 417/20 418/5 418/20 419/8 419/25 420/6 421/1 421/2 421/19 422/8 423/10 424/8 424/22 425/13 425/19 426/25 427/15 432/19 433/3 434/9 435/16 445/8 449/2 451/5 451/17 452/20 456/20 457/25 459/22 460/9 461/20 470/15 472/14 473/9 475/1 479/18 481/11 481/22 481/25 482/21 483/6
**number [16]** 292/25 298/22 298/23 299/1 299/2 309/8 338/17 353/12 354/8 376/24 382/13 390/4 414/16 424/11 428/20 485/16
**number's [1]** 297/16
**numbers [3]** 346/11 349/10 382/10
**numerically [1]** 469/9
**numerous [2]** 313/14 345/9
**NY [2]** 273/18 273/21

**O**

**o'clock [3]** 415/23 416/3 471/16
**Oak [1]** 362/18
**oath [8]** 286/10 290/17 385/18 405/17 414/14 440/14 467/25 470/11
**oaths [1]** 445/12
**object [7]** 391/10 429/19 433/4 434/8 446/11 452/23 459/8
**objected [2]** 283/15 391/10
**objection [26]** 275/20 282/1 283/6 285/3 294/12 294/13 296/8 300/17 317/11 318/4 334/11 339/20 339/21 346/13 346/14 346/15 380/2 380/2 429/12 433/24 434/1 434/17 435/20 446/17 474/1 485/17
**objectionable [1]** 429/6
**objections [6]** 429/5 446/15 448/1 471/1 471/6 474/4
**objective [3]** 437/3 454/17 461/15
**objectives [1]** 458/11
**obligation [2]** 402/10 449/19
**observations [2]** 287/4 320/21
**observe [1]** 464/22
**observed [1]** 467/5
**obviously [11]** 278/1 286/14 300/25 377/23 378/12 440/24 443/18 444/18 448/4 461/8 481/14
**occasions [3]** 313/14 313/22 320/6
**occurred [4]** 286/8 397/20 437/2 461/14
**October [8]** 343/8 345/24 359/13 369/12 373/7 380/10 382/10 385/6
**October 19th [2]** 343/8 369/12
**October 1st [1]** 385/6
**odor [4]** 405/12 405/22 440/9 440/18
**off [22]** 314/1 346/19 346/22 350/22 368/16 394/8 401/3 401/8 402/4 403/18 411/12 416/21 422/14 430/24 437/18 469/19 475/14 477/17 478/3 478/13 480/8 483/20
**offense [8]** 347/9 451/17 452/2 452/14 452/22 453/5 462/11 462/13
**offenses [1]** 459/25
**offer [3]** 285/18 339/19 346/10
**offered [2]** 286/1 448/1
**offers [2]** 446/11 485/13
**office [4]** 273/14 274/13 473/6 485/12
**officer [25]** 311/18 342/2 342/3 342/5 342/16 342/19 343/5 344/10 346/19 362/20 369/10 377/18 377/25 379/1 384/16 384/20 403/15 406/10 415/3 418/7 418/16 425/19 425/21 438/16 465/21
**officers [24]** 288/17 289/2 305/23 362/17 365/16 376/9 376/12 376/24 378/15 400/3 406/3 406/4 409/2 415/21 416/10 416/15 418/2 421/15 421/21 439/16 439/20 440/1 441/5 465/20
**official [3]** 273/23 417/2 465/21
**often [10]** 296/2 296/2 338/3 338/3 338/7 339/4 387/3 434/6 457/12 457/19
**oftentimes [1]** 434/2
**oh [8]** 283/25 290/16 378/24 387/17 391/9 396/2 441/24 474/8
**okay [127]** 275/6 279/5 281/11 281/20 283/16 283/25 284/12 285/16 287/23 288/5 290/5 291/8 293/4 294/1 294/16 296/11 297/12 297/18 297/25 298/4 298/9 298/12 298/16 298/23 298/25 299/8 299/10 299/25 301/7 302/2 306/3 306/9 307/15 308/13 308/18 309/8 309/11 310/3 313/7 313/24 314/5 315/17 317/22 318/9 318/15 318/23 319/9 320/13 321/3 321/17 321/24 322/16 323/4 323/7 323/13 324/5 325/6 325/8 326/15 328/13 329/4 329/21 330/22 331/5 333/12 334/8 336/9 339/18 340/16 340/24 341/4 341/8 341/18 346/6 347/15 347/23 348/9 348/20 348/23 349/6 349/12 349/17 349/21 350/8 350/21 351/12 351/25 353/17 360/19 361/24 366/22 369/3 369/15 369/20 370/15 372/4 374/1 398/10 398/19 405/24 417/17 426/8 427/12 429/24 434/15 435/22 436/14 437/11 437/17 438/24 471/13 472/25 473/13 473/24 475/22 476/21 478/19 479/12 480/5 481/3 483/9 483/19 484/5 484/19 484/21 485/15 485/16
**old [4]** 286/24 386/10 420/1 444/21
**once [7]** 310/9 338/8 423/10 434/25 475/11 477/6 478/1
**one [126]** 275/1 275/1 275/7 276/16 285/17 288/11 295/21 296/13 297/3 297/17 297/24 298/4 298/10 298/11 299/14 299/15 301/13 301/14 301/17 307/10 308/4 309/18 310/3 326/5 327/19 328/5 332/7 334/16 337/13 337/16 345/6 348/12 349/2 349/5 349/13 349/18 351/13 351/18 354/6 359/24 362/1 362/11 369/22 369/25 370/2 370/4 370/6 370/17 370/21 375/13 375/22 376/13 376/18 377/8 379/7 379/8 380/5 380/9 380/11 380/14 382/21 385/3 387/14 395/6 395/24 401/19 403/13 403/14 403/14 403/23 403/23 403/24 404/14 406/16 406/18 408/3 412/20 413/1 413/10 414/5 414/10 415/17 416/8 416/11 420/17 422/4 424/9 424/9 425/2 425/14 425/15 428/1 429/25 430/4 430/16 430/22 431/4 435/17 439/5 439/22 442/24 444/14 448/7 451/15 451/18 454/5 466/22 466/23 468/23 472/20 472/21 473/3 474/22 475/23 476/9 476/16 478/4 479/9 481/9 481/12 482/18 482/21 482/25 483/1 483/6 483/16
**ones [2]** 350/16 351/18
**onions [1]** 384/10
**only [42]** 275/1 279/12 284/23 287/6 289/19 317/18 327/19 332/16 350/10 361/22 393/8 395/14 399/22 401/13 402/24 404/13 406/23 409/7 410/24 414/4 414/19 416/7 416/10 418/7 418/13 419/24 420/3 420/16 427/8 428/18 428/19 430/18 430/19 432/16 436/10 444/14 449/5 454/16 458/16 461/6 461/24 463/3
**open [28]** 274/1 289/10 300/2 300/9 333/18 351/1 369/21 369/24 370/1 370/3 370/5 370/19 373/16 374/4 377/13 378/4 378/13 384/7 395/1 403/24 413/19 417/12 418/24 438/1 469/6 469/8 471/23 481/1
**opening [2]** 421/2 425/25
**operated [3]** 376/11 381/16 388/4

## O

**operation [1]** 455/12
**opinion [3]** 445/11 445/17 469/15
**opinions [1]** 469/12
**opportunity [7]** 375/20 402/1 432/19 434/9 436/17 438/8 438/10
**opposed [2]** 462/3 474/2
**opposite [1]** 407/24
**option [1]** 481/22
**options [1]** 482/20
**orally [2]** 457/7 469/5
**order [8]** 297/17 301/10 301/11 380/14 453/6 454/18 456/9 483/17
**ordering [1]** 366/10
**orders [3]** 301/13 301/18 380/15
**ordinary [6]** 354/11 355/3 355/21 356/13 465/24 466/14
**organized [2]** 350/16 375/23
**original [1]** 334/16
**originally [1]** 363/15
**other [79]** 277/7 279/1 279/11 280/21 280/22 281/4 284/4 284/6 289/19 298/4 304/13 332/15 338/5 340/24 352/3 353/4 353/19 362/6 366/12 366/15 367/22 376/9 379/6 379/10 379/15 380/24 381/1 381/21 386/2 387/18 388/3 388/4 392/11 392/17 392/18 396/6 398/13 405/15 408/3 414/13 418/20 425/2 428/22 429/11 430/14 432/21 439/8 441/6 441/14 444/14 445/13 446/4 446/11 446/11 448/9 448/22 449/20 451/1 451/16 458/22 459/3 459/6 462/1 463/1 463/9 463/11 463/13 463/17 465/4 467/9 467/10 469/3 469/5 469/14 469/22 478/4 481/10 482/19 483/3
**other's [1]** 472/15
**others [4]** 345/6 398/12 451/25 456/23
**otherwise [5]** 276/12 281/17 286/24 456/3 469/9
**ought [1]** 332/21
**ounce [4]** 283/19 345/12 368/25 388/17
**ounces [2]** 362/23 388/12
**our [19]** 275/2 277/20 282/1 282/18 282/20 288/15 290/1 335/25 348/3 370/22 401/10 410/7 411/2 411/24 413/15 449/19 472/2 475/16 484/23
**out [130]** 274/18 276/11 276/15 277/2 279/17 280/1 280/17 281/18 283/2 285/5 285/7 288/9 289/24 293/14 294/22 297/17 299/9 304/15 304/20 308/1 309/6 321/3 322/7 323/20 324/25 330/4 330/7 330/9 330/11 330/15 330/19 330/21 331/1 332/4 332/8 332/13 332/16 332/18 332/22 333/5 336/24 336/25 338/2 344/9 348/22 352/4 366/25 373/16 377/12 377/13 378/1 378/3 378/13 379/13 383/21 384/4 384/7 384/21 385/15 385/19 385/21 385/25 387/8 388/5 389/4 392/6 397/13 400/18 401/16 401/18 402/2 402/13 403/17 404/16 407/15 409/13 409/13 411/10 418/17 419/4 419/6 419/10 419/15 421/21 424/13 424/22 425/4 426/6 426/12 428/20 428/22 428/24 429/1 429/2 430/25 431/3 431/9 431/10 431/14 431/19 432/21 433/8 433/8 433/12 433/14 433/16 433/18 434/19 438/12 438/13 438/18 439/9 439/11 439/16 441/3 442/19 443/15 450/15 459/11 468/23 474/4 475/2 475/8 476/1 476/12 478/20 479/6 479/10 482/5 484/7
**outcome [1]** 336/7
**outdoors [1]** 448/19
**outside [4]** 302/14 377/9 448/4 448/17
**outweighed [2]** 286/15 286/18
**over [47]** 275/23 277/12 277/14 277/22 290/24 291/13 302/21 304/3 304/17 312/24 314/14 314/15 316/23 327/22 331/10 332/14 335/4 345/12 373/17 375/8 376/14 377/3 378/2 378/14 379/12 381/24 386/15 389/10 401/7 403/12 409/1 410/15 418/12 418/23 421/13 421/15 421/25 434/7 439/3 441/10 441/21 444/20 444/20 455/20 455/24 461/11 479/23
**overhead [1]** 348/10
**Overruled [1]** 380/3
**own [22]** 286/10 302/19 304/22 322/11 386/16 386/24 388/11 390/25 399/25 407/3 412/21 413/11 414/1 414/9 418/10 423/24 426/21 450/14 455/16 458/20 469/12 469/16
**owners [1]** 344/15

## P

**P-E-N-D-L-E-T-O-N [1]** 342/10
**P.C [1]** 273/17
**p.m [3]** 357/25 358/1 358/2
**P/O [1]** 487/5
**pack [1]** 297/14
**package [2]** 403/8 403/9
**packaged [3]** 306/14 422/4 433/18
**packaging [3]** 306/19 338/24 340/25
**packing [1]** 357/16
**padding [1]** 418/2
**page [10]** 283/9 289/17 298/19 298/20 331/14 339/12 353/20 371/4 427/19 470/18
**paid [4]** 330/18 379/24 390/24 400/10
**pair [1]** 440/9
**Palin [2]** 367/10 367/11
**pan [1]** 426/12
**pants [4]** 362/24 378/1 419/6 422/1
**paper [3]** 328/7 349/9 408/11
**papers [1]** 333/1
**paperwork [5]** 293/18 294/1 312/24 325/12 330/15
**paragraph [2]** 275/19 471/9
**parallel [1]** 413/14
**paraphernalia [9]** 291/5 291/12 303/3 303/5 303/24 330/2 345/9 406/22 406/25
**paraphrase [1]** 284/14
**park [3]** 319/14 337/13 349/16
**parking [4]** 417/8 422/10 424/14 424/15
**part [42]** 275/10 276/22 277/20 278/21 279/1 280/5 280/22 283/17 285/22 310/16 347/10 354/6 363/12 369/18 370/7 375/6 376/11 376/15 376/16 376/17 386/13 386/13 388/23 389/9 400/9 408/2 412/17 414/14 445/2 452/6 457/22 460/6 465/17 465/17 465/18 468/5 473/16 474/13 474/15 478/14 481/21 482/17
**participants [1]** 457/22
**participate [2]** 458/9 458/12
**participated [4]** 348/5 376/3 458/4 459/20
**participating [1]** 402/21
**participation [3]** 458/13 458/17 458/19
**particular [7]** 342/22 388/23 402/10 454/8 461/7 464/4 483/9
**particularly [4]** 286/9 301/1 326/17 464/24
**partied [2]** 324/6 324/8
**parties [34]** 347/25 351/1 354/17 354/19 355/11 355/13 356/3 356/5 356/22 356/25 357/17 358/6 358/8 358/23 359/1 359/4 359/14 359/20 360/12 360/14 369/5 371/2 395/1 438/1 447/6 447/7 447/10 447/12 457/14 470/13 472/14 481/1 481/3 481/11
**partly [4]** 275/8 275/9 438/13 438/13
**partners [1]** 408/9
**partnership [1]** 452/24
**parts [2]** 281/23 375/16
**party [2]** 317/18 446/5
**pass [3]** 349/13 349/15 461/11
**passages [1]** 283/7
**past [5]** 285/19 288/8 314/3 314/7 424/4
**patience [1]** 376/25
**patrol [3]** 342/21 342/24 342/25
**pattern [1]** 444/19
**pause [19]** 290/9 299/11 300/1 323/2 370/18 370/24 375/25 395/25 398/5 413/4 413/25 418/3 432/10 432/15 473/25 475/7 482/10 484/4 484/10
**pay [11]** 356/11 356/14 356/15 356/18 377/24 380/12 384/4 388/23 391/4 391/18 421/7
**Pay-O-Matic [5]** 356/11 356/14 356/15 356/18 380/12
**paying [7]** 322/24 322/25 322/25 380/25 383/23 384/1 422/13
**payment [1]** 373/9
**PBS [1]** 413/16
**Pendleton [6]** 342/2 342/3 342/5 342/9 369/11 487/5
**Pendleton's [1]** 384/20
**people [57]** 302/18 304/6 304/10 304/13 304/16 304/25 325/4 328/19 332/8 332/12

P

**people... [47]** 332/15 332/18 343/25 344/7 349/22 366/11 372/21 378/3 378/9 378/17 378/22 379/10 379/15 381/8 384/18 385/23 385/24 385/25 386/2 386/3 386/7 388/4 388/25 398/13 399/19 400/2 400/4 400/5 401/6 403/25 408/7 408/8 408/8 408/9 408/10 408/10 410/9 410/13 412/8 420/21 423/7 425/18 429/5 430/6 434/2 439/2 444/23
**perceive [1]** 467/13
**perfect [1]** 438/17
**perform [2]** 458/14 458/15
**performance [1]** 450/17
**perhaps [1]** 375/16
**period [10]** 285/8 291/6 293/4 296/3 328/14 338/6 373/8 441/19 441/22 441/22
**permission [1]** 369/1
**permit [2]** 436/4 477/21
**permitted [2]** 446/21 466/10
**permitting [1]** 437/13
**person [53]** 290/1 297/22 297/22 303/17 305/6 317/8 323/11 354/16 355/9 356/2 356/21 358/3 358/20 360/10 363/10 366/18 376/20 382/1 382/2 386/6 389/8 399/22 400/18 407/12 407/18 409/6 415/19 417/9 418/13 419/24 420/21 421/7 439/10 448/15 450/7 450/9 450/12 452/7 452/14 455/16 455/17 455/20 455/21 455/24 456/2 457/17 459/6 459/14 459/15 467/4 469/8 469/15 470/12
**personal [3]** 450/10 466/22 467/8
**personality [3]** 284/19 361/16 462/23
**personally [1]** 456/6
**persons [9]** 453/9 455/25 456/21 457/2 457/5 457/23 463/17 464/2 465/8
**perspective [5]** 327/11 383/11 421/12 423/21 433/23
**pertains [2]** 352/6 465/12
**pertinent [2]** 363/11 452/6
**phone [43]** 274/20 274/22 274/24 278/7 278/11 292/25 298/22 299/1 299/2 328/2 358/17 358/17 366/9 366/9 369/2 370/20 382/6 382/7 382/8 382/9 382/13 382/18 382/18 382/20 382/21 382/24 383/3 383/4 383/5 387/2 387/12 390/7 401/8 421/1 421/4 421/5 421/9 421/10 443/23 443/25 474/7 475/8 477/11
**phones [1]** 484/24
**photo [2]** 479/20 479/21
**photograph [4]** 297/5 297/7 298/4 298/12
**photographs [9]** 297/14 302/8 302/11 302/18 345/19 345/21 346/3 346/7 348/11
**phrased [1]** 333/5
**physical [4]** 448/9 455/20 457/15 479/14
**physically [1]** 330/21
**pick [4]** 320/1 389/23 439/14 439/23
**picked [2]** 382/16 389/22
**picking [4]** 380/14 387/23 405/14 410/9
**picks [1]** 416/21
**picture [15]** 297/8 297/23 297/25 298/5 298/10 305/8 376/7 376/10 377/12 380/14 382/6 383/1 383/10 408/11 439/25
**pictures [8]** 302/23 304/25 305/3 328/11 347/24 408/10 424/24 439/25
**piece [8]** 349/9 372/11 372/23 379/8 385/11 404/5 405/4 415/17
**pieces [2]** 442/5 478/6
**pill [2]** 348/25 349/19
**pipe [2]** 345/18 399/13
**pipes [1]** 399/13
**place [7]** 286/22 322/20 335/25 400/1 401/22 404/9 467/5
**placed [2]** 320/20 348/22
**placing [3]** 358/3 358/20 449/9
**plain [3]** 385/21 392/10 392/13
**plane [1]** 439/12
**planning [1]** 289/13
**Plans [1]** 276/13
**plastic [1]** 402/4
**play [30]** 274/23 274/25 276/16 276/18 276/20 277/12 278/13 278/20 278/21 278/22 279/7 280/3 280/4 280/5 280/7 280/8 280/14 280/16 280/23 280/24 281/3 289/8 289/25 299/8 299/13 299/16 370/17 398/17 422/19 444/1
**playbook [2]** 421/17 422/19
**played [15]** 275/3 275/8 276/2 278/22 278/23 280/2 300/2 300/9 369/21 369/24 370/1 370/3 370/5 370/19 458/15
**playing [2]** 279/4 370/8
**plays [1]** 351/15
**Plaza [1]** 273/15
**plead [2]** 362/11 364/15
**please [8]** 274/4 274/5 290/12 342/7 353/8 398/19 438/6 472/8
**pled [3]** 288/24 364/17 449/9
**plumber [6]** 399/12 399/13 399/14 439/7 439/9 439/10
**plumber's [1]** 439/6
**plus [3]** 376/8 377/1 441/14
**pocket [12]** 362/24 363/7 365/18 367/21 368/1 368/2 381/7 388/12 404/16 439/8 439/8 442/25
**pockets [1]** 367/25
**point [39]** 279/4 286/9 291/1 299/5 299/6 304/19 310/3 318/24 327/12 331/8 332/2 337/16 340/6 345/2 350/10 351/4 353/11 361/4 364/23 368/4 368/14 369/2 369/13 370/25 372/16 372/24 373/5 390/14 428/11 429/18 434/8 442/8 443/23 444/14 458/25 460/6 472/1 476/24 483/2
**pointed [1]** 411/10
**police [51]** 288/22 288/24 305/23 308/24 309/4 311/18 313/14 314/6 326/8 326/15 327/12 327/16 328/24 342/14 342/16 342/19 343/5 347/9 348/1 362/17 362/20 363/24 367/21 368/16 378/14 378/21 378/25 400/14 401/11 404/14 406/23 407/13 409/2 409/4 414/15 414/16 414/17 415/21 416/10 417/17 418/16 419/23 421/15 421/21 423/15 425/19 425/21 425/24 426/4 426/4 465/21
**portion [6]** 275/18 275/23 280/2 283/22 288/2 395/16
**portions [1]** 468/7
**posed [1]** 381/20
**position [9]** 282/19 282/20 320/20 332/23 418/6 425/11 442/11 481/15 481/17
**possess [7]** 362/7 399/7 399/7 452/8 452/17 455/2 455/16
**possessed [8]** 284/21 359/19 361/18 365/18 454/22 454/23 456/13 462/24
**possessing [1]** 455/17
**possession [16]** 311/16 364/18 365/17 452/1 453/19 453/25 454/9 454/11 454/18 455/18 455/19 455/19 455/19 455/21 455/22 455/25
**possible [10]** 343/22 344/8 344/25 353/6 405/25 440/22 440/24 450/21 467/18 482/16
**possibly [1]** 385/8
**Postal [2]** 479/13 479/15
**pot [2]** 399/6 399/7
**power [1]** 455/23
**powerful [1]** 405/12
**practice [4]** 354/12 355/5 355/23 356/15
**practiced [1]** 314/13
**precarious [1]** 442/11
**precisely [1]** 420/21
**precludes [1]** 395/7
**prefer [2]** 481/13 483/6
**prejudice [2]** 286/16 286/19
**prejudicial [3]** 286/14 287/14 390/21
**preliminary [1]** 361/1
**prepare [1]** 352/24
**prepared [6]** 299/15 302/14 335/5 335/8 352/16 393/6
**preparing [1]** 443/4
**preponderance [4]** 286/7 461/24 461/25 462/2
**presence [3]** 389/1 389/1 459/14
**present [7]** 351/1 395/1 399/2 406/9 438/1 449/20 481/1
**presented [2]** 450/25 451/13
**presume [1]** 280/4
**presumed [3]** 410/21 411/6 449/16
**presumption [9]** 409/23 409/25 410/6 410/14 410/19 410/22 410/23 410/25 449/17
**pretty [5]** 311/4 319/5 379/11 385/21 413/7
**previous [2]** 300/21 415/22
**previously [2]** 290/19 469/21
**primary [2]** 307/5 307/9
**principle [3]** 409/22 411/2 411/25
**principled [1]** 436/15
**principles [1]** 409/19
**print [1]** 432/5

P

**prints [1]** 438/15
**prior [3]** 286/1 430/2 475/11
**prison [4]** 286/23 287/2 312/11 421/4
**probably [12]** 350/12 376/17 377/8 377/16 378/20 383/24 387/1 397/9 413/7 418/8 443/1 473/7
**probation [1]** 335/4
**probative [4]** 286/13 286/15 286/17 287/14
**problem [17]** 276/14 280/15 281/15 324/3 329/11 375/17 398/25 417/4 418/15 421/9 422/17 429/4 471/19 473/9 473/19 481/16 485/25
**problems [2]** 329/15 423/6
**proceed [7]** 344/16 397/10 438/7 451/17 461/1 470/2 483/8
**proceeding [1]** 360/20
**proceedings [4]** 273/24 360/1 360/4 486/2
**proceeds [7]** 311/1 396/4 396/10 397/21 398/7 437/4 461/16
**process [2]** 296/7 348/5
**processing [1]** 348/1
**produced [2]** 273/25 404/2
**produces [1]** 462/4
**profit [1]** 383/16
**progress [1]** 458/25
**promise [5]** 340/12 340/14 340/22 422/9 466/6
**promised [1]** 340/18
**promises [1]** 466/11
**proof [33]** 284/17 284/18 286/2 361/14 361/15 376/1 376/6 376/7 376/16 376/22 401/12 401/24 408/17 411/3 411/5 411/13 411/22 411/22 412/4 412/5 420/3 426/14 450/11 450/12 450/21 457/12 457/22 458/19 459/15 462/10 462/20 462/22 463/24
**proper [4]** 285/24 287/11 397/11 397/13
**properly [1]** 446/12
**property [1]** 329/6
**propose [2]** 289/23 478/9
**proposes [1]** 479/2
**proposing [2]** 277/12 476/11
**prosecute [1]** 464/6
**prosecuted [13]** 311/6 311/8 312/14 315/25 316/4 317/24 318/3 318/12 318/21 340/19 422/9 422/12 466/7
**prosecution [3]** 446/2 449/21 466/4
**prosecutor [3]** 314/9 314/15 329/24
**prove [32]** 279/17 281/24 286/2 403/5 403/6 408/15 411/8 417/19 420/12 438/20 449/15 449/21 450/3 450/19 450/20 453/4 453/6 454/2 454/17 454/19 455/4 455/10 455/11 456/10 458/1 458/18 460/13 460/14 460/16 461/23 461/25 462/6
**proved [5]** 390/13 411/1 460/22 461/2 462/5
**proven [6]** 399/20 409/16 439/2 439/2 454/4 464/9
**proves [4]** 403/1 403/20 455/6 456/25
**provide [2]** 289/20 468/21
**provided [2]** 369/9 400/2
**provides [3]** 388/1 452/6 452/13
**providing [1]** 401/11
**proving [1]** 449/11
**PUGHE [65]** 273/6 273/17 274/2 274/8 274/20 276/24 285/2 289/22 305/8 353/22 354/2 358/20 359/19 361/23 370/11 372/11 373/13 373/23 375/1 377/7 379/22 380/6 380/17 381/2 382/15 382/16 383/3 389/7 390/21 390/23 391/7 391/9 391/17 392/4 392/21 392/25 393/2 393/9 393/22 395/11 399/21 399/23 400/10 400/11 400/17 400/21 402/23 402/25 403/1 403/10 404/3 405/6 406/16 406/17 407/12 407/25 408/15 408/20 438/20 442/24 445/5 451/24 463/15 471/3 472/20
**Pughe's [18]** 277/22 359/6 359/13 373/6 373/9 373/10 373/13 373/21 381/11 382/12 391/2 391/15 402/5 404/23 408/11 440/3 473/18 483/23
**pull [3]** 378/1 378/14 379/12
**pulled [10]** 291/13 373/17 378/2 381/24 418/12 421/13 421/15 421/25 439/3 441/9
**pulls [2]** 416/20 475/11
**punishment [2]** 467/18 468/1
**pure [2]** 357/14 391/5
**purports [1]** 285/18
**purpose [21]** 284/23 284/24 285/2 285/25 287/11 307/18 309/2 341/16 361/21 361/22 361/23 455/2 457/3 457/24 458/5 458/10 459/8 463/2 463/3 463/11 463/15
**purposely [1]** 454/25
**purposes [7]** 286/2 403/23 437/5 452/25 453/2 457/3 461/17
**purse [4]** 379/8 379/12 379/13 379/19
**pursuant [2]** 372/8 372/9
**put [24]** 278/24 282/24 286/24 288/9 288/10 297/21 348/25 349/4 368/1 368/2 368/5 382/3 387/18 394/3 414/18 415/1 417/22 425/19 431/2 442/4 447/25 475/15 476/6 479/18
**puts [1]** 401/18
**putting [2]** 311/3 436/18
**puzzle [2]** 379/9 442/5

Q

**quality [1]** 400/6
**quantity [6]** 283/18 283/19 368/22 368/24 460/1 460/14
**Queens [2]** 389/18 461/21
**question [30]** 283/9 283/17 286/13 287/6 288/11 292/23 307/13 368/9 368/13 368/22 381/20 389/16 395/9 405/19 409/15 412/11 431/2 439/13 441/11 446/18 446/19 446/21 450/4 460/25 461/1 467/14 467/18 469/9 483/5 483/12
**questioning [1]** 363/11
**questions [16]** 289/5 300/11 314/14 314/16 325/19 336/15 350/5 386/21 447/25 448/1 460/19 461/6 461/9 469/23 470/2 470/3
**quickly [1]** 288/24
**quite [1]** 416/15
**quote [1]** 373/11

R

**R.H [1]** 369/7
**radio [1]** 343/18
**raid [10]** 329/22 384/12 384/15 384/17 387/7 425/18 425/21 425/24 426/4 434/23
**raincoat [1]** 448/16
**rained [1]** 448/19
**raise [4]** 342/4 434/7 472/8 474/9
**raised [2]** 363/17 441/11
**raises [1]** 393/7
**ran [1]** 440/15
**rather [8]** 291/9 350/16 361/12 429/14 452/21 454/14 459/11 459/18
**razor [21]** 372/19 372/20 372/20 373/13 373/15 381/5 381/7 381/9 402/16 403/21 403/21 404/1 404/3 404/10 404/11 404/17 442/25 443/20 468/13 468/15 477/2
**razors [1]** 403/22
**reach [6]** 295/19 379/12 446/8 469/24 470/3 482/18
**reached [6]** 289/12 419/2 469/10 470/4 481/9 482/22
**reaches [1]** 277/24
**reaching [1]** 451/6
**reacts [1]** 386/6
**read [25]** 289/14 333/8 349/1 350/11 350/12 351/3 353/18 353/19 354/6 360/23 361/3 362/1 375/17 386/8 392/20 395/16 395/17 395/20 412/8 416/6 468/7 468/8 473/16 478/6 478/11
**reading [1]** 386/7
**reads [4]** 354/24 355/17 356/9 357/6
**ready [7]** 290/12 335/11 373/24 438/3 478/17 478/18 480/4
**real [4]** 328/5 352/2 407/15 457/18
**reality [1]** 384/3
**really [37]** 276/13 334/21 337/12 352/6 386/19 390/6 390/9 391/13 397/1 400/10 401/10 401/14 402/2 404/8 406/15 407/18 415/13 418/20 423/23 425/20 425/21 428/13 429/18 431/6 439/13 439/18 440/8 441/3 441/3 441/7 441/10 443/10 444/8 444/19 445/6 477/3 485/7
**realty [1]** 440/1
**rear [1]** 448/16
**reason [27]** 278/3 292/17 294/18 308/7 312/13 325/11 339/2 340/10 365/3 383/8 385/16 410/12 411/19 411/23 413/11 414/17 417/12 417/15 418/3 420/18 436/15 448/20

R

**reason... [5]** 449/5 450/6 460/19 463/9 463/19
**reasonable [57]** 286/3 372/25 376/2 390/12 399/21 400/1 401/12 401/25 403/2 406/17 408/18 409/17 411/1 411/25 411/25 412/6 412/10 412/16 412/25 413/3 414/4 414/5 425/10 426/14 438/20 448/11 449/12 449/22 450/4 450/5 450/7 450/9 450/11 450/12 450/14 450/19 450/21 450/24 451/3 453/8 454/4 454/20 456/10 458/18 458/20 459/10 459/19 459/25 460/16 460/23 461/3 461/23 462/12 463/25 464/10 467/23 474/14
**reasonably [4]** 286/7 448/11 449/4 462/13
**reasons [9]** 304/22 390/4 390/25 402/22 408/19 414/8 414/13 414/16 426/20
**rebut [1]** 392/15
**rebuttal [8]** 375/21 390/16 393/15 393/16 393/18 395/12 397/15 438/7
**recall [3]** 303/1 403/11 418/11
**receive [2]** 343/18 466/18
**received [30]** 339/22 339/23 346/15 346/16 354/22 354/23 355/15 355/16 356/7 356/8 357/3 357/4 357/19 357/20 358/13 358/14 359/8 359/9 359/16 359/17 359/22 359/23 360/16 360/17 380/15 447/2 466/5 474/12 475/2 488/2
**recess [3]** 350/18 390/15 390/18
**recognize [11]** 297/7 297/10 297/25 298/5 298/7 298/12 298/21 300/4 305/5 339/9 345/15
**recollection [9]** 315/6 334/9 347/13 375/15 418/10 445/22 464/24 465/10 468/4
**reconvene [2]** 481/8 482/15
**record [45]** 274/4 274/5 282/25 329/9 332/8 332/25 333/5 342/8 350/22 354/12 355/5 355/23 356/15 356/15 359/25 360/4 372/1 372/8 372/14 382/18 392/20 394/8 395/16 409/5 430/24 431/1 431/15 431/16 434/22 434/25 436/16 436/18 437/18 440/13 473/22 473/23 474/16 475/12 475/14 475/15 477/17 478/3 478/13 480/8 483/20
**record's [2]** 291/18 434/25
**recorded [14]** 273/24 340/15 354/10 354/13 355/2 355/7 355/21 355/25 356/13 356/18 358/5 358/21 358/22 359/5
**recording [8]** 289/9 300/2 300/9 369/24 370/1 370/3 370/5 370/19
**recordings [8]** 357/22 358/17 369/21 477/11 477/14 480/3 483/18 484/2
**records [25]** 353/16 354/8 354/18 354/25 355/12 355/19 356/4 356/11 356/23 358/7 358/24 369/7 369/8 380/12 382/6 382/7 382/9 382/13 383/4 387/2 387/6 387/25 390/2 425/8 474/13
**recovered [1]** 476/8
**RECROSS [2]** 340/3 487/3
**RECROSS-EXAMINATION [1]** 340/3
**red [4]** 302/21 304/17 348/24 349/19
**redirect [4]** 334/1 340/25 415/24 487/3
**refer [2]** 369/13 476/9
**reference [8]** 275/21 275/23 299/13 300/12 335/6 335/10 343/21 463/22
**referencing [1]** 481/21
**referred [4]** 378/5 378/6 452/10 475/24
**referring [6]** 276/14 279/18 280/19 301/8 345/19 421/4
**refers [11]** 275/21 353/15 354/5 363/9 368/3 368/20 370/7 370/11 376/8 462/9 475/18
**reflect [1]** 436/16
**reflecting [1]** 369/8
**reflects [2]** 288/3 360/9
**refresh [3]** 346/23 347/3 347/12
**regard [3]** 373/20 451/14 457/19
**regarding [1]** 317/12
**regardless [3]** 445/11 446/8 446/25
**region [1]** 342/22
**register [2]** 322/11 423/24
**registered [2]** 310/15 325/16
**registering [1]** 311/20
**registration [1]** 377/15
**regular [3]** 354/12 355/5 355/23
**reject [1]** 399/11
**relate [1]** 467/14
**related [4]** 303/10 346/4 354/8 475/16
**relates [3]** 339/14 359/6 387/19
**relating [3]** 355/1 355/19 460/20
**relationship [12]** 281/9 287/12 301/1 301/5 304/1 351/22 359/6 373/6 380/21 391/25 464/25 473/18
**relative [2]** 296/24 343/14
**relatively [1]** 379/11
**release [2]** 287/2 369/10
**relevant [8]** 281/3 282/3 282/13 286/1 286/5 286/14 430/16 466/1
**reliable [6]** 411/16 415/15 415/16 415/17 415/23 416/11
**relief [2]** 392/17 413/22
**reluctant [2]** 430/8 430/9
**rely [6]** 385/13 388/2 401/24 403/5 403/7 450/13
**remained [1]** 459/2
**remains [7]** 275/1 411/13 419/12 438/16 438/19 438/21 449/17
**remedy [1]** 393/23
**remember [24]** 290/16 292/11 296/21 296/24 297/1 298/16 313/24 336/4 339/4 346/19 346/25 347/1 347/2 364/17 375/13 375/16 377/24 387/1 387/20 402/3 428/7 438/11 468/4 473/16
**remembering [1]** 293/9
**remembers [1]** 384/21
**remind [6]** 351/7 351/25 361/10 375/11 454/13 462/17
**remove [1]** 475/17
**removing [1]** 289/22
**renew [1]** 282/1
**rent [4]** 322/24 383/23 384/2 384/4
**rental [4]** 296/7 296/13 296/17 425/8
**reopen [2]** 474/15 475/3
**repeat [2]** 318/8 353/23
**repeated [1]** 468/5
**rephrase [1]** 398/16
**report [9]** 347/9 406/8 481/22 481/23 481/25 482/21 482/23 483/1 483/5
**reported [1]** 481/12
**reporter [6]** 273/23 273/23 360/13 395/15 468/7 474/2
**reports [1]** 428/3
**request [3]** 332/2 468/6 474/14
**requested [1]** 287/24
**requests [1]** 468/9
**require [3]** 450/20 464/1 464/4
**required [3]** 392/9 411/11 448/25
**requirement [1]** 462/7
**requires [4]** 312/19 455/10 456/21 472/1
**research [1]** 337/3
**reserve [1]** 373/23
**reserved [1]** 434/3
**residence [2]** 344/14 344/15
**resist [1]** 353/3
**resolution [1]** 400/11
**resolve [1]** 429/22
**resolved [2]** 274/18 274/19
**respect [11]** 281/21 287/8 287/16 317/17 335/5 360/19 436/23 445/5 449/12 465/15 476/16
**respond [1]** 391/13
**responded [2]** 343/21 344/7
**response [1]** 332/4
**responsibility [2]** 445/8 445/15
**responsible [2]** 382/2 459/1
**rest [3]** 375/1 439/4 475/25
**restarts [1]** 275/18
**restaurant [1]** 443/3
**rests [3]** 371/1 375/5 467/21
**result [3]** 303/12 364/14 428/13
**results [2]** 432/22 465/13
**resume [7]** 290/6 290/12 390/15 484/17 484/20 485/3 485/19
**resumed [1]** 287/1
**resumes [1]** 290/7
**retire [1]** 427/5
**retires [1]** 472/12
**retrospect [1]** 434/19
**return [2]** 390/11 451/9
**reveal [1]** 469/7
**review [1]** 376/15
**reviewed [2]** 369/7 472/15
**revision [1]** 483/3
**revisions [1]** 482/1
**ride [2]** 365/9 439/13
**ridiculous [2]** 407/2 407/3
**right [175]** 280/10 283/6

## R

**right... [173]** 283/22 283/25 287/22 289/3 289/18 290/5 291/21 292/2 292/14 292/15 293/15 293/21 294/2 294/25 296/22 298/11 301/3 301/11 302/8 302/14 302/19 303/3 303/10 303/14 303/22 303/23 304/1 304/6 304/8 304/13 304/20 305/1 305/6 305/9 306/5 306/23 307/19 307/21 309/23 311/10 311/24 312/16 313/5 313/12 313/21 314/20 314/23 315/4 315/8 316/16 316/19 318/7 318/22 319/12 320/8 321/9 322/13 322/15 324/17 324/18 325/9 326/2 326/12 326/15 326/19 326/22 326/24 327/8 327/10 327/20 327/24 328/8 328/10 328/12 328/21 329/7 329/10 329/11 329/23 329/25 330/1 330/2 330/4 330/13 330/16 330/17 330/20 330/23 333/3 335/17 335/18 336/2 336/3 336/18 337/8 337/18 337/19 338/20 338/21 338/22 338/25 339/1 339/15 339/18 340/9 340/17 340/20 340/23 341/1 341/3 341/11 341/15 341/19 342/4 346/11 346/22 347/12 350/17 353/8 354/22 355/15 357/2 357/19 358/13 359/8 359/16 359/22 360/16 364/9 367/4 368/11 370/2 370/12 372/1 375/6 382/16 384/21 385/19 387/21 394/4 394/5 396/21 396/25 398/1 402/13 404/18 405/5 416/22 418/25 421/5 423/4 427/15 428/19 433/15 433/22 438/6 438/13 441/16 442/23 443/6 445/7 460/9 471/9 472/4 472/8 472/10 472/14 475/1 480/5 482/12 483/21 484/12 485/16
**RMR [1]** 273/23
**road [3]** 362/18 416/22 417/7
**Rohrkemper [1]** 274/15
**role [1]** 458/16
**room [29]** 295/11 344/9 344/9 344/23 344/25 345/1 345/2 345/8 346/4 346/5 346/21 347/16 347/25 349/2 349/4 349/13 349/23 385/2 386/9 387/10 404/4 410/10 427/6 468/12 470/8 472/12 477/15 477/15 484/18
**Rothman [1]** 273/17
**roughly [1]** 343/16
**round [1]** 383/18
**row [2]** 477/25 477/25
**rule [5]** 372/8 372/10 373/2 373/3 445/10
**ruling [1]** 282/22
**rumor [2]** 420/24 420/24
**run [2]** 440/15 473/5
**running [2]** 279/15 430/9
**runs [1]** 310/16

## S

**safe [1]** 381/8
**safety [3]** 377/21 418/21 418/22
**said [100]** 276/6 286/18 288/7 288/17 288/19 288/22 290/2 291/8 292/19 296/18 299/5 303/3 305/5 305/8 306/18 308/1 310/8 311/8 312/3 319/13 321/6 323/16 323/22 323/24 324/5 324/25 325/1 325/6 325/11 326/20 328/2 328/19 328/20 328/23 329/1 329/3 329/15 330/1 332/12 336/15 337/16 340/6 340/10 340/24 343/17 348/11 349/22 363/1 363/3 368/19 375/11 379/3 384/18 387/12 387/21 387/25 392/12 392/20 393/20 398/2 399/20 401/3 401/9 402/3 404/17 405/9 405/12 406/1 406/2 408/12 410/3 410/4 410/13 414/22 415/1 415/16 416/1 416/5 416/6 417/19 418/7 419/9 423/10 425/25 429/17 431/14 433/10 440/16 440/16 441/24 445/5 445/18 446/16 446/20 447/23 448/3 450/2 450/3 473/23 474/6
**salad [3]** 443/7 443/8 443/12
**sale [1]** 456/3
**sales [1]** 311/14
**salesman [1]** 386/4
**same [25]** 277/3 277/21 278/18 286/12 286/12 289/17 323/11 337/13 348/21 353/19 353/20 384/18 386/6 388/15 389/2 401/6 406/14 412/19 428/21 430/6 438/16 438/21 444/19 444/23 446/4
**Sandifer [1]** 362/18
**sandwiches [1]** 403/9
**sat [2]** 366/16 366/16
**satisfied [5]** 451/2 478/24 478/25 479/4 485/2
**satisfy [1]** 397/24
**saw [28]** 295/4 298/16 305/8 327/6 328/2 329/16 362/21 376/6 376/13 377/20 378/1 379/1 379/5 383/9 387/15 403/15 403/16 403/16 403/17 406/3 406/4 408/11 423/10 441/1 441/24 441/24 442/2 443/3
**say [95]** 274/11 284/14 285/1 287/20 289/2 295/10 303/25 304/3 304/4 304/10 304/15 305/12 307/2 308/1 313/21 321/24 324/10 332/20 332/22 333/11 337/10 337/12 337/12 351/21 358/17 372/19 375/14 378/7 381/13 384/16 384/20 384/25 391/9 392/3 392/3 392/19 395/17 395/21 396/9 397/15 397/17 397/21 398/6 398/12 401/4 401/8 402/21 403/1 403/8 403/20 403/21 405/10 406/10 406/12 407/2 407/4 407/4 408/17 408/20 411/12 412/10 415/7 415/10 419/15 421/19 423/13 423/22 427/5 428/18 428/19 428/24 429/1 430/10 432/17 432/20 433/6 433/14 433/15 434/3 434/7 434/11 435/8 435/18 435/18 435/21 436/5 436/17 436/21 439/15 440/3 440/4 441/16 442/24 443/2 477/25
**saying [24]** 278/12 278/18 279/10 280/17 362/1 383/6 383/24 384/25 385/1 385/14 393/14 395/10 406/8 410/16 411/12 423/13 424/12 424/18 429/11 430/3 436/15 441/23 470/4 485/18
**says [50]** 276/15 276/24 277/9 278/8 278/14 279/12 318/15 363/2 363/6 363/8 368/3 368/4 368/12 376/20 380/21 380/25 384/20 385/13 385/18 387/4 387/13 387/21 396/13 399/9 401/23 403/15 405/4 407/1 407/16 407/17 408/4 412/15 416/19 416/23 424/9 424/15 424/24 425/20 426/6 432/5 439/6 440/5 440/17 442/16 444/20 476/7 477/1 477/9 482/13 482/17
**scale [11]** 349/2 349/4 377/13 402/3 402/6 402/7 402/15 419/3 419/9 428/23 438/16
**scales [5]** 345/10 349/1 429/2 433/12 477/2
**scared [1]** 326/8
**scars [1]** 400/23
**scene [2]** 405/3 459/14
**Schedule [3]** 357/13 362/8 452/4
**scheme [1]** 425/7
**Schneider [1]** 273/17
**scope [1]** 459/4
**scot [1]** 422/14
**scot-free [1]** 422/14
**screeching [1]** 417/8
**screen [1]** 297/21
**scrutinize [2]** 386/8 464/16
**scrutinized [1]** 466/13
**scrutiny [1]** 467/10
**sealed [1]** 405/2
**search [6]** 344/25 404/15 404/17 407/16 407/17 418/16
**searched [2]** 291/13 441/1
**seat [6]** 290/15 403/7 403/11 403/13 477/18 477/19
**seated [7]** 290/12 342/7 353/9 398/19 438/7 482/13 484/12
**second [23]** 274/24 275/17 277/19 283/17 286/5 297/21 314/25 322/6 329/21 369/17 381/5 411/2 419/13 429/25 430/23 442/2 447/2 453/11 453/15 454/22 456/14 477/25 482/17
**seconds [5]** 275/17 275/18 277/17 277/17 277/19
**secrecy [1]** 457/13
**section [10]** 275/2 353/23 362/9 362/10 452/5 452/6 452/12 452/13 452/17 453/21
**secure [1]** 369/10
**security [2]** 407/9 477/20
**see [55]** 277/13 281/24 282/2 289/23 297/12 298/14 299/16 302/21 302/23 304/17 338/3 338/7 346/10 365/9 365/10 365/11 371/2 376/20 377/19 377/19 377/23 379/4 379/23 380/4 382/9 382/21 386/8 392/20 400/17 402/16 403/18 406/8 406/13 407/13 411/15 411/17 411/19 417/13 417/23 417/24 418/24 418/25 419/2 419/2 422/20 424/24 426/13

S

**see... [8]** 427/8 432/8 435/4 443/11 460/19 465/8 474/23 477/13
**seeing [3]** 341/4 341/5 477/4
**seek [1]** 391/10
**seeking [1]** 392/17
**seem [10]** 275/12 378/11 378/13 386/14 386/14 400/4 414/19 421/6 421/9 433/8
**seems [5]** 282/11 282/16 332/23 434/17 435/3
**seen [9]** 282/9 302/10 366/25 367/18 390/12 408/13 409/1 448/4 481/3
**sees [4]** 403/13 403/14 404/22 419/6
**segment [3]** 274/22 275/17 277/24
**seized [5]** 346/5 346/6 346/8 385/5 476/22
**select [1]** 470/9
**selection [1]** 410/10
**self [3]** 277/23 278/3 409/3
**self-serving [3]** 277/23 278/3 409/3
**sell [9]** 292/8 294/22 364/21 364/22 368/19 379/16 383/21 388/10 389/10
**selling [18]** 279/15 282/8 282/12 291/23 292/2 307/2 310/12 310/15 321/11 326/3 326/5 328/2 341/8 368/20 377/2 377/3 381/16 425/4
**sells [1]** 424/22
**send [28]** 397/6 419/10 428/22 429/2 431/3 431/14 433/8 433/11 438/13 468/12 468/15 468/20 469/1 469/17 470/4 472/6 473/7 477/8 477/13 477/14 478/5 478/22 479/2 482/4 483/4 483/7 483/9 485/18
**sending [11]** 294/1 380/20 380/24 391/14 396/4 396/6 397/21 398/6 433/7 433/16 438/12
**sends [1]** 392/4
**sensational [1]** 286/20
**sense [21]** 333/6 351/4 377/20 381/14 385/21 385/25 404/8 416/16 417/4 417/14 439/15 439/21 439/23 440/19 442/10 448/21 449/6 450/7 457/18 467/19 468/3
**sensible [1]** 397/9
**sent [22]** 348/3 389/25 391/2 391/6 392/21 392/24 393/2 398/17 406/8 428/24 429/1 431/9 431/19 432/21 433/14 433/18 437/4 438/18 439/12 461/16 480/2 483/18
**sentence [5]** 288/25 312/11 316/7 334/15 467/21
**sentences [1]** 276/5
**separate [9]** 293/20 322/4 406/3 406/4 451/9 452/22 453/24 460/7 460/8
**separately [3]** 451/9 451/12 475/20
**September [7]** 295/14 328/14 360/3 360/21 382/19 423/17 451/21
**September 1st [1]** 451/21
**September 22nd [1]** 382/19
**September 29th [2]** 360/3 360/21
**serious [3]** 311/4 402/12 418/14
**serve [1]** 470/7
**served [2]** 343/6 466/20
**serves [1]** 470/6
**Service [2]** 479/13 479/15
**serving [3]** 277/23 278/3 409/3
**Sessions [1]** 348/4
**set [2]** 289/25 362/20
**sets [1]** 410/7
**Setting [1]** 381/21
**seven [2]** 351/8 381/24
**several [5]** 278/13 313/19 403/6 446/23 454/12
**shake [1]** 422/16
**Shakes [1]** 306/13
**shaking [1]** 448/16
**shaky [1]** 416/13
**shall [1]** 452/7
**share [3]** 338/18 414/13 427/6
**shave [1]** 403/25
**she [155]** 287/9 288/12 288/17 288/18 288/20 288/20 288/21 288/23 288/24 288/25 289/1 289/2 292/19 292/20 294/9 301/20 303/19 309/24 323/24 324/1 324/4 325/4 336/24 336/24 359/12 378/4 379/21 383/24 384/18 384/19 384/20 384/20 384/25 385/7 385/9 385/13 385/16 385/18 385/18 386/11 386/11 386/12 386/14 386/14 386/14 386/16 386/16 386/17 386/20 386/21 387/3 387/4 387/7 387/8 387/11 387/11 387/13 387/21 387/24 387/25 388/1 388/2 388/20 389/19 389/21 389/22 395/17 399/1 406/21 406/22 406/24 406/24 407/20 407/21 407/22 407/23 407/23 407/24 408/6 408/7 408/8 408/8 408/9 408/10 408/11 408/12 408/13 408/13 412/15 413/21 419/13 419/15 420/2 422/3 422/3 422/4 422/8 422/8 422/10 422/10 422/13 422/14 423/6 423/7 423/10 423/10 423/13 423/21 423/21 424/1 424/1 424/1 424/2 424/4 424/6 424/7 424/10 424/11 424/12 424/13 424/21 424/21 424/23 424/23 424/24 424/24 425/3 425/7 426/5 426/6 441/18 441/23 441/24 442/1 442/2 442/9 442/11 442/12 442/12 442/13 442/14 442/15 442/16 442/21 442/22 442/22 444/8 446/21 466/7 466/8 466/17 466/18 466/19 467/5 467/12
**she'll [1]** 325/5
**she's [30]** 274/12 276/15 288/3 299/18 318/18 384/21 385/1 385/14 385/14 385/15 385/19 386/10 387/14 411/4 412/19 413/24 419/23 422/17 423/11 423/12 424/2 424/3 424/5 424/16 425/22 441/17 442/11 442/16 444/6 444/7
**sheet [9]** 460/8 460/20 460/21 461/10 475/21 480/2 483/23 483/24 484/1
**sheets [4]** 460/6 460/7 472/7 483/17
**shenanigans [1]** 418/2
**shifts [1]** 449/14
**shipment [2]** 416/12 417/5
**shoplifter [1]** 399/5
**shoplifting [3]** 399/4 399/5 407/8
**short [6]** 290/24 362/23 386/25 392/23 401/19 441/22
**shortly [1]** 287/1
**shorts [2]** 367/25 367/25
**should [53]** 275/2 275/8 276/2 277/25 280/2 288/9 350/20 358/17 360/24 369/22 373/2 375/10 400/7 401/11 402/12 406/16 411/23 412/19 417/16 419/21 425/14 428/14 428/22 430/12 430/18 434/19 435/13 436/16 438/21 445/9 445/12 445/18 446/13 451/3 451/15 453/2 454/5 458/6 461/22 463/19 463/21 464/16 465/1 466/13 466/14 466/25 467/19 469/2 469/12 473/15 481/20 482/25 484/23
**shouldn't [3]** 277/5 414/6 433/10
**shove [1]** 407/21
**show [26]** 297/2 297/3 297/4 297/7 298/4 298/18 339/7 339/9 344/13 345/13 347/6 348/13 348/22 349/1 365/5 383/17 385/1 387/6 409/10 417/21 417/25 420/15 421/6 457/8 459/18 460/5
**showed [1]** 333/10
**showing [5]** 373/17 380/13 422/22 438/15 444/12
**shown [6]** 302/7 302/13 302/13 305/1 455/13 458/8
**shows [9]** 372/19 388/6 404/5 412/7 420/16 424/6 428/3 443/20 444/17
**shred [1]** 391/3
**shut [1]** 407/21
**side [7]** 318/1 366/15 422/18 432/3 446/10 446/11 464/25
**sidebar [9]** 331/13 333/18 371/2 371/3 374/4 427/18 470/16 470/17 471/23
**sides [1]** 379/2
**sidewalk [1]** 378/19
**sign [3]** 278/8 315/13 339/12
**signed [5]** 332/25 333/1 334/23 338/9 469/3
**significance [2]** 277/1 384/13
**significant [1]** 475/5
**similar [19]** 282/11 285/17 285/23 286/11 287/10 352/12 361/12 361/13 361/20 430/4 430/15 430/15 430/17 433/5 435/6 462/20 463/1 463/5 463/10
**similarly [1]** 287/9
**simple [2]** 448/13 456/2
**simply [3]** 287/17 385/3 469/18
**since [9]** 289/9 297/20 319/5 321/24 348/9 352/17 429/19 434/17 436/5
**single [12]** 280/16 351/16 372/11 372/23 401/7 403/25 404/5 426/12 451/10 451/11 468/23 469/20

S

**single-edged [1]** 403/25
**sir [25]** 342/13 343/2 343/10 343/19 343/24 344/2 344/18 344/20 344/22 344/24 345/3 345/16 345/20 346/9 347/11 347/14 347/22 348/3 348/7 349/11 349/24 350/1 350/3 363/25 367/23
**sister [1]** 392/1
**sit [7]** 281/24 421/19 422/14 426/25 436/13 477/24 478/2
**sits [1]** 408/2
**sitting [11]** 302/21 316/14 377/4 384/8 403/12 409/25 410/1 416/19 419/20 422/17 448/18
**situation [3]** 384/19 421/12 423/14
**six [2]** 351/8 381/24
**skip [2]** 275/22 275/23
**sleep [3]** 295/12 325/5 400/25
**sleeping [2]** 324/23 325/4
**slice [1]** 376/13
**slip [1]** 476/13
**slips [4]** 475/17 476/5 476/9 476/16
**slow [1]** 383/13
**small [11]** 275/3 345/18 376/7 376/10 377/12 379/8 385/11 415/12 426/1 426/2 473/16
**smaller [1]** 426/2
**smell [9]** 373/13 404/19 404/25 405/2 405/7 405/8 406/11 406/13 443/20
**smelled [4]** 381/13 440/3 440/5 440/25
**smells [1]** 406/12
**smoke [2]** 324/13 441/2
**smoked [5]** 293/8 294/9 309/11 323/24 324/8
**smoking [2]** 309/19 399/6
**snapping [1]** 386/4
**snitching [1]** 444/8
**snorted [1]** 309/13
**so [141]** 278/18 279/15 281/25 282/16 283/16 286/23 287/20 288/2 289/1 289/23 290/1 291/14 291/18 292/21 293/23 296/1 303/9 307/24 308/1 309/6 310/16 311/3 314/3 314/5 315/17 317/22 318/23 319/13 319/20 319/20 326/8 332/17 336/9 337/6 339/5 340/6 340/21 343/3 345/2 348/5 350/11 351/7 351/18 352/6 352/16 354/6 354/22 358/10 359/8 365/7 368/9 370/17 372/23 375/18 376/23 377/3 378/1 381/23 382/1 383/17 384/3 385/2 386/19 386/25 387/21 390/4 390/18 392/13 395/6 395/23 396/13 399/9 399/16 401/2 402/5 403/1 407/1 409/5 409/8 409/18 410/21 411/8 411/14 412/3 412/13 412/24 413/4 413/13 414/10 414/15 415/21 416/3 416/4 416/8 416/11 416/12 417/12 418/12 419/23 421/3 422/14 422/21 424/1 424/16 424/25 426/5 426/11 427/3 427/15 431/13 433/20 435/8 436/10 436/13 436/19 438/10 441/1 442/14 443/10 444/2 444/7 454/16 458/12 459/1 460/6 461/9 462/1 462/1 471/18 473/3 475/19 477/19 483/4 483/4 483/7 483/9 484/7 484/15 484/19 484/21 485/16
**so-called [2]** 416/11 416/12
**sock [1]** 405/20
**socks [8]** 404/19 405/7 405/8 406/8 406/9 406/13 440/5 440/9
**sold [10]** 292/5 306/24 307/9 310/6 310/8 321/13 344/9 367/16 383/21 422/3
**sole [4]** 310/12 317/8 445/24 464/13
**solely [4]** 430/20 445/20 451/12 467/24
**Soloway [1]** 273/17
**solution [3]** 281/16 431/17 434/14
**some [63]** 280/21 280/22 281/3 283/2 287/1 287/7 291/1 292/14 293/18 295/16 299/5 299/5 299/9 302/7 303/25 304/19 308/8 311/4 312/24 318/24 319/8 320/13 325/12 325/22 327/12 329/9 330/15 335/3 336/15 338/18 340/6 343/25 346/7 349/9 364/12 365/8 365/9 366/10 373/14 379/6 379/25 385/15 386/20 387/18 388/3 396/11 396/21 411/17 413/13 414/7 417/12 417/13 418/1 420/9 423/6 448/15 448/22 455/7 459/7 459/19 463/8 464/3 468/5
**somebody [18]** 278/14 323/7 324/10 330/14 330/18 332/23 337/22 378/19 386/3 386/15 387/15 390/8 421/7 439/7 439/17 440/14 442/25 443/3
**somebody's [1]** 324/10
**somehow [4]** 397/6 399/7 443/24 473/20
**someone [25]** 277/4 277/6 294/4 300/13 303/3 303/9 344/17 349/25 350/2 364/1 377/14 377/15 377/23 378/8 379/12 379/15 399/2 401/8 402/11 402/13 406/22 408/6 417/5 434/5 455/17
**someone's [1]** 439/6
**something [67]** 278/15 280/1 282/7 288/9 301/9 329/4 330/11 333/14 339/5 370/17 375/15 378/20 379/10 380/21 381/8 382/4 384/10 384/22 385/11 385/12 389/3 389/3 389/12 396/17 397/7 400/13 400/13 402/7 402/8 402/22 403/17 403/17 404/12 404/14 405/6 407/24 409/23 410/6 424/25 425/5 425/6 426/8 429/5 430/25 432/24 433/8 434/18 435/8 435/18 435/19 437/15 440/14 440/15 441/2 442/10 442/15 443/25 444/3 454/24 455/2 459/20 461/25 468/10 473/15 475/15 476/2 477/25
**Sometime [2]** 313/3 313/5
**sometimes [8]** 293/11 293/11 295/8 385/22 385/22 385/25 412/8 412/8
**Somewhat [1]** 321/21
**somewhere [4]** 288/21 308/8 372/22 485/10
**soon [1]** 479/5
**sorry [16]** 275/25 290/16 295/1 313/1 316/2 317/16 334/14 341/24 343/4 347/18 353/3 361/2 432/12 438/4 438/23 474/10
**sort [7]** 284/13 325/22 329/9 330/15 351/9 378/24 444/1
**sorts [1]** 327/6
**sought [1]** 462/4
**sound [2]** 313/5 440/20
**sounding [1]** 417/2
**source [3]** 307/5 307/9 310/12
**space [1]** 469/18
**speak [6]** 335/22 344/14 414/7 428/17 437/13 457/19
**speaking [11]** 279/21 340/6 340/21 343/25 344/7 344/24 346/3 390/8 448/6 474/10 474/11
**Special [1]** 332/2
**specific [11]** 301/4 301/6 354/5 411/10 414/21 425/14 425/15 439/22 458/10 460/15 468/9
**specifically [5]** 335/10 431/4 431/4 434/3 463/11
**specificity [1]** 423/11
**speculate [6]** 408/17 421/23 431/16 446/20 450/1 463/19
**speculating [1]** 436/9
**speculation [4]** 391/5 391/8 449/7 450/16
**speculative [2]** 395/6 434/18
**speeds [1]** 416/21
**spell [1]** 342/7
**spend [5]** 295/3 295/5 335/3 364/11 397/4
**spending [2]** 320/24 397/4
**spent [2]** 286/22 295/7
**split [2]** 292/8 292/8
**spoke [10]** 305/23 306/19 307/16 308/25 326/8 341/9 344/11 344/17 410/16 415/4
**spoken [3]** 305/25 329/24 389/3
**spots [1]** 383/20
**Sprint [4]** 355/18 355/22 355/23 355/25
**Square [1]** 320/18
**stain [1]** 420/20
**stakes [2]** 412/24 419/21
**stand [15]** 284/2 287/17 290/6 290/8 327/23 383/2 386/11 397/15 422/3 425/19 425/21 442/1 442/11 449/24 464/21
**standard [10]** 373/3 412/1 412/4 412/5 412/20 412/24 413/1 413/11 419/11 425/11
**standing [5]** 437/6 443/3 444/6 461/18 479/23
**standpoint [1]** 385/3
**stands [3]** 386/3 391/1 469/8
**staple [1]** 473/15
**stapled [1]** 473/19
**star [2]** 422/2 422/7
**start [18]** 275/16 353/14 353/24 369/16 374/2 376/23 382/25 400/1 411/12 414/15 414/17 439/8 439/13 440/18 441/15 458/24 484/19 484/24
**started [8]** 309/19 310/12 318/24 383/19 415/22 416/3

## S

**started... [2]** 444/19 444/21
**starting [1]** 314/5
**starts [5]** 275/17 275/19 277/16 277/18 478/1
**stash [2]** 424/19 424/21
**state [14]** 274/4 274/5 342/7 359/12 362/14 379/20 382/4 445/11 446/8 455/11 455/15 464/20 470/5 475/12
**stated [5]** 344/8 345/1 351/15 393/6 457/6
**statement [8]** 278/17 279/7 288/20 393/1 397/3 397/12 397/14 426/1
**statements [7]** 277/23 288/12 328/6 352/4 447/23 457/21 458/21
**Staten [1]** 461/21
**states [34]** 273/1 273/2 273/4 273/11 273/14 274/2 274/6 285/21 343/6 353/20 353/20 353/22 353/25 354/1 358/16 359/11 359/18 360/1 360/5 360/22 362/2 362/9 362/10 362/13 362/16 363/5 363/12 369/7 446/3 452/5 453/21 470/14 479/15 481/19
**stating [1]** 468/23
**station [1]** 401/1
**statute [1]** 455/18
**stay [10]** 294/11 294/19 295/8 295/11 308/1 365/8 422/18 471/21 471/22 471/22
**stayed [2]** 389/22 389/23
**staying [5]** 294/7 294/16 294/25 294/25 309/6
**steady [1]** 383/17
**stealing [1]** 341/13
**stenography [1]** 273/24
**step [5]** 341/23 347/1 347/1 350/8 407/15
**Stephanie [6]** 294/4 294/6 294/8 294/18 295/1 295/2
**Stephanie's [2]** 295/5 298/15
**steps [1]** 368/11
**Stern [38]** 273/17 273/19 274/8 275/16 277/23 278/12 278/22 279/7 302/2 316/20 316/23 354/2 375/1 381/12 391/20 393/7 395/3 396/24 398/20 410/15 411/9 419/9 432/17 433/13 434/9 435/4 435/14 436/11 437/12 437/13 438/8 439/6 471/2 471/20 475/10 479/1 479/21 487/8
**Stern's [5]** 275/20 277/15 277/16 428/21 435/4
**Steve [1]** 305/23
**still [3]** 403/25 481/10 482/19
**stip [1]** 370/11
**stipulate [12]** 281/5 281/12 283/1 331/8 332/1 332/17 332/25 333/1 333/13 359/4 425/16 433/2
**stipulated [6]** 353/24 426/10 447/5 447/6 447/8 447/10
**stipulation [28]** 279/16 289/11 332/21 351/13 351/23 353/14 354/20 354/24 355/14 355/17 356/6 356/9 357/1 357/6 357/18 358/9 358/10 358/15 359/2 359/11 359/15 360/15 360/20 369/5 447/7 447/11 473/2 473/20
**stipulations [11]** 289/14 331/9 333/9 350/13 351/4 351/9 352/12 353/12 353/18 354/5 379/25
**stole [1]** 422/5
**Stone [1]** 343/13
**stood [4]** 399/20 406/2 410/4 418/7
**stop [9]** 376/8 376/23 379/6 382/16 414/18 416/13 416/19 417/7 418/5
**stopped [10]** 302/25 310/11 322/22 322/24 323/14 324/20 378/18 404/21 406/23 441/7
**stopping [1]** 378/16
**stops [2]** 277/18 416/21
**story [9]** 416/15 416/15 417/10 418/9 426/20 440/1 440/2 441/17 441/20
**straightened [1]** 323/19
**straightforward [2]** 384/11 469/17
**strange [1]** 378/11
**stranger [1]** 421/16
**strategical [2]** 285/11 287/17
**Stratford [3]** 343/21 344/1 344/8
**street [4]** 273/18 273/21 378/16 412/9
**streets [2]** 279/15 279/24
**stressed [1]** 276/11
**stressing [2]** 275/11 276/15
**strictly [1]** 279/21
**stroll [1]** 417/13
**strong [1]** 286/9
**strongest [1]** 435/1
**stuff [10]** 303/10 319/8 378/24 384/24 389/14 423/22 428/22 428/23 441/14 475/11
**stupid [1]** 292/20
**subchapter [1]** 452/15
**subject [4]** 361/8 469/4 482/1 483/2
**submit [22]** 372/8 378/7 381/6 383/7 385/13 386/1 386/7 386/19 387/5 389/6 390/10 439/19 440/6 440/11 440/23 441/10 442/2 442/3 442/7 442/23 444/10 449/15
**submitting [1]** 284/8
**subscriber [1]** 382/8
**substance [18]** 357/7 357/9 357/13 357/15 362/9 369/6 452/2 452/3 452/4 452/9 452/11 452/18 453/20 455/7 455/8 455/16 460/3 460/13
**substantial [1]** 283/6
**substantially [2]** 286/15 286/18
**substantive [2]** 452/23 453/4
**substitute [4]** 284/17 361/13 420/25 462/20
**such [13]** 447/7 447/8 447/11 448/8 449/5 450/12 457/13 461/17 462/2 466/10 466/11 467/7 467/24
**sudden [2]** 440/18 442/16
**Sue [4]** 294/21 294/22 294/25 297/11
**Sue's [1]** 295/8
**sufficient [7]** 395/11 408/15 450/21 456/6 457/8 459/17 462/12
**Suffolk [1]** 461/21
**sugar [1]** 443/4
**suggest [13]** 376/6 376/12 376/21 378/14 380/15 382/6 383/10 385/20 391/22 421/9 422/15 468/8 470/9
**suggesting [1]** 418/18
**suit [2]** 415/1 485/9
**Suite [1]** 273/18
**Sullivan [1]** 363/1
**sum [3]** 352/16 352/23 466/25
**summation [14]** 352/20 353/6 375/21 390/22 392/15 393/13 393/19 395/12 395/16 434/7 434/17 434/21 438/8 475/24
**summations [5]** 353/5 375/8 375/12 390/16 434/4
**summing [3]** 397/2 397/2 449/2
**sums [3]** 310/21 375/19 470/11
**supplied [1]** 332/23
**support [5]** 306/24 307/2 388/1 437/7 461/18
**supported [2]** 427/8 465/3
**supporting [3]** 307/3 310/11 322/22
**supposed [5]** 274/11 378/5 378/12 384/1 431/15
**supposedly [1]** 439/20
**suppression [4]** 474/12 474/15 474/20 474/24
**Supreme [1]** 285/22
**sure [33]** 278/9 285/16 285/19 297/16 308/15 312/24 343/2 346/11 370/22 375/24 387/14 387/17 391/13 396/3 396/15 400/4 403/23 406/11 407/16 412/17 413/7 415/14 416/24 429/7 435/25 436/2 472/17 473/13 473/22 474/4 479/22 485/15 485/17
**surface [2]** 402/4 438/17
**surprising [1]** 426/4
**surveillance [6]** 362/20 414/19 415/22 416/20 417/3 441/6
**suspect [2]** 288/6 423/20
**suspected [1]** 325/21
**suspects [1]** 349/13
**suspicion [1]** 450/16
**suspicious [2]** 417/6 417/9
**sustain [3]** 294/13 372/10 373/1
**sustained [1]** 446/17
**SUV [1]** 377/19
**sweater [1]** 297/24
**switching [5]** 295/18 296/5 296/14 296/25 425/7
**sworn [6]** 290/19 342/6 405/17 446/24 472/5 472/9
**sympathy [2]** 446/6 450/17
**system [2]** 410/7 412/1

## T

**tab [1]** 369/17
**table [3]** 384/6 384/8 478/2
**tag [1]** 473/14
**take [41]** 276/25 277/1 277/4 277/5 278/18 285/12 297/12 297/21 301/13 301/16 301/17 301/20 336/24 341/19 347/15 350/12 350/18 350/20 352/11 370/21 379/6 383/11 390/15 394/5 402/4 403/16 410/21 412/2 412/3 421/5 427/14 432/1

**T**

**take... [9]** 440/18 443/10 449/24 472/17 474/3 476/11 476/17 477/6 480/5
**taken [6]** 345/21 345/22 347/12 347/25 348/21 386/12
**takes [5]** 277/2 388/24 414/5 431/24 432/4
**taking [7]** 277/6 282/19 301/18 336/25 373/4 419/6 436/10
**talk [25]** 294/16 295/13 295/15 315/17 319/13 328/13 328/15 343/2 344/10 344/12 378/18 386/24 390/6 409/18 409/19 409/22 414/11 419/25 424/17 425/13 427/4 430/22 442/4 442/6 443/23
**talked [26]** 285/6 289/9 302/25 303/25 304/6 304/8 309/9 309/15 311/23 319/25 322/3 322/16 323/7 326/13 328/1 328/16 329/13 329/14 329/21 333/4 340/25 415/4 424/8 433/7 438/11 471/10
**talking [35]** 281/5 281/8 282/4 296/3 301/8 312/6 315/3 315/6 319/8 328/2 335/10 348/14 351/17 351/19 351/20 366/17 376/25 377/3 383/15 387/9 393/15 399/22 410/8 412/9 423/11 424/20 425/23 428/25 430/19 441/5 441/6 444/4 444/5 478/1 484/19
**talks [1]** 425/7
**tape [5]** 351/15 351/16 370/13 393/25 477/11
**tape-recordings [1]** 477/11
**tapes [1]** 387/9
**Task [1]** 415/21
**tattoos [1]** 400/23
**TAYLOR [161]** 273/8 273/20 274/3 274/14 280/21 283/13 285/6 285/14 287/9 291/6 291/19 291/25 292/1 293/6 293/17 294/10 294/16 294/24 295/13 299/5 301/8 304/1 305/25 310/11 310/16 310/21 310/24 313/7 314/11 314/13 318/24 319/1 319/14 320/1 320/5 321/3 321/10 321/17 322/3 322/22 323/13 324/19 325/24 326/23 326/25 327/19 327/23 329/1 329/11 330/4 332/3 332/8 332/16 332/18 336/9 336/17 337/14 337/16 338/2 341/4 341/5 353/22 354/3 355/1 358/4 360/11 361/8 362/4 362/12 362/15 362/22 363/1 363/8 363/11 363/14 368/20 369/9 372/18 373/6 373/22 375/5 376/4 376/10 377/2 377/6 377/25 379/7 379/15 379/17 379/18 379/24 380/22 380/24 381/15 381/21 381/23 382/15 383/12 383/25 384/5 384/11 384/14 387/3 387/8 387/12 387/19 388/4 388/9 389/7 389/20 389/25 391/6 391/15 391/25 392/21 392/24 393/2 393/22 395/11 403/2 408/24 409/4 409/7 409/11 410/20 410/23 411/20 412/23 413/8 418/15 418/17 419/1 419/4 419/9 420/16 421/3 421/13 421/17 421/25 422/6 422/15 422/25 423/4 423/5 423/7 423/16 423/18 424/11 424/13 426/6 430/20 430/21 441/16 441/18 444/11 451/24 462/16 472/24 476/18 477/18 478/1
**Taylor's [26]** 276/24 292/11 320/21 337/25 363/5 369/6 373/5 373/7 373/9 376/13 380/20 382/16 382/23 383/5 385/4 408/7 410/1 410/21 411/6 413/6 421/6 421/12 425/12 475/18 483/24 484/1
**teacher [1]** 419/13
**techniques [5]** 402/10 411/11 417/3 464/5 464/6
**telephone [6]** 353/16 354/8 354/8 357/22 358/3 382/12
**television [1]** 412/7
**tell [53]** 278/16 282/14 294/18 295/7 306/18 307/15 307/18 308/24 309/2 317/22 334/5 336/21 338/23 339/3 341/8 341/12 347/16 353/2 377/17 379/10 383/3 384/22 386/16 388/20 393/8 399/1 399/16 399/24 400/13 402/9 404/19 405/17 406/11 409/20 410/17 411/5 412/18 412/19 412/25 420/17 420/22 423/15 423/16 424/23 441/18 466/23 474/22 475/4 482/5 483/8 484/8 485/3 485/18
**telling [30]** 292/18 315/22 315/24 316/3 316/6 316/9 316/15 316/17 316/20 317/3 317/9 317/19 318/2 318/11 318/14 318/16 318/18 318/20 338/12 365/6 372/14 383/8 385/9 385/14 424/16 425/22 442/10 466/16 468/20 476/14
**tells [16]** 379/19 380/23 382/3 384/14 384/14 385/11 385/12 387/8 388/1 389/19 405/1 405/7 405/13 406/20 418/21 442/14
**ten [7]** 312/10 316/10 334/17 350/21 401/20 427/15 444/18
**ten-minute [1]** 427/15
**ten-year [2]** 312/10 316/10
**tends [1]** 464/18
**Tennessee [45]** 275/10 275/11 279/12 279/14 279/15 280/17 280/20 282/12 305/23 312/23 313/14 314/6 360/2 360/3 360/6 360/6 360/21 362/4 362/19 364/13 365/3 365/9 365/10 365/12 369/12 373/10 373/10 380/6 380/18 380/25 383/14 387/20 389/15 391/17 400/3 405/11 405/11 408/8 409/7 421/14 426/1 426/3 430/6 444/19 445/1
**term [2]** 287/7 332/14
**terms [8]** 285/17 299/17 315/21 317/4 317/6 390/7 417/3 442/9
**Terra [1]** 345/6
**terrible [2]** 440/10 440/10
**test [8]** 285/22 417/23 417/23 417/24 422/24 426/20 426/20 427/7
**tested [1]** 290/2
**testified [28]** 290/20 292/14 293/13 293/17 294/24 296/21 300/25 306/9 306/24 308/4 310/21 312/13 319/7 319/10 320/5 321/17 327/22 338/17 338/23 342/6 373/12 377/1 383/6 386/21 388/16 405/14 464/17 464/23
**testifies [1]** 442/12
**testify [12]** 302/14 312/19 335/12 335/15 359/12 376/24 421/8 449/20 449/25 450/1 450/2 467/7
**testifying [9]** 292/12 337/6 360/10 363/10 444/23 466/18 466/20 467/12 479/23
**testimony [72]** 285/12 287/8 287/10 287/16 288/1 289/5 290/25 292/14 302/7 311/3 314/11 314/13 318/23 352/2 360/9 360/9 360/23 361/3 361/7 363/9 368/10 373/14 373/14 375/13 375/14 381/9 382/12 385/12 386/19 387/24 388/11 418/10 420/6 440/23 441/15 442/6 442/7 444/14 446/11 446/24 447/11 447/13 447/14 447/15 448/8 462/15 464/15 464/16 465/3 465/5 465/6 465/7 465/15 465/16 465/18 465/19 465/22 466/2 466/4 466/6 466/8 466/12 466/14 466/16 466/24 467/2 467/9 467/10 467/11 467/15 468/5 468/7
**testing [2]** 406/8 411/18
**than [33]** 276/7 276/12 276/13 284/6 286/14 286/20 287/14 302/13 321/22 346/8 350/16 350/18 350/21 377/9 387/5 390/10 392/18 412/5 412/5 412/22 429/11 429/14 445/14 446/4 448/25 457/19 462/1 462/5 465/23 466/14 467/10 469/3 469/5
**Thank [19]** 281/14 301/24 339/24 341/22 341/23 349/21 361/25 394/6 394/7 408/22 427/10 427/11 436/22 438/23 438/25 471/8 472/2 483/19 484/21
**thankful [1]** 410/11
**Thanks [3]** 297/12 305/14 333/17
**that [1290]**
**that's [140]** 275/21 276/6 276/23 277/1 277/12 279/10 279/13 281/12 281/13 281/15 281/16 282/7 282/24 284/3 284/25 289/1 289/4 295/22 297/13 299/10 300/8 305/5 310/12 318/15 329/3 330/17 330/20 331/12 332/9 332/19 333/3 333/7 333/11 333/17 339/11 339/16 351/14 352/19 354/6 363/19 368/16 370/12 370/20 372/9 372/22 375/8 376/10 376/19 377/9 377/17 378/19 378/24 378/25 382/20 382/21 384/21 385/3 385/4 385/17 387/15 389/19 390/2 393/14 394/4 396/25 397/7 397/7 397/9 397/13 397/25 398/9 399/22 400/3 401/10 401/19 403/5 408/2 408/14 410/6 412/11 412/21 414/2 414/14 414/25 415/1 415/6

**T**

**that's... [54]** 417/10 418/3 418/9 418/20 419/20 423/12 425/4 425/5 425/5 425/10 425/15 425/17 425/20 425/22 426/8 428/6 429/4 429/6 429/22 430/1 430/6 430/15 431/14 431/17 434/18 437/16 440/5 440/6 440/21 440/21 441/2 441/2 441/10 441/13 442/9 442/17 442/23 443/17 443/21 444/10 444/24 445/1 474/14 475/24 476/11 477/20 478/5 478/7 478/9 479/9 482/4 482/16 484/14 485/21
**theater [1]** 471/18
**their [50]** 274/25 281/9 283/12 287/5 299/20 304/11 322/20 324/15 332/13 332/14 338/12 356/20 375/7 380/21 382/10 383/22 383/23 384/2 385/25 390/13 390/22 390/25 393/13 400/6 400/8 404/18 407/3 409/16 411/8 414/19 415/22 417/9 418/3 421/21 421/22 426/19 426/20 426/20 426/20 426/24 438/19 439/8 439/8 439/11 442/25 457/16 464/14 465/7 481/12 481/23
**them [88]** 278/2 279/20 289/21 292/20 301/20 302/16 306/14 308/18 308/25 309/2 313/11 313/17 322/22 322/23 322/25 325/5 326/13 327/16 330/4 330/7 330/8 330/19 330/21 332/16 332/22 333/5 341/8 341/9 341/12 348/13 351/7 353/13 353/24 366/16 367/19 368/19 372/5 384/1 387/2 388/6 392/10 393/8 399/7 400/5 401/4 402/25 403/13 403/14 404/15 404/16 406/12 406/13 407/4 407/14 407/21 407/22 409/21 414/13 416/11 419/7 429/14 431/6 431/7 433/7 433/16 433/19 442/19 444/18 454/15 458/15 461/11 471/14 472/6 474/3 476/6 476/12 476/14 477/16 480/7 482/4 482/5 482/5 483/18 484/7 484/8 485/3 485/18 486/1
**themselves [4]** 375/12 382/17 450/6 454/12
**then [74]** 277/17 277/18 277/24 277/25 278/24 284/13 286/13 288/24 289/18 291/9 292/20 297/2 298/18 308/21 310/1 310/2 314/6 318/11 321/1 338/6 340/10 349/17 350/13 352/16 354/5 359/24 362/14 362/25 363/6 365/21 368/3 368/13 368/17 375/20 381/14 388/17 390/6 390/17 391/23 392/12 406/23 407/2 407/6 411/22 413/3 413/11 416/5 416/21 416/21 416/22 416/22 416/23 417/8 417/15 418/12 423/7 427/15 429/23 433/10 439/9 439/10 453/16 455/21 461/1 462/7 463/5 467/16 469/22 475/2 476/2 480/6 484/2 485/16 485/18
**theoretically [2]** 317/22 329/6
**theory [4]** 283/2 283/25 396/9 396/20
**there [157]** 274/17 274/20 275/1 275/12 279/16 279/20 279/21 279/21 279/24 280/22 283/7 283/7 284/4 286/25 288/11 294/11 294/16 294/19 295/8 295/11 295/11 296/13 299/14 299/14 301/4 301/17 302/21 304/17 304/24 308/19 316/14 316/23 321/3 328/9 328/11 328/19 332/7 332/12 332/13 336/24 337/22 338/17 342/15 342/17 342/20 344/6 344/8 345/4 346/23 346/25 347/3 349/1 352/3 352/4 352/8 352/9 364/23 366/2 366/11 366/25 373/14 375/15 376/21 377/7 377/7 379/2 381/19 382/13 382/14 384/8 384/17 386/11 386/17 388/3 389/16 389/21 391/19 391/24 392/24 393/16 393/25 394/2 395/9 395/10 395/24 397/11 397/12 397/13 399/10 399/10 402/3 402/9 403/10 403/15 404/2 405/5 406/8 406/24 408/3 409/13 410/8 410/9 410/13 410/15 412/22 413/9 416/10 418/24 420/3 421/19 424/25 425/14 426/7 426/9 428/12 430/1 430/5 430/7 430/7 431/10 432/5 432/11 432/21 433/19 433/25 436/12 437/14 438/15 440/12 441/9 441/11 441/11 442/11 442/21 442/21 443/5 443/20 444/12 448/6 448/19 448/23 460/7 467/3 467/6 471/1 472/19 473/9 473/16 474/1 474/5 477/19 479/24 479/25 481/11 484/18 484/20 485/3
**there's [87]** 275/3 285/22 286/23 288/1 299/13 299/14 299/17 300/12 328/5 328/6 328/7 329/9 330/15 332/6 332/6 332/7 332/10 332/25 333/4 341/19 344/15 350/19 352/2 352/17 372/11 372/19 372/23 377/13 379/6 380/4 380/7 380/9 380/10 384/12 384/25 385/2 385/5 385/14 386/3 386/5 386/23 387/18 388/8 390/4 391/3 392/4 392/6 392/14 392/21 393/20 395/23 396/16 396/16 399/5 402/1 403/25 405/8 406/6 411/9 411/14 411/18 414/11 416/17 418/1 418/18 424/22 425/17 425/24 426/3 426/4 427/3 441/10 443/4 443/24 444/8 444/11 444/24 460/8 474/4 475/20 476/5 476/8 478/1 478/4 479/9 485/17 485/25
**thereafter [2]** 392/12 459/1
**thereby [2]** 449/9 459/8
**therefore [6]** 399/17 450/11 453/3 453/23 454/15 457/13
**these [57]** 286/10 304/16 315/3 320/21 332/8 332/18 348/11 352/12 361/20 379/10 379/25 380/12 380/23 385/9 387/15 387/24 390/10 395/4 402/23 402/24 403/8 403/8 404/10 405/7 405/8 406/9 416/10 417/2 421/10 421/21 424/19 425/7 425/18 426/5 439/2 439/16 439/20 439/25 441/5 441/6 445/9 448/18 454/3 454/5 454/14 454/16 461/6 461/9 462/18 463/18 463/20 463/21 464/24 468/17 470/13 477/9 477/12
**they [218]**
**they'll [4]** 324/13 324/15 346/15 358/13
**they're [28]** 277/4 280/4 289/21 376/20 377/21 377/22 377/24 381/10 383/8 390/9 400/4 402/13 405/2 406/14 416/25 422/13 422/13 424/20 438/14 439/7 443/4 443/6 444/2 478/12 478/24 479/4 484/8 485/17
**they've [2]** 475/12 481/23
**thin [1]** 392/6
**thing [37]** 275/13 277/7 279/11 298/17 299/4 332/16 340/24 368/20 376/18 381/7 386/1 395/24 406/1 407/2 408/3 414/10 416/5 418/5 418/20 420/16 420/17 425/13 425/15 428/18 428/19 430/18 432/16 434/16 435/1 440/13 442/2 442/24 444/17 455/20 455/24 478/20 482/25
**things [55]** 289/7 290/24 293/9 293/11 295/4 319/10 327/6 332/7 336/2 338/19 340/2 340/5 347/23 373/11 376/19 377/8 383/1 383/13 386/15 386/17 386/18 388/3 388/19 400/5 401/6 401/13 401/15 401/22 402/2 402/23 402/24 403/6 403/9 404/15 405/8 406/16 406/18 421/3 425/2 425/3 430/14 431/16 432/21 433/7 433/16 434/19 434/21 438/12 439/5 439/13 439/14 440/18 441/6 442/8 447/17
**think [157]** 274/20 275/2 275/8 275/8 275/9 276/2 276/10 277/2 277/7 277/19 277/25 278/1 278/3 278/16 278/20 279/7 279/13 279/20 280/2 280/5 281/1 281/2 282/4 283/8 283/20 283/21 283/23 285/17 286/16 288/13 289/8 289/9 304/3 311/8 313/21 317/23 324/5 324/22 324/25 325/1 332/6 332/7 332/15 332/20 332/21 332/24 333/3 333/10 333/11 339/2 351/11 352/5 370/21 372/23 378/2 383/23 386/8 386/22 390/6 391/14 391/15 391/17 391/20 392/8 392/14 392/15 392/19 393/3 393/18 395/4 395/6 395/7 395/11 396/4 396/7 396/13 396/25 397/3 397/6 397/8 397/9 397/11 397/11 397/12 401/17 402/2 407/22 413/6 413/6 413/14 413/14 414/12 418/1 418/2 420/19 420/20 422/15 422/24 422/25 423/14 425/9 426/1 428/11 428/15 428/19 428/20 428/24 429/9 429/15 429/17 429/24 430/12 430/13 430/15 430/18 430/25 431/1 431/17 432/3

T

**think... [38]** 432/13 432/22 432/25 433/4 433/13 433/23 434/4 434/13 434/16 434/22 434/24 435/12 435/13 435/14 436/8 436/11 438/8 438/9 438/11 439/5 440/22 440/22 440/25 441/1 441/2 442/3 442/3 442/24 443/23 474/13 474/21 475/3 476/17 478/5 478/16 478/18 485/2 485/4
**thinking [1]** 441/15
**thinks [3]** 278/1 278/1 426/8
**third [7]** 275/1 315/9 315/10 376/15 453/13 453/17 457/25
**this [336]**
**those [54]** 281/17 282/15 287/4 293/20 296/16 299/23 302/10 302/18 302/23 304/15 305/3 311/24 314/9 328/6 328/15 336/21 345/15 345/19 346/3 346/4 352/6 368/18 376/8 378/10 382/13 383/5 386/18 387/6 401/13 403/10 403/13 403/14 404/14 406/7 412/24 414/12 414/12 421/4 421/5 421/9 426/6 427/6 433/18 444/23 456/18 457/5 457/21 457/23 461/10 468/7 470/2 471/6 476/16 476/22
**though [6]** 287/4 361/4 405/16 421/10 441/21 479/18
**thought [14]** 276/7 276/11 276/12 287/10 287/14 299/21 308/1 327/11 337/2 351/10 393/4 395/22 396/20 427/4
**thoughts [5]** 372/15 414/10 414/12 414/12 427/6
**thousand [2]** 422/5 422/6
**thousands [4]** 310/24 383/16 383/16 424/19
**three [14]** 274/20 283/11 291/20 296/15 304/4 309/21 320/6 342/18 343/16 376/7 405/14 409/19 424/9 453/7
**thrilling [1]** 416/18
**through [38]** 311/3 334/3 345/14 346/11 346/16 347/24 348/3 350/16 353/13 356/10 356/12 356/17 356/19 356/23 357/2 357/4 369/2 372/14 373/17 376/25 379/24 387/1 388/7 393/9 404/23 405/3 417/8 448/16 455/24 472/16 472/18 474/3 475/13 476/18 478/21 479/7 483/15 483/16
**throughout [2]** 449/14 449/17
**throw [3]** 385/21 385/25 404/16
**ticket [14]** 373/9 379/23 379/24 380/17 380/25 385/6 385/8 390/24 391/4 391/18 422/10 424/14 424/15 442/9
**tie [2]** 302/21 304/17
**ties [1]** 372/16
**time [92]** 274/11 277/13 279/19 286/22 286/22 292/6 292/24 293/4 293/13 294/7 295/14 296/3 296/24 301/16 302/10 302/25 304/24 306/19 307/10 307/11 307/12 308/25 309/18 312/3 312/22 313/7 313/11 314/25 320/24 326/5 326/9 334/6 334/20 334/21 334/22 335/3 340/21 341/9 344/25 347/21 354/15 355/8 356/1 356/20 358/5 358/18 358/22 359/18 360/8 362/16 364/1 364/12 364/23 366/11 373/8 373/16 376/14 380/22 383/12 389/2 390/15 391/10 392/12 400/24 400/24 401/1 404/13 410/2 410/10 410/12 412/6 414/11 416/9 416/10 416/11 427/4 428/7 429/10 432/25 435/2 440/17 441/19 441/22 442/17 455/21 455/23 467/11 472/1 474/14 483/2 484/6 484/14
**times [15]** 291/18 291/20 294/25 295/1 304/15 313/19 314/20 320/18 328/3 357/23 389/8 405/15 416/2 450/18 458/15
**tip [5]** 415/5 415/5 415/18 415/19 415/23
**tired [2]** 400/25 416/4
**title [11]** 329/7 329/14 329/14 329/15 329/16 337/23 362/9 362/10 452/4 452/13 453/21
**today [8]** 285/18 313/19 313/21 412/5 412/12 471/15 481/8 482/14
**together [21]** 276/13 319/5 320/24 321/20 327/4 327/19 336/17 367/8 367/14 367/15 379/9 404/4 442/5 451/6 451/25 457/23 472/6 472/15 475/12 477/6 478/19
**token [1]** 446/5
**told [51]** 276/24 276/25 296/21 300/20 302/18 305/25 306/14 308/18 323/16 323/19 325/21 326/19 330/8 336/2 337/4 337/6 340/15 367/18 368/1 375/18 377/21 383/2 386/16 386/17 386/17 386/23 387/7 387/11 388/2 388/15 404/10 406/21 408/5 413/24 414/17 414/21 415/3 416/11 417/23 418/23 419/1 420/2 421/2 422/3 423/24 425/3 431/6 442/1 442/21 444/5 456/17
**tomorrow [4]** 481/9 482/15 484/17 484/20
**tone [1]** 444/4
**too [6]** 349/8 383/11 397/16 428/22 433/1 443/1
**took [10]** 286/21 347/23 352/4 368/16 410/10 410/12 418/6 422/2 425/21 467/5
**top [4]** 346/19 346/22 353/20 476/18
**total [2]** 357/8 357/10
**totaled [1]** 319/23
**totally [1]** 442/15
**touch [7]** 383/4 387/3 387/4 388/19 403/13 431/11 470/16
**touching [1]** 469/4
**toward [1]** 396/12
**towards [7]** 291/1 302/7 362/22 386/22 396/10 396/10 419/2
**towel [1]** 348/19
**town [4]** 388/5 408/1 426/1 426/2
**traces [1]** 402/17
**track [2]** 297/5 424/6
**traded [1]** 319/20
**Traditionally [1]** 470/6
**traffic [2]** 385/6 442/9
**trail [1]** 328/7
**trailer [17]** 292/11 292/22 319/14 328/17 328/19 328/20 329/1 329/12 329/13 337/3 337/4 337/11 384/7 424/22 425/2 425/3 425/4
**trailers [1]** 383/21
**transaction [1]** 465/8
**transactions [2]** 286/11 287/9
**transcribed [1]** 360/8
**transcript [11]** 273/25 275/20 277/20 281/23 289/20 299/13 299/19 416/6 420/1 478/6 478/7
**Transcription [1]** 273/25
**transcripts [8]** 277/16 277/20 299/10 299/23 360/8 474/1 474/6 474/7
**transfer [4]** 380/7 387/19 387/23 456/2
**transfers [4]** 380/5 380/13 393/19 393/21
**transmitted [4]** 354/16 355/9 356/2 356/20
**treatment [1]** 466/18
**trial [25]** 273/10 284/15 286/6 286/11 331/3 336/7 361/10 363/9 363/10 375/7 375/17 386/25 402/11 409/1 410/20 449/14 449/18 450/25 451/5 462/18 463/18 463/20 463/21 464/3 467/3
**tried [1]** 321/20
**tries [1]** 426/9
**trip [1]** 380/16
**trips [1]** 320/13
**trouble [5]** 306/3 306/22 307/20 327/9 334/19
**troubling [1]** 415/13
**truck [1]** 312/25
**true [36]** 306/5 306/6 329/11 330/17 330/20 332/5 354/7 354/25 355/18 356/10 357/21 358/16 359/25 360/4 363/3 372/17 372/18 385/1 387/8 398/25 399/1 399/11 402/11 407/24 411/9 414/25 415/1 428/6 428/7 428/14 431/3 434/22 447/8 447/9 447/13 462/5
**truly [3]** 417/5 421/8 470/12
**truth [35]** 315/17 315/22 315/25 316/3 316/7 316/10 316/15 316/17 316/21 317/3 317/9 317/19 317/23 318/2 318/11 318/14 318/16 318/18 318/20 338/13 383/8 385/9 386/16 386/20 405/16 405/17 406/21 408/5 424/16 425/22 440/6 440/7 448/7 466/16 466/23
**truthful [4]** 328/6 440/12 442/7 442/10
**truthfully [1]** 466/20
**try [10]** 275/11 275/24 304/20 351/9 387/1 402/17 404/16 421/11 432/3 470/13
**trying [19]** 280/18 323/17 377/20 378/24 386/15 386/15 397/1 407/21 414/2 416/24 419/6 424/4 424/5 426/12 432/2 432/3 439/21 440/11 475/1
**tuna [2]** 443/7 443/15

Case 1:09-cr-00003-CBA Document 78 Filed 08/14/09 Page 251 of 255 PageID #: 1643

## T

turn [5] 318/23 391/20 416/23 421/1 440/19
turned [3] 288/24 338/6 431/10
turns [7] 384/21 385/15 385/19 387/7 416/22 416/22 419/5
TV [1] 413/15
twelve [3] 484/18 485/3 485/19
Twenty [1] 352/21
two [48] 276/5 279/12 279/18 279/20 283/7 283/7 286/1 291/20 293/20 296/17 296/18 297/22 298/8 298/10 300/8 301/12 301/13 301/21 304/10 305/3 320/6 321/24 322/3 328/13 345/6 366/11 378/7 380/13 386/10 386/18 405/8 406/3 406/4 424/2 425/2 448/6 453/9 453/24 454/20 455/18 456/21 457/2 460/19 465/7 469/22 472/18 476/8 483/17
Two's [1] 299/2
type [6] 334/15 409/6 420/22 459/25 460/15 473/5
typed [1] 473/4
types [1] 448/6

## U

U-joints [1] 399/13
U-turn [1] 416/23
U.S [1] 479/13
Uh [6] 310/20 312/12 313/2 328/18 369/3 432/9
Uh-huh [5] 310/20 312/12 328/18 369/3 432/9
ultimate [1] 287/13
ultimately [3] 335/19 336/9 441/13
umbrella [1] 448/17
unanimous [4] 454/10 469/11 469/24 470/3
unbelievable [1] 439/19
uncommon [1] 465/10
uncover [1] 464/5
under [24] 285/21 286/10 290/17 315/21 332/19 336/6 348/19 373/2 373/3 377/14 385/18 392/9 392/14 394/5 405/17 414/18 416/19 440/14 449/19 456/18 464/17 467/25 481/18 481/20
undermine [1] 433/9
understand [19] 275/10 275/20 276/1 276/5 280/10 280/19 282/13 282/22 323/10 323/10 353/3 383/12 392/11 436/8 454/16 460/6 481/18 482/1 485/18
understanding [15] 288/15 288/19 295/19 295/24 334/15 334/19 334/24 335/14 335/19 335/24 338/11 340/7 340/10 389/5 457/9
understood [3] 385/16 419/14 419/16
undisputed [4] 418/13 418/14 418/15 418/17
unexpected [1] 413/17
unfair [6] 277/2 286/16 286/19 286/24 411/7 434/16
unfounded [1] 400/7
unhappy [2] 324/19 407/10
unimportant [1] 465/13
Union [7] 354/25 355/4 355/5 355/7 380/5 387/25 390/2
UNITED [23] 273/1 273/2 273/4 273/11 273/14 274/2 274/6 285/21 343/6 353/20 353/21 353/25 354/1 360/1 360/5 362/9 362/10 446/3 452/5 453/21 470/14 479/15 481/19
unknowingly [1] 459/11
unlawful [22] 452/7 452/25 453/11 453/16 453/18 453/24 454/3 454/5 454/8 454/11 454/14 454/16 456/19 457/3 457/5 457/7 457/9 457/11 457/16 457/24 458/5 458/10
unlawfully [1] 362/6
unless [5] 397/5 397/14 399/7 399/14 480/6
Unlikely [1] 405/25
unpleasant [1] 450/17
unrelated [4] 398/7 398/13 437/5 461/17
unreliable [1] 416/2
until [16] 315/13 332/13 338/7 338/9 373/7 382/19 406/23 419/4 419/16 434/3 469/10 481/23 482/23 483/6 484/18 484/19
untruthful [1] 288/17
unzip [1] 403/16
up [94] 275/13 277/9 278/25 279/6 281/24 290/3 292/8 292/8 294/1 295/17 301/18 308/21 320/1 334/3 335/23 342/20 342/25 343/23 343/24 344/13 348/10 352/16 352/23 353/6 362/20 368/10 375/19 377/16 377/18 377/22 378/8 379/9 380/14 380/17 381/2 381/10 381/15 381/19 382/15 382/16 383/17 383/18 384/9 384/10 384/19 384/24 384/24 386/3 386/10 387/23 388/6 388/8 389/17 389/22 389/24 390/2 393/13 397/2 397/2 397/15 399/20 403/23 407/9 410/4 413/19 414/19 416/20 416/21 417/5 417/13 417/13 417/18 418/7 418/21 418/24 425/1 427/1 429/19 431/12 434/6 436/5 436/11 439/13 439/16 440/8 441/17 442/11 443/20 444/3 444/6 449/2 466/17 470/11 480/7
upon [13] 369/5 378/25 445/13 446/22 449/21 450/6 450/13 450/15 450/18 464/8 467/24 468/1 470/1
upshot [1] 275/9
urge [2] 388/7 445/3
us [22] 275/24 280/17 280/18 328/5 336/2 397/24 401/13 404/5 410/7 410/18 411/2 411/24 414/16 414/17 419/10 422/21 424/23 424/23 441/18 442/1 442/10 480/1
use [11] 280/6 283/15 291/8 319/21 324/1 324/12 373/15 382/23 391/1 402/10 463/11
used [28] 288/7 304/10 309/15 310/21 321/15 325/22 326/20 330/18 367/8 377/18 381/10 381/10 383/22 387/4 391/4 403/8 403/9 403/22 419/14 422/3 443/11 443/12 443/13 445/19 455/18 464/5 466/8 476/5
user [2] 323/22 324/11
uses [1] 417/2
using [16] 280/9 287/25 288/1 288/3 288/8 288/9 289/22 293/5 293/5 310/3 310/5 382/1 384/2 384/3 467/4 467/11
usual [1] 381/7
usually [4] 292/6 293/7 293/12 342/25

## V

vague [2] 400/15 400/16
valid [1] 414/12
value [1] 286/15
vehicle [3] 291/12 291/14 311/21
venture [1] 459/20
venue [12] 396/1 396/7 396/11 397/1 397/2 397/11 436/24 436/24 437/7 461/19 461/23 462/7
verdict [46] 390/11 409/8 427/8 445/13 446/8 451/6 451/9 451/11 451/15 460/6 460/7 460/8 460/20 460/21 461/10 463/22 465/2 468/2 469/11 469/17 469/19 469/24 469/25 470/1 470/3 470/4 470/5 472/7 480/2 481/9 481/11 481/22 481/25 482/18 482/21 482/22 482/24 483/1 483/2 483/4 483/6 483/17 483/23 483/24 484/6 484/13
verdicts [1] 481/24
version [2] 473/4 479/25
versus [1] 314/13
very [20] 283/7 293/7 317/16 317/16 321/20 339/4 348/11 384/24 390/6 400/10 404/25 414/21 415/14 420/23 430/4 441/22 457/18 458/24 469/17 475/6
viable [1] 438/15
Vic [13] 292/15 292/18 295/11 304/8 319/16 319/18 319/20 329/14 386/13 387/21 387/21 387/22 389/8
video [14] 417/18 417/19 417/21 417/21 417/22 472/23 472/24 474/11 474/15 474/19 477/11 477/13 477/14 477/16
video's [1] 418/1
view [3] 338/12 444/6 445/13
views [2] 352/5 469/13
violate [3] 453/1 453/7 466/9
violated [2] 452/13 452/17
violation [4] 362/9 445/12 452/4 453/21
violence [1] 288/12
visible [1] 378/12
voice [2] 300/5 444/4
voluntarily [3] 418/15 454/24 459/12
voodoo [1] 436/9
vote [5] 411/23 413/3 413/12 417/16 451/3
vouches [1] 406/20

## W

wait [5] 481/23 482/22 483/6 483/6 483/10

**W**

**Waiting [1]** 341/24
**waits [1]** 389/19
**waived [1]** 433/24
**waiving [1]** 435/20
**walk [1]** 417/13
**walked [1]** 377/18
**walking [2]** 368/10 377/22
**wallet [7]** 365/19 379/11 379/12 379/19 385/4 419/1 442/15
**want [95]** 275/15 276/4 276/16 276/18 276/20 278/20 279/6 279/14 279/19 280/12 280/23 280/24 281/3 281/6 285/9 285/10 287/4 287/15 287/20 289/16 289/18 289/20 290/5 290/6 290/24 296/9 297/2 306/3 306/22 307/20 307/22 309/4 319/7 322/14 327/9 331/10 334/21 349/8 349/8 350/11 350/12 352/24 353/5 361/9 370/22 372/1 372/5 372/9 374/2 382/18 382/21 396/21 398/3 409/6 417/25 420/19 420/20 420/20 421/7 423/25 424/17 427/2 428/9 428/17 429/13 429/21 429/22 430/11 432/24 433/2 434/7 434/8 435/8 435/10 435/17 435/18 436/3 436/5 436/7 436/21 441/25 471/20 471/22 473/8 475/10 475/12 475/23 476/19 477/24 478/7 480/3 481/14 482/5 483/5 483/8
**wanted [33]** 275/16 278/23 280/5 282/24 285/5 299/4 301/13 322/11 323/19 324/22 325/24 326/1 327/16 336/23 336/23 336/25 340/5 351/25 352/6 365/5 365/11 411/15 411/16 411/17 411/19 412/2 412/3 415/14 423/24 431/7 432/17 436/16 481/11
**wants [14]** 274/23 275/15 276/5 276/7 278/22 279/9 281/23 283/8 397/14 417/11 417/11 419/8 434/10 438/10
**warn [1]** 429/5
**warned [2]** 429/10 429/12
**Warren [1]** 273/23
**was [464]**
**washer [1]** 439/8
**wasn't [24]** 275/14 277/10 278/25 302/10 303/12 306/5 306/6 309/23 314/22 314/25 315/9 315/10 326/17 337/2 339/4 341/5 341/7 341/9 341/13 385/9 401/5 433/24 436/5 474/23
**watch [2]** 418/1 477/16
**watching [2]** 413/15 413/16
**Watts [4]** 273/8 382/10 476/10 476/11
**Watts' [1]** 382/9
**way [42]** 278/23 283/4 289/15 328/5 333/5 348/17 381/2 381/15 383/5 383/7 384/9 384/19 386/6 386/20 386/22 387/11 387/15 387/24 388/3 390/22 392/16 397/9 401/4 407/18 407/19 407/23 410/24 421/21 429/8 429/22 430/4 430/15 435/14 439/23 459/7 459/19 466/17 468/3 473/9 481/13 481/16 481/17
**ways [2]** 386/25 439/22
**we [175]** 274/17 274/21 275/2 275/8 275/16 275/22 276/7 276/12 276/20 277/7 277/19 277/25 277/25 280/6 281/19 282/1 283/4 283/15 288/9 288/10 288/11 289/1 289/9 289/13 289/14 289/14 289/20 289/21 289/23 289/23 289/25 290/3 291/13 291/14 297/21 299/14 299/15 309/9 310/19 311/23 312/1 314/14 322/3 324/22 326/13 329/4 330/11 331/11 333/8 334/11 340/25 342/25 344/9 344/24 345/1 345/9 346/5 348/9 348/25 349/4 349/5 350/10 350/14 350/15 351/3 351/25 352/4 353/4 353/12 365/4 365/7 366/4 368/6 368/10 370/6 370/21 375/6 375/16 376/25 376/25 387/18 389/14 392/20 401/16 402/4 402/5 406/5 408/17 408/18 408/19 409/8 409/18 409/19 410/8 410/9 410/10 410/15 410/16 410/16 410/17 410/17 410/19 412/6 412/6 412/7 412/8 412/8 413/23 414/22 414/25 415/1 415/2 416/1 416/3 416/3 416/4 416/7 416/8 416/8 417/19 417/19 419/20 421/10 421/23 422/20 423/15 423/16 423/18 423/19 423/19 423/20 424/24 425/5 425/6 425/10 426/13 427/14 428/12 429/1 430/25 433/3 433/20 435/13 435/15 438/7 440/15 471/9 472/21 473/3 473/15 473/16 473/17 474/11 474/12 476/17 478/5 478/6 478/10 478/18 478/19 479/5 479/18 479/23 480/6 481/7 481/9 482/14 482/14 482/16 482/18 484/3 484/5 484/23 484/24 485/4
**we'd [1]** 432/22
**we'll [22]** 281/5 299/9 299/16 331/10 350/11 350/17 352/23 372/8 375/18 390/15 390/15 392/20 408/18 433/14 435/23 472/5 473/4 477/6 480/6 483/10 484/20 485/25
**we're [29]** 277/11 277/22 282/6 282/7 283/16 289/22 290/12 299/23 319/8 333/8 342/25 350/16 351/8 401/10 409/25 413/15 413/15 419/19 423/2 423/3 423/4 425/23 426/23 436/10 474/9 475/1 475/17 478/16 483/15
**we've [15]** 274/19 274/22 285/18 288/25 289/9 309/15 323/7 323/8 390/12 399/20 414/8 420/9 426/12 476/10 481/7
**wearing [1]** 448/16
**wears [1]** 410/23
**weather [1]** 448/14
**Wednesday [1]** 486/2
**week [3]** 338/8 383/14 423/10
**weigh [2]** 464/13 467/22
**weighing [4]** 384/6 450/8 465/11 465/24
**weight [16]** 357/8 357/10 357/15 357/15 395/8 400/22 444/12 445/25 447/15 447/21 448/23 464/14 465/23 466/3 467/1 467/17
**weights [1]** 292/4
**well [69]** 278/22 280/6 282/18 282/23 284/10 286/9 287/12 289/15 299/16 305/5 312/1 316/25 332/20 339/2 346/2 352/4 352/13 375/5 379/10 379/22 381/4 381/5 383/2 384/14 384/16 385/16 387/9 387/14 387/22 388/11 392/8 392/19 395/21 396/15 401/4 403/3 403/20 404/25 406/7 406/18 407/4 407/6 414/22 416/1 416/7 428/24 439/6 439/7 439/15 439/18 439/22 439/25 440/2 440/3 440/17 441/16 441/16 441/20 441/21 442/24 444/3 444/15 444/17 450/5 456/19 463/5 470/12 475/6 485/1
**went [45]** 275/10 285/4 288/23 291/19 292/11 292/22 297/17 308/7 308/21 314/14 314/15 320/5 320/14 321/1 321/3 321/6 321/10 321/13 321/15 327/6 330/4 344/3 344/6 344/9 346/20 347/16 362/17 366/15 368/7 376/25 381/23 391/18 395/10 400/25 410/15 416/4 418/24 419/1 422/4 423/4 423/8 426/6 426/7 444/20 472/21
**were [161]** 274/20 275/11 282/15 291/2 291/4 291/8 291/8 291/23 291/24 292/2 292/4 292/4 293/4 293/5 293/5 293/5 293/9 293/20 296/2 296/7 296/14 296/16 296/18 296/18 296/20 302/7 302/13 302/13 302/14 304/11 304/15 304/16 304/19 305/1 305/22 307/2 307/3 307/7 307/11 308/19 309/6 309/17 309/19 309/25 310/3 311/1 311/24 312/3 312/5 312/9 312/9 320/20 320/21 320/24 321/25 322/18 326/5 326/8 326/11 326/23 327/2 327/12 327/19 328/9 328/11 328/21 332/13 332/18 334/19 335/5 335/8 335/11 335/17 335/20 336/16 336/21 336/23 338/12 338/17 340/6 340/7 340/21 343/5 343/8 343/11 344/8 345/21 345/22 347/25 348/21 349/22 351/3 358/5 358/5 358/21 360/8 363/23 364/1 365/7 365/13 365/14 366/17 367/20 368/3 368/10 368/13 368/17 375/16 376/25 378/12 378/15 378/17 379/2 379/17 379/18 383/6 384/3 388/3 389/9 389/17 396/6 399/10 400/12 401/15 402/20 406/7 406/23 408/9 408/9 410/8 410/9 410/9 410/13 410/16 411/11 414/22 417/6 418/8 420/4 421/2 422/25 423/5 426/7 428/2 428/4 428/24 431/19 432/5 432/21 432/21 432/22 433/18 433/19 437/4 438/15 439/3 443/2 448/18 461/16

**W**

**were... [2]** 472/19 479/23
**weren't [11]** 282/21 321/25 321/25 322/25 336/16 340/11 340/18 401/14 402/21 416/10 440/2
**Western [7]** 354/25 355/3 355/5 355/7 380/4 387/25 390/2
**wet [1]** 448/16
**what [289]**
**what'd [2]** 301/15 325/3
**what's [31]** 276/17 283/12 283/17 298/18 339/7 339/8 342/15 342/19 344/12 345/13 345/23 349/15 351/9 368/22 377/22 378/9 383/2 412/10 415/13 415/24 417/20 425/1 435/2 436/9 443/8 475/13 475/21 476/3 476/6 477/5 481/15
**whatever [11]** 324/1 324/12 324/12 324/13 324/15 378/24 379/4 384/25 398/3 467/17 481/14
**whatsoever [3]** 361/23 392/7 449/23
**when [164]** 278/14 284/9 285/6 285/23 287/9 291/1 291/13 291/23 292/1 292/4 292/11 292/18 292/19 292/22 293/4 293/6 293/7 293/8 293/9 293/14 295/21 296/24 296/24 301/8 302/13 302/25 304/15 304/24 305/8 305/22 307/2 307/15 308/13 308/18 309/19 309/21 310/11 310/12 312/22 313/1 313/1 313/24 320/1 321/17 322/3 322/5 322/6 324/10 324/20 325/8 326/8 329/6 330/14 334/18 334/19 334/23 335/21 335/23 335/23 338/2 338/9 340/6 340/14 340/25 341/4 341/8 341/12 344/3 344/6 344/17 345/21 346/8 351/8 351/15 364/6 365/16 365/25 366/7 367/21 368/1 368/7 368/16 377/18 377/21 378/2 378/13 380/6 380/21 382/4 382/25 383/5 383/13 385/5 385/20 386/9 386/16 386/21 388/18 388/20 388/23 389/14 389/21 389/23 391/24 392/12 392/20 397/17 399/1 399/9 401/7 401/16 401/21 402/1 402/11 402/13 402/24 403/14 404/4 404/23 405/11 407/1 407/5 407/8 408/1 408/11 409/4 410/14 411/4 412/16 414/18 417/22 418/17 418/21 418/24 419/1 419/13 422/16 423/9 423/9 423/11 423/15 427/5 429/5 430/2 434/1 439/1 439/1 439/2 439/7 439/18 441/1 441/9 441/15 442/4 445/4 446/11 446/17 448/14 456/3 462/2 467/5 470/3 470/8 485/2
**where [66]** 275/16 276/2 278/14 293/23 295/7 295/24 298/14 298/16 300/12 303/9 328/1 329/21 337/13 337/20 338/18 342/13 343/11 343/20 344/13 348/17 363/15 363/21 364/11 364/23 365/20 365/21 366/22 367/11 370/11 375/7 375/8 379/4 379/7 383/22 384/19 387/4 389/2 393/25 393/25 401/22 406/22 406/24 421/25 422/20 424/18 424/19 424/21 424/22 424/23 425/6 425/7 425/17 426/11 431/2 431/15 431/24 432/4 442/14 443/3 443/24 444/20 468/16 473/17 476/7 476/7 476/22
**where's [7]** 343/14 406/7 424/19 424/20 425/8 444/21 485/13
**Whereupon [1]** 486/2
**wherever [1]** 344/14
**whether [56]** 282/13 282/19 284/20 285/23 285/24 286/5 286/13 287/15 288/12 288/17 299/18 315/22 316/14 316/17 317/2 317/8 317/19 332/3 333/6 334/19 336/4 336/6 336/7 336/17 338/12 361/17 383/6 384/22 395/9 397/19 432/17 437/1 445/17 445/19 454/8 456/23 457/20 458/5 458/7 459/24 461/13 462/24 464/7 464/11 464/18 464/23 465/12 465/13 466/2 466/15 467/1 467/23 469/25 471/20 483/5 483/6
**which [70]** 275/1 286/3 286/6 287/11 288/2 297/20 297/21 297/22 298/2 298/4 298/9 298/10 298/23 302/18 304/4 314/11 339/8 343/12 344/25 347/5 348/12 349/17 350/16 353/15 353/20 354/20 355/14 357/1 357/18 358/9 358/16 359/2 359/15 359/20 360/15 360/20 361/20 362/16 370/6 376/7 382/3 385/25 387/5 389/14 390/23 392/6 403/6 408/16 431/3 431/10 433/17 438/16 444/14 446/22 447/4 448/7 448/10 452/2 452/10 452/13 455/9 456/21 464/17 464/18 464/22 465/1 465/2 469/18 475/23 482/13
**while [10]** 310/9 319/7 348/14 365/13 405/5 448/18 464/21 474/9 475/1 477/23
**whim [1]** 450/15
**white [3]** 297/24 421/14 421/15
**who [69]** 288/17 294/21 297/10 298/7 300/15 301/18 301/20 304/16 305/8 316/22 317/8 332/18 334/12 337/10 337/10 337/10 337/12 338/11 338/11 338/15 344/8 345/4 349/22 351/17 364/4 366/5 367/2 367/2 367/3 367/4 376/18 376/19 378/17 378/19 384/16 384/17 386/3 387/15 388/6 388/13 389/8 390/8 399/6 400/2 403/25 406/19 408/6 408/8 408/9 408/12 408/13 410/13 418/13 439/10 439/16 439/20 441/9 443/24 446/25 452/14 455/20 455/22 457/5 459/6 464/2 466/5 466/12 467/4 467/11
**who's [10]** 294/6 300/7 351/19 386/4 387/23 388/6 391/2 399/2 399/4 415/14
**whodunit [1]** 409/12
**whoever [2]** 316/25 390/1
**whoever's [1]** 416/25
**whole [18]** 296/7 297/14 304/6 304/13 328/1 334/5 340/21 342/24 342/25 372/14 400/9 401/20 410/2 410/13 412/14 465/16 468/23 474/4
**whose [3]** 299/1 304/10 337/23
**why [39]** 276/16 276/18 282/3 282/12 308/7 312/13 325/11 335/19 340/10 377/6 377/7 386/3 389/14 390/4 391/21 404/11 406/15 410/12 415/2 415/23 419/10 419/10 420/11 420/18 421/7 424/25 425/10 427/14 431/18 433/20 440/2 440/3 441/18 442/17 450/1 475/1 475/4 476/11 484/7
**will [59]** 287/3 299/24 351/5 351/21 352/11 352/15 355/15 360/16 361/7 362/14 375/7 393/16 399/1 399/24 402/9 409/15 409/20 409/20 411/10 411/12 412/5 412/25 417/19 418/11 420/17 420/22 421/21 425/16 430/14 435/20 435/23 435/25 436/11 445/20 452/20 453/15 453/17 456/20 456/24 457/25 460/7 460/19 460/25 461/5 468/6 468/12 468/16 468/16 468/21 469/3 469/17 470/12 471/10 472/17 477/13 477/14 479/5 482/4 484/24
**willful [1]** 457/1
**willfully [9]** 362/6 453/10 453/13 455/1 456/22 456/23 458/4 458/8 465/15
**willing [1]** 283/1
**window [1]** 385/25
**wire [5]** 380/7 380/13 387/19 387/23 413/16
**wires [1]** 395/10
**wisdom [1]** 445/10
**wise [1]** 455/12
**wish [9]** 468/5 468/14 468/18 468/19 468/25 470/7 477/12 481/25 482/21
**wished [1]** 459/20
**withdraw [1]** 292/22
**withdrawn [2]** 274/24 429/12
**within [7]** 328/13 397/20 437/2 451/23 452/11 461/14 467/7
**without [22]** 294/13 299/13 343/17 347/7 354/18 355/12 356/4 356/23 358/7 358/24 360/13 362/7 385/22 388/14 408/18 428/24 430/9 435/20 448/17 451/14 470/12 485/19
**witness [52]** 287/25 288/14 288/16 289/6 289/18 290/6 290/8 290/14 352/1 352/2 385/21 407/3 409/3 410/2 410/3 410/3 414/21 422/2 422/7 446/18 446/20 447/1 447/12 447/13 447/25 449/24 464/17 464/19 464/22 464/23 464/25 465/1 465/3 465/6 465/14 465/17 465/20 465/24 466/2 466/3 466/4 466/6 466/12 466/14 466/15 466/17 466/21 467/1 467/4 467/7 467/10 467/11
**witness' [4]** 287/12 464/22 465/16 466/24

Case 1:09-cr-00003-CBA Document 78 Filed 08/14/09 Page 254 of 255 PageID #: 1646

## W

**witnesses [8]** 350/9 426/19 445/25 446/24 464/2 464/14 465/6 487/2
**witnesses' [1]** 464/20
**witnessing [1]** 465/8
**woman [6]** 303/20 304/11 323/4 378/19 386/10 444/3
**won't [8]** 289/23 318/2 318/11 353/23 436/18 436/20 443/1 444/8
**wonder [2]** 333/6 400/7
**wondered [2]** 410/8 410/16
**wonderful [1]** 425/5
**word [3]** 427/3 455/17 456/1
**wording [1]** 446/19
**words [8]** 353/19 367/22 392/11 396/6 450/5 457/19 462/1 483/3
**work [14]** 280/1 292/7 301/16 342/13 388/5 388/5 400/6 400/14 401/11 401/23 401/24 404/6 426/8 476/1
**worked [3]** 281/17 342/17 430/25
**working [4]** 343/9 399/14 424/3 478/16
**world [1]** 407/1
**worth [2]** 337/2 377/4
**worthy [1]** 464/19
**would [132]** 275/22 278/4 278/21 279/16 282/1 288/5 292/8 293/11 295/8 295/11 295/19 295/19 295/21 296/2 299/14 310/24 314/16 314/18 328/20 331/7 332/17 334/6 334/14 334/15 338/7 339/19 346/10 346/23 347/3 347/16 349/6 351/7 353/4 353/12 359/12 372/19 373/5 376/6 376/12 376/15 378/14 378/20 380/15 381/6 381/14 382/6 382/25 384/1 384/1 385/7 385/16 386/7 386/19 388/22 389/6 391/22 392/17 393/22 393/23 396/5 396/7 396/11 397/16 397/22 397/24 398/6 398/8 402/6 402/7 402/20 402/22 404/8 404/11 411/6 411/14 411/15 411/17 412/4 412/4 412/20 413/4 413/4 413/24 413/25 414/1 415/23 419/15 420/11 421/3 421/7 422/15 426/5 426/22 428/18 428/19 429/12 431/18 432/18 432/20 433/4 433/8 433/15 437/7 439/19 440/15 441/16 445/12 446/20 447/12 447/14 448/13 450/9 450/13 461/18 466/7 466/8 466/15 466/18 466/19 466/22 466/23 468/21 474/13 474/14 477/1 481/8 481/13 482/15 483/2 483/5 483/6 485/5
**wouldn't [10]** 283/15 292/21 326/15 335/15 335/15 353/4 378/13 417/9 431/11 441/23
**wrench [1]** 439/7
**wrenches [1]** 399/13
**Wright [20]** 282/20 282/20 323/5 323/8 323/10 377/19 377/25 378/4 378/8 378/23 379/17 387/13 389/8 406/5 407/5 407/19 407/20 422/1 444/5 451/25
**Wright's [1]** 379/8
**write [2]** 436/1 476/18
**writing [6]** 413/25 414/1 447/21 457/7 469/3 469/5
**written [6]** 351/14 351/18 473/17 478/20 479/5 479/10
**wrong [19]** 282/14 303/15 324/25 370/17 391/22 396/23 397/15 398/2 401/19 401/21 401/22 402/13 407/24 408/24 409/8 409/11 421/8 432/2 438/13

## X

**Xterra [6]** 385/7 385/8 385/15 385/19 424/15 442/21
**Xterras [4]** 296/17 296/18 296/19 296/20

## Y

**y'all [1]** 321/20
**yeah [110]** 277/15 278/6 278/16 280/25 293/23 295/2 296/6 298/13 301/10 301/23 305/10 308/12 308/17 308/20 309/5 309/7 309/18 309/22 310/2 310/4 310/10 311/5 312/2 312/8 313/4 313/9 314/4 314/8 314/14 315/5 315/7 315/14 315/16 316/8 317/10 317/12 319/6 319/11 320/23 320/25 321/2 321/5 321/8 321/12 321/19 321/21 321/23 322/2 322/17 322/19 322/21 324/2 324/7 324/14 324/16 324/16 324/21 324/24 325/2 325/7 325/10 325/13 325/25 326/4 326/7 326/10 326/14 327/1 327/3 327/5 327/13 327/15 327/21 328/22 328/25 329/5 329/8 330/3 330/5 330/10 330/12 332/6 335/7 337/7 337/9 338/14 339/17 340/13 344/5 348/15 351/12 352/18 352/18 366/19 372/6 373/25 374/3 384/16 387/13 387/17 387/22 398/15 423/22 430/22 432/18 441/16 471/6 471/12 473/11 485/24
**year [10]** 306/1 312/10 313/3 313/4 314/6 316/10 341/5 342/18 363/23 420/1
**years [9]** 304/3 304/4 334/6 334/17 343/7 386/10 420/7 420/15 444/18
**yes [185]** 275/5 281/7 281/7 281/10 281/19 285/15 290/18 291/3 291/7 291/10 292/3 292/13 292/16 293/3 293/16 293/19 293/22 293/25 294/3 294/5 294/17 296/23 297/9 297/14 297/17 298/6 299/7 300/6 300/14 302/9 302/15 302/17 302/20 302/22 303/2 303/4 303/11 303/18 304/2 304/5 304/7 304/9 304/14 304/21 304/23 305/2 305/4 305/7 305/13 305/24 306/2 306/8 306/15 306/17 307/1 307/4 307/6 307/12 307/14 307/25 308/3 308/6 308/23 309/3 309/10 309/12 309/14 309/16 309/20 310/7 310/14 310/18 310/23 310/25 311/2 311/25 312/4 312/18 312/20 312/16 312/18 313/20 313/23 314/10 314/12 314/17 314/21 315/20 315/23 316/5 316/11 316/13 317/13 317/25 318/25 319/2 319/4 319/15 319/17 319/19 319/24 320/2 320/4 320/7 320/10 320/15 320/17 320/19 321/14 321/16 322/8 322/10 323/6 323/9 323/12 323/15 323/18 323/21 323/23 323/25 324/9 325/18 325/20 325/23 327/18 327/25 328/4 335/1 336/20 339/13 341/17 341/25 343/10 343/19 343/24 344/2 344/18 344/22 344/24 345/3 345/16 347/11 348/3 348/7 349/11 349/24 350/1 350/3 351/24 353/1 361/5 363/2 363/5 363/8 363/18 363/20 363/22 363/25 364/3 364/10 364/16 364/25 365/15 365/23 367/23 368/4 368/12 368/15 369/19 375/4 398/21 431/21 438/4 460/25 461/1 461/5 479/8 479/14 479/22 481/4 481/5 481/6 482/9 483/14 485/22
**yesterday [10]** 274/21 289/9 290/17 292/12 309/8 311/9 311/24 319/7 323/16 327/22
**yet [1]** 299/24
**YORK [57]** 273/1 273/4 273/14 273/15 273/18 273/20 276/15 280/20 282/6 291/19 294/1 295/15 295/20 295/25 310/17 313/19 313/25 320/5 320/11 320/14 322/7 341/5 353/21 363/16 365/4 365/11 366/23 372/21 377/7 377/9 377/9 383/14 386/13 387/20 389/14 389/18 389/20 390/2 390/3 396/5 396/10 397/20 404/9 408/7 417/6 425/24 430/5 437/2 437/5 437/7 444/18 445/1 451/23 461/15 461/17 461/19 461/20
**you [1309]**
**you'd [6]** 302/10 312/10 316/10 324/8 416/6 475/3
**you'll [10]** 281/12 284/9 352/16 380/4 381/12 382/13 384/23 402/2 403/11 461/10
**you're [77]** 280/8 283/1 285/11 285/23 290/17 298/9 311/6 311/8 311/11 311/14 311/16 311/18 311/20 312/6 312/13 315/3 315/6 315/22 315/24 316/2 316/6 316/9 316/15 316/17 316/20 317/2 317/8 317/19 317/24 318/2 318/11 318/14 318/16 318/20 318/20 328/6 333/3 337/6 352/12 370/8 377/3 378/20 378/21 379/14 383/15 385/24 386/7 398/22 399/4 399/4 399/6 399/12 399/14 401/24 407/8 412/23 413/14 413/16 413/17 413/18 413/18 421/12 421/13 421/14 423/19 423/20 427/7 431/15 431/25 442/4 442/6 443/14 443/17 461/7 472/10 476/21 485/7
**you've [25]** 281/17 284/16 285/14 289/11 300/25 304/3

Y

**you've... [19]** 306/12 313/19 313/21 314/5 329/6 351/5 379/16 388/22 389/6 390/7 409/1 409/23 427/4 443/19 461/6 470/4 479/7 482/22 484/13
**young [5]** 386/10 400/20 400/21 414/23 424/3
**your [217]**
**yourself [4]** 306/25 307/3 311/3 337/4
**yourselves [3]** 382/14 404/4 466/15

Z

**Zero [1]** 320/16
**zip [3]** 348/12 348/17 348/18
**Zone [1]** 343/12
**zones [1]** 343/1